UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| v. | Civil Action # 05-10192 RWZ |
| ONE STAR CLASS SLOOP SAILBOAT BUILT IN 1930 WITH HULL NUMBER 721, NAMED "FLASH II", | |
| Defendant. | |
| KERRY SCOTT LANE, | |
| Claimant. | |

**POINTS AND AUTHORITIES IN SUPPORT OF
CLAIMANT'S RULE 59(e) MOTION TO ALTER/AMEND
ORDER DENYING HIS MOTION TO VACATE DEFAULT JUDGMENT**

In its terse endorsed Order, this Court denied Claimant's Rule 60(b) motion to vacate default judgment stating: "because claimant admittedly knew of the seizure and deliberately declined to disclose his interest, none of the grounds for vacating a judgment under Rule 60(b) apply."

Under controlling First Circuit law, a property owner's knowledge that property has been *seized* does *not* satisfy the government's statutory and constitutional requirements for giving notice of the forfeiture proceedings.

Claimant has grounds for vacating the default judgment under Rule 60(b)(4) ("the judgment is void") as well as 60(b)(1) ("mistake, inadvertance, surprise, or excusable neglect.")

1

In forfeiture cases, as in all civil cases, a default judgment cannot be entered unless service of process was sufficient under the Due Process Clause, statutes and court rules. The Complaint itself shows that the government knew of Claimant's interest in the sailboat – and thus it had a statutory and Constitutional duty to make reasonable efforts to find him and serve process on him.

Without the government having demonstrated that it made reasonable efforts to locate Dr. Lane and serve notice of the forfeiture proceedings on him, the default judgment is void as to Dr. Lane, and must be vacated.

## FACTS

Because the government's Opposition to the Motion to Set Aside Default creates a distorted picture of the facts – particularly as it relates to what the parties knew and when they knew it – it is necessary to briefly rehash the facts here.

On October 13, 2004, the government seized the sailboat pursuant to a seizure warrant. Opp. 2. Dr. Lane was not served with the seizure warrant, and did not know about it. The first time Dr. Lane ever saw documents from this case was on July 1, 2005, when Marblehead's attorney faxed him the notice of default, motion for default and supporting documents. Lane Supp. Aff. para. 3, and Exhibit 1.

Some time between October 13 and 15, 2004, Dr. Lane received a phone call from Ole Anderson, in which Anderson told Dr. Lane that the boat had been seized. Anderson did not mention "forfeiture" or warn Dr. Lane that this could lead to forfeiture proceedings. The phone call came in at 7 a.m., rousting Dr. Lane from sleep. He was groggy and did not fully comprehend the implications of what Anderson was telling him. Dr. Lane did not know about

the asset forfeiture laws, and did not equate Anderson's statement that the boat had been seized with any threat to his own ownership interest in the boat.   Dr. Lane did not want to want to be named in any publicity about Anderson's legal problems because he was going through credentialing process at a new job.  He had no idea that his reluctance to have Anderson reveal his name could jeopardize his ownership interest in the sailboat.  Lane Supp. Aff. para. 1.

In the following months Dr. Lane took several measures to monitor the situation regarding the boat.

During the October 2004 phone call he told Anderson to keep him apprised of any new developments.  After nine years as his business partner in the ownership and management of this sailboat, Dr. Lane was accustomed to being notified by Anderson of any matters that needed their attention.  Because of this past experience, his reliance on Anderson to notify him of any further developments was reasonable.

Dr. Lane also called the Kennedy Library to see if the boat was still scheduled to arrive there as planned.  He set up a Google alert, which would automatically send him notices whenever any mention of the Kennedy sailboat was posted on any website on the internet, and read the alerts daily looking for any news about the boat.   Lane Supp. Aff. para. 3.

The government distorts the facts regarding Dr. Lane's diligence in obtaining notice of the proceedings.  Contrary to the government's claim, at Opp. p. 7, the telephone call from Anderson did not put Lane on notice of the potential forfeiture of the sailboat.  All Anderson said was that the boat had been seized – which could mean many things.  Property is often seized by police to use as evidence, or to perform searches for forensic evidence.  Such seizures do not necessarily lead to forfeiture.

3

The government's claim (Opp. p. 7), that Dr. Lane "declined to file any sort of appearance" or to make his identity known to the Court, is beside the point. Since he did not know of the court proceedings, he could not be expected to file an appearance in the case.

The government's claim on pages 7-8 that "by his own admission, Lane understood in October 2004 that the government did not know his identity" is complete fiction. The government reiterates the same false claim on page 8: "According to Lane, the identity of this potentially interested party was known only to two persons, Lane himself and Ole Anderson, and Lane had instructed Anderson not to reveal his identity." Nothing in Dr. Lane's motion or affidavit remotely suggests that, and in fact it is not true. Dr. Lane's identity and interest in the boat were known to Marblehead, Sailorman, and other businesses involved in repairing, transporting, storing, and displaying the sailboat. See Lane Affid. para. 3, Lane Supp. Affid. para. 5.

Likewise, there is no basis for the government's suggestion that Dr. Lane must have read the seizure warrant affidavit. Opp. p. 8.

The government again distorts the facts on page 9, stating that Dr. Lane "specifically directed a person who had received *notice of the seizure and intent to forfeit* not to reveal his identity." (Emphasis added). A "notice of seizure and intent to forfeit" is an administrative forfeiture notice, which begins the administrative forfeiture process. The government conceded that there was no administrative forfeiture notice in this case. Opp. p. 3 ("Forfeiture of the Defendant Sailboat was commenced in the first instance by the filing of an in rem Complaint in the District Court, a judicial forfeiture.") The forfeiture complaint was filed in February 2005 – four months after the phone call. Thus, at the time Anderson made his phone call to Dr. Lane,

4

Anderson had not received *any* notice of the intent to forfeit, whether administrative or judicial.

Because it appears that the Court relied upon these distortions of the facts, the Court should reconsider its conclusions of law made in reliance on those facts.

## ARGUMENT

Because it applied the wrong standard of law, the Court must also reconsider its ruling denying relief from the default judgment.

**I.    Actual knowledge that property has been seized does not substitute for service of process in the forfeiture case**

The Court denied Dr. Lane's motion to vacate default judgment, ruling: "because claimant admittedly knew of the seizure and deliberately declined to disclose his interest, none of the grounds for vacating a judgment under Rule 60(b) apply."

Although Dr. Lane knew of the seizure, the facts are undisputed that he did not learn of the forfeiture case until late June, 2005. In such a situation, the First Circuit has held, actual knowledge of the *seizure* is not sufficient to excuse the lack of service – only actual knowledge of the *forfeiture proceedings* suffices as a substitute. *United States v. Gonzalez-Gonzalez*, 257 F.3d 31, 38 (1st Cir. 2001) ("the actual knowledge required to defeat a notice-based due process challenge is advance notice-in-fact of forfeiture proceedings, as opposed to notice-in-fact of seizure.") The Department of Justice's own forfeiture manual recognizes this principle, citing *Gonzalez-Gonzalez* for the proposition that "there is no due process violation if claimant had actual notice, but Government must show he had notice of the forfeiture proceeding, not just notice of the seizure." *Civil and Criminal Forfeiture Procedure*, U.S. Dept. of Justice, Asset Forfeiture and Money Laundering Section (January 2004), p. I-20.

**II.     Dr. Lane has demonstrated grounds for relief under Rule 60(b)**

The facts of this case establish grounds for relief under Rule 60(b)(4) ("the judgment is void) – as well as subsection 60(b)(1) ("mistake, inadvertence, surprise, or excusable neglect"). Additionally, he has shown standing, and the other three relevant factors that must be considered in determining whether to vacate a default: "whether the default is willful, whether setting aside the default will prejudice the other party and whether there is a meritorious defense." *United States v. One Urban Lot*, 865 F.2d 427, 429 (1st Cir. 1989).

**A.     The default judgment is void as to Dr. Lane**

It is axiomatic that valid service of process must be obtained before a default or default judgment may be entered. *Maryland State Firemen's Ass'n v. Chaves*, 166 F.R.D. 353, 354 (D.Md. 1996). In forfeiture cases, as in garden variety civil cases, if the notice given turns out to be insufficient under the Due Process clause or relevant statutes or court rules, the judgment of forfeiture is void. *United States v. Giraldo*, 45 F.3d 509, 512 (1st Cir. 1995). Void forfeitures must be set aside under Rule 60(b)(4).

Under the forfeiture statutes and case law, a person whose interest in the property is known to the government is entitled to actual service of the complaint, and mere published notice will not suffice unless the government demonstrates that it has exhausted all reasonable avenues in the attempt to locate and serve the interested party. The Dept. of Justice acknowledges this in its forfeiture manual:

> To satisfy due process, notice must be "reasonably calculated" to apprize interested parties of the pendency of the action; to satisfy [19 U.S.C. §] 1607, notice must be published for three successive weeks and *written notice must be sent to any person appearing to have an interest in the property*.

*Civil and Criminal Forfeiture Procedure*, p. I-18 (emphasis added).  "[F]ailure to send notice to person appearing to have an interest in the property violates due process."  *Id*., citing *United States v. Marolf*, 973 F.Supp. 1139 (C.D. Cal. 1997).

The government obviously knew of Claimant's interest in the property, since its own Complaint quotes the informant as saying "another person, possibly a doctor or dentist, also invested roughly the same amount" in the purchase of the boat.  Complaint para. 16.  The question is, did the government demonstrate reasonable efforts to locate this doctor or dentist?  The Court never put the government to its burden of showing reasonable efforts to locate Dr. Lane before entering judgment.  The government and the other claimant (who was  served with the complaint) are to blame for this oversight, since they did not notify the court in their status report or stipulated Motion for Entry of Default, that there were other co-owners who had not been served process.

Claimant submits that the government cannot demonstrate that it took reasonable efforts to locate him, or it would have found him.  During the nine years Dr. Lane co-owned the boat with Anderson, Dr. Lane interacted (directly or indirectly) with numerous businesses that serviced, restored, transported, put on display or auctioned the boat.  Twice, the boat was shipped to Florida and stored at Dr. Lane's home for extended periods of time, (See Lane Affid. para. 5, 10).  It is impossible to believe that claimant Crosby did not know of Dr. Lane's interest in the sailboat, given the fact that it was stored periodically in Dr. Lane's garage for extended periods of time.  Even the government's informant knew of Dr. Lane's interest in the boat.  Complaint para. 16.  All of these people presented trails likely to lead to Dr. Lane's name and address, had anyone bothered to pursue them.

It was not in the financial interests of either the government or claimant Crosby to make efforts to locate Dr. Lane – additional claimants would diminish their shares of the proceeds. However, Due Process requires the government to give notice "reasonably calculated, under all the circumstances" to apprise interested parties of the pendency of a forfeiture action. *Mullane v. Central Hanover Bank & Trust Co*., 339 U.S. 306, 313-14 (1950).  "The means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it."  Id.  Such efforts were not made here.

Without a showing of reasonable efforts to give notice, the default judgment is void as to Dr. Lane and must be vacated pursuant to Rule 60(b)(4).

**B.    Dr. Lane has shown grounds under Rule 60(b)(1)**

Rule 60(b)(1) allows, but does not require, vacation of a default judgment for "mistake, inadvertence, surprise, or excusable neglect."  Under this subsection of Rule 60,

> [r]elief from a judgment may be granted for mistakes by any person, not just a party; this category permits relief where the order or judgment results from such circumstances as... a misunderstanding regarding the duty to appear, [or] a failure to receive service....

Baicker-McKee, Janssen, Corr, *Federal Civil Rules Handbook*, (West Group, 2002).

Even if the government can show it took reasonable efforts to locate Dr. Lane, the fact is they did not succeed, and he was entitled to personal notice.  Rule 60(b)(1) and equity require vacating the default judgment to give Dr. Lane the opportunity to defend his interest.

Courts have vacated default judgments under Rule 60(b)(1), for "mistake, inadvertence, surprise or excusable neglect" where notice fails to reach the defaulting party due to circumstances beyond his control – for example, because of another person's interference with

his mail (*United States v. $135,290*, 750 F.Supp. 359 (N.D. Ill.. 1990)); because his attorney

neglected to file a change of address notice with the court (*Blois v. Friday*, 612 F.2d 938, 940 (5th

Cir. 1980); or because the litigant relied upon his attorney to keep him apprised of any new

developments and the attorney withdrew due to a misunderstanding and did not inform the client

(*Seven Elves, Inc. v. Eskenazi*, 635 F.2d 396 (5th Cir. 1981)). In these cases, as here, the litigant

was "surprised" by the default judgment.

> Plaintiff's Rule 60(b) Motion must be equitably and liberally applied to achieve
> substantial justice. Doubt should be resolved in favor of a judicial decision on the
> merits of a case.

*Blois*, 612 F.2d at 640.

Since the U.S. Attorney's Office and its agents knew of Dr. Lane's interest in the

property, even if they tried and failed to locate him, the government should have gladly agreed to

reopen the default judgment once he came forward. After all, the government has a duty to "do

justice."

### C.    Dr. Lane has standing

The government argues that Dr. Lane does not have standing to move to vacate the

default judgment because he did not timely file a Verified Statement and Answer. Opp. pp. 4-5.

This circular argument is easily rebutted.

In forfeiture cases there are two types of standing: Article III standing and statutory

standing. A person has Article III standing if he has a concrete stake in the outcome of the

proceedings. The law is clear – an ownership interest in the seized property, or even a possessory

interest – provides Article III standing.

Statutory standing is satisfied by the claimant timely filing a Verified Statement and

Answer. The government is arguing here that even though it did not give Dr. Lane personal notice of the forfeiture proceeding, Dr. Lane is prevented from moving to vacate the default judgment because he did not timely file a Verified Statement and Answer.

In response to this argument, the court ruled in *United States v. 8136 S. Dobson St.*, 125 F.3d 1076, 1085 (7th Cir. 1997) that a claimant who has not filed a claim (now called a Verified Statement) should file a motion for leave to late file the claim at the time he files his Rule 60(b) motion. Dr. Lane did exactly that. See Memo in Support of Lane's Motion to Set Aside Default and For Leave to File Verified Claim and Answer (Dkt. # 17, filed 7/27/2005). Dr. Lane's Verified Statement and Answer are filed as attachments to this Memorandum. Furthermore, although the Verified Statement and Answer were not filed with the original motion to vacate, the Affidavit of Dr. Lane satisfied all of the substantive requirements: it was under oath, described Dr. Lane's interest, and showed he had a meritorious innocent owner defense, as well as the defense of insufficient service of process.

**D.    Dr. Lane's failure to timely respond to the Complaint was not willful**

It is undisputed that Dr. Lane did not receive personal service of the complaint in time to respond to it. It is also undisputed that published notice of the judicial forfeiture action did not reach him. Since he did not know of the judicial forfeiture proceedings, his failure to respond earlier could not have been willful.

**E.    The other parties will not be prejudiced**

When contacted last week, the attorney for claimant Crosby voiced adamant opposition to this motion, but the only reason he was able to give showing Crosby would be prejudiced was his claim it would interfere with the auction of the sailboat, scheduled for December. As counsel told

10

him, that is not necessarily the case.  Dr. Lane wants to preserve his share of the proceeds, but that

can be accomplished by going through with the auction and escrowing the proceeds.  Furthermore,

given Dr. Lane's innocent owner status, his share of the proceeds could well be resolved even before

the auction in December.

Claimant cannot see how Mr. Crosby could be prejudiced.  He certainly has not been

prejudiced by lengthy litigation.  This case only lasted five and one half months from filing of the

complaint to judgment.  Crosby did not have to undergo discovery or litigate contested motions.

Crosby has negotiated a sweetheart deal giving him 1/3 of the proceeds of the sale of the

property.  This is a huge windfall –  if the newspaper accounts are correct that he invested a mere

$10,000 into the venture.  His settlement agreement is already signed and filed.  Granted, Crosby is

anxious to get his money and does not want to wait until Dr. Lane is given due process – but Crosby

is not in any different position than any other forfeiture litigant in cases where there are multiple

claimants.

The government is not prejudiced either.  If Dr. Lane prevails, the government would lose

some of the booty it otherwise would have taken, but courts have held that is not "prejudice" under

Rule 60(b).

> It is perhaps more appropriate for our purposes to define what prejudice is not, rather
> than what it is. The government is not "prejudiced" solely because Lily's claim may
> turn out to be meritorious. The goal of a civil forfeiture action under *21 U.S.C. § 881*
> is that all fruits and instrumentalities of drug distribution crimes be forfeited, while
> preserving the rights of unwitting, innocent owners of such property. § 881(a)(6).
> The degree to which the government has achieved that goal is not measured by the
> value of the property forfeited.  If Lily's claim is valid, and the government can
> restore her property to her while retaining what is properly forfeited, the action is a
> success; justice and congressional intent are satisfied.

*United States v. Borromeo*, 945 F.2d 750, 754 (4th Cir. 1991).

### F.    Dr. Lane has a meritorious defense

As his Answer shows, Dr. Lane alleges a meritorious innocent owner defense. His affidavits show he is a bona fide purchaser for value without notice of the forfeitability of the property. His defense of insufficient service of process is obviously valid.

His defense that the Complaint fails to state a claim upon which relief may be granted is also valid. The evidence submitted to date shows Dr. Lane purchased his interest in the sailboat in 1996. The allegations of drug dealing by Anderson and the government's cooperating witness show drug dealing by them in 2001 to 2004. The allegations fail to trace any money Anderson allegedly invested in the boat to drug proceeds. It has not been show that Anderson invested any of his own money toward the purchase or maintenance of the sailboat that was not reimbursed by other investors. Unless the government can show that Anderson invested money in the project that remained invested, and was not reimbursed by innocent co-owners when they bought their interests, it is difficult to see how the government plans to establish traceable proceeds.

If the government's theory relies on its informant's investment of drug proceeds in the sailboat, the Complaint shows the informant would not have had standing if he were a claimant today. In paragraph 21, the Complaint alleges that "Anderson said that he paid the CW back for everything the CW had *loaned* him to originally purchase the sailboat." In the next sentence the Complaint states that "the CW originally *loaned* him between $15,000 and $20,000 to purchase the boat...." It then states that Anderson said he paid the CW back for that loan. If the CW's interest in the sailboat was a loan to Anderson, as it appears to be, then the CW would not have standing, since he would be a mere unsecured creditor. If he had in fact been paid back, he would not even be a creditor.

Thus, under the facts revealed so far, the complaint does not even state a cause of action for forfeiture.

## CONCLUSION

Due Process requires that Dr. Lane be given adequate notice and the opportunity to be heard before his property can be forfeited. That did not happen in this case.

There is a presumption that disputes should be tried on their merits rather than decided by default. The equities of the situation demand that Dr. Lane be given the opportunity to litigate his claim.

Wherefore, the forfeiture judgment should be reopened to allow Dr. Lane to litigate his claim.

Respectfully submitted,
Kerry Scott Lane, MD,

By his attorneys,


_____ s/Eric B. Goldberg _____
Jeffrey P. Allen (BBO# 015500)
Eric B. Goldberg (BBO# 564398)
Seegel Lipshutz & Wilchins, P.C.
Wellesley Office Park
20 William Street, Suite 130
Wellesley, MA 02481
(781) 237-4400

Brenda Grantland, Esq.
Law Office of Brenda Grantland
20 Sunnyside Suite A-204
Mill Valley, CA 94941
(415) 380-9108
(Pro hac vice application pending)

13

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA,

        Plaintiff,

      v.

ONE STAR CLASS SLOOP SAILBOAT
BUILT IN 1930 WITH HULL NUMBER
721, NAMED "FLASH II",

        Defendant.

Civil Action # 05-10192 RWZ

KERRY SCOTT LANE, M.D.

        Claimant.

## VERIFIED STATEMENT OF INTEREST

Claimant, Kerry Scott Lane, M.D., through undersigned counsel, files this Verified

Statement of Interest in the property described above. As grounds for this claim claimant states

the following:

1. I am a co-owner of the above-entitled property.

2. I hereby claim the right to defend this action.

## VERIFICATION

I, Kerry Scott Lane, M.D., verify that I have read the foregoing Claim, and declare under

penalty of perjury that the allegations therein are true and correct.

Executed on this 28th day of August , 2005.

_____
Kerry Scott Lane, M.D., Claimant

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA, | \| |
| | \| |
| Plaintiff, | \| |
| v. | \|  Civil Action # 05-10192 RWZ |
| | \| |
| ONE STAR CLASS SLOOP SAILBOAT | \| |
| BUILT IN 1930 WITH HULL NUMBER | \| |
| 721, NAMED "FLASH II", | \| |
| | \| |
| Defendant. | \| |
| ——————————————————— | \| |
| | \| |
| KERRY SCOTT LANE, M.D., | \| |
| | \| |
| Claimant. | \| |
| ——————————————————— | \| |

**ANSWER TO VERIFIED COMPLAINT FOR FORFEITURE IN REM,
WITH JURY DEMAND**

Claimant, Kerry Scott Lane, M.D., through undersigned counsel, answers the Complaint

for Forfeiture as follows:

1.  Claimant admits the allegations of jurisdiction and venue in paragraph 1.

2.  Claimant lacks sufficient information to admit or deny the allegations of paragraph 2.

3.  Claimant admits the allegations of paragraph 3.

4.  Claimant denies the allegations of paragraph 4.

5.  Claimant denies the allegations of paragraph 5.

**<u>First Defense</u>**

4.    The complaint fails to state a claim upon which relief may be granted.

**<u>Second Defense</u>**

5.  Service of process was insufficient under the Constitution and statutory law.

## **Third Defense**

6.   Claimant is an innocent owner whose interests are protected under 18 U.S.C. § 983(d)(6).

WHEREFORE, claimant prays:

1. That this action be dismissed;

2. That he be awarded interest and reasonable attorneys fees; and

3. For such other and further relief as may be deemed just and equitable.

### **JURY DEMAND**

Claimant hereby demands trial by jury on all issues.

Respectfully submitted,
Kerry Scott Lane, MD,

By his attorneys,


_____s/Eric B. Goldberg_____
Jeffrey P. Allen (BBO# 015500)
Eric B. Goldberg (BBO# 564398)
Seegel Lipshutz & Wilchins, P.C.
Wellesley Office Park
20 William Street, Suite 130
Wellesley, MA 02481
(781) 237-4400

Brenda Grantland, Esq.
Law Office of Brenda Grantland
20 Sunnyside Suite A-204
Mill Valley, CA 94941
(415) 380-9108
(Pro hac vice application pending)

**CERTIFICATE OF SERVICE**

      I, Eric B. Goldberg, do hereby certify that I have this _____ day of _____, 2005, served the foregoing, via first class mail, postage prepaid, to the counsel of record listed below:

Shelbey D. Wright
Assistant U.S. Attorney
1 Courthouse Way, Suite 9200
Boston, MA 02210

J. Thomas Kerner, Esq.
230 Commercial Street
First Floor
Boston MA 02109

                                        _____ s/Eric B. Goldberg_____

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA,       |
                                |
              Plaintiff,        |
                                |
      v.                        |       Civil Action # 05-10192 RWZ
                                |
ONE STAR CLASS SLOOP SAILBOAT   |
BUILT IN 1930 WITH HULL NUMBER  |
721, NAMED "FLASH II",          |
                                |
              Defendant.        |
_____|
                                |
KERRY SCOTT LANE, M.D.,         |
                                |
              Claimant.         |
_____|

## SUPPLEMENTAL AFFIDAVIT OF CLAIMANT KERRY SCOTT LANE, M.D.

I, Kerry Scott Lane, M.D., do under oath depose and say as follows:

1. The court has apparently misunderstood my previous affidavit, so I will explain in greater detail. When Ole Anderson called me some time between October 13th and 15th, 2004 and told me that the sailboat had been seized by the DEA, I did not understand the significance of that statement. I did not know about the asset forfeiture laws, and it did not occur to me that this seizure could affect my ownership interest in the boat. The phone call came in at 7:00 a.m., rousting me from sleep. I was too groggy and startled by his call to ask Ole the significance of the seizure. During that call Ole did not say anything about forfeiture. He was very upset. He kept saying he had been "set up." He said he was going talk to the newspaper, or had gone to the newspaper about it, and I told him I don't want my name in the press. Basically my attitude was

1

"I don't want to get involved in your problems." I did not want his problems to become my problems. It did not occur to me that his legal problems could affect my ownership interest in the sailboat. I told him not to tell the police about me because I did not want the police coming to my new job asking questions while I was trying to get through the credentialing process. I also did not want the newspaper publicity connecting my name to a drug dealer. I had no intention of relinquishing my interest in the sailboat. Had I known that my statement to Ole that I did not want him giving my name to the police would be interpreted as my unwillingness to defend my own property I certainly would have told him to give the police my name. I told Ole to keep me posted on any new developments. In the nine years we have been business partners in the ownership of this sailboat, I had relied on Ole to consult me about any matters that needed our attention. I expected him to continue to do so.

2. Later that day I started wondering what he was talking about, regarding the boat being seized. I was never able to reach Ole again, and he has never called me back. I called the Kennedy Library – where the sailboat was supposed to be shipped to be put on display – and asked them if the boat was still scheduled to arrive there. I was told that it was. Over the following months I made several other phone calls to the Kennedy Library to see if it had arrived, but was unable to get any other information.

3. In the meantime, I immediately began searching on the internet for any information about what was going on. I set up a Google alert that automatically sent me updates of any website posting containing the words "John F. Kennedy Flash II." I read through hundreds of these search results and found no references to the whereabouts of the boat. I also watched the news and read newspapers looking for any news about the boat. Months passed with no word.

2

The first I ever heard of a forfeiture case against the boat was an article from my Google alert in late June 2005. It said that forfeiture procedures had taken place and the boat would be auctioned in December 2005. I immediately started looking for a lawyer and raising money for legal fees. On June 30 I contacted Marblehead, and their lawyer faxed me the Notice of Default on July 1, 2005. That was the first time I ever saw any documents relating to the forfeiture case. I couldn't find a lawyer experienced in forfeiture law, but I was running out of time and hired Mr. Goldberg. We were in a rush to get something on file, and did the best we could.

4. If I had been served with process in the forfeiture case I would have hired an attorney and litigated the case immediately.

5. The government knew I was a co-owner of the boat, but apparently made no attempt to find me and serve me with the complaint. The employees at Marblehead Trading Company, where the boat was stored when it was seized, knew I was the co-owner. The sailboat was shipped back and forth between my home in Florida and Marblehead several times. I'm certain that Marblehead had my name and address on past receipts and other correspondence. Since the boat was at Marblehead when it was seized, the government should have asked them about me.

6. I do not oppose the sale of the sailboat at the auction in December, so long as sufficient proceeds are reserved in escrow to cover my share of the proceeds.

7. I did not know or have any reason to believe that Ole Anderson was involved in selling drugs. He never appeared to have any significant amount of money. He was always relying on me to finance the restoration, storage, and transportation of the boat to various places where it was exhibited.

8. Anderson's contribution to the ownership and maintenance of the boat appeared to be

3

mostly sweat equity in managing the boat – setting up places where it was to be exhibited, arranging restoration and repairs, transportation, paying the bills (after collecting money from me to pay them) – plus his finders fee interest, obtained by his having found this historic artifact in the first place. I am not sure he ever put any of his own money into the boat that was not reimbursed by other investors. For example, the $5,000 Anderson paid Sailorman on July 26, 1996 when he and I were buying out Sailorman's interest, was, to the best of my recollection, money he obtained from my girlfriend Anne Kleinrichert. She is also currently the owner of an interest in the sailboat, who apparently was not given notice. Her name appears in some newspaper articles about the boat.

SIGNED UNDER THE PENALTIES OF PERJURY THIS 28TH DAY OF AUGUST, 2005.

KERRY SCOTT LANE, M.D.

4

LAW OFFICES
## KENNETH E. LINDAUER
THE RUFUS CHOATE HOUSE
14 LYNDE STREET
SALEM, MASSACHUSETTS 01970-3404

NEW YORK
MASSACHUSETTS
AND
VERMONT

TELEPHONE (978) 744-5861
FACSIMILE (978) 744-1319
E-MAIL ken@lindauer.com

16 CENTRAL STREET
PO Box 729
WOODSTOCK, VT 05091
Phone (802) 457-4446
Fax (802) 457-4496

## TELECOPY TRANSMITTAL SHEET

Date:                          July 1, 2005

To:                            Dr. Lane

Fax No:                        (508) 235-5259

From:                          Kenneth E. Lindauer, Esq.

Fax No:                        (978) 744-1319

Number of pages
including transmittal sheet:   20

Re:

### Original to be sent via:

____ Hand Delivery          ____ Mail              ____ Express Mail
____ Federal Express        ____ Not Sending       ____ Other

### Message

Here are the documents we talked about last night. Good Luck!

### Confidentiality Note

The document(s) accompanying this transmission contain confidential or privileged information from the Law Offices of Kenneth E. Lindauer. The information is intended to be for the use of the individual or entity named on this transmission sheet. If you are not the intended recipient, be aware that any disclosure, copying, distribution or use of the contents of this telecopied information is prohibited. If you received this telecopy in error, please notify us by telephone immediately so that we can arrange for the retrieval of the original documents at no cost to your office.
IF YOU DO NOT RECEIVE ALL OF THE PAGES OR FIND THAT THEY ARE
ILLEGIBLE, PLEASE CALL AS SOON AS POSSIBLE: (978) 744-5861.

M'HEAD TRADING

PAGE 81

JUN - 4 2005

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA
Plaintiff

V.

CIVIL ACTION: 05CV10192-RWZ

GREGORY ANDERSON & RALPH ANDERSON
Defendant

## NOTICE OF DEFAULT

Upon application of the plaintiff UNITED STATES OF AMERICA, for an order of default for failure of the defendant GREGORY AND

RALPH ANDERSON, to plead or otherwise defend as provided by Rule 55(a) of the Federal Rules of Civil Procedure, notice is hereby

given that the defendant has been defaulted this 3RD day of JUNE, 2005.

By the Court,

_s/ Lisa A. Urso _
Deputy Clerk

Notice mailed to:
Counsel & defendants

default.ntc

07/01/2005  01:23   978/441313

U.S. Department of Justice
United States Marshals Service

**PROCESS RECEIPT AND RETURN**

| PLAINTIFF | COURT CASE NUMBER |
|---|---|
| UNITED STATES OF AMERICA | CA No. 05-10192-RWZ |

| DEFENDANT | TYPE OF PROCESS |
|---|---|
| ONE STAR CLASS SLOOP SAILBOAT BUILT IN 1930 WITH HULL NUMBER 721, NAMED "FLASH II" | Complaint and Warrant & Monition |

| SERVE | NAME OF INDIVIDUAL, COMPANY, CORPORATION, ETC. TO SERVE OR DESCRIPTION OF PROPERTY TO SEIZE OR CONDEMN |
|---|---|
| AT | Gregory Olaf Anderson |
| | ADDRESS (Street or RFD, Apartment No., City, State, and ZIP Code) |
| | 321 West Arcade Avenue, Clewiston, FL 33440 |

SEND NOTICE OF SERVICE TO REQUESTER AT NAME AND ADDRESS BELOW:

Shelbey D. Wright, Assistant U.S. Attorney
United States Attorney's Office
John Joseph Moakley United States Courthouse
1 Courthouse Way, Suite 9200
Boston, MA 02210

Number of process to be served with this Form - 285
Number of parties to be served in this case
Check for service on U.S.A.

SPECIAL INSTRUCTIONS OR OTHER INFORMATION THAT WILL ASSIST IN EXPEDITING SERVICE (Include Business and Alternate Address, All Telephone Numbers, and Estimated Times Available For Service)

Please serve the attached Verified Complaint and Warrant & Monition, upon the above-referenced individual by certified mail, return receipt requested.

05-DEA-442507

LTT x3283

| Signature of Attorney or other Originator requesting service on behalf of: ☒ PLAINTIFF ☐ DEFENDANT | TELEPHONE NUMBER | DATE |
|---|---|---|
| Shelbey D. Wright/LTT | (617) 748-3100 | February 9, 2005 |

**SPACE BELOW FOR USE OF U.S. MARSHAL ONLY - DO NOT WRITE BELOW THIS LINE**

| I acknowledge receipt for the total number of process indicated. (Sign only first USM 285 if more than one USM 285 is submitted) | Total Process | District of Origin | District to Serve | Signature of Authorized USMS Deputy or Clerk | Date |
|---|---|---|---|---|---|
| | No. | No. 35 | No. 38 | | 2/10/05 |

I hereby certify and return that I ☐ have personally served, ☐ have legal evidence of service, ☐ have executed as shown in "Remarks", the process described on the individual, company, corporation, etc. at the address shown above or on the individual, company, corporation, etc., shown at the address inserted below.

☐ I hereby certify and return that I am unable to locate the individual, company, corporation, etc., named above (See remarks below).

| Name and title of individual served (if not shown above). | | ☐ A person of suitable age and discretion then residing in the defendant's usual place of abode. |
|---|---|---|
| Address (complete only if different than shown above) | | Date of Service  2/28/05    Time   am  pm |
| | | Signature of U.S. Marshal or Deputy |

| Service Fee | Total Mileage Charges (including endeavors) | Forwarding Fee | Total Charges | Advance Deposits | Amount Owed to US Marshal or | Amount or Refund |
|---|---|---|---|---|---|---|
| | | | | | | |

REMARKS:  2/11 Certify # 7002 0510 0007 1358 2079
2/13/05 Delivery Date

| PRIOR EDITIONS MAY BE USED | **1. CLERK OF THE COURT** | FORM U |
|---|---|---|

☑ NOTICE OF SERVICE  ☐ BILLING STATEMENT  ☐ ACKNOWLEDGMENT OF RECEIPT

GOVERNMENT EXHIBIT