UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| v. | Civil Action # 05-10192 RWZ |
| ONE STAR CLASS SLOOP SAILBOAT BUILT IN 1930 WITH HULL NUMBER 721, NAMED "FLASH II", | CLAIMANT'S MOTION TO COMPEL DISCOVERY |
| Defendant. | |
| KERRY SCOTT LANE, M.D. | |
| Claimant. | |

Claimant, Kerry Scott Lane, through undersigned counsel, hereby moves this Honorable Court to compel the government to comply with Claimant's discovery requests.  As grounds for this motion Claimant states the following:

1. Claimant served interrogatories and requests for production of documents on the government on September 26.  On October 26 the government served incomplete responses, objecting and refusing to answer all the interrogatories as to actions or events occurring after October 1, 2005; and refusing to answer any of the interrogatories regarding the auction or identity of the winning bidder.

2. On October 31, Claimant began meet and confer sessions by letter, phone and email with the U.S. Attorney's Office in the attempt to schedule depositions of government agents Gregg Willoughby, AUSA Shelbey Wright, AUSA Christina Barkley and paralegal Lisa Talbot.

1

The government objected to these depositions, claiming the "Touhy regulations" allowed the Justice Department employees to avoid being deposed unless Claimant can show that there was "no alternative to oral examination of a particular individual."

3.  The meet and confer sessions continued via telephone, email and letter, with no progress. It is clear that negotiations are now at an impasse.

4.  Claimant's discovery requests were proper, and the government's objections are not.

WHEREFORE this Court should order the government to fully comply with Claimant's discovery requests and should extend the period of discovery an additional 60 days.

Respectfully submitted,
Kerry Scott Lane, MD,

By his attorneys,


_____/s/ Brenda Grantland_____
Brenda Grantland, Esq.
Law Office of Brenda Grantland
20 Sunnyside Suite A-204
Mill Valley, CA 94941
(415) 380-9108
Pro hac vice


_____/s/ Eric B. Goldberg_____
Jeffrey P. Allen (BBO# 015500)
Eric B. Goldberg (BBO# 564398)
Seegel Lipshutz & Wilchins, P.C.
Wellesley Office Park
20 William Street, Suite 130
Wellesley, MA 02481
(781) 237-4400

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA,          |
                                   |     Civil Action # 05-10192 RWZ
                   Plaintiff,      |
           v.                      |
                                   |
ONE STAR CLASS SLOOP SAILBOAT      |
BUILT IN 1930 WITH HULL NUMBER     |
721, NAMED "FLASH II",             |
                                   |
                   Defendant.      |
_____    |
                                   |
KERRY SCOTT LANE, M.D.             |
                                   |
                   Claimant.       |
_____    |

## POINTS AND AUTHORITIES IN SUPPORT OF
## CLAIMANT'S MOTION TO COMPEL DISCOVERY

### Statement of Facts

This case is on remand from the First Circuit. The court of appeals vacated the default

judgment and remanded, holding it was an abuse of discretion to deny Claimant's Rule 60(b)

motion without adequately considering the sufficiency of notice as it pertained to Dr. Lane's

interest in the sailboat.  *United States v. One Star Class Sloop Sailboat Built in 1930 with Hull*

*Number 721, Named "Flash II,"* 458 F.3d 16, 19 (1st Cir. 2006).

### The status conference

At the telephonic status conference on September 14, 2006, this Court ruled that

discovery was to be completed by December 8, 2006.  The Court also ordered that AUSA

Shelbey Wright would be removed as attorney of record for the government, because she was a

1

percipient witness, and ordered the U.S. Attorney's Office to assign another attorney "forthwith." Unfortunately, the telephonic conference was apparently not recorded by a court reporter, and the parties disagree about what the Court ordered at the hearing.

Claimant's counsel recall discussing these issues at the status conference. In determining that Ms. Wright must be removed as counsel, the Court asked whether Claimant would need to depose Ms. Wright. Claimant's counsel answered "yes." Counsel also recall the Court asking what matters would be addressed in discovery, and Ms. Grantland responding that, in addition to the efforts to locate Dr. Lane and give him notice, Claimant was seeking discovery of facts relevant to the remedy – valuation of the sailboat, and the circumstances surrounding the government auction and identity of the winning bidder. Ms. Grantland recalls stating that if the judgment is void for denial of due process notice and the opportunity to be heard, then the government did not have good title to the boat, and therefore could not convey good title to the purchaser at auction. In that event, Ms. Grantland said, Dr. Lane would be entitled to get the boat back from the purchaser at auction – to which the Court replied "Dr. Lane would be entitled to *a portion* of the boat back." Claimant's counsel do not recall any objections from AUSA Shelbey Wright as to the scope of discovery, nor that Court imposed any such restrictions.

The government has a different view, contending that the Court discovery limited discovery to the government's efforts to locate owners of the boat and give them notice. In her November 14 email, AUSA Nancy Rue stated:

> At this point, the govt believes that the purpose of these proceedings is to determine whether Dr. Lane should be permitted to file a claim. If Judge Zobel finds in your client's favor, then at that point it is our understanding (which I confirmed with AUSA Wright, since she attended the status conference), that discovery would begin in the normal manner.

Attachment 3 p. 19.

Both of Claimant's attorneys were present during the telephonic conference, and neither

recalls any suggestion that discovery would be fragmented in such a manner.  Had there been any

discussion of fragmenting the discovery, counsel would have objected that it would unduly

multiply the cost of depositions to have to conduct new depositions in each phase of discovery.

**Claimant's discovery requests**

On September 26, 2006, Claimant served a set of 21 interrogatories and a documents

request for three categories of documents.

On October 26, 2006,  the government served responses to the interrogatories.  See

Attachment 2.  The responses to the interrogatories were incomplete.  The government answered

some but not all of the subparts, and did not identify the specific documents it referred to.  The

government objected and refused to answer the interrogatories as to: (1) actions or events

occurring after October 18, 2005, (2) and circumstances surrounding the auction and identity of

the winning bidder.  Its general objections asserted attorney-client and work product privileges,

but no privilege log was provided.  The government also objected to Claimant's definition of the

word "you" to include confidential informants, but did not indicate whether any answers or

documents were withheld under that objection.

In a meet and confer letter dated October 31, 2006 (emailed to AUSA Rue on November

1, 2006), Ms. Grantland objected to the incomplete responses as well as the government's

objections.  See Attachment 3 p. 3-8.  AUSA Rue responded to that letter on November 9, 2006.

See Attachment 3 p. 12.  Her letter identified which documents were provided by which

witnesses, but the response was not under oath as an interrogatory or documents request answer

3

would properly be.   AUSA Rue's letter provided further explanation of the government's objections, but it did not back down on any of the objections.  The government refused to supply answers to the missing subparts outlined in Ms. Grantland's October 31 letter, claiming Claimant's interrogatories exceeded the maximum number of subparts permitted under the rules. Further meet and confer sessions failed to resolve these disputes.

On November 1, Ms. Grantland emailed AUSA Rue indicating that Claimant would be noticing at least three depositions, and requesting that they be held telephonically to save her travel expenses.  See Attachment 3 p. 3.  AUSA Rue responded by email on November 1 stating reluctance to conduct the depositions by phone. See Attachment 3 p. 4.  Ms. Grantland replied that her co-counsel would be present in person, and that only she would attend by phone.  See Attachment 3 p. 5.  As a trade-off, on November 9, Claimant offered to accommodate the government witnesses by having the depositions held at the U.S. Attorney's Office rather than her co-counsel Eric Goldberg's office. See Attachment 3 p. 9.  AUSA Rue responded by letter dated November 9, 2006, arguing that Claimant could not depose the government witnesses because Dr. Lane had not complied with the "Touhy regulations" – 28 C.F.R. § 16.21 et seq. See Attachment 3 p. 12.

In a telephone conference on November 9, AUSA Rue reiterated that the Touhy regulations were an obstacle preventing Claimant's depositions of the government employees, and suggesting that the parties agree upon a stipulated set of facts the witnesses would testify to instead.  The parties agreed to try to put together a proposed stipulation of facts and to meet and confer again by telephone on Monday, November 13.  Ms. Grantland began drafting a proposed stipulation of facts that the government agents might agree to, and found it extremely difficult to

anticipate what the witnesses would say, since Claimant had not been able to depose them. She also researched the "Touhy regulations" and found that they did not contain the onerous obstacles to depositions of federal agents as AUSA Rue described. After conferring with her client, they determined that if the government intended to depose Dr. Lane, he would insist on deposing the government agents, and so notified AUSA Rue on November 14. See Attachment 3 p. 18.

In her November 14 reply AUSA Rue suggested a time-consuming process for agreeing to what the government witnesses would say, in lieu of depositing the witnesses. Once again, the government misrepresented the Touhy regulations, suggesting this time that Claimant had to show "there was no alternative to oral examination of a particular individual." See Attachment 3 p. 19. Her letter also indicated the government was probably intending to depose Dr. Lane, whether or not the government witnesses' testimony was agreed to by stipulation in lieu of deposition. Claimant concluded further attempts to negotiate a stipulated set of facts in lieu of depositions would be a waste of time.

On November 15, Ms. Grantland emailed AUSA Rue that discussions were at an impasse. See Attachment 3 p. 21-25.

On November 8, the government served on Dr. Lane: interrogatories (19 questions - most with subparts), a request for production of documents and a request for admissions.

## DISCUSSION

### I. Interrogatory objections

#### A. Incomplete responses

Claimant designed his interrogatories with specific narrow subparts, requiring answers to several discreet questions about each interrogatory subject. Instead of answering each subpart as

directed, the government wrote a general paragraph or two for each interrogatory as a whole, and failed to answer the questions in a number of subparts.

Ms. Grantland objected to the incomplete interrogatories in a letter dated October 31, 2006 emailed on November 1.  See Attachment 3 p. 7.  AUSA Rue responded by letter on November 9, 2006, (Attachment 3 p. 14), refusing to supply the missing answers to subparts, stating that "to the extent you provided an interrogatory with so many subparts that it exceeded the number of interrogatories permitted under the rules, we supplied the answer to the question without breaking down our response into individual items."  Attachment 3 p. 14.

Although the interrogatories were compound, the subparts were properly treated as extensions of the basic interrogatory under Local Rule 26.1( c), which provides:

> For purposes of determining the number of interrogatories propounded, subparts of a basic interrogatory which are logical extensions of the basic interrogatory and seek only to obtain specified additional particularized information with respect to the basic interrogatory shall not be counted separately from the basic interrogatory.

Although AUSA Rue supplied some of the missing information (identifying the authorship of documents) in her letter dated November 9, that information does not suffice because it is not under oath as answers to interrogatories must be.

The government should be directed to answer the interrogatories and documents request fully and properly, as instructed, with separate answers to each of the subparts.

### B.    Objection to events after October 18, 2005

The government generally objected and refused to answer the interrogatories as to actions or events occurring after October 18, 2005.  Its position, as outlined in AUSA Rue's letter dated November 9, is that "[t]he First Circuit remanded this case for a limited purpose" –  quoting an

excerpt from the opinion:

> Hence, we [vacate the order denying Lane's Rule 60(b) motion and][1] remand for further proceedings to determine whether plainly indicated and easily accomplished efforts, undertaken with reasonable diligence *during the relevant time frame*, would have led the government directly to Lane.  458 F.3d 16, 25 (1st Cir. 2006)

Attachment 3 p. 14 (emphasis added by AUSA Rue).  This – the government claims – shows "[i]nformation that the government developed subsequent to the date [the government] moved for the default order is simply, under the First Circuit's Order, irrelevant." Attachment 3 p. 14.

"Discovery should ordinarily be allowed under the concept of relevancy unless it is clear that the information sought can have no possible bearing upon the subject matter" of the action. *Kelling v. Bridgestone/Firestone, Inc.*, 157 F.R.D. 496, 497 (D. Kan. 1994).

Evidence that the government followed up on leads after the default judgment was entered would still be relevant to show the feasibility and fruitfulness of such efforts, had the government made them timely.

The government should be compelled to supplement its interrogatory responses to include actions taken and information learned after October 18, 2005.

### C.    Circumstances regarding the auction and winning bidder

The government objected and refused to answer the interrogatories regarding circumstances of the auction and the identity of the winning bidder.  See Answers To Interrogatories 15 through 19, Attachment 2 pp. 13-14.

Ms. Grantland responded in a letter dated October 31, but emailed November 1:

Your objections are improper.  The information concerning the Guernsey's

---

[1]  The government omitted the bracketed language in its quote.

7

auction, the valuation, minimum bid, selling price, notice to bidders of pending litigation regarding Dr. Lane's ownership, and successful bidder are all relevant to remedies for the due process violation – establishing fair market value of the sailboat and/or getting the auction sale voided.  If the judgment is void for violation of due process – as it appears given these interrogatory answers – the government didn't have good title.

Attachment 3 p. 7, 8.

Claimant's counsel's recollection is that this Court did not place limits on discovery as the government now suggests, and that the government did not object at the status hearing when Claimant stated he would be seeking information about the auction and purchaser.  Therefore, the government's objection is waived.  Had the government raised that objection at the status hearing, claimant would have opposed such piecemeal discovery.  Requiring multiple depositions of the same witnesses would be financially burdensome and unfair to Claimant, while failing to advance the cause of judicial economy and efficiency.

The government raised two additional objections.  In response to interrogatory 15, the government refused to provide information and documents that the U.S. Marshal Service provided to Guernsey's auction house, stating "[n]either the United States Attorney's Office nor the DEA have any information about what additional documentation, if any, was provided to Guernseys."  Attachment 2 p. 13.

Claimant's definition of "you" in his interrogatory instructions was broad enough to include other law enforcement agencies acting as agents of the U.S. Attorney's Office – as the Marshal Service clearly was when it sold the sailboat at auction.  "Courts have universally held that documents [and information] are deemed to be within the possession, custody or control if the party had actual possession, custody or control or has the legal right to obtain the documents

on demand." *Starlight Int'l v. Herlihy*, 186 F.R.D. 626, 635 (D. Kan. 1999).  See also *Pulsecard, Inc. v. Discover Card Servs.*, 168 F.R.D. 295, 307 (D. Kan. 1996) (requiring a party to give discovery regarding "all responsive documents in its possession, custody, or control. See Fed. R. Civ. P. 34(a). Parties may retain the requisite control or custody of documents outside their actual possession.")  Information in the hands of the Marshal Service, a division of the U.S. Department of Justice, is clearly available to the U.S. Attorney's Office, as counsel for the federal government. *National Union Fire Ins. Co. v. Midland Bancor, Inc.*, 159 F.R.D. 562, 566 (D. Kan. 1994).

On interrogatory 19 the government made an additional objection, that "it calls for information more properly the subject of a document request."  That is a frivolous objection. Instruction (e) to Claimant's Interrogatories requires a description of responsive documents, including "the Bates stamp page numbers in the government's response to the Request for Production of Documents" at which it can be found.  Claimant's documents request number 1 demands the production of documents identified in the interrogatories.

For these reasons the government should be compelled to fully respond to these interrogatories.

### D.    Privileges

The government's "general responses and objections" also asserts objections on the basis of attorney-client and work product privileges, but it failed to indicate which answers or documents were withheld under those objections.  See Attachment 2 p. 1.

> Use of general, reserved objections is disfavored. Fed. R. Civ. P. 33(b)(4), governing interrogatories to parties, provides that "all grounds for an objection shall be stated with specificity. Any ground not stated in a timely objection is

> waived unless the party's failure to object is excused by the court for good cause
> shown." Congress added paragraph 4 in 1993 "to make clear that objections must
> be specifically justified, and that unstated or untimely grounds for objections
> ordinarily are waived." Fed. R. Civ. P. 33 advisory committee notes (1993
> Amend.). The requirement that objections be stated with specificity appears
> contrary to the use of general objections to a set of interrogatories or requests.
> Such general objections typically would not satisfy the specificity requirements of
> Rule 33.

*Pulsecard, Inc. v. Discover Card Servs.*, 168 F.R.D. 295, 303 (D. Kan. 1996). "When parties fail

to 'make specific legitimate objections to particular interrogatories within the time allowed,' the

court may appropriately deem objections to those interrogatories waived." *Pulsecard, Inc. v.*

*Discover Card Servs.*, 168 F.R.D. 295, 304 (D. Kan. 1996), citing *Casson Constr. Co. v. Armco*

*Steel Corp.*, 91 F.R.D. 376, 379 (D. Kan. 1980).

The government also failed to provide a privilege log.  The party asserting privileges

"must describe in detail the documents or information to be protected and provide precise

reasons for the objection to discovery. A 'blanket claim' as to the applicability of a privilege does

not satisfy the burden of proof." *ERA Franchise Sys., Inc. v. Northern Ins. Co.*, 183 F.R.D. 276,

278-79 (D. Kan. 1998) (citation omitted).

This Court should compel the government to supplement its answers with any material

withheld pursuant to the attorney-client or work-product privilege unless it properly complies

with the specificity and privilege log requirements.

### E.    Information from confidential informants

The government objected generally to Claimant's definition of the word "you" to include

government agents who were confidential informants (see Attachment 2 p. 2 para. 7), but it did

not indicate whether any answers or documents were withheld under that objection.  For that

10

reason it is impossible to determine whether the government has answered interrogatories 1 through 9 and 12 fully, or has gerrymandered its response to eliminate information obtained by the CI or other government informants.

The government has not provided a legitimate reason for excluding information the government employees obtained from confidential informants. Since the information, documents and leads the government had at hand are at issue here, the fact that such information came from government informants would not affect its relevance or discoverability.

The government should be ordered to respond to the interrogatories accordingly.

### F.    The government's refusal to schedule depositions of government agents

On November 1, Claimant began meet and confer sessions by phone and email with the U.S. Attorney's Office in the attempt to schedule depositions of government agents Gregg Willoughby, AUSA Shelbey Wright, AUSA Christina Barkley and paralegal Lisa Talbot. See Attachment 3 pp. 3-5 & 9.

To save money, Ms. Grantland requested that she be permitted to appear at the depositions by telephone, instead of having to travel to Boston from California – with her local counsel appearing in person. Attachment 3 p. 3. As a trade-off, she offered to allow the depositions of the government agents to be held at the U.S. Attorney's Office instead of her local counsel's office in the Boston suburbs. Attachment 3 p. 9. AUSA Rue objected but said she would "give it some thought" Attachment 3 p. 4 – but she has never conveyed her decision on the request.

Instead, the government objected to the depositions of government employees in toto, stating that Claimant first had to give the U.S. Attorney's Office "an affidavit describing the

requested testimony and why it is required" and that Justice Department officials would decide

whether to allow the depositions.  Attachment 3 p. 12.  AUSA Rue's November 14 email

claimed the "Touhy regulations" allowed government employees to avoid being deposed unless

Claimant first shows "there is no alternative to oral examination of a particular individual."

Attachment 3 p. 19.

Claimant replied in his November 15 letter:

In response to your "Touhy" letter – I read over the regulations at 28 CFR § 16.21 et seq. and I don't see how that in any way restricts my right to seek deposition testimony from Lisa Talbot, Shelbey Wright, Gregg Willoughby or Christina Barkley about the issues relevant here.  Because the US government is a party to this litigation, § 16.23 applies.

None of the conditions of § 16.26 (b) are present here.  I have no intention of asking for the identity of your CI, since I figured out who is he is a long time ago through Pacer....[2]  I also saw that he got sentenced to time served recently after numerous continuance motions filed under seal by the government.  I probably don't need any more information from the informant, since his admissions help us, but I do need to rule out the possibility that you have other information contradicting the CI's admissions.  More about this later.

Also, I don't see how disclosure of the information I am seeking would reveal investigatory records or interfere with enforcement proceedings.  We could care less about your case against Ole Anderson, and we have no information about that anyway.  The case against your CI was resolved already, and my client didn't know him anyway.  The other subsections of § 16.26(b) are not even arguably applicable.

The "Touhy regulations" do not require us to give you "an affidavit describing the requested testimony and why it is required" as you claim in your "Touhy letter".  Section 16.23( c) only requires "an affidavit, or, if that is not feasible, a statement... setting forth a summary of the testimony sought."

Attachment 3 p. 22-23.

In his November 15 letter, Claimant summarized the testimony he sought to elicit during

---

[2]  Details regarding the informant deleted to protect his identity.

the depositions of the government agents, as follows:

(1) whether the government made reasonable efforts to follow up on the leads it had readily at hand to serve notice on persons believed to own the sailboat;

(2) whether the U.S. Attorney's Office had any valid excuses for not following up on these leads;

(3) exactly what the government is claiming my client and his attorney told the U.S. Attorney's Office employees;

(4) whether the government ever notified Judge Zobel, before entry of the default judgment, that there was a doctor believed to own an interest in the sailboat who had not been served with the forfeiture complaint, and that he had in fact come forward and identified himself to the government;

(5) whether the government even had grounds to believe the sailboat was forfeitable at all, given the fact that the CW admitted that Ole Anderson had paid back the "loan" the CW made to him to purchase the sailboat, and the lack of evidence that Ole Anderson ever invested any drug money in the boat.

(6) Also, assuming our motion to compel discovery is granted, we will be asking about the circumstances of the auction and valuation of the sailboat by the federal government.

Attachment 3 p. 23. These topics are all relevant topics for discovery in this case, under the mandate of the court of appeals, and relevant statutes, court rules and caselaw.  The government's argument that the Touhy regulations require Claimant to show "there was no alternative to oral examination of a particular individual" is frivolous. Nothing in those regulations requires that.  Section 16.26 requires the DOJ officials to determine whether disclosure is appropriate under the rules of procedure and statutes.  In short, the Touhy regulations do not give government agents any shield for relevant depositions in cases where the U.S. is a party and the matters addressed are relevant and proper under the Federal Rules of Civil Procedure and applicable statutes.

13

### Conclusion

WHEREFORE, the discovery period should be extended for an additional 60 days and the government and its agents should be compelled to fully answer the interrogatories and to submit to the depositions of government agents.

Respectfully submitted,
Kerry Scott Lane, MD,

By his attorneys,


_____/s/ Brenda Grantland_____
Brenda Grantland, Esq.
Law Office of Brenda Grantland
20 Sunnyside Suite A-204
Mill Valley, CA 94941
(415) 380-9108
Pro hac vice


_____/s/ Eric B. Goldberg_____
Jeffrey P. Allen (BBO# 015500)
Eric B. Goldberg (BBO# 564398)
Seegel Lipshutz & Wilchins, P.C.
Wellesley Office Park
20 William Street, Suite 130
Wellesley, MA 02481
(781) 237-4400

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) | |
| v. | ) | Civil Action # 05-10192 RWZ |
| | ) | |
| ONE STAR CLASS SLOOP SAILBOAT | ) | |
| BUILT IN 1930 WITH HULL NUMBER | ) | |
| 721, NAMED "FLASH II", | ) | |
| Defendant. | ) | |

### UNITED STATES' ANSWERS TO INTERROGATORIES

The United States of America, by its attorney, Michael J. Sullivan, United States

Attorney for the District of Massachusetts, provides the following responses to the

interrogatories propounded by Kerry Scott Lane, M.D. (the "Interrogatories"), pursuant to

Federal Rules of Civil Procedure 26 and 33.

### GENERAL RESPONSES AND OBJECTIONS TO INTERROGATORIES

The following General Objections are incorporated into each of the responses as if set

forth in full, even if not repeated therein.

1.     The United States objects to the Interrogatories to the extent that they call for the

disclosure of information subject to the attorney-client privilege, work product protection,

investigatory privilege or any other privilege or protection recognized by applicable federal or

state law.  To the extent that any such privileged or protected information is disclosed, such

disclosure is not intended as, nor should it be deemed to be, a waiver of any privilege or

protection.

2.     The United States objects to the Interrogatories to the extent that they seek to

define terms and/or characterize the evidence in this matter.  To the extent that the United States

1

adopts any terms used by Kerry Scott Lane, M.D. in the Interrogatories, such adoption specifically is limited solely to these responses.

3.      Nothing herein shall be construed as an admission by the United States with respect to the admissibility of any characterization contained in the Interrogatories.  The United States' willingness to provide information pursuant to the Interrogatories is not an admission that the subject matter of that particular Interrogatory is discoverable.

4.      The United States provides the responses below without conceding the relevance or materiality of the subject matter of any response, and without prejudice to the United States' right to object to further discovery, or to object to the admissibility of any additional proof on the subject matter at the time of trial.

5.      Insofar as discovery in this matter has not been completed, the United States reserves the right to supplement its responses to the Interrogatories based on documents and/or information it receives, becomes aware of, or appreciates the significance of as a result of any depositions taken in this matter, answers to interrogatories, responses to document requests, or documents produced or otherwise gathered whether formally or informally.

6.      The United States objects to the "Instructions" section of the Interrogatories, to the extent that they cause the Interrogatories to be overbroad and unduly burdensome by expanding the definition of any term, and thereby broadening the scope of discovery, beyond what is permitted under Fed.R.Civ.P. 34(a) or Local Rule 26.5(C).

7.      The United States specifically objects to the definition of "you" on page 2 (subparagraph (a)) of the Interrogatories as including confidential informants, and states that it provides the following information on behalf of Assistant United States Attorney Shelbey

2

Wright ("AUSA Wright") and all other employees of the United States Attorney's Office who worked on this forfeiture case, and on behalf of the investigating officers from the United States Drug Enforcement Administration (the "DEA") who worked on the investigation leading up to this forfeiture case. The terms "DEA", "employee of the DEA," and/or "agent of the DEA" as used herein do not include confidential informants.

        8.    The United States objects to the time frame of the Interrogatories as overly broad. Specifically, the United States objects to all requests that extend beyond October 18, 2005, the date of the district court's judgment in this matter.

**SPECIFIC RESPONSES AND OBJECTIONS TO INTERROGATORIES**

**INTERROGATORY NO. 1**

        State whether you[1] interviewed Gregory Olaf ("Ole") Anderson, or his attorney Robert Augustus Harper, at any time between February 2004 and present, in which any mention was made of the Kennedy sailboat and/or ownership thereof. If the answer is yes, as to each and every such interview, please separately state the following:

        a.   The date, place, time if known, and identities of all persons present or listening telephonically or through other means (e.g. wire or other listening device.)

        b.  State with particularity every statement made by Anderson or Harper – whether spontaneously or in response to questioning – regarding the owners of interests in the sailboat, the identity of the doctor or dentist referred to on page 9 of the Complaint, or the location of any documents relating to the identities of the owners of interests in the sailboat.

        c.  If the statements referred to in subpart b above were recorded or reduced to writing in a police report or contemporaneous notes, identify those documents.

**ANSWER TO INTERROGATORY NO. 1**

        Subject to and without waiving the General Objections, the United States responds as follows:

---

[1] The pronoun "you" is used collectively throughout these interrogatories. See instruction (a) above.

No employee of the United States Attorney's Office interviewed Gregory Olaf ("Ole") Anderson, or his attorney Robert Augustus Harper, at any time between February 2004 and October 18, 2005, in which any mention was made of the Kennedy sailboat and/or ownership thereof.

There were no communications directly between Gregory Olaf Anderson and the DEA.

## INTERROGATORY NO. 2

State whether you interviewed Ralph Anderson, or any employee or agent of Marblehead Trading Company (including its attorney Kenneth Lindauer) at any time between February 2004 and present, in which any information was requested or provided concerning the identities of the owners of the Kennedy sailboat.  If the answer is yes, as to each and every such interview, please separately state the following:

      a.   Identify the person interviewed and the interviewer(s);

      b.   State the date, place, time, and whether the interview was in person or by phone;

      c.   Identify each other person present or listening telephonically or through other means (e.g. wire or other listening device);

      d.   State what information or statements were given by the interviewee;

      e.   State whether the interviewer requested that the interviewee check Marblehead's records and books for information that might lead to the identities of the owners, and if so, the interviewee's response;

      f.   If the statements referred to in subpart d above were recorded or reduced to writing in a police report or contemporaneous notes, identify those documents.

      g.   If Ralph Anderson or any employees or agents of Marblehead turned over documents to you, identify those documents.

**ANSWER TO INTERROGATORY NO. 2**

Subject to and without waiving the General Objections, the United States responds as follows:

No employee of the United States Attorney's Office interviewed Ralph Anderson, or any employee or agent of Marblehead Trading Company (including its attorney Kenneth Lindauer) at any time between February 2004 and October 18, 2005 in which any information was requested or provided concerning the identities of the owners of the Kennedy Sailboat. I and/or other agents of the DEA interviewed Ralph Anderson, as set forth in the DEA Form 6 regarding that interview, produced herewith and incorporated herein by reference.

**INTERROGATORY NO. 3**

State whether you interviewed Harry E. Crosby or his attorney, J. Thomas Kerner, at any time between February 2004 and present, in which any information was requested or provided concerning the identities of other owners of the Kennedy sailboat. If the answer is yes, as to each and every such interview, please separately state the following:

      a.  Identify the person interviewed and the interviewer(s);
      b.  State the date, place, time, and whether the interview was in person or by phone;
      c.  Identify each other person present or listening telephonically or through other means (e.g. wire or other listening device);
      d.  State what information or statements were given by the interviewee;
      e.  State whether the interviewer requested that Crosby check his records for information that might lead to the identities of the owners, and if so, the interviewee's response;
      f.  If the statements referred to in subpart d above were recorded or reduced to writing in a police report or contemporaneous notes, identify those documents.
      g.  If Harry E. Crosby or his attorney, J. Thomas Kerner, turned over any documents to you pertaining to the Kennedy sailboat, identify those documents. This request is not limited to documents pertaining to the identities of other co-owners.

**ANSWER TO INTERROGATORY NO. 3**

Subject to and without waiving the General Objections, the United States responds as follows:

At some point in late October 2004 or early November 2004, AUSA Wright received a telephone message from J. Thomas Kerner, an attorney representing Harry E. Crosby. AUSA Wright believes that she called Kerner back, and that there was no one else on the call from AUSA Wright's end. Kerner told AUSA Wright that his client, Crosby, was a part owner of the Kennedy Sailboat and had purchased his interest for $19,800. Kerner said that Chuck Fitzgerald had previously had an interest in the Kennedy Sailboat, but had sold or transferred that interest. Kerner wanted to know how Crosby could protect his claim to the Kennedy Sailboat. AUSA

Wright informed Kerner that he would receive a copy of the Complaint for Forfeiture *in rem* once it was filed and a Warrant and Monition was issued by the Court.  At that time, Crosby could file a claim with any documentation showing his ownership interest in the Kennedy Sailboat.  Kerner agreed to accept service of the Complaint and gave AUSA Wright his office address.  AUSA Wright told Kerner that she would pass Crosby's name along to the seizing agency for purposes of notice.  AUSA Wright has a brief notation in her running telephone log of that conversation.

On or about March 10, 2005, Kerner sent AUSA Wright a letter describing Crosby's interest in the Kennedy Sailboat, and attached documents showing transfer of $5,250 to Ole Anderson on or about July 1, 1996.

No employee or agent of the DEA interviewed Harry E. Crosby or his attorney, J. Thomas Kerner, at any time between February 2004 and October 18, 2005 in which any information was requested or provided concerning the identities of the owners of the Kennedy Sailboat.

## INTERROGATORY NO. 4

State whether you interviewed Jean Anderson, at any time between February 2004 and present, in which any information was requested or provided concerning the identities of other owners of the Kennedy sailboat.  If the answer is yes, as to each and every such interview, please separately state the following:

    a.  Identify the person interviewed and the interviewer(s);

    b.  State the date, place, time, and whether the interview was in person or by phone;

    c.  Identify each other person present or listening telephonically or through other means (e.g. wire or other listening device);

    d.  State what information or statements were given by the interviewee;

    e.  State whether the interviewer requested that Jean Anderson check her records for information that might lead to the identities of the owners;

    f.  If the statements referred to in subpart d above were recorded or reduced to writing in a police report or contemporaneous notes, identify those documents.

    g.  If Jean Anderson or her agents or attorney turned over any documents to you pertaining to the Kennedy sailboat, identify those documents.  This request is not limited to documents pertaining to the identities of other co-owners.

**ANSWER TO INTERROGATORY NO. 4**

Subject to and without waiving the General Objections, the United States responds as follows:

No employee of the United States Attorney's Office or the DEA interviewed Jean Anderson, at any time between February 2004 and October 18, 2005 in which any information was requested or provided concerning the identities of the owners of the Kennedy Sailboat.

**INTERROGATORY NO. 5**

State whether you interviewed Gary Milo at any time between February 2004 and present, in which any information was requested or provided concerning the identities of other owners of the Kennedy sailboat.  If the answer is yes, as to each and every such interview, please separately state the following:

> a.   Identify the person interviewed and the interviewer(s);
> b.   State the date, place, time, and whether the interview was in person or by phone;
> c.   Identify each other person present or listening telephonically or through other means (e.g. wire or other listening device);
> d.   State what information or statements were given by the interviewee;
> e.   State whether the interviewer requested that Gary Milo check his records for information that might lead to the identities of the owners;
> f.   If the statements referred to in subpart d above were recorded or reduced to writing in a police report or contemporaneous notes, identify those documents.
> g.   If Gary Milo or his agents or attorney turned over any documents to you pertaining to the Kennedy sailboat, identify those documents.

**ANSWER TO INTERROGATORY NO. 5**

Subject to and without waiving the General Objections, the United States responds as follows:

No employee of the United States Attorney's Office interviewed Gary Milo at any time between February 2004 and October 18, 2005, in which any information was requested or provided concerning the identities of other owners of the Kennedy Sailboat.  In interviews of Gary Milo conducted by myself and/or other agents of the DEA, information was requested or provided concerning the Kennedy Sailboat, as set forth in the DEA Form 6 regarding those interviews, produced herewith and incorporated herein by reference.

**INTERROGATORY NO. 6**

State whether you interviewed Pete Walker or Carole Walker at any time between February 2004 and present, in which any information was requested or provided concerning the identities of other owners of the Kennedy sailboat. If the answer is yes, as to each and every such interview, please separately state the following:

> a.  Identify the person interviewed and the interviewer(s);
> b.  State the date, place, time, and whether the interview was in person or by phone;
> c.  Identify each other person present or listening telephonically or through other means (e.g. wire or other listening device);
> d.  State what information or statements were given by the interviewee;
> e.  State whether the interviewer requested that the Walkers check their records for information that might lead to the identities of the owners;
> f.  If the statements referred to in subpart d above were recorded or reduced to writing in a police report or contemporaneous notes, identify those documents.
> g.  If the Walkers turned over any documents to you pertaining to the Kennedy sailboat, identify those documents.

**ANSWER TO INTERROGATORY NO. 6**

Subject to and without waiving the General Objections, the United States responds as follows:

No employee of the United States Attorney's Office or the DEA interviewed Pete Walker or Carole Walker, at any time between February 2004 and October 18, 2005, in which any information was requested or provided concerning the identities of other owners of the Kennedy Sailboat.

**INTERROGATORY NO. 7**

State whether you interviewed Homer Earnest at any time between February 2004 and present, in which any information was requested or provided concerning the identities of other owners of the Kennedy sailboat. If the answer is yes, as to each and every such interview, please separately state the following:

> a.  Identify the person interviewed and the interviewer(s);
> b.  State the date, place, time, and whether the interview was in person or by phone;
> c.  Identify each other person present or listening telephonically or through other means (e.g. wire or other listening device);
> d.  State what information or statements were given by the interviewee;
> e.  State whether the interviewer requested that Homer Earnest check his records for information that might lead to the identities of the owners;
> f.  If the statements referred to in subpart d above were recorded or reduced to writing in a police report or contemporaneous notes, identify those documents.

g.  If Homer Earnest or his agents or attorney turned over any documents to you pertaining to the Kennedy sailboat, identify those documents.

## ANSWER TO INTERROGATORY NO. 7

Subject to and without waiving the General Objections, the United States responds as follows:

No employee of the United States Attorney's Office or the DEA interviewed Homer Earnest, at any time between February 2004 and October 18, 2005, in which any information was requested or provided concerning the identities of other owners of the Kennedy Sailboat.

## INTERROGATORY NO. 8

State whether you interviewed Jim Anderson at any time between February 2004 and present, in which any information was requested or provided concerning the Kennedy sailboat. If the answer is yes, as to each and every such interview, please separately state the following:

a.  Identify the person interviewed and the interviewer(s);
b.  State the date, place, time, and whether the interview was in person or by phone;
c.  Identify each other person present or listening telephonically or through other means (e.g. wire or other listening device);
d.  State what information or statements were given by the interviewee;
e.  State whether the interviewer requested that Jim Anderson check his records for information that might lead to the identities of the owners;
f.  If the statements referred to in subpart d above were recorded or reduced to writing in a police report or contemporaneous notes, identify those documents.
g.  If Jim Anderson or his agents or attorney turned over any documents to you pertaining to the Kennedy sailboat, identify those documents.

## ANSWER TO INTERROGATORY NO. 8

Subject to and without waiving the General Objections, the United States responds as follows:

No employee of the United States Attorney's Office or the DEA interviewed Jim Anderson, at any time between February 2004 and October 18, 2005, in which any information was requested or provided concerning the identities of other owners of the Kennedy Sailboat.

## INTERROGATORY NO. 9

State whether, at any time since February 2004, you or your agents obtained information that Sailorman New And Used Marine Emporium, Fort Lauderdale Florida and/or Chuck Fitzgerald purchased the sailboat at auction in 1996, or that they previously or currently owned an interest in the sailboat.  You should answer in the affirmative if you had information but the name or location was incomplete or incorrect.  If the answer is yes, state the following:

> a.  Identify each person who provided the information and the date it was provided.
> b.  As to each person identified in subpart a state with particularity what that person told you about Sailorman and/or Fitzgerald.
> c.  If your information about Sailorman and/or Fitzgerald was obtained from other sources, such as a database or newspaper articles, please identify each of those sources and produce such documents.

## ANSWER TO INTERROGATORY NO. 9

Subject to and without waiving the General Objections, the United States responds as follows:

On or about March 10, 2005, AUSA Wright received a letter from Attorney J. Thomas Kerner which enclosed a copy of a June 30, 1996, story from *The Tallahassee Democrat*, page 4B, by Bill Bergstrom titled, "Forgotten JFK Sailboat Fetches $18,500."  Copies of the letter and article are being produced in response to the Request for the Production of Documents.

## INTERROGATORY NO.10

State whether you interviewed the Confidential Informant (referred to in the Complaint) or his attorney, at any time between February 2004 and present, in which any information was requested or provided concerning the identities of other owners of the Kennedy sailboat.  If the answer is yes, as to each and every such interview, please separately state the following:

> a.  Identify the person interviewed and the interviewer(s);
> b.  State the date, place, time, and whether the interview was in person or by phone;
> c.  Identify each other person present or listening telephonically or through other means (e.g. wire or other listening device);
> d.  State in detail what information or statements were given by the Confidential Informant with regard to the identities and locations of the other owners, including vague and incomplete information.
> e.  State whether the interviewer requested that the Confidential Informant check his records for information that might lead to the identities of the owners, and if so, the interviewee's response;
> f.  If the statements referred to in subpart d above were recorded or reduced to writing in a police report or contemporaneous notes, identify those documents.
> g.  If the Confidential Informant or his attorney turned over any documents to you

10

pertaining to the Kennedy sailboat, identify those documents. This request is not limited to documents pertaining to the identities of other co-owners, but includes any documentation of the Confidential Informant's interest. Any information identifying the informant may be redacted.

## ANSWER TO INTERROGATORY NO. 10

Subject to and without waiving the General Objections, the United States responds as follows:

No employee of the United States Attorney's Office interviewed the Confidential Informant or his/her attorney, at any time between February 2004 and October 18, 2005, in which any information was requested or provided concerning the identities of other owners of the Kennedy Sailboat. In interviews of the Confidential Informant conducted by myself and/or other agents of the DEA, information was requested or provided concerning the Kennedy Sailboat, as set forth in the DEA Form 6 regarding those interviews, produced herewith and incorporated herein by reference.

## INTERROGATORY NO. 11

List and describe each and every database you or your agents checked to determine who owned interests in the Kennedy sailboat. Such databases include, but are not limited to, Lexis Nexis and other newspaper article databases, Google and other internet search engines.

## ANSWER TO INTERROGATORY NO. 11

Subject to and without waiving the General Objections, the United States responds as follows:

No employee of the United States Attorney's Office checked any database to determine who owned interests in the Kennedy Sailboat. I and/or other agents of the DEA performed numerous Google searches in an effort to locate information about the Kennedy Sailboat.

## INTERROGATORY NO. 12

State whether you or your agents – at any time prior to Dr. Lane's filing of his Rule 59(e) motion – came into possession of the handwritten contract, dated 12/4/1997, which is set out at page 59 of the Appellant's Appendix in this case. If so, state when you obtained it and from whom.

## ANSWER TO INTERROGATORY NO. 12

Subject to and without waiving the General Objections, the United States responds as follows:

No employee of the United States Attorney's Office recalls coming into possession of the handwritten "contract," dated 12/4/1997, which is set out at page 59 of the Appellant's Appendix in this case, before Dr. Lane filed his Rule 59(e) motion, and the file maintained by the United States Attorney's Office does not contain any information to the contrary. Paralegal Lisa Talbot

11

recalls having a telephone conversation with someone purporting to be Dr. Kerry Lane in June 2005, during which the caller stated that he had a hand written agreement on his stationery, but she does not recall seeing any such document prior to Dr. Lane filing his Rule 59(e) motion.  No agent of the DEA came into possession of the handwritten "contract," dated 12/4/1997, which is set out at page 59 of the Appellant's Appendix in this case, at any time prior to Dr. Lane's filing of his Rule 59(e) motion.

## INTERROGATORY NO. 13

Identify all documents or other evidence, including sworn and unsworn statements, you obtained from Harry E. Crosby to prove his interest in the sailboat and the proportionate share of its value he was entitled to.

## ANSWER TO INTERROGATORY NO. 13

Subject to and without waiving the General Objections, the United States responds as follows:

Harry E. Crosby filed a Verified Claim and Answer in this case on or about February 28, 2005.  Crosby provided further information via his attorney, J. Thomas Kerner, by letter on or about March 10, 2005.  Copies of the letter and enclosed documents are produced herewith.

## INTERROGATORY NO. 14

State whether you or your agents learned, from any source, that the Kennedy sailboat was purchased at an auction in June 1996.   If so, state the source of the information and describe what efforts were taken to follow up on that lead.

## ANSWER TO INTERROGATORY NO. 14

Subject to and without waiving the General Objections, the United States responds as follows:

The United States incorporates by reference its Answer to Interrogatory No. 9, and further states that no employee of the United States Attorney's Office or the DEA made efforts to "follow up on that lead," because based on the documents and information provided by Anderson to the confidential informant, as well as information supplied by Guernsey's auction house based on their 1998 aborted auction of the Kennedy Sailboat, the United States believed in good faith that Ole Anderson had purchased the Kennedy Sailboat and was the owner of it. Documents supplied by Attorney Kerner to the US Attorney's office were consistent with this information.

**INTERROGATORY NO. 15**

Identify the provenance or other documentation of ownership the government provided to the Guernseys auction house to establish that the U.S. owned the sailboat when placing the item up for auction.

**ANSWER TO INTERROGATORY NO. 15**

The United States objects to Interrogatory No. 15 on the grounds that it calls for information that is neither relevant to the subject matter of this action nor reasonably calculated to lead to the discovery of admissible evidence concerning the government's attempts to identify any owner(s) of the Kennedy Sailboat.  Subject to and without waiving this objection and the General Objections, the United States responds as follows:

The United States Attorney's Office forwarded a certified copy of the Final Judgment and Order of Forfeiture to the United States Marshals Service, along with a Form 285 requesting disposal of the Kennedy Sailboat pursuant to the Court's Order.  Neither the United States Attorney's Office nor the DEA have any information about what additional documentation, if any, was provided to Guernseys.

**INTERROGATORY NO. 16**

State whether the United States informed Guernseys that the forfeiture litigation was still pending.  If so,

> a.  state with particularity what you told Guernseys regarding the status of Dr. Lane's attempt to vacate the default judgment to defend his interest in the property;
> b.  identify the government agents and Guernseys employees who participated in each of the conversations mentioned in subsection 14a;
> c.  identify any documents given Guernseys regarding Dr. Lane's attempt to vacate the default judgment to defend his interest in the property;
> d.  state with particularity what you told Guernseys about Dr. Lane's request to set  a minimum reserve.

**ANSWER TO INTERROGATORY NO. 16**

The United States objects to Interrogatory No. 16 on the grounds that it calls for information that is neither relevant to the subject matter of this action nor reasonably calculated to lead to the discovery of admissible evidence concerning the government's attempts to identify any owner(s) of the Kennedy Sailboat.  The United States further objects to Interrogatory No. 16 on the grounds that it incorrectly states that the forfeiture litigation was "still pending", when in fact the Court had entered a Final Judgment and Order of Forfeiture.

**INTERROGATORY NO. 17**

State how the United States and Guernseys arrived at the following figures regarding the value and sale of the sailboat:

    a.  the estimated value;

    b.  the starting bid; and

    c.  the minimum reserve; and

    d.  identify any documents provided to Guernseys to document the estimated value, or relating in any way to the matters in subsection a through c.

**ANSWER TO INTERROGATORY NO. 17**

The United States objects to Interrogatory No. 17 on the grounds that it calls for information that is neither relevant to, nor reasonably calculated to lead to the discovery of admissible evidence concerning, the government's attempts to identify any owner(s) of the Kennedy Sailboat.

**INTERROGATORY NO. 18**

With regard to the Guernseys auction state the following:

    a.  the name and address of the person or entity who purchased the sailboat;

    b.  the price paid;

    c.  how many bids there were, and the amount of those losing bids; and

    d.  state whether the successful bidder is related  – either by blood, by marriage, or through a business partnership, agency or other business relationship – to any party in this case, including government agents on the case, the Confidential Informant, and Harry E. Crosby.

**ANSWER TO INTERROGATORY NO. 18**

The United States objects to Interrogatory No. 18 on the grounds that it calls for information that is neither relevant to, nor reasonably calculated to lead to the discovery of admissible evidence concerning, the government's attempts to identify any owner(s) of the Kennedy Sailboat.

**INTERROGATORY NO. 19**

Identify any and all documents in your possession documenting the matters in interrogatory 16.

**ANSWER TO INTERROGATORY NO. 19**

The United States objects to Interrogatory No. 19 on the grounds that it calls for information more properly the subject of a document request.  The United States further objects to Interrogatory No. 19 on the grounds that it calls for information that is neither relevant to, nor reasonably calculated to lead to the discovery of admissible evidence concerning, the government's attempts to identify any owner(s) of the Kennedy Sailboat.

**INTERROGATORY NO. 20**

14

State whether you spoke to Dr. Kerry Lane on the telephone prior to the filing of his Rule 60(b) motion.  If so,

> a.  State the date(s) of these conversations and who participated in the conversation other than Dr. Lane;
> b.  State with particularity the contents of the conversation, including statements made by you and by Dr. Lane;
> c.  Identify any notes made by you concerning the conversation, with the date and time the notes were made, if known; and
> d.  State what actions you took to notify the district judge that Dr. Lane was asserting an ownership interest in the sailboat.

## ANSWER TO INTERROGATORY NO. 20

Subject to and without waiving the General Objections, the United States responds as follows:

AUSA Wright does not believe that she spoke to Dr. Kerry Lane prior to the filing of his Rule 60(b) motion.  She did have at least one conversation with his attorney, Eric Goldberg, in July 2005.  During that conversation, Attorney Goldberg told AUSA Wright that he had been retained by the unnamed doctor.  Paralegal Lisa Talbot had a telephone conversation with someone purporting to be Dr. Kerry Lane in or around June 2005.  A memorandum regarding Ms. Talbot's memory of that conversation is produced herewith and incorporated herein by reference.  Also produced herewith is a memorandum regarding AUSA Kristina Barclay's memory of a conversation that she had with Ms. Talbot regarding that phone call, which had to have occurred before AUSA Barclay went on maternity leave on July 1, 2005.

## INTERROGATORY NO. 21

If you made any efforts to locate owners of interests in the sailboat other than those detailed in answer to the interrogatories above, please describe those efforts.

## ANSWER TO INTERROGATORY NO. 21

Subject to and without waiving the General Objections, the United States responds as follows:

All of the efforts made by employees of the United States Attorney's Office and the DEA to locate those with potential interests in the Kennedy Sailboat have been described in my answers to Interrogatories 1 through 20.

Signed under the pains and penalties of perjury this 26th day of October, 2006.


 /s/ per telephone
GREGG WILLOUGHBY
Special Agent
United States Drug Enforcement
Administration


Objections made by:

MICHAEL J. SULLIVAN
United States Attorney

By:     /s/ Nancy Rue
Nancy Rue
Assistant U.S. Attorney
U. S. Attorney's Office
John Joseph Moakley
United States Courthouse
1 Courthouse Way, Suite 9200
Boston, MA  02210
617 748-3100


## CERTIFICATE OF SERVICE

I hereby certify that the foregoing interrogatory responses were served upon Brenda Grantland, Esq., by email, this 26th day of October, 2006.

 /s/ Nancy Rue
NANCY RUE

Kennedy sailboat case - interrogatories and documents requests

**Subject:** Kennedy sailboat case - interrogatories and documents requests
**From:** Brenda Grantland <bgrantland1@comcast.net>
**Date:** Tue, 26 Sep 2006 13:01:20 -0700
**To:** shelbey.wright@usdoj.gov, Brenda Grantland <bgrantland1@comcast.net>

Shelbey -

Attached are the interrogatories and documents requests.  I'm sending them in Word
Perfect so you can insert your answers without having to retype the questions.  If
you need Word instead, let me know.  I'm faxing them to you now as well.

Thanks,

Brenda

| DocumentsRequest.wpd | **Content-Type:** application/wordperfect<br>**Content-Encoding:** base64 |
|---|---|

| interrogatories.wpd | **Content-Type:** application/wordperfect<br>**Content-Encoding:** base64 |
|---|---|

Interrogatory responses and document request responses

**Subject:** Interrogatory responses and document request responses
**From:** "Rue, Nancy (USAMA)" <Nancy.Rue@usdoj.gov>
**Date:** Thu, 26 Oct 2006 20:08:39 -0400
**To:** bgrantland1@comcast.net

```
<<document request.responses.pdf>>  <<Interrogatory responses.pdf>>
Attorney Grantland,

Please find enclosed the government's responses to your interrogatories
and document requests.  I will mail the hard copy responses tomorrow.

Very truly yours,
Nancy Rue
617/748-3260
```

| | Content-Description: | document request.responses.pdf |
|---|---|---|
| document request.responses.pdf | Content-Type: | application/pdf |
| | Content-Encoding: | base64 |

| | Content-Description: | Interrogatory responses.pdf |
|---|---|---|
| Interrogatory responses.pdf | Content-Type: | application/pdf |
| | Content-Encoding: | base64 |

2

Kennedy sailboat case - meet and confer session

**Subject:** Kennedy sailboat case - meet and confer session
**From:** Brenda Grantland <bgrantland1@comcast.net>
**Date:** Wed, 01 Nov 2006 11:59:58 -0800
**To:** "Rue, Nancy (USAMA)" <Nancy.Rue@usdoj.gov>, Brenda Grantland
<bgrantland1@comcast.net>

Nancy -

Your discovery responses were incomplete. I have started working on a motion to
compel discovery and we need to have a meet and confer session -- by phone or
email. The attached letter outlines the issues we need to resolve. Please read
this over and call me to let me know which matters we can resolve informally. I'll
need to file the motion to compel in the next few days because our close of
discovery date is rapidly approaching.

I intend to conduct at least 3 depositions, and would prefer doing them by phone if
you will consent to telephonic depositions. (You of course are free to appear in
person.) They will probably only take 1/2 hour each, or less.
Brenda

3

RE: Kennedy sailboat case - meet and confer session

**Subject:** RE: Kennedy sailboat case - meet and confer session
**From:** "Rue, Nancy (USAMA)" <Nancy.Rue@usdoj.gov>
**Date:** Wed, 01 Nov 2006 15:12:35 -0500
**To:** bgrantland1@comcast.net

Brenda,

The letter is missing. More importantly, we intended to fully and
completely answer your interrogatories, and I believe that we did, so I
would hope that we could truly confer before you start drafting motions.

On the question of telephone depositions, I'll give it some thought.  I
have concerns about whether misunderstandings and contentious situations
arise more easily when the human being on the other end is not visible.
That concern is not alleviated by learning that you've started drafting
a motion to compel as your first avenue reaction to what I believe were
complete responses.

Nancy

-----Original Message-----
From: Brenda Grantland [mailto:bgrantland1@comcast.net]
Sent: Wednesday, November 01, 2006 3:00 PM
To: Rue, Nancy (USAMA); Brenda Grantland
Subject: Kennedy sailboat case - meet and confer session

Nancy -

Your discovery responses were incomplete.  I have started working on a
motion to compel discovery and we need to have a meet and confer session
-- by phone or email.  The attached letter outlines the issues we need
to resolve.  Please read this over and call me to let me know which
matters we can resolve informally.  I'll need to file the motion to
compel in the next few days because our close of discovery date is
rapidly approaching.

I intend to conduct at least 3 depositions, and would prefer doing them
by phone if you will consent to telephonic depositions.  (You of course
are free to appear in person.)  They will probably only take 1/2 hour
each, or less.

Brenda

4

Re: Kennedy sailboat case - meet and confer session

**Subject:** Re: Kennedy sailboat case - meet and confer session
**From:** Brenda Grantland <bgrantland1@comcast.net>
**Date:** Wed, 01 Nov 2006 13:13:13 -0800
**To:** "Rue, Nancy (USAMA)" <Nancy.Rue@usdoj.gov>, Brenda Grantland
<bgrantland1@comcast.net>

Nancy -

Most of your interrogatory answers appear complete. I am contesting your
objections. Also, you have not identified the documents, and I can't tell what
many of them are -- such as the handwritten ones.
Of course I was going to confer with you before filing the motion - that's why I
prepared the meet and confer letter which I forgot to attach. I'm attaching it
this time.

If I conduct the depositions telephonically, my local counsel Eric Greenberg will
be present in person, since he lives in the Boston area. I am trying to keep my
fees and litigation costs down -- which the government will likely have to pay
under CAFRA. A round trip to Boston for the depositions will add two days of
travel time, which doesn't seem worth it given the fact that the depositions will
be fairly short.
Brenda

Rue, Nancy (USAMA) wrote:

  Brenda,
  The letter is missing. More importantly, we intended to fully and
  completely answer your interrogatories, and I believe that we did, so I
  would hope that we could truly confer before you start drafting motions.


  On the question of telephone depositions, I'll give it some thought. I
  have concerns about whether misunderstandings and contentious situations
  arise more easily when the human being on the other end is not visible.
  That concern is not alleviated by learning that you've started drafting
  a motion to compel as your first avenue reaction to what I believe were
  complete responses.
  Nancy

  -----Original Message-----
  From: Brenda Grantland [mailto:bgrantland1@comcast.net] Sent: Wednesday, November
  01, 2006 3:00 PM
  To: Rue, Nancy (USAMA); Brenda Grantland
  Subject: Kennedy sailboat case - meet and confer session

  Nancy -

  Your discovery responses were incomplete. I have started working on a
  motion to compel discovery and we need to have a meet and confer session
  -- by phone or email. The attached letter outlines the issues we need
  to resolve. Please read this over and call me to let me know which
  matters we can resolve informally. I'll need to file the motion to
  compel in the next few days because our close of discovery date is
  rapidly approaching.

  I intend to conduct at least 3 depositions, and would prefer doing them
  by phone if you will consent to telephonic depositions. (You of course
  are free to appear in person.) They will probably only take 1/2 hour
  each, or less.
  Brenda

S

Re: Kennedy sailboat case - meet and confer session

| lettertoNancyRue061031.wpd | Content-Type: | application/wordperfect |
| | Content-Encoding: base64 | |

6

# Brenda Grantland

Attorney at Law
20 Sunnyside Suite A-204
Mill Valley, CA 94941
(415) 380-9108
fax (415) 381-6105

October 31, 2006

AUSA Nancy Rue
1 Courthouse Way
Suite 9200
Boston, MA 02210

Re: U.S. v. Star Class Sloop "Flash II"
Meet and confer session re: motion to
compel discovery

Dear Ms. Rue:

I have reviewed the materials you turned over in discovery.  I am sending this list of discovery
issues to see if we can resolve these disputes informally.

1. Neither your interrogatory answers nor the answers to the request for documents identifies the
specific documents responsive to each item.  I need to know what these documents are and who
provided them: Bates pages 1, 73-86, 92-98, 121, 123, 131-139, 140-143, 149, 152?  Whose
handwriting are on those pages?

2. Interrogatory Objection 8 - objects to time frame of Feb. 24 - present, and only answers up to
date of default judgment - October 18, 2005.  This is not a valid objection.

3. Interrog answer 2 is incomplete - it doesn't answer e-g.

4. Interrog answer 3 is incomplete.  Which documents were turned over by Kerner (subpart g)?

5. Interrog 5 doesn't answer e or g.

6. Interrog 10 - doesn't answer d, e or g.

7. Interrog 13 - doesn't identify which documents were supplied by Crosby

8. Interrog 14 - where are the documents supplied by Anderson to the CI?
- what documents were supplied by Guernsey's other than the appraisal?

1

7

9. Interrog 16 - 19 - Your objections are improper. The information concerning the Guernsey's auction, the valuation, minimum bid, selling price, notice to bidders of pending litigation regarding Dr. Lane's ownership, and successful bidder are all relevant to remedies for the due process violation – establishing fair market value of the sailboat and/or getting the auction sale voided. If the judgment is void for violation of due process – as it appears given these interrogatory answers – the government didn't have good title).

Sincerely,

Brenda Grantland

8

discovery in Kennedy sailboat case

**Subject:** discovery in Kennedy sailboat case
**From:** Brenda Grantland <bgrantland1@comcast.net>
**Date:** Thu, 09 Nov 2006 12:14:35 -0800
**To:** "Rue, Nancy (USAMA)" <Nancy.Rue@usdoj.gov>, Brenda Grantland
<bgrantland1@comcast.net>, Eric Goldberg <egoldberg@slwpc.com>

Nancy -

I will be noting depositions in your case and need you to check for available
dates. Eric Goldberg and I are available Nov. 20, 22, 27, 29, Dec. 5 (in the
afternoon), and Dec. 6. The depositions will be held in Eric's office at 20
William Street, Suite 130, Wellesley, MA 02481. Eric will be appearing in person
and I will be present by telephone. If you have any objection to my appearing by
telephone, let me know by close of business Monday so I can file a motion asking
the court to order it. If you consent to my appearing telephonically, we will
agree to hold the depositions at the US Attorney's Office to make it more
convenient for you and your witnesses.
I will be deposing, in this order:
Lisa Talbot
Gregg Willoughby
Shelbey Wright
Christina Barclay

These depositions will not take long -- we can probably do all of them in 1 to 3
hours total (depending on whether you have followup questions).

Don't forget, I need - by the close of business today - your response to my meet
and confer issues regarding the motion to compel. You can email it to me.
Brenda Grantland

RE: discovery in Kennedy sailboat case

**Subject:** RE: discovery in Kennedy sailboat case
**From:** "Rue, Nancy (USAMA)" <Nancy.Rue@usdoj.gov>
**Date:** Thu, 09 Nov 2006 18:01:41 -0500
**To:** bgrantland1@comcast.net, Eric Goldberg <egoldberg@slwpc.com>

Brenda,

I am enclosing my responses, both to your letter regarding the
interrogatories and to the email indicating that you wish to depose DOJ
employees.

If we need to review these matters with the Court, I will work with you
to set up a reasonable schedule.  However, I think maybe if we talk this
through, we can find a way to proceed that meets everyone's needs.  I
will try to call you at 6:15 tonight (about 15 minutes from now).  If we
do not connect, perhaps we could schedule a time to talk by phone on
Monday.  I propose 4:00 p.m. EST, which I believe is 1:00 p.m. your time.
If that does not work for you, and we do not connect tonight, perhaps
you could propose a different time.

Thank you.

Nancy Rue


-----Original Message-----
From: Brenda Grantland [mailto:bgrantland1@comcast.net]
Sent: Thursday, November 09, 2006 3:15 PM
To: Rue, Nancy (USAMA); Brenda Grantland; Eric Goldberg
Subject: discovery in Kennedy sailboat case

Nancy -

I will be noting depositions in your case and need you to check for
available dates.  Eric Goldberg and I are available Nov. 20, 22, 27, 29,
Dec. 5 (in the afternoon), and Dec. 6.  The depositions will be held in
Eric's office at 20 William Street, Suite 130, Wellesley, MA 02481.
Eric will be appearing in person and I will be present by telephone.  If
you have any objection to my appearing by telephone, let me know by
close of business Monday so I can file a motion asking the court to
order it.  If you consent to my appearing telephonically, we will agree
to hold the depositions at the US Attorney's Office to make it more
convenient for you and your witnesses.

I will be deposing, in this order:
Lisa Talbot
Gregg Willoughby
Shelbey Wright
Christina Barclay

These depositions will not take long -- we can probably do all of them
in 1 to 3 hours total (depending on whether you have followup
questions).

Don't forget, I need - by the close of business today - your response to
my meet and confer issues regarding the motion to compel.  You can email
it to me.

Brenda Grantland

---

Cor 9 Nov.pdf    Content-Description: Cor 9 Nov.pdf

RE: discovery in Kennedy sailboat case

| | | |
|---|---|---|
| **Touhy letter.pdf** | **Content-Description:** | Touhy letter.pdf |
| | **Content-Type:** | application/pdf |
| | **Content-Encoding:** | base64 |

| | | |
|---|---|---|
| **Touhy Regs.pdf** | **Content-Description:** | Touhy Regs.pdf |
| | **Content-Type:** | application/pdf |
| | **Content-Encoding:** | base64 |

11



U.S. Department of Justice

*Michael J. Sullivan*
*United States Attorney*
*District of Massachusetts*

---

*Main Reception: (617) 748-3100*

*John Joseph Moakley United States Courthouse*
*1 Courthouse Way*
*Suite 9200*
*Boston, Massachusetts 02210*

November 9, 2006

**By Electronic Mail**

Brenda Grantland, Esquire
20 Sunnyside Avenue STE A-204
Mill Valley, CA 94941

    Re: <u>United States v. One Star Class Sloop Sailboat, 05-10192-RWZ</u>

Dear Ms. Grantland:

    I have received your electronic mail message stating that you seek to take depositions of employees of the Department of Justice (either the United States Attorney's Office or the Drug Enforcement Administration). In order to seek information from the Department of Justice employees, you must comply with the DOJ Touhy regulations.

    The starting point under DOJ's Touhy regulations, 28 C.F.R. §§ 16.21 <u>et seq.</u>, is the prohibition on testimony by DOJ employees regarding the information they obtained in the course of their employment unless that testimony is authorized by the "responsible official," generally the United States Attorney for the district in which the testimony is sought. 28 C.F.R. §§ 16.21.[1] The regulations set forth a procedure governing requests for Department of Justice employees. In essence, as alluded to above, the person seeking the testimony must provide the United States Attorney's office with an affidavit describing the requested testimony and why it is required. 21 C.F.R. § 16.23(c).

---

    [1]See generally <u>United States ex rel. Touhy v. Regan</u>, 340 U.S. 462, 468-69, 472 (1951); <u>Giza v. Secretary of HEW</u>, 628 F.2d 748, 751-52 (1st Cir. 1981); <u>Reynolds Metals v. Crowther</u>, 572 F. Supp. 288, 290-291 (D. Mass. 1982).

12

Brenda Grantland, Esquire
November 9, 2006
page 2

Please review these regulations and consider whether you can
proceed without oral testimony. If, after reviewing these
regulations, you determine that oral testimony is the only means
of proceeding, please provide me with as much detail as possible
regarding the testimony that you will seek to elicit from each of
the Assistant United States Attorneys' employees and the Drug
Enforcement Administration Special Agent whom you named, and this
will be reviewed consistent with the regulations.

Please do not hesitate to contact me if you have any
questions regarding your Touhy request.

Very truly yours,

MICHAEL J. SULLIVAN
United States Attorney

By:  /s/ Nancy Rue
Nancy Rue
Assistant U.S. Attorney

13



**U.S. Department of Justice**

*Michael J. Sullivan*
*United States Attorney*
*District of Massachusetts*

_____

Main Reception: (617) 748-3100

*John Joseph Moakley United States Courthouse*
*1 Courthouse Way*
*Suite 9200*
*Boston, Massachusetts 02210*

November 9, 2006

Brenda Grantland, Esquire
20 Sunnyside Avenue STE A-204
Mill Valley, CA 94941

Re: United States v. One Star Class Sloop Sailboat, 05-10192-RWZ

Dear Ms. Grantland:

In response to your letter dated October 31, 2006:

1.   Pages 1 and 121 are the notes of Shelbey Wright referred to in Interrogatory Response 3.   Pages 73 through 86, as noted on the front of page 73, are DEA exhibit N-169. It is described in the DEA-6 associated with its acquisition, more specifically at page 58, ¶3. The remaining pages that you refer to were produced by DEA Special Agent Gregg Willoughby.

2.   With regard to your assertion that our objection is invalid, we disagree. The First Circuit remanded this case for a limited purpose:

> Hence, we . . . remand for further proceedings to determine
> whether plainly indicated and easily accomplished efforts,
> undertaken with reasonable diligence *during the relevant time*
> *frame*, would have led the government directly to Lane.

458 F.3d 16, 25 (1st Cir. 2006) (emphasis supplied).   Information that the government developed subsequent to the date we moved for the default order is simply, under the First Circuit's Order, irrelevant. If you wish to press this point, I concur that we are at impasse.

3, 5, 6, 8.   To the extent that you provided an Interrogatory with so many subparts that it exceeded the number of interrogatories permitted under the Rules, we supplied the answer to the question without breaking down our response into individual items. We do not have a transcript of the discussions with various individuals two years ago. Therefore it would be impossible to

14

Brenda Grantland, Esq.
November 9, 2006
Page 2

say in detail what specific questions were asked and what the responses, if applicable, were. The substance of the United States' discussions with the persons inquired about in your Interrogatories is contained in the United States' responses.

    4, 7.   The documents turned over by Kerner on behalf of Crosby were produced in connection with the document responses. See pages 103- 108.

    9.   The United States disagrees with your reasoning. First, from a procedural standpoint, any determination of an amount with regard to your client is premature, pending the resolution of the issue for which the First Circuit remanded this case. See Item 2, above.

Moreover, your claim that the value of the boat was something other than the amount of the sale has no merit. The United States sold the boat pursuant to a judicial order authorizing the United States to sell the boat. Your client was aware of the sale. Your client had an opportunity, in court, to seek a stay of the sale had he tendered a bond in the amount of its value. He instead chose not to do so, stating that the value was "unknown." Having tendered a supersedeas bond in the amount of $100, the United States believes that your client is now judicially estopped from claiming that the boat had a value in excess of that amount.

Moreover, when the district court exercised its discretion to deny the stay, your client had the ability to seek review under Federal Rule of Appellate Procedure 8(a). See Acevedo-Garcia v. Vera-Monroig 296 F.3d 13, 15 (1st Cir. 2002). He elected not to exercise that right. Having failed to post a full supersedeas bond, or to seek review of the district court's order denying stay without such bond, he is barred from revisiting the issue of the value of the boat. See Matter of Combined Metals Reduction Co., 557 F.2d 179, 193 (10th Cir. 1977). To state that due process was violated is erroneous. Due process was afforded. He chose, as he had done in October of 2004, not to exercise it.

I trust this resolves your questions.

Very truly yours,

MICHAEL J. SULLIVAN
United States Attorney

By:   /s/ Nancy Rue
      Nancy Rue
      Assistant U.S. Attorney

15

conference call

**Subject:** conference call
**From:** Brenda Grantland <bgrantland1@comcast.net>
**Date:** Mon, 13 Nov 2006 12:00:51 -0800
**To:** "Rue, Nancy (USAMA)" <Nancy.Rue@usdoj.gov>, Brenda Grantland
<bgrantland1@comcast.net>

Nancy -

We were supposed to talk today about a possible resolution of the depositions by
agreeing to stipulated facts, but I have not finished putting together my draft of
them. When I was talking to my client today, he wanted a chance to read them over
and comment before I talked to you about them. He is working today and will not be
able to review them until tonight.
So can we re-schedule the conference call for tomorrow or Wednesday? Or we could
start by exchanging drafts by email and then talk. What's your preference?

Brenda

**Subject:** RE: conference call
**From:** "Rue, Nancy (USAMA)" <Nancy.Rue@usdoj.gov>
**Date:** Mon, 13 Nov 2006 15:08:16 -0500
**To:** bgrantland1@comcast.net

That would be fine with me.  Why don't we try to exchange a draft by end
of day tomorrow, and then talk at 4P/1E Wednesday?

-----Original Message-----
From: Brenda Grantland [mailto:bgrantland1@comcast.net]
Sent: Monday, November 13, 2006 3:01 PM
To: Rue, Nancy (USAMA); Brenda Grantland
Subject: conference call

Nancy -

We were supposed to talk today about a possible resolution of the
depositions by agreeing to stipulated facts, but I have not finished
putting together my draft of them. When I was talking to my client
today, he wanted a chance to read them over and comment before I talked
to you about them.  He is working today and will not be able to review
them until tonight.

So can we re-schedule the conference call for tomorrow or Wednesday?  Or
we could start by exchanging drafts by email and then talk.  What's your
preference?

Brenda

Kennedy sailboat case

**Subject:** Kennedy sailboat case
**From:** Brenda Grantland <bgrantland1@comcast.net>
**Date:** Tue, 14 Nov 2006 13:56:26 -0800
**To:** "Rue, Nancy (USAMA)" <Nancy.Rue@usdoj.gov>, Brenda Grantland
<bgrantland1@comcast.net>

Hi Nancy -

I am still working on my letters responding to your Touhy_letter.pdf and
Cor_9_Nov.pdf, as well as my questions for possible stipulation in lieu of the
depositions.   I hope to have it finished tomorrow, provided Dr. Lane does not have
any further issues after I make further revisions tonight.

In talking to my client today, we determined that if the government is intending to
depose Dr. Lane, there is no way we would forego our depositions of the four
government agents -  Lisa Talbot, Shelbey Wright, Gregg Willoughby or Christina
Barkley.   That's the bottom line.  So if you are planning on deposing my client,
we will not settle for stipulating the facts in lieu of those four depositions.

Let me know your response to that as soon as possible -- before I waste any more
time trying to draft a proposed stipulation.
Brenda

18

RE: Kennedy sailboat case

**Subject:** RE: Kennedy sailboat case
**From:** "Rue, Nancy (USAMA)" <Nancy.Rue@usdoj.gov>
**Date:** Tue, 14 Nov 2006 17:59:31 -0500
**To:** bgrantland1@comcast.net

For this stage of things, if we could come to agreed stipulations, it
was my understanding that we would be trying to agree to everything --
both as to your client and as to the govt actors. If we were able to
come to an agreement, that would obviate the need for your client's depo
and would obviate the need for the ones that you had identified.

If we come to an agreement on some things and not others, it would
narrow the scope of discovery that is in dispute. For example, I can
foresee a situation in which we come to an agreement as to what certain
govt actors would say, but dispute others. At that point, I think that
your Touhy demand would indicate the area of testimony that was in
dispute and we would evaluate under the Touhy regs whether there was no
alternative to oral examination of a particular individual. If we
agreed to what the govt actors would say, but disagree as to what Dr.
Lane would say, we would still want to proceed with his depo. But if we
are in agreement, we would forego that at this time.

Knowing that you and I have a different interpretation as to the scope
of the current discovery, I should amplify slightly. At this point, the
govt believes that the purpose of these proceedings is to determine
whether Dr. Lane should be permitted to file a claim. If Judge Zobel
finds in your client's favor, then at that point it is our understanding
(which I confirmed with AUSA Wright, since she attended the status
conference), that discovery would begin in the normal manner. Dr. Lane
would need to prove his claim, and that would usually include a
deposition of your client. However, if Judge Zobel were to reiterate
her previous ruling, at that point, the case would be terminated, and no
further discovery of any kind would be appropriate.

It sounds like we shouldn't try to exchange drafts tonight, but instead
talk tomorrow and see where we are? I'll plan to call you at 4pm my
time, 1pm your time, unless I hear differently.

Thanks. Nancy


-----Original Message-----
From: Brenda Grantland [mailto:bgrantland1@comcast.net]
Sent: Tuesday, November 14, 2006 4:56 PM
To: Rue, Nancy (USAMA); Brenda Grantland
Subject: Kennedy sailboat case

Hi Nancy -

I am still working on my letters responding to your Touhy_letter.pdf and
Cor_9_Nov.pdf, as well as my questions for possible stipulation in lieu
of the depositions. I hope to have it finished tomorrow, provided Dr.
Lane does not have any further issues after I make further revisions
tonight.

In talking to my client today, we determined that if the government is
intending to depose Dr. Lane, there is no way we would forego our
depositions of the four  government agents - Lisa Talbot, Shelbey
Wright, Gregg Willoughby or Christina Barkley.  That's the bottom
line.  So if you are planning on deposing my client, we will not settle
for stipulating the facts in lieu of those four depositions.

Let me know your response to that as soon as possible -- before I waste

19

RE: Kennedy sailboat case

any more time trying to draft a proposed stipulation.

Brenda

**Subject:** Kennedy sailboat case
**From:** Brenda Grantland <bgrantland1@comcast.net>
**Date:** Wed, 15 Nov 2006 14:34:17 -0800
**To:** "Rue, Nancy (USAMA)" <Nancy.Rue@usdoj.gov>, Brenda Grantland
<bgrantland1@comcast.net>, "Dr. Kerry Lane" <KERRYSLANEMD@ATT.NET>

Hi Nancy -

I have discussed the discovery dispute with my client, and after reading the email
you sent last night we have concluded it would be a waste of time to try to
negotiate a stipulated set of facts with you, especially at this posture. We're
entitled to discovery, and I intend to get it.

Attached is my letter responding to your two letters of November 9th and subsequent
emails. It is my conclusion that we are at an impasse as outlined in my letter.

Brenda

Rue, Nancy (USAMA) wrote:

  I'll call you shortly.  Thank you.

| letter to Nancy Rue 061115.pdf | **Content-Type:**    application/pdf<br>**Content-Encoding:** base64 |
|---|---|

# Brenda Grantland

Attorney at Law
20 Sunnyside Suite A-204
Mill Valley, CA 94941
(415) 380-9108
fax (415) 381-6105

November 15, 2006

AUSA Nancy Rue
1 Courthouse Way
Suite 9200
Boston, MA 02210

Re: U.S. v. Star Class Sloop "Flash II"
Meet and confer session re: motion to
compel discovery

Dear Ms. Rue:

In response to your "Touhy" letter – I read over the regulations at 28 CFR § 16.21 et seq. and I don't see how that in any way restricts my right to seek deposition testimony from Lisa Talbot, Shelbey Wright, Gregg Willoughby or Christina Barkley about the issues relevant here. Because the US government is a party to this litigation, § 16.23 applies.

None of the conditions of § 16.26 (b) are present here. I have no intention of asking for the identity of your CI, since I figured out who is he is a long time ago through Pacer, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ He was the only one with a pending federal criminal case – and that was a marijuana trafficking charge in Boston no less. I followed the docket and saw plenty of confirmation of my suspicion that he was the CI. I also saw that he got sentenced to time served recently after numerous continuance motions filed under seal by the government. I probably don't need any more information from the informant, since his admissions help us, but I do need to rule out the possibility that you have other information contradicting the CI's admissions. More about this later.

Also, I don't see how disclosure of the information I am seeking would reveal investigatory records or interfere with enforcement proceedings. We could care less about your case against Ole Anderson, and we have no information about that anyway. The case against your CI was resolved already, and my client didn't know him anyway. The other subsections of § 16.26(b) are not even arguably applicable.

The "Touhy regulations" do not require us to give you "an affidavit describing the requested testimony and why it is required" as you claim in your "Touhy letter". Section 16.23( c) only

1

22

requires "an affidavit, or, if that is not feasible, statement... setting forth a summary of the testimony sought." In your email dated November 14, you suggest that the Touhy regulations require some showing that "there was no alternative to oral examination of a particular individual." Nothing in those regulations requires that. Section 16.26 requires the DOJ officials to determine whether disclosure is appropriate under the rules of procedure and statutes. In short, the Touhy regulations do not give government agents any shield for relevant depositions in cases where the U.S. is a party and the matters inquired of on deposition are relevant and proper under the Federal Rules of Civil Procedure and applicable statutes. Judge Zobel has already stated that she will allow discovery including depositions.

Here is a summary of the testimony I would elicit from these witnesses I intend to depose. I see no reason to give you a sworn affidavit, since, if I go beyond the scope of these issues at the depositions, you can always tell the witness not to answer. If you have any objections to my asking these questions during the depositions of the federal employees, you should let me know now so I can add that to my motion to compel.

(1) whether the government made reasonable efforts to follow up on the leads it had readily at hand to serve notice on persons believed to own the sailboat;

(2) whether the U.S. Attorney's Office had any valid excuses for not following up on these leads;

(3) exactly what the government is claiming my client and his attorney told the U.S. Attorney's Office employees;

(4) whether the government ever notified Judge Zobel, before entry of the default judgment, that there was a doctor believed to own an interest in the sailboat who had not been served with the forfeiture complaint, and that he had in fact come forward and identified himself to the government;

(5) whether the government even had grounds to believe the sailboat was forfeitable at all, given the fact that the CW admitted that Ole Anderson had paid back the "loan" the CW made to him to purchase the sailboat, and the lack of evidence that Ole Anderson ever invested any drug money in the boat.

(6) Also, assuming our motion to compel discovery is granted, we will be asking about the circumstances of the auction and valuation of the sailboat by the federal government.

As for your claim that discovery should be limited to the narrow issue of the reasonableness of the government's failure to serve Dr. Lane with notice, I totally disagree with that, and will take that up in my motion to compel. We already had a status hearing before Judge Zobel in which we discussed discovery, and the judge asked what issues would be covered. I distinctly recall discussing our intention to get discovery relative to the remedy – fair market value of the sailboat and the circumstances surrounding the auction. Shelbey did not object and the judge seemed to agree those would be proper. I also indicated I would be deposing Shelbey and possibly other DOJ employees, and again neither Shelbey nor the judge stated any objections to that. In fact, as I recall, Judge Zobel asked me if I would be needing to depose Shelbey Wright, and when I said I would, the judge stated that Shelbey would have to be replaced as counsel of record and ordered

2

23

the government to appoint an new AUSA "forthwith." There was no suggestion at the status conference that the discovery would be piecemeal, and since the government did not object I believe you've waived the right to limit discovery in such a manner.

You are also wrong about the remand being "limited" to the issue of the reasonableness of the government's attempts/nonattempt to give Dr. Lane notice, as you claim in the 11/9 letter "Cor 9 Nov.pdf." The opinion states that

> If, however, the court finds that Lane had no notice in fact of the forfeiture action, that the government's efforts to identify him were nonexistent or otherwise insufficient under the circumstances, and that Lane has satisfied the other prerequisites for *Rule 60(b)* relief, n10 Lane's motion would have to be granted and the forfeiture judgment, as it pertains to his interest in the FLASH II, would have to be set aside.

458 F.3d 16, 26 (1st Cir. 2006). Obviously if the Rule 60(b) motion has to be granted, Dr. Lane will be able to litigate his innocent owner claim – and the forfeitability of the sailboat – and the remedy, given the fact that the boat sold at auction.

I'm not going to address your legal arguments about the valuation in detail, because that is premature, but your claims on page 2 of the November 9 letter "Cor 9 Nov.pdf" that Dr. Lane has waived his remedies by "failing to post a full supersedeas bond" is frivolous. Had you read our points and authorities in support of the motion to stay, you would have seen that we "tendered a nominal supersedeas bond in the amount of $100, pending further order from this Court" and that we asked the court to exercise its discretion to not require a bond at all, since the government would be detaining the sailboat pending trial – which would be adequate security if the stay was granted. We can argue the legal issues about this later – right now we're entitled to discovery of the facts, and intend to fully pursue it.

I don't see any point in trying to agree on a stipulated set of facts now in lieu of doing depositions. I can tell from you email that you intend to depose Dr. Lane no matter what, so we intend to depose your guys. Since we don't want to do the depositions twice, there is no reason to begin the depositions until our motion to compel is decided. That way I can ask about the valuation and auction issues during the one set of depositions.

Your objection to "all requests that extend beyond October 18, 2005" is improper. That quote from the First Circuit opinion on page 1 of your "Cor 9 Nov.pdf" letter does not support your objection. If government agents made phone calls and followed up leads after October 18, 2005 that they should have pursued earlier, those facts are relevant to the issue of what could be done if reasonable diligence was employed.

Your complaint that my interrogatories had so many subparts that you could pick and choose which ones to answer can also be used against the interrogatories you served on Dr. Lane.

3

24