UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) |
| | ) |
| v. | )Civil Action No.05-10192-WGY |
| | ) |
| ONE STAR CLASS SLOOP SAILBOAT | ) |
| BUILT IN 1930 WITH HULL NUMBER 721,| ) |
| NAMED "*FLASH II*," | ) |
| Defendant. | ) |

**STATEMENT OF FACTS**

1.  During the course of a DEA investigation, the DEA learned
    that Gregory "Ole" Anderson had purchased the Flash II
    sailboat previously owned by John F. Kennedy, using drug
    proceeds.  Affidavit of Gregg Willoughby, Exhibit 1 hereto,
    ¶ 1.

2.  Willoughby interviewed the cooperating witness in an effort
    to understand whether anyone other than Ole Anderson had an
    ownership interest in the Flash II.  Exhibit 1, ¶ 2.

3.  The CW told Willoughby that Ole Anderson initially purchased
    the Flash II, and that the CW had invested cash in the Flash
    II at Ole Anderson's request.  Exhibit 1, ¶ 3.

4.  The CW told Willoughby that another person had also invested
    in the Flash II.  Exhibit 1, ¶ 3.  That person was possibly
    a doctor or a dentist.  Id.

5.  Based on the information from the CW, Willoughby therefore
    understood that there had initially been three owners to the
    Flash II: Ole Anderson, the CW, and this unknown third
    person.  Exhibit 1, ¶ 4.

6.  Ole Anderson provided the CW with documentation showing that

Ole Anderson had bought the Flash II from Ouida Ehler. Exhibit 1, ¶ 5.

7.  Anderson had documentation showing that he owned the boat and that it had previously been owned by John F. Kennedy. Id.

8.  Ole Anderson also provided a letter from Senator Edward M. Kennedy and an article describing Ole Anderson's restoration of the boat.  See Id.

9.  None of this documentation included the name of any purchaser or investor other than Ole Anderson.  Id.

10. The CW told Willoughby that he had surrendered his interest in the Flash II to Ole Anderson after Ole Anderson was arrested on drug charges in 2001. Exhibit 1, ¶ 6.

11. Ole Anderson had been arrested while transporting 1200 pounds of marijuana partially owned by the CW. Id. Ole Anderson threatened to expose the CW's role in the crime unless the CW provided him with funds. Id.

12. The CW paid Ole Anderson more than one hundred thousand dollars in cash and loans for his silence, and he also surrendered his interest in the Flash II.  Id.

13. During the investigation, the DEA arranged meetings and telephone calls between the CW and Ole Anderson which were consensually recorded. Exhibit 1, ¶ 7.

14. During the consensually recorded conversations, Ole Anderson confirmed his ownership of the Flash II, and he expressed interest in selling the boat. Exhibit 1, ¶ 7.

15. After DEA seized the Flash II, Willoughby undertook searches

of commercial databases and the internet, looking for information about the Flash II.  Exhibit 1, ¶ 8.

16.  Willoughby also arranged for Lexis property databases to be searched.  Exhibit 1, ¶ 8.

17.  None of these searches provided any information about any additional owners of the Flash II beyond Ole Anderson. Exhibit 1, ¶ 8.

18.  At the time of the seizure of the Flash II, Willoughby met with Ralph Anderson, the owner of Marblehead Trading Company.  Exhibit 1, ¶ 9.

19.  Ralph Anderson is not related to Ole Anderson.  Exhibit 1, ¶ 9.

20.  Marblehead had received the Flash II in 1996 and worked on it and stored it for extensive periods of time from then until its seizure in 2004. Exhibit 1, ¶ 9.

21.  During Willoughby's conversation with Ralph Anderson, it was clear to Willoughby that he recognized Ole Anderson as the only owner of the Flash II. Exhibit 1, ¶ 10.

22.  When Willoughby introduced himself and explained that the DEA was seizing the boat, Ralph Anderson said "Poor Ole" and noted that Ole was always involved in some kind of scam. Exhibit 1, ¶ 10.

23.  Ralph Anderson provided Willoughby with a contact address for Ole Anderson from his files.  Exhibit 1, ¶ 11.

24.  Willoughby knew from the CW that the Flash II had been put up for auction in the late 1990s.  Exhibit 1, ¶ 12.

25.  Willoughby learned during the course of database research

that the auction had been undertaken by Guernsey's.  Exhibit 1, ¶ 12.

26.  Willoughby contacted Arlan Ettinger, the President of Guernsey's and arranged for him to appraise the Flash II. Exhibit 1, ¶ 12.

27.  Willoughby talked with Ettinger about the auction of Kennedy memorabilia that the Flash II had been placed in in March of 1998.  Exhibit 1, ¶ 12.

28.  Ettinger told Willoughby that during that auction, he had dealt exclusively with, and contracted with, Ole Anderson. Exhibit 1, ¶ 12.

29.  After the seizure of the Flash II, Willoughby read an article in the Boston Globe by Shelley Murphy, noting that the boat was subject to forfeiture.  Exhibit 1, ¶ 13.

30.  In the article, Ole Anderson was quoted as saying a doctor was the boat's primary owner, but that Anderson would not identify the doctor.  Exhibit 1, ¶ 13.

31.  Sometime afterward, Willoughby learned from AUSA Shelbey Wright that an individual had come forward regarding ownership of the Flash II.  Exhibit 1, ¶ 14.

32.  AUSA Wright provided Willoughby with the individual's name, Harry Crosby, for notification purposes.  Exhibit 1, ¶ 14.

33.  Willoughby had understood from the debriefing of the CW that there was one other owner to the sailboat.  Exhibit 1, ¶ 15.

34.  When AUSA Wright told Willoughby about the claim, Willoughby assumed that it meant that the other owner had come forward. Exhibit 1, ¶ 15.

35.  Willoughby knew that the new claimant would have to provide documentation to prove his ownership.  Exhibit 1, ¶ 15. However, determinations of the validity of claims is done, at least initially, at the U.S. Attorney's Office, so Willoughby did not seek information about the documentation. Exhibit 1, ¶ 15.

36.  It never occurred to Willoughby to contact Harry Crosby and ask him about other owners of the Flash II.  Exhibit 1, ¶ 16.

37.  Willoughby had never received any indication that there was more than one unknown owner.  Therefore, it simply did not occur to Willoughby that Crosby could provide information about "the doctor."  Exhibit 1, ¶ 16.

38.  Willoughby recently contacted the Massachusetts Board of Medicine to determine when Lane's credentialing process had been completed.  Exhibit 1, ¶ 17. The Massachusetts Board of Medicine records show the following:  Dr. Kerry S. Lane (Anaesthesiologist) renewed his Massachusetts license on 5/21/05.  Exhibit 1, ¶ 17.

39.  Mass Board of Medicine told Willoughby that the licenses are good for 2 years and are renewed on the doctor's birthday. Exhibit 1, ¶ 17.

40.  Harry Crosby ("Crosby") purchased an interest in a Star Class Sloop Sailboat Built in 1930 with Hull Number 721, named Flash II, (hereinafter "Flash II") in 1996.  Affidavit of Harry E. Crosby, attached as Exhibit 2, at 1.

41.  Crosby purchased one quarter interest in the Flash II for

$5,250, and these funds, along with funds from an individual by the name of Chuck Fitzgerald ("Fitzgerald") were used by Gregory "Ole" Anderson ("Ole Anderson") to purchase the Flash II at auction.  Exhibit 2, at 2.

42. Fitzgerald sought to sell his interest in the Flash II and Crosby invested another $5,000, which he understood brought his interest in the Flash II to one-third.  Exhibit 2, at 3.

43. Around the time Fitzgerald sought to sell his interest in the Flash II, Crosby came to understand that a doctor who lived somewhere in Florida, whose name was Kerry Lane ("Dr. Lane"), had also invested money in the Flash II.  Exhibit 2, at 4.

44. Crosby met Dr. Lane only one time, at the unsuccessful auction of the Flash II by Guernseys in 1998; however, Crosby does not know, and has never known, Dr. Lane's address.  Exhibit 2, at 5.

45. Crosby stated that Ole Anderson made all of the arrangements related to the 1998 Guernseys auction and did all the paperwork for the 1998 auction.  Exhibit 2, at 6.

46. As far as Crosby knew, all documents related to the Flash II were exclusively in Ole Anderson's name.  Exhibit 2, at 6.

47. Crosby understood that Ole Anderson turned down an offer for the Flash II that came out of the 1998 auction.  Exhibit 2, at 7.  Ole Anderson did not consult with Crosby in advance of rejecting the offer, as Crosby understood that Ole Anderson had the right to do what he wanted as far as the Flash II went.  Exhibit 2, at 7.

48.  Ole Anderson showed the Flash II at various times, in order
     to garner publicity so that the Flash II would get a greater
     price, and the Flash II was transported between Florida and
     Massachusetts for that purpose.  Exhibit 2, at 8.

49.  Crosby was not familiar with the Marblehead Trading Company,
     and understood that Ole Anderson knew people in
     Massachusetts, and that is how Anderson came to choose the
     storage place for the Flash II.  Exhibit 2, at 9.

50.  In about 2001, Ole Anderson went to jail for drug activity.
     Ole Anderson was in jail for about a year.  Exhibit 2, at
     10.

51.  In approximately October 2004, Ole Anderson called Crosby
     and told him that the Flash II had been seized by the United
     States Drug Enforcement Administration ("DEA").  Exhibit 2,
     at 11.

52.  Ole Anderson called Crosby either the day of the seizure or
     the day after.  Exhibit 2, at 11.  Ole Anderson told Crosby
     that he had been caught up with something with a DEA
     informant, and the DEA had seized the boat.  Anderson
     suggested that Crosby hire a lawyer.  Id.

53.  At the time of the initial telephone call from Ole Anderson
     to Crosby about the DEA seizure, Crosby understood from
     talking with Ole Anderson that the DEA had taken the Flash
     II, and that it was not coming back to Crosby unless he got
     a lawyer to pursue it.  Exhibit 2, at 12.

54.  Crosby also understood from Ole Anderson at the time of that
     initial telephone call that Ole Anderson was planning to

leave the country in order to avoid pursuit by the DEA. Exhibit 2, at 12.

55. During the initial phone call, Ole Anderson told Crosby that he was going to call Dr. Lane and tell him about the seizure of the Flash II as well.  Exhibit 2, at 12.

56. Ole Anderson and Crosby spoke several times over the next few days, after the initial telephone conversation, and during one of those conversations, Ole Anderson told Crosby that Ole Anderson had spoken to Dr. Lane and Dr. Lane did not want to be involved.  Exhibit 2, at 13.

57. Ole Anderson also told Crosby that Dr. Lane had a job interview where the DEA activity surrounding the Flash II was taking place, and that Dr. Lane did not want anything to do with it.  Exhibit 2, at 13.

58. Crosby then contacted an attorney about the seizure of the Flash II based on the information he had received from Ole Anderson.  Exhibit 2, at 14.

59. Crosby's attorney filed a timely claim with the government for Crosby's share of the Flash II.  Exhibit 2, at 14.  The documents that Crosby supplied to the government at the time of his claim are attached to Exhibit 2.

60. Ralph Anderson ("Ralph Anderson") is the owner of Marblehead Trading Company.  Affidavit of Ralph Anderson, attached as Exhibit 3, at 1.

61. In the fall of 1996, Ralph Anderson received delivery of the Flash II from Ole Anderson.  Exhibit 3, at 2.

62. Ole Anderson hired Ralph Anderson's company to restore the

Flash II.  Exhibit 3, at 3.

63.  Ralph Anderson performed a substantial amount of work on the Flash II to restore it.  Exhibit 3, at 4.

64.  Initially, the invoices for the restoration of the Flash II were sent to Ole Anderson directly, but later, Ralph Anderson sent them to an attorney's office at Ole Anderson's request.  Exhibit 3, at 4.

65.  All invoices were eventually paid by Ole Anderson or his attorney, with the exception of payments made by Viking Capital Investment, H.E. Crosby, and Blue Moon, Ltd. Exhibit 3, at 5.

66.  Ralph Anderson has never received a payment from Dr. Lane. Exhibit 3, at 6.

67.  Ralph Anderson understood Ole Anderson to be the owner of the Flash II.  Exhibit 3, at 7.

68.  From 1996 until the Flash II was seized from Ralph Anderson's shipyard by the DEA in October of 2004, Ralph Anderson never dealt with anyone else claiming an ownership interest in the Flash II.  Exhibit 3, at 8.

69.  Prior to the seizure of the Flash II from Ralph Anderson's shipyard, Ralph Anderson had never heard of a doctor claiming an ownership interest in the Flash II.  Exhibit 3, at 10.

70.  Ralph Anderson was present when the Flash II was seized from his shipyard by the DEA.  Exhibit 3, at 11.  He received a copy of the seizure warrant.  Id. at 9, and attachment thereto.

71. Ralph Anderson received a telephone call about the Flash II within a month after the Flash II was seized from his shipyard by the DEA.  The call was from an individual that did not wish to be identified and did not give Ralph Anderson his name.  The caller identified himself as a doctor and said that he was part owner of the Flash II. Exhibit 3, at 12.

72. The individual calling Ralph Anderson asked where the boat had been taken, and Ralph Anderson told him that the Flash II had been seized by the DEA.  Exhibit 3, at 12.

73. Ralph Anderson told the caller that he should call the DEA to find out where the Flash II had been taken.  Exhibit 3, at 12.

74. The caller told Ralph Anderson that he could not call the DEA because the caller did not want the DEA to know where the caller was.  Exhibit 3, at 12.

75. Ralph Anderson stated that the caller then asked him more questions about the Flash II, and Ralph Anderson again told the caller to call DEA.  The caller again responded to Ralph Anderson that he could not call the DEA.   Exhibit 3, at 12.

76. Finally, Ralph Anderson told the caller that DEA had the Flash II, and he should call the DEA if he wanted more information.   Exhibit 3, at 12.

77. Even though the caller did not leave Ralph Anderson with any identifying information, Ralph Anderson provided the caller with the name and phone number of Ralph Anderson's lawyer.

Exhibit 3, at 13.

78. Ralph Anderson stated that he received documents from the agents that seized the Flash II indicating who they were and how to contact them, but since the caller did not leave any information on how Ralph Anderson could him, Ralph Anderson could not forward this information to the caller.    Exhibit 3, at 14.

79. Ralph Anderson received notice regarding the forfeiture of the Flash II and filed the documents in his file regarding the Flash II.    Exhibit 3, at 15.

80. Ralph Anderson had no way of contacting to person who had called him claiming to be a part owner of the Flash II. Exhibit 3, at 16.

81. Ralph Anderson has never known Dr. Lane and has never had dealings with anyone other than Ole Anderson regarding the Flash II.    Exhibit 3, at 17.

82. J. Thomas Kerner ("Atty. Kerner") is an attorney licensed to practice in Massachusetts.  Affidavit of J. Thomas Kerner, attached as Exhibit 4, at 1.

83. Atty. Kerner was retained in the fall of 2004 by Crosby, with regard to Crosby's interest in the Flash II that had been seized by the DEA.  Exhibit 4, at 2.

84. Shortly after being retained by Crosby, Atty. Kerner performed a Google search on November 5, 2004 for information about the Flash II.  Exhibit 4, at 3.

85. In response to that Google search, Atty. Kerner obtained an article from the Boston Globe dated October 14, 2004, which

stated that the Flash II had been seized by the DEA. Exhibit 4, at 4.

86. The article that Atty. Kerner located through the Google search further stated that the government was seeking to forfeit the Flash II, and the article contained a quote by U.S. Attorney Michael J. Sullivan regarding the importance of the "seizure and forfeiture of assets allegedly gained from drug proceeds." Exhibit 4, at 4.

87. The article further stated "If the government wins its forfeiture case, then it will probably sell the boat to the highest bidder," attributing the statement to U.S. Attorney Sullivan. Exhibit 4, at 5.

88. Atty. Kerner performed the same Google search on September 6, 2005, and again obtained this same Boston Globe article. Exhibit 4, at 6.

89. After Atty. Kerner read the Boston Globe article, he contacted the U.S. Attorney's Office and spoke with Assistant U.S. Attorney Shelbey Wright ("AUSA Wright"). Atty. Kerner told AUSA Wright that he represented an owner of the Flash II. Exhibit 4, at 7.

90. AUSA Wright took Kerner's name and address and Kerner's client's name, and she told Kerner that she would add his client's name to the notification list. Exhibit 4, at 8.

91. In due course, approximately February 14, 2005, Atty. Kerner received a copy of the Complaint and Warrant & Monition. Exhibit 4, at 9.

92. Lisa J. Talbot is a Paralegal Specialist in the Asset

Forfeiture Unit of the United States Attorney's Office for the District of Massachusetts.  Affidavit of Lisa J. Talbot ("Talbot"), attached as Exhibit 5, at 1.

93.  In approximately late June, 2005, Dr. Lane phoned the United States Attorney's office concerning the forfeiture of the Flash II.  The call was transferred to Talbot, and she spoke with Dr. Lane.  Exhibit 5, at 2.

94.  Dr. Lane told Talbot that he was part owner of the Flash II, and wanted to know what he could do to get his fair share of the proceeds of the sale of the Flash II, because he had heard that the Flash II was being forfeited and sold by the United States.  Exhibit 5, at 3.

95.  Talbot told Dr. Lane that the Court had entered a Notice of Default against anyone making a claim to the Flash II, and that the Flash II was being turned over to the United States for forfeiture, but if Dr. Lane thought that he had standing to contest the forfeiture, he should get find an attorney. Exhibit 5, at 4.

96.  Dr. Lane told Talbot that he didn't want to spend $5,000 for an attorney and not get anything in return.  Exhibit 5, at 5.

97.  Talbot explained that the Court had issued a Default, and asked why Dr. Lane hadn't come forward sooner to file a claim to the Flash II.  Exhibit 5, at 6.

98.  Dr. Lane told Talbot that he didn't come forward sooner because of two reasons:  1) He was going through the accreditation process at his new place of employment, and

didn't want them to know of his possible affiliation with a criminal (Ole Anderson); and, 2) Dr. Lane stated that he hadn't come forward sooner because he was under the impression that the Flash II would be donated to the Smithsonian when it was forfeited, and if the Flash II was going to be donated to the Smithsonian, Dr. Lane said that he would just let it go to the museum.  Exhibit 5, at 7.

99.  Dr. Lane explained to Talbot that since he had found out that the Flash II was going to be sold by the government after the forfeiture was finalized, he decided that he would come forward claiming an ownership interest in the Flash II, to see if he could get some of the proceeds from the sale of the Flash II.  Exhibit 5, at 8.

100. Talbot asked Dr. Lane if he had any concrete documentation indicating an ownership interest in the Flash II, i.e. title documents, etc., and Dr. Lane said that he did not.  Exhibit 5, at 9.

101. Talbot then again explained to Dr. Lane that if he truly felt that he had an ownership interest in the Flash II, he would need to get an attorney, as the Court would need documentation before it would consider his claim of ownership.  Exhibit 5, at 9.

102. Dr. Lane again indicated to Talbot that he didn't want to spend $5,000 for an attorney when he may not get anything in return.  Exhibit 5, at 10.

103. Dr. Lane then told Talbot that he had a hand written agreement on his personal stationary that he could send the

Court for verification that the Flash II belonged to him. Exhibit 5, at 10.

104. At that point, Talbot responded that she wasn't sure how credible the Court would find hand-written notes on Dr. Lane's personal stationary, and she again re-iterated that Dr. Lane should find an attorney if he wanted to pursue this issue.  Exhibit 5, at 11.

105. In Answers to Interrogatories, Kerry Lane testified that Ole Anderson phoned Dr. Lane or either October 13th, 14th, or 15th, 2004, and told Dr. Lane that the Flash II had been seized.  Claimant Kerry Scott Lane's Answers to the United States' First Set of Interrogatories, attached as Exhibit 6, at Int. No. 3.

106. Dr. Lane  testified that Ole Anderson kept saying that he had been "set up" and that the police were going to prosecute him again.  Dr. Lane's states that his attitude at that time was "I don't want to get involved in your problems."  Dr. Lane did not want Ole Anderson's to become Dr. Lane's problems.  Exhibit 6, at Int. No. 3.

107. Dr. Lane told Ole Anderson, during this same phone call, that Dr. Lane did not want his name in the press.  Dr. Lane also told Ole Anderson not to tell the police about Dr. Lane, because he did not want the police coming to Dr. Lane's new job asking questions while Dr. Lane was trying to get through the credentialing process.  Further, Dr. Lane said to Ole Anderson that he did not want the newspaper publicity connecting Dr. Lane's name to a drug dealer while

Dr. Lane's credentialing process was going on.  Exhibit 6, at Int. No. 3.

108. Dr. Lane states that he set up a Google alert that would keep him apprised of any legal action concerning the Flash II.  Exhibit 6, at Int. No. 5.

109. Lane now states that he first became aware of the potential for forfeiture after he told a childhood friend that the Flash II had been seized.  Exhibit 6, at Int. No. 6.  The friend, who had been on a drug task force, told Lane to act immediately, because the boat might be sold.  Id.  Lane called Marblehead Trading Company, and then called Marblehead's lawyer.  Marblehead's lawyer then faxed Lane the notice of default in the forfeiture case.  Id.

110. Previously, Lane filed an affidavit with the Court stating that he first learned of the forfeiture when he received an article from his "google alert."  Docket Entry 20-4 at ¶3.

111. Lane stated in that affidavit that after his phone call with Ole Anderson, he "immediately began searching on the internet for any information about what was going on."  Id.  He claimed he set up a Google alert and read through hundreds of search results and "found no references to the whereabouts of the boat." Id.  He stated that "Months passed with no word."  Id.  According to that affidavit, "The first I ever heard of a forfeiture case against the boat was an article from my Google alert in late June 2005. Immediately began looking for a lawyer and raising money for legal fees. On June 30 I contacted Marblehead, and their lawyer faxed me

the Notice of Default."  Id.

112. In a different affidavit, Lane stated that "In late June 2005, I learned for the first time through a newspaper article that the Sailboat was to be auctioned."  Docket Entry 17, at page 4, ¶16.

113. Dr. Lane states that in trying to locate the article that alerted him to the possibility that the Flash II would be forfeited, he searched his hard drive and was only able to find an e-mail from a girlfriend dated August 28, 2005, which had attached to it the October 13, 2004 Boston Globe article by Shelley Murphy.  Exhibit 6, at Int. No. 5.  He later refers to the email as having been dated September 28, 2005.  Exhibit 6, at Int. No. 10.

114. Dr. Lane stated that he expected Ole Anderson to contact him if any new developments occurred regarding the Flash II, as Ole Anderson had always been reliable in keeping Dr. Lane informed about matters relevant to the Flash II.  Exhibit 6, at Int. No. 7.

115. Dr. Lane confirmed that he had no contact with Ole Anderson after Ole Anderson's phone call to Dr. Lane in October, 2004.  Exhibit 6, at Int. No. 15.

116. Dr. Lane stated that he was not sure whether he had ever met or talked to Crosby.  Dr. Lane further stated that because Ole Anderson was the manager of the Flash II, everything went through Ole Anderson, and all of his communications were with Ole Anderson rather than the other investors.  Exhibit 6, at Int. No. 18.

117. Lane's Responses to Requests for Admissions, attached as Exhibit 7, state that he is not sure whether Ole Anderson told him that the DEA had seized the boat.

118. United Press International picked up the press release and included a story on its UPI News wire on October 14, 2004. Exhibit 8.

119. The UPI wire story noted that the Flash II had been owned by John F. Kennedy and was confiscated from Gregory "Ole" Anderson in the hope of auctioning it off to the highest bidder.  Exhibit 8.

120. The news wire included the quote from the U.S. Attorney stating that the "seizure and forfeiture of assets" from drug dealers is critical for deterrence.  The same article was included in the UPI "Quirks in the News" wire for October 16, 2004.  Exhibit 8.

121. The United States Attorney's Office issued a press release. The release is attached at Exhibit 9.

122. The feature article from the Boston Globe is attached as Exhibit 10.

Respectfully submitted,

MICHAEL J. SULLIVAN
United States Attorney

By:    /s/ Nancy Rue
Nancy Rue
Assistant U.S. Attorney
U. S. Attorney's Office
9200 J.Jos. Moakley U.S. Courthouse
1 Courthouse Way, Suite 9200
Boston, MA  02210

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

/s/ Nancy Rue
Nancy Rue
Assistant United States Attorney

Date:      January 4, 2007

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br><br>v.<br><br>ONE STAR CLASS SLOOP SAILBOAT<br>BUILT IN 1930 WITH HULL NUMBER 721,<br>NAMED "*FLASH II*," Defendant. | )<br>)<br>)<br>) Civil Action No.05-10192-WGY<br>)<br>)<br>)<br>) |

## AFFIDAVIT OF GREGG WILLOUGHBY

I, Gregg Willoughby, being duly sworn, depose and state as follows:

1.  Based on my investigation related to Gregory "Ole" Anderson, I understood that Ole Anderson had purchased the Flash II sailboat previously owned by John F. Kennedy, using drug proceeds.

2.  I interviewed the cooperating witness in an effort to understand whether anyone other than Ole Anderson had an ownership interest in the Flash II.

3.  The CW told me that Ole Anderson initially purchased the Flash II, and that the CW had invested cash in the Flash II at Ole Anderson's request.  The CW told me that another person had also invested in the Flash II.  That person was possibly a doctor or a dentist.

4.  Based on the information from the CW, I therefore understood that there had initially been three owners to the Flash II: Ole Anderson, the CW, and this unknown third person.

5.  Ole Anderson provided the CW with documentation showing that Ole Anderson had bought the Flash II from Ouida Ehler.  See Exhibit 1, attached [Bates 77-80].  Ehler had documentation

showing that he owned the boat and that it had previously been owned by John F. Kennedy. See Exhibit 2. [Bates 81-83]. Ole Anderson also provided a letter from Senator Edward M. Kennedy and an article describing Ole Anderson's restoration of the boat. See Exhibit 3 [Bates 84-86]. None of this documentation included the name of any purchaser or investor other than Ole Anderson.

6.  The CW told me that he had surrendered his interest in the Flash II to Ole Anderson after Ole Anderson was arrested on drug charges in 2001. Ole Anderson had been arrested while transporting 1200 pounds of marijuana partially owned by the CW. Ole Anderson threatened to expose the CW's role in the crime unless the CW provided him with funds. The CW paid Ole Anderson more than one hundred thousand dollars in cash and loans for his silence, and he also surrendered his interest in the Flash II.

7.  During the investigation, we arranged meetings and telephone calls between the CW and Ole Anderson which were consensually recorded. During the consensually recorded conversations, Ole Anderson confirmed his ownership of the Flash II, and he expressed interest in selling the boat.

8.  After we seized the Flash II, I undertook searches of commercial databases and the internet, looking for information about the Flash II. I also arranged for Lexis property databases to be searched. None of these searches provided any information about any additional owners of the Flash II beyond Ole Anderson.

9.   At the time of the seizure of the Flash II, I met with Ralph
     Anderson, the owner of Marblehead Trading Company.  Ralph
     Anderson is not related to Ole Anderson.  Marblehead had
     received the Flash II in 1996 and worked on it and stored it
     for extensive periods of time from then until its seizure in
     2004.

10.  During my conversation with Ralph Anderson, it was clear to
     me that he recognized Ole Anderson as the only owner of the
     Flash II.  When I introduced myself and explained that we
     were seizing the boat, he said "Poor Ole," and noted that
     Ole was always involved in some kind of scam.

11.  Ralph Anderson provided me with a contact address for Ole
     Anderson from his files.

12.  I knew from the CW that the Flash II had been put up for
     auction in the late 1990s.  I learned during the course of
     my database research that the auction had been undertaken by
     Guernsey's.  I contacted Arlan Ettinger, the President of
     Guernsey's, and arranged for him to appraise the Flash II.
     I talked with him about the auction of Kennedy memorabilia
     that the Flash II had been placed in in March of 1998.  Mr.
     Ettinger told me that during that auction, he had dealt
     exclusively with, and contracted with, Ole Anderson.

13.  After the seizure of the Flash II, I read an article in the
     Boston Globe by Shelley Murphy, noting that the boat was
     subject to forfeiture.  In the article, Ole Anderson was
     quoted as saying a doctor was the boat's primary owner, but
     that Anderson would not identify the doctor.

** 50·39Ad·Case 1:05-cv-10192-WGY    Document 41-2    Filed 01/04/2007    Page 11 of 21

14.    Sometime afterward, I learned from AUSA Shelbey Wright that
an individual had come forward regarding ownership of the
Flash II. AUSA Wright provided me with the individual's
name, Harry Crosby, for notification purposes.

15.    I had understood from my debriefing of the CW that there was
one other owner to the sailboat. When AUSA Wright told me
about the claim, I assumed that it meant that the other
owner had come forward. I knew that he would have to
provide documentation to prove his ownership. However,
determinations of the validity of claims are done, at least
initially, at the U.S. Attorney's Office, so I did not seek
information about the documentation.

16.    It never occurred to me to contact Harry Crosby and ask him
about other owners of the Flash II. I had never received
any indication that there was more than one unknown owner.
Therefore, it simply did not occur to me that Mr. Crosby
could provide information about "the doctor."

17.    I recently contacted the Massachusetts Board of Medicine to
determine when Lane's credentialing process had been
completed. Their records show the following: Dr. Kerry S.
Lane (Anesthesiologist) renewed his Massachusetts license on
5/21/05. They further advised me that the licenses are good
for 2 years and are renewed on the doctor's birthday.

                                                              1/4/07
Gregg A. Willoughby
Special Agent
Drug Enforcement Administration



I. S. C.    Y. R. A.

Cable — ISCYRA NewYork                                              51 East 42nd Street
Telephone MUrray Hill 2-3243                                    New York, N. Y. 10017 U. S. A.

ENCIRCLES THE GLOBE

# International  Star  Class  Yacht  Racing  Association

June 23rd 1964

Data on the J.F. Kennedy and J.P Kennedy Starboat built in 1930 #721

Builder owner H.B. Atkin Manhasset Bay Long Island New York.
Sailed by him in the WLIS fleet under the name of Jubilee.1930 -1933

Sold in 1934 to John F. Kennedy and Joseph P Kennedy of 294 Pondfield
Avenue Bronxville, New York, renamed "FLASH 11"

It was sailed jointly until 1940 in the  N.S. Fleet /

In 1940 John F. Kenneday was registered alone for this boat.

In 1942 it was sold to Millard Vanderward of Portland Maine. "Casco Bay" same name.

In 1948 sold to Ken Schwartz of Larchmont. names "Sabik". WLIS Fleet

In 1951 sold to R.A. Percoco of Mamaroneck. in the WLIS Fleet "Old Ironsides"

In 1956 sailed by R.A. Percoco in the Mid-Connectict Fleet.

Nothing was heard from this boat after 1959 until it was registered with
the Tampa bay fleet, in the name of D. William Ehler.   1964



GOVERNMENT
EXHIBIT

1

October,15, 1963

I, Edward C. Willis transfer
ownership of Star boat #721
with all gear, sails and rig-
ging, for the sum of $300.00,
to Don Ehler.

Also to include one mast blank.

Reciever                    Signer,

Don Ehler                   E.C. Willis

78

## BILL OF SALE AND GENERAL RELEASE

IN CONSIDERATION of ten and no/100th dollars ($10.00) and other good and valuable

consideration, receipt of which being hereby acknowledged, the undersigned does sell, bargain

and convey all right, title and interest in *Flash II*, #721, Star Craft sailing vessel, unto G. Olaf

Anderson, and further warrants title to same, dated this _2_ day of August 1996.

*Ouida M. Ehler*
Signature

*Ouida M. Ehler*
Printed Name

*Rt #4, Box 40990*
Address

*Monticello, Fl 32344*
City/State/Zip

## ACKNOWLEDGMENT

STATE OF FLORIDA            :

COUNTY OF Jefferson      :

Sworn to and subscribed before me by Ouida McClellan Ehler who is personally

known to me or who has produced Florida driver's license E460-713-29-713 as identification

this _02d_ day of August, 1996.

_____
Notary Public
State of Florida at Large
My commission expires:

ROBERT A. HARPER, JR
MY COMMISSION # CC428965 EXPIRES
February 3, 1999
BONDED THRU TROY FAIN INSURANCE

79



## International Star Class
Yacht Racing Association

1545 Waukegan Road
Glenview
Illinois 60025-2185
U.S.A.
Phone +1-847-729-0630
Fax +1-847-729-0718
E-mail: iscyra@interaccess.com

09 May 1997

Ole Anderson
718 South Lake Ave.
Delray Beach, FL    33483
USA

Dear Ole,

Enclosed, please find your 1997 ISCYRA membership card.

We have you registered as an isolated - boat owner member.

Your boat on record in our files is listed as #721.

Welcome to the STAR CLASS.

Best Regards,

*Carine C. Acks*

Carine C. Acks
Administrative Secretary

International Star Class Yacht
Racing Association

This card certifies
OLE ANDERSON

as a member of the ISCYRA for the year    1997

Fleet    Isolated

District    1

Type    ISOLATED    Yacht No.    721*

80

Originated 1911, Organized 1922

ORIGINATED 19__                                                      ORGANIZED 1922

I. S. C.  Y. R. A.

Cable — ISCYRA NewYork
Telephone MUrray Hill 2-3243

51 East 42nd Street
New York, N. Y. 10017 U. S. A.

ENCIRCLES THE GLOBE

# International Star Class Yacht Racing Association

June 23rd 1964

Mr Donald W. Ehler
1325 Terrace Road
Clearwater
Florida

Dear Mr Ehler

I was quite pleased to receive your letter at the Central
Office today inquiring about the Kennedy Starboat #721.

When I received my office copy of the log, I immediately
checked the yacht register, and a little later on I asked the Editor
of the Star Class if he thought the owners of #721 and #902 knew that
these boats used to belong to our former president, because if they
didn't then I thought that it might be a pleasant surprise to inform
them.

He assured me that they knew, because it was printed in
Starlights, but your boat until your application came in had not been
heard from since 1959.

We received a letter from the Library of Congress the other
day thanking us for the copy of the 1964 log., of course had things not
gone wrong with your fleet last year, from this end, you would have been
listed in the log. As you can see this is a certified boat, so that being
a member of a fleet, if you want a duplicate certificate, you can get one
for one dollar.

This original that we have is in the name of the first owner
and each successive owner gets a certificate in his own name, if he so
wishes.     Good luck with your boat Mr Ehler.

Sincerely yours

*Ethel E Horton*

Ethel E Horton
Corresponding Sec'y

ENC?

81



ORIGINATED 1911                                                                    ORGANIZED 1922

I. S. C.  Y. R. A.

Cable — ISCYRA NewYork                                    51 East 42nd Street
Telephone MUrray Hill 2-3243                              New York, N. Y. 10017 U. S. A.

ENCIRCLES THE GLOBE

# International Star Class Yacht Racing Association

Page 2   Donald W. Ehler

I might add that in 1932 John F. Kennedy and Joseph P. Kennedy had a
new Starboat built by Joseph Parkman.

It was named Flash and numbered #902 they only kept this boat until
1934, it was sold in 1935, but #721 was sailed by the President until
1941, sold in 1942 for the first time. one wonders why he sold the
newer boat and not the older one.

8 2

ORIGINATED 1911                                                                                      ORGANIZED 1922



I. S. C.  Y. R. A.

Cable — ISCYRA  NewYork                                              51 East 42nd Street
Telephone MUrray Hill 2-3243                                    New York, N. Y. 10017 U. S. A.

ENCIRCLES THE GLOBE

# International  Star  Class  Yacht  Racing  Association

October 22, 1966

Mr. D. William Ehler
1325 Terrace Road
Clearwater, Florida

Dear Mr. Ehler:

Recently the lawyer of the Kennedy family in Boston asked us for
information about Flash I, a Star once owned and sailed by the
late President Kennedy.  It seems that the boat was or is for
sale, and the Kennedy interests were considering buying it;  but
when we had to inform them that this was not the boat in which
John F. Kennedy had once created a sensation by winning a race of
the Atlantic Coast Championship by four minutes, they lost interest.

The boat they had reference to is, in fact, yours, as you doubtless
know.  If you bought No. 721 direct from Dick Fercoco, he doubtless
told you of its history.  In case you did not know it, I enclose
a copy of a Starlights of five years ago that re-tells the story.

I am writing to you merely for your information.  If you did ever
want to sell the boat, it might be hard to dispose of one so old;
but I think the Kennedys would be willing to consider buying it for
something near the market price at the time.  The lawyer's name is
Joseph Gargin, 53 State St., Boston, Mass.

Sincerely yours,

C. Stanley Ogilvy
Exec. Vice Pres.

83

EDWARD M. KENNEDY
MASSACHUSETTS

# United States Senate

WASHINGTON, DC 20510–2101

August 6, 1997

Mr. Ole Anderson
c/o Marblehead Trading Company
89 Front Street
Marblehead, MA 01945

Dear Mr. Anderson:

Thank you very much for your delightful and packet of information regarding your restoration of Flash II, Starboat #721, which belonged to my older borthers, Joe, Jr., and John. What an impressive project!

Due to the demands of my schedule in the Senate, as well as many long-standing engagements, it is difficult to schedule a time when I could stop by to meet you. I will keep your kind invitation to me pending, though, for sometime when I am in the Marblehead area. As a sailor myself, I would most certainly enjoy viewing the boat, whether at the Marblehead Trading Company, or after it is moved to the Museum of Yachting. I would like to offer my warmest regards to you, and thank you again for all of the information.

With my very best wishes,

Sincerely,

Edward M. Kennedy

2400 John F. Kennedy Federal Building
Government Center
Boston, MA 02203

84



# Splashes

## The Star worth more than $800,000

**S**ure, it's a classic. Star class hull No. 721. A proven winner. But t's not the pedigree of the boat that prompted its owner to turn down a aid of $800,000. It's the pedigree of a former owner that convinced Ole Anderson to hold out for his even-figure asking price.

*Flash II* was once owned and ailed by the late President John F. Kennedy. In his late teens and arly 20s, the future president took he helm and terrorized local clubs with skillful and aggressive racing.

The historic sloop was not lways such a pricey item. According to International Star Class Yacht Racing Association's ecords, the previous owner ought it for $300, having 10 idea it was once owned by Kennedy. Many years later, in eed of extensive epairs, it was sold o Anderson for

Anderson managed the restoraion project at the Marblehead Trading Co. in Marblehead, Massachusetts. Head shipwright Marshall Chapman and crew used



*Flash II* is an especially important piece of Kennedy history.

"There is hardly anything left from when he was a teenager," Anderson said. "For several years, this was the most important thing in his life."

"The famous sloop was included in a recent auction of Kennedy memorabilia in New York. The auction generated headlines because of the Kennedy family's strong objections to the sale of some deeply personal items once owned by the president. Though the boat was not part of that lot, it may have suffered by association.

"I was a little disappointed with the auction. I was uncomfortable," Anderson said. It was at that auction that Anderson

*Flash II owner Ole Anderson.*

prised to see JFK's *Flash II* at another auction sometime next year.    --Steve Myrick



*Star, hull No. 721, after restoration.*



Anch grind

**A** BC E anch Jennin spot on *Languag* the Balti stopove Whitbre Paul Ca shots as

attempt at a spe to suit t Whitbre back a

# Po of

**Navigat** persona Cape (b old na Whitbre resigned of se Whitbre Race. " been ve especia said in after his

period materials and techniques wherever possible. Anderson said he boat emerged in perfect condiion, 90 percent original. He said

refused the $800,000 bid. He hopes to display the boat this summer while looking to arrange a private sale. And don't be sur-

## Victory for sale

**H**ow much is it worth to know what can fail on a rig? When IVI's racing around the world in he professionally run Whitbread Round the World Race, which ended

Lawrie Smith, had suggested he could provide information on the critical failure point, but only for a price.

Salen said, "I spoke to Lawrie about it. He admitted it, and for a price, a considerable amount of money.

"Salen found it unseaman-like," said Paul Cayard, in response. "I really don't have it





FLASH II
on display
July 2000
n board
SV @ JOHN
Kennedy.
ving Boston
All Ships.

86

FROM LYONS Case 1:05-cv-10192-WGY    Document 41-3    Filed 01/04/2007  8:12AM  1:05-cv-10192 P  1
01/03/2007  12:58    6177200707                                                              PAGE  02

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA,            )
            Plaintiff,               )
                                     )
        v.                           ) Civil Action No.05-10192-WGY
                                     )
ONE STAR CLASS SLOOP SAILBOAT        )
BUILT IN 1930 WITH HULL NUMBER 721,  )
NAMED "*FLASH II*,"                  )
            Defendant.               )

## AFFIDAVIT OF HARRY E. CROSBY

I, Harry E. Crosby, being duly sworn, depose and state as follows:

1. I purchased an interest in a Star Class Sloop Sailboat Built in 1930 with Hull Number 721, named Flash II, (hereinafter "Flash II") in 1996.

2. I initially bought a one-quarter interest for $5,250. At the time I bought my interest, it was my understanding that Gregory "Ole" Anderson had purchased the Flash II at auction with my funds and funds belonging to Chuck Fitzgerald.

3. At some point, Chuck Fitzgerald sought to sell his interest in the Flash II. I invested another $5,000, which I understood brought my interest to one-third.

4. At about the same time Chuck Fitzgerald sought to sell his interest in the Flash II, I came to understand that a doctor who lived somewhere in Florida, whose name was Kerry Lane had also invested money in the Flash II.

5. I have met Kerry Lane only one time, at the unsuccessful auction of the Flash II by Guernseys in 1998. I do not know, and have never known, his address.

6.   Ole Anderson made all of the arrangements related to the
     1998 Guernseys auction.  It had always been understood by me
     that the Flash II was an investment, and that Ole Anderson
     was seeking to sell the Flash II.  Ole Anderson did all the
     paperwork for the 1998 auction.  As far as I ever knew, all
     documents related to the Flash II were exclusively in Ole
     Anderson's name.

7.   Ole Anderson turned down an offer for the Flash II that came
     out of the 1998 auction.  Ole Anderson did not consult with
     me in advance of rejecting the offer.  In my view, he had
     the right to do what he wanted as far as the Flash II went.

8.   Ole Anderson showed the Flash II at various times, in order
     to garner publicity so that the Flash II would get a greater
     price, and it was transported between Florida and
     Massachusetts for that purpose.

9.   I was not familiar with the Marblehead Trading Company.  I
     understood that Ole Anderson knew people in Massachusetts,
     and that is how he came to choose the storage place for the
     Flash II in Massachusetts.

10.  During the time that we owned the Flash II, Ole Anderson
     went to jail for drug activity.  This was in about 2001, and
     he was in jail for about a year.

11.  In approximately October 2004, Ole Anderson called me and
     told me the Flash II had been seized by the DEA.  It was my
     understanding that he called me either the day it happened
     or the day after.  Ole Anderson told me that he had been
     caught up in something with a DEA informant and that the DEA

FROM LYONS CASE 1:05-cv-10192-WGY   Document 41-3   Filed 01/04/2007 8:10 No. 6006364987 P 3
01/03/2007  12:58  6177200707                                            PAGE  04

had seized the boat.  He suggested I hire a lawyer.

12.  At the time of the initial telephone call from Ole Anderson
     about the DEA seizure, I was not familiar with forfeiture
     laws, and I did not understand the details of seizure versus
     forfeiture.  I understood from talking with Ole Anderson in
     that initial telephone call that the DEA had taken the Flash
     II, and that it was not coming back to me unless I got a
     lawyer to pursue it.  I also understood from Ole Anderson at
     the time of that initial telephone call that he was planning
     to leave the country in order to avoid pursuit by the DEA.
     He told me that he was going to call the doctor [Kerry Lane]
     and tell him about the seizure as well.

13.  Ole Anderson and I spoke several times over the next few
     days.  I had no trouble reaching him at that time.  During
     one of those conversations, Ole Anderson told me that he had
     spoken to the doctor and that the doctor did not want to be
     involved.  Ole Anderson told me that the doctor had a job
     interview where this was - referring to the DEA activity -
     was taking place, and that the doctor did not want anything
     to do with it.

14.  I contacted an attorney about the seizure of the Flash II
     based on the information I had from Ole Anderson.

15.  It is my understanding that my attorney filed a timely claim
     with the government on my behalf for my share of the Flash
     II.

January 3, 2007

Harry E. Crosby

Case 1:05-cv-10192-WGY    Document 41-3    Filed 01/04/2007    Page 4 of 6
11-17-04 08:16 FROM-LYONS PRINTING    863-983-2607    T-552 P02    F-016



MEMBER F.D.I.C.                    CLEWISTON

Current Date:        November 15, 2004

Account Number:      24104063
Capture Date:        July 01, 1996
Item Number:         99990000007021
Posted Date:         July 01, 1996
Posted Item Number:  7691930
Amount:              $5,250.00
Record Type:         Debit

SUBSTITUTE DOCUMENT
FIRST BANK OF CLEWISTON

DEBIT

Harry Crosby
24104063

C067003778C  0024 1040663  544 /00005250007

Case 1:05-cv-10192-WGY PRINT Document 41-3-260 Filed 01/04/2007 Page 5 of 6



Current Date:          November 15, 2004

Account Number:        111205490
Capture Date:          July 01, 1996
Item Number:           99990000006836
Posted Date:           July 01, 1996
Posted Item Number:    7690080
Amount:                $5,250.00
Record Type:           Credit

Date ___7-1-96___

Account _____ of Florida

| DESCRIPTION | AMOUNT |
|---|---|
| Wire — | |
| Rowell Rlty & Auction | |
| H.E. Crosby | |
| **TOTAL** | 5,250.00 |

Approved By

⑈0670037786⑈  01 112054590   903 ⑈0000525000⑈

617· 720 - 0707

107

Case 1:05-cv-10192-WGY    Document 41-3    Filed 01/04/2007    Page 6 of 6

11-17-'04 08:16  FROM-LYONS PRINTING       863 983-2607           T-652  P03    U-616

Page  5

```
:.................................................................:
: Domestic Wire Transfer            Date: 07/01/1996 Time: 10:08 AM :
:                                                                  :
:    Name                    ABA    Institution                    :
: ---------------------      ---------------------------------     :
: Orig: TUESDAY ORTEGA       063003778 First Bank of Clewiston      :
: Rcvr:                      000000000 GOLDMET                      :
:                                                                  :
: Re:                               Trace: 199607011009067003778001 :
:                                                                  :
: Verified by: TUESDAY ORTEGA                                      :
:..................................................................:
:                                                                  :
: Sender ABA: 063111594  Name: IBBF                                :
: Receiver ABA: 063100277 Name: NATIONS BANK                       :
:      City: TALLAHASSEE       State: FL                           :
:                                                                  :
: Type Code: 1000 - Transfer of Funds                              :
:                                                                  :
:      Amount: $    5,250.00    Reference Number:                  :
: Sending Info: ORE:H.C. CROSBY, JR. OGB:067003778 1ST BK CLEWISTON:
: Receiving Info: BNF=POWELL REALTY & AUCTION CO INC /AC-90612663 BB:
:               I=BTIR: OLE ANDERSON, MARK MANLY                   :
:                                                                  :
:                                                                  :
:                                                                  :
:                                                                  :
:   .s:                                                            :
:..................................................................:
```

::: Report Process Complete  :::

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br><br>v.<br><br>ONE STAR CLASS SLOOP SAILBOAT<br>BUILT IN 1939 WITH HULL NUMBER 721,<br>NAMED "*FLASH II*,"<br>Defendant. | )<br>)<br>)<br>)Civil Action No.05-10192-WGY<br>)<br>)<br>)<br>)<br>) |

### AFFIDAVIT OF RALPH ANDERSON

I, Ralph Anderson, being duly sworn, depose and state as follows:

1. I am the owner of Marblehead Trading Company.

2. In the fall of 1996, I received delivery of a Star Class Sloop Sailboat named Flash II, (hereinafter "Flash II"), from Gregory Anderson, commonly known as Ole Anderson.

3. Ole Anderson hired my company to restore the Flash II.

4. I performed a substantial amount of work on the Flash II to restore it. I sent the invoices for the work to Ole Anderson. Initially, I sent the invoices to Anderson directly. Later, I sent them to an attorney's office at Ole Anderson's request.

5. All invoices were eventually paid by Ole Anderson or his attorney, with the following exceptions: I also received payments from Viking Capital Investment, H.R. Crosby, and Blue Moon, Ltd.

6. I never received payment from Kerry Lane.

7. To my knowledge, Ole Anderson was the owner of the Flash II.

8. From 1996 until the Flash II was seized from my shipyard by

01/04/2007  14:40   7815310542         M'HEAD-TRAINING                                    PAGE  03
01/03/2006 Case: 1:05-cv-10192-WGY    Document 41-4    Filed 01/04/2007    Page 7 of 12   @003

the Drug Enforcement Administration (DEA) in October of
2004, I never dealt with anyone else claiming an ownership
interest in the Flash II.

9.    The attached documents are true and accurate copies of my
files regarding the Flash II.

10.   Prior to the seizure of the Flash II from my shipyard, I had
never heard of a doctor claiming an ownership interest in
the Flash II.

11.   I was present when the Flash II was seized from my shipyard
by the DEA. I talked with the DEA agent about Ole Anderson,
and I told him that Ole Anderson had told me that he had a
buyer lined up for the Flash II.

12.   I received a telephone call about the Flash II shortly after
the Flash II was seized from my shipyard. I do not remember
the exact date, but it was within about a month of the
seizure of the Flash II by the DEA. To the best of my
recollection, he did not give his name. The caller did not
want to be identified. He said he was a doctor, that he was
a part owner of the Flash II, and he asked where the boat
had been taken. I told him that the DEA had seized the
boat. I told him that he could call the DEA to find out
where the Flash II had been taken. He told me that he could
not call the DEA because he did not want them to know where
he was. He asked me more questions about the Flash II and I
again told him to call the DEA. He said he could not. I
told him the DEA had the boat, and he should call them if he
wanted more information.

13.  The caller did not leave me with any identifying information, but I told him who my lawyer was and his phone number.

14.  I had received documents from the Agents who seized the boat indicating who they were and how to contact them. However, the caller did not leave any way to contact him, so I could not forward this information on to him.

15.  At some point after the above telephone call, I received a copy of the notice regarding the forfeiture of the Flash II. I filed the documents in my file regarding the Flash II.

16.  I had no means to contact the person who called me regarding his claim of ownership in the Flash II.

17.  I have never known Dr. Kerry Scott Lane and I have never had dealings with anyone other than Ole Anderson regarding the Flash II.

Ralph Anderson

Date 12/05/2000  Time 11:35:08                    MARBLEHEAD TRADING COMPANY                    Report #0209   Page 0001

C A S H   H I S T O R Y   R E P O R T

Cash account: 1000-000  CASH MTC
For receipts dated from:   01/01/94 thru "Latest"
For customers: AND012 thru AND012
For cash not assigned to deposit only

| Receipt date | number | Customer name | Check number | Amount received | Credit A/R? | Reference/Bank note # | Journal number | Deposit number |
|---|---|---|---|---|---|---|---|---|
| 12/24/96 | AND012 | ANDERSON, OLE | 1768128 | 3,000.90 | Y | | CJ5859 | |
| 10/08/98 | AND012 | ANDERSON, OLE | 7958904 | 3,000.00 | Y | | CJ2306 | |
| 03/18/99 | AND012 | ANDERSON, OLE | WIRE 1 | 5,199.41 | Y | VIKING CAPITAL INVESTMENT | CJ1342 | |
| 03/18/99 | AND012 | ANDERSON, OLE | WIRE 1 | 8,199.41 | Y | | CJ1371 | |
| 03/18/99 | AND012 | ANDERSON, OLE | WIRE 1C | 5,199.41 | Y | REVERSE/WRONG AMOUNT | CJ1379 | |
| | | | Date total: | 8,199.41 | | | | |
| 03/19/99 | AND012 | ANDERSON, OLE | 102 | 3,300.00 | Y | | CJ1343 | |
| 03/16/00 | AND012 | ANDERSON, OLE | 466 | 400.00 | Y | | CJ6702 | |
| 10/12/00 | AND012 | ANDERSON, OLE | 475 | 255.10 | Y | | CJ7016 | |
| 01/18/21 | AND012 | ANDERSON, OLE | 490 | 250.00 | Y | | CJ7798 | |
| 03/26/01 | AND012 | ANDERSON, OLE | 507 | 257.50 | Y | | CJ8604 | |
| 03/07/02 | AND012 | ANDERSON, OLE | 532 | 500.00 | Y | | CJ1797 | |
| 10/18/03 | AND012 | ANDERSON, OLE | 560 | 500.00 | Y | | CJ7558 | |
| 03/31/04 | AND012 | ANDERSON, OLE | 6011886 | 600.00 | Y | | CJ8988 | |
| 04/05/04 | AND012 | ANDERSON, OLE | 6011886 | 0.00 | Y | CORRECT 3/31 DEPOSIT | CJ9032 | |
| 09/21/04 | AND012 | ANDERSON, OLE | * Cash * | 303.00 | Y | | CJ9870 | |
| 11/04/04 | AND012 | ANDERSON, OLE | 602 | 110.56 | Y | | CJ1306 | |
| | | | Grand total: | 20,681.57 | | | | |

-- End of report --

Date 12/05/2006  Time 11:35:21                MARBLEHEAD TRADING COMPANY                Report #0210   Page 0001

C A S H   H I S T O R Y   R E P O R T

Cash account: 1000-000  CASH MTC
For receipts dated from:   01/01/94 thru "Latest"
For customers: HAR017 thru HAR017
For cash not assigned to deposit only

| Receipt date | number | Customer name | Check number | Amount received | Credit A/RO | Reference/Bank route # | Journal number | Deposit number |
|---|---|---|---|---|---|---|---|---|
| 01/09/97 | HAR017 | HARPER, ROBT. A., LAW FRM | 1815445 | 3,000.00 | Y | | CJ5954 | |
| 02/03/97 | HAR017 | HARPER, ROBT. A., LAW FRM | * Cash * | 2,000.00 | Y | | CJ6124 | |
| 02/13/97 | HAR017 | HARPER, ROBT. A., LAW FRM | 6070 | 475.00 | Y | W. E. CROSBY CHECK | CJ6223 | |
| 02/13/97 | HAR017 | HARPER, ROBT. A., LAW FRM | XXY | 2,525.00 | Y | CK END. BY EDIE CROSBY | CJ6223 | |
| | | | Date total: | 3,000.00 | | | | |
| 03/06/97 | HAR017 | HARPER, ROBT. A., LAW FRM | 84255 | 2,500.00 | Y | BLUE MOON, LTD. | CJ6463 | |
| 03/06/97 | HAR017 | HARPER, ROBT. A., LAW FRM | 84256 | 2,500.00 | Y | BLUE MOON, LTD. | CJ6464 | |
| | | | Date total: | 5,000.00 | | | | |
| 05/14/98 | HAR017 | HARPER, ROBT. A., LAW FRM | 245 | 500.00 | Y | OLE ANDERSON CHECK | CJ0083 | |
| | | | Grand total: | 13,500.00 | | | | |

-- End of report --





QTY. | MATERIAL | PRICE | AMOUNT

Inv.

**MARBLEHEAD TRADING CO.**
89 Front Street
MARBLEHEAD, MA 01945-3201

(617) 639-0029
FAX (617) 631-0542

INVOICE NO.

TERMS

DESCRIPTION OF WORK | AMOUNT

TOTAL LABOR

TOTAL MATERIALS

TAX

PAY THIS AMOUNT →

'YARD IS NOT RESPONSIBLE FOR MAST HEAD GEAR''

the event that credit is extended by Marblehead Trading Co. the undersigned agrees as follows:

1. Payment for parts and service invoices is due 30 days from date of invoice.
2. Any account past due over 60 days will automatically be placed on C.O.D. and credit privileges withdrawn.
3. Pay reasonable attorney fee and court costs incurred in enforcing collection of the account.
4. Finance charges at a rate of 1% per month will be charged on amounts past due over 30 days.

I have read, understand and agree to the above terms.

\*\* Ǝᄃ˙ᄃᄃᕼᕽ ᕽᕼᄐᄃᄐ \*\*





U.S. Department of Justice

*Michael J. Sullivan*
*United States Attorney*
*District of Massachusetts*

---

*Main Reception (617) 748-3100*

*John Joseph Moakley United States Courthouse*
*1 Courthouse Way*
*Suite 9200*
*Boston, Massachusetts 02210*

October 15, 2004

Mr. Ralph Anderson
Marblehead Trading Company
89 Front Street
Marblehead, MA 01945

      Re:    Seizure of One Star Class Sloop Sailboat Named "Flash II"

Dear Mr. Anderson:

    I have been informed by agents of the United States Drug Enforcement Agency that, during the seizure of the above-refenced Sailboat, they discovered that the mast of the Sailboat was too fragile to transport. I understand that you have agreed to keep the mast in storage at your facility pending resolution of this forfeiture action.

    The United States accepts your offer to keep the Sailboat's mast in your secure custody and control; however, you are advised that the mast is considered to be under seizure pursuant to Title 21, United States Code, Section 853 and/or 881. It is not to be released to any person or entity absent an order of the United States District Court for the District of Massachusetts.

    If you have any questions regarding this matter, please do not hesitate to contact me at (617) 748-5364. Thank you for your assistance in this matter.

                 Very truly yours,

                 MICHAEL J. SULLIVAN
                 United States Attorney

        By:                   
            Shelbey D. Wright
            Assistant U.S. Attorney

cc    Special Agent Gregg Willoughby

Seizure Warrant

# United States District Court

### DISTRICT OF MASSACHUSETTS .

In the Matter of the Seizure of
(Address or other description of property or premises to be seized)

One Star Class Sloop Sailboat, with
Hull Number 721, Named "FLASH II", owned,
in whole or in part, by Gregory Olaf Anderson

## SEIZURE WARRANT

CASE NUMBER: 04M0482-RBC

TO: The United States Drug Enforcement Administration and any Authorized Officer of the
United States

Affidavit(s) having been made before me by Special Agent Gregg A. Willoughby who has reason to
Affiant

believe that in the _____ District of Massachusetts there is now certain
property which is subject to seizure, namely (describe the property to be seized):

One Star Class Sloop Sailboat, with Hull Number 721, Named "FLASH II",
owned, in whole or in part, by Gregory Olaf Anderson

I am satisfied that the affidavit(s) and any recorded testimony establish probable cause to believe that the property so
described is subject to seizure and that grounds exist for the issuance of this seizure warrant.

YOU ARE HEREBY COMMANDED to seize within 10 days the property specified, serving this warrant and making the seizure (in the
daytime—6:00 a.m. to 10:00 P.M.) (at any time in the day or night as I find reasonable cause has been established), leaving a
copy of this warrant and receipt for the property seized, and prepare a written inventory of the property seized and promptly
return this warrant to United States Magistrate Judge Robert B. Collings as required by
law.                                              U.S. Judge or Magistrate

October 5, 2004                                  at Boston, Massachusetts
Date and Time Issued                             City and State

Robert B. Collings,
United States Magistrate Judge
Name and Title of Judicial Officer               Signature of Judicial Officer

HON. ROBERT B. COLLINGS
UNITED STATES MAGISTRATE JUDGE
United States District Court
John Joseph Moakley United States Courthouse
1 Courthouse Way, Suite 6420
Boston, Massachusetts 02210

## RETURN

| DATE WARRANT RECEIVED | DATE AND TIME WARRANT EXECUTED | COPY OF WARRANT AND RECEIPT FOR ITEMS LEFT WITH |
|---|---|---|

INVENTORY MADE IN THE PRESENCE OF

INVENTORY OF PERSON OR PROPERTY TAKEN PURSUANT TO THE WARRANT

## CERTIFICATION

I SWEAR THAT THIS INVENTORY IS A TRUE AND DETAILED ACCOUNT OF THE PROPERTY SEIZED BY ME ON THE WARRANT.

SUBSCRIBED, SWORN TO, AND RETURNED BEFORE ME THIS DATE.

U.S. JUDGE OR MAGISTRATE                          DATE

**MARBLEHEAD TRADING CO.**
89 Front Street
MARBLEHEAD, MA 01945-3201

(617) 639-0029
FAX (617) 631-0542

INVOICE NO. 25085

| | | | |
|---|---|---|---|
| JOB PHONE | | | DATE OF ORDER |
| | | | 11/26/96 |
| JOB NAME, LOCATION | | | |
| | | | FLASH II |
| | | | #721 Starboat |
| PHONE | | | |
| 904 224-5000 | | | |
| ORDER TAKEN BY | | | |

TO: Robert A. Harper Law Firm, P.A.
325 West Park Ave.
Tallahassee, FL 32302-2132

Mr. Ole' Anderson    FAX " 224-9800

TERMS

DESCRIPTION OF WORK

Work to date rebuilding FLASH II

11-26-96 thru 12-20-96

NO TAX (Boat being shipped out of state.)

| | AMOUNT |
|---|---|
| TOTAL LABOR | 9805 50 |
| TOTAL MATERIALS | 1328 95 |
| TAX | |
| THANK YOU! PAY THIS AMOUNT ➔ | 9139 45 |
| Less deposit | -3000 00 |
| | 8139 45 |

WORK ORDERED BY

INTERFERED

DATE COMPLETED 12/30/96

SIGNATURE

---

QTY. | STOCK: | Inv. # T5349 | MATERIAL | PRICE | AMOUNT

Lumber (Cedar, Mahog, Pine)

Silicone Bnze Fasteners

| | MATERIAL | PRICE | AMOUNT |
|---|---|---|---|
| | B7736 | 177 | 12 |
| | B7736 | 88 | 52 |
| | B7758 | 46 | 19 |
| | B7767 | 44 | 49 |
| | B7777 | 52 | 46 |
| | less 20% | 408 | 78 |
| | | -81 | 76 |
| | | 327 | 02 |
| | | 836 | 93 |
| | | 163 | 00 |
| | | 1326 | 95 |

Less deposit

** YARD IS NOT RESPONSIBLE FOR MAST HEAD GEAR **

In the event that credit is extended by Marblehead Trading Co., the undersigned agrees as follows:

1. Payment for parts and service invoices is due 30 days from date of invoice.
2. Any account past due over 60 days will automatically be placed on C.O.D. and credit privileges withdrawn.
3. Pay reasonable attorney fee and court costs incurred in enforcing collection of the account.
4. Finance charges at a rate of 1% per month will be charged on amounts past due over 30 days.

I have read, understand and agree to the above terms.

SIGNATURE

CLIFF STREET

Invoice #    500559
Invoice Date  12/31/96

```
+--------------------------------+
| MARBLEHEAD TRADING CO.         |
|    89 FRONT STREET             |
| MARBLEHEAD, MA    01945        |
|                                |
|    (617) 631-4650              |
+--------------------------------+
```

Boat Name: STAR 27

To:  Anderson, Olie

Work Order # 500559
Mooring #
C/J:          0

Home Phone:  (0  ) 0  -0            Launch/Haul Date:  11/19/96
Work Phone:  (561) 278-3979         Launch/Haul:          0

*TERMS: PAYABLE UPON RECEIPT. Finance Chg. 1.5% per Month on Overdue Accounts

| CODE | DESCRIPTION | QTY | RATE | AMOUNT |
|------|-------------|-----|------|--------|
| — | Pick up boat at: | | | |
| — | | | | |
| — | West Palm Beach, FL | | | |
| — | | | | |
| — | | | | |
| — | Transport to: | | | |
| — | | | | |
| — | Marblehead, MA | | | |
| — | | | | |
| VOID | VOID   VOID   VOID   VOID   VOID | | | |
| — | Billed out at F. St. Inv. #25085 | | | |

** YARD IS NOT RESPONSIBLE FOR MAST HEAD GEAR **
** ALL WORK MUST BE PAID IN FULL BEFORE BOAT LEAVES YARD **

COMMENTS:                          TOTAL MATERIAL $
                                   TOTAL LABOR    $
                                   TOTAL TAX      $

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

```
UNITED STATES OF AMERICA,          )
              Plaintiff,           )
                                   )
            v.                     )Civil Action No.05-10192-WGY
                                   )
ONE STAR CLASS SLOOP SAILBOAT      )
BUILT IN 1930 WITH HULL NUMBER 721,)
NAMED "FLASH II,"                  )
              Defendant.           )
```

**AFFIDAVIT OF J. THOMAS KERNER**

I, J. Thomas Kerner, being duly sworn, depose and state as
follows:

1.   I am an attorney licensed to practice in Massachusetts.

2.   I was retained in the fall of 2004 by Harry E. Crosby, with
     regard to his interest in a Star Class Sloop Sailboat Built
     in 1930 with Hull Number 721, named Flash II, (hereinafter
     "Flash II") that had been seized by the DEA.

3.   Shortly after being retained by Crosby, I performed a Google
     search on November 5, 2004 for information about the Flash
     II.  I believe that I searched the term "John F. Kennedy
     Flash II."

4.   In response to that search, I obtained an article from the
     Boston Globe dated October 14, 2004, attached hereto as
     Exhibit 1, which stated that the Flash II had been seized by
     the DEA.  The article further stated that the government was
     seeking to forfeit the Flash II.  The article contained a
     quote by U.S. Attorney Michael J. Sullivan regarding the
     importance of the "seizure and forfeiture of assets
     allegedly gained from drug proceeds."  See Exhibit 1.

5.    The article further stated "If the government wins its
      forfeiture case, then it will probably sell the boat to the
      highest bidder," attributing the statement to U.S. Attorney
      Sullivan.   See Exhibit 1.

6.    I performed the same Google search on September 6, 2005, and
      again obtained this article.   See Exhibits 2 (the search)
      and 3 (the article).

7.    In November 2004, after I read the Boston Globe article
      (Exhibit 1), I contacted the U.S. Attorney's Office.   I
      spoke with Assistant U.S. Attorney Shelbey Wright and told
      her that I represented an owner of the Flash II.

8.    AUSA Wright took my name and address and my client's name,
      and she told me that she would add my client's name to the
      notification list.

9.    In due course, approximately February 14, 2005, I received a
      copy of the Complaint and Warrant & Monition.

J. Thomas Kerner  Digitally signed by J. Thomas Kerner
DN: CN = J. Thomas Kerner, C = US
Date: 2007.01.03 11:37:16 -05'00'

**J. Thomas Kerner**

**boston.com**

THIS STORY HAS BEEN FORMATTED FOR EASY PRINTING

# Agents seize JFK's old sailboat

The Boston Globe

By Shelley Murphy, Globe Staff  |  October 14, 2004

A 22-foot sailboat that a teenage John F. Kennedy raced in regattas off Cape Cod was seized yesterday by federal agents who allege that its current owner bought and refurbished it with marijuana profits.

The Flash II -- a Star Class sloop that the late president owned for six years and sold in 1942, before shipping out to the Pacific during World War II -- was hauled away from its storage spot at the Marblehead Trading Co. in Marblehead by agents from the US Drug Enforcement Administration.

"Crime doesn't pay," said US Attorney Michael J. Sullivan. "The seizure and forfeiture of assets allegedly gained from drug proceeds is critically important and sends a deterrent message to those who want to get involved in the illegal drug business."

If the government wins its forfeiture case, then it will probably sell the boat to the highest bidder, Sullivan said.

In 1998, the sloop drew an $800,000 offer during an auction of Kennedy memorabilia, but the owner turned it down, saying at the time that he hoped it would fetch up to $1.2 million.

In an affidavit released yesterday, the DEA asserted that Gregory "Ole" Anderson of Florida was the sole or primary owner of the Flash II and had bought and refurbished it with drug profits.

Anderson, who spent a year in an Arizona state prison for transporting marijuana, was contacted in February by a former drug-dealing associate who was secretly cooperating with the DEA and helped agents build a forfeiture case, according to the affidavit.

The drug dealer said that he gave Anderson between $12,000 and $15,000 toward refurbishing the boat and that Anderson used other money he obtained from transporting drugs.

But in a telephone interview last night, Anderson insisted that the boat's primary owner is a doctor, whom he would not identify, and that drug profits were never used to buy the boat or restore it.

Anderson said that after helping someone else buy the boat in 1996 for $18,500, he has invested years of "sweat equity" restoring the boat, with the understanding that he would get a percentage of the sale, possibly as much as a third. He said he was storing the boat in Marblehead so that he could sell it close to the boat's history.

"This boat has nothing to do with a mistake I made which I paid for," Anderson said, adding that the boat was bought long before his involvement in drugs.

"They do this and bring this up to put some sort of pallor over the name of the boat, which should not be, because it's a magnificent, historic artifact," he said.

Kennedy, then 17, and his older brother, Joe, bought the Olympic-style Star Class vessel in 1934. Two years later, Kennedy, a member of the Nantucket Sound Star Fleet, raced the boat to an Atlantic Coast Championship.

The boat -- built in 1930 on Long Island, N.Y. -- originally sold for about $900. Kennedy paid between $400 and $600 for it and sold it six years later for $300 to a man who owned it for 27 years before the 1996 sale.

*Shelley Murphy can be reached at smurphy@globe.com.* ∎

EXHIBIT
1



Web   Images   Groups   News   Froogle   Local   more »

John F. Kennedy Flash II        [ Search ]   Advanced Search
                                              Preferences

**Web**                         Results 1 - 10 of about 261,000 for John F. Kennedy Flash II. (0.28 seconds)

John F. Kennedy's Flash II
A sailboat John P Kennedy skippered in regattas off Cape Cod as a teenager is
... Restored to near mint condition, Flash II is a beauty, even without its ...
www.starclass.org/history/flashII.htm - 4k - Cached - Similar pages

> John F. Kennedy sailing Stars
> As reported in Starlights, April 1997, Star # 721, Flash II, was owned by Joseph P.
> and John F Kennedy from 1934 through 1941. It was built by its original ...
> www.starclass.org/history/kennedy.htm - 13k - Cached - Similar pages

Boston.com / News / Local / Mass. / Agents seize JFK's old sailboat
A 22-foot sailboat that a teenage John F. Kennedy raced in regattas off Cape Cod was
... The Flash II, bought by John F. Kennedy when he was 17 for between ...
www.boston.com/news/local/massachusetts/articles/2004/10/14/agents_seize_jfks_old_sailboat/ - 28k -
Cached - Similar pages

John F. Kennedy's boyhood sailing trophies
... Star Class Championship cup that he won in 1936 sailing his boat the Flash II.
and a smaller ... Trophy cup won by John F. Kennedy in sailboat competitions.
www.jfklibrary.org/jfk-manofsea-7.html - 5k - Cached - Similar pages

John F. Kennedy Jr.
Kennedy Jr. - the only son of President John F. Kennedy and Jacqueline ...
Ergo, if this witness saw a white flash up "in the sky" (as opposed to "on the ...
www.whatreallyhappened.com/RANCHO/CRASH/JFK_JR/upi.html - 11k - Cached - Similar pages

John F. Kennedy Space Center - Expendable Launch Vehicle and ...
John F. Kennedy Space Center Banner ... This afterglow phenomenon follows the
initial gamma-ray flash in most bursts and it can linger in X-ray light, ...
www-pao.ksc.nasa.gov/kscpao/ status/paylstat/2004/nov/11-10-04p.htm - 30k - Cached - Similar pages

> John F. Kennedy Space Center - Expendable Launch Vehicle and ...
> John F. Kennedy Space Center Banner ... Testing of the guidance system aboard
> the Boeing Delta II rocket was completed Wednesday, Oct. 20. ...
> www-pao.ksc.nasa.gov/kscpao/ status/paylstat/2004/oct/10-21-04p.htm - 26k - Cached - Similar pages

The JFK Sale: Maine Antique Digest, May 1998
The biggest disappointment was the failure of the sailboat Flash II. ... A bronze
cast of the head of John F. Kennedy by Robert Berks, a study for the ...
www.maineantiquedigest.com/articles/jfk0598.htm - 17k - Cached - Similar pages

Synchroncpiracy II: The Montauk Nexus
The Deaths of John F. Kennedy Junior, his wife Carolyn and sister in law Lauren was
... Things would start to disappear without a trace in a flash of light. ...
www.clydelewis.com/dis/nexus/nexus.html - 19k - Cached - Similar pages

Robert F. Kennedy: Biography and Much More From Answers.com
... Kennedy                    II. ...
Soon after President John F. Kennedy's assassination, Robert Kennedy had his ...


EXHIBIT
2

Result Page:    2  3  4  5  6  7  8  9 10



THIS STORY HAS BEEN FORMATTED FOR EASY PRINTING

# Agents seize JFK's old sailboat

The Boston Globe

**By Shelley Murphy, Globe Staff  |  October 14, 2004**

A 22-foot sailboat that a teenage John F. Kennedy raced in regattas off Cape Cod was seized yesterday by federal agents who allege that its current owner bought and refurbished it with marijuana profits.

The Flash II -- a Star Class sloop that the late president owned for six years and sold in 1942, before shipping out to the Pacific during World War II -- was hauled away from its storage spot at the Marblehead Trading Co. in Marblehead by agents from the US Drug Enforcement Administration.

"Crime doesn't pay," said US Attorney Michael J. Sullivan. "The seizure and forfeiture of assets allegedly gained from drug proceeds is critically important and sends a deterrent message to those who want to get involved in the illegal drug business."

If the government wins its forfeiture case, then it will probably sell the boat to the highest bidder, Sullivan said.

In 1998, the sloop drew an $800,000 offer during an auction of Kennedy memorabilia, but the owner turned it down, saying at the time that he hoped it would fetch up to $1.2 million.

In an affidavit released yesterday, the DEA asserted that Gregory "Ole" Anderson of Florida was the sole or primary owner of the Flash II and had bought and refurbished it with drug profits.

Anderson, who spent a year in an Arizona state prison for transporting marijuana, was contacted in February by a former drug-dealing associate who was secretly cooperating with the DEA and helped agents build a forfeiture case, according to the affidavit.

The drug dealer said that he gave Anderson between $12,000 and $15,000 toward refurbishing the boat and that Anderson used other money he obtained from transporting drugs.

But in a telephone interview last night, Anderson insisted that the boat's primary owner is a doctor, whom he would not identify, and that drug profits were never used to buy the boat or restore it.

Anderson said that after helping someone else buy the boat in 1996 for $18,500, he has invested years of "sweat equity" restoring the boat, with the understanding that he would get a percentage of the sale, possibly as much as a third. He said he was storing the boat in Marblehead so that he could sell it close to the boat's history.

"This boat has nothing to do with a mistake I made which I paid for," Anderson said, adding that the boat was bought long before his involvement in drugs.

"They do this and bring this up to put some sort of pallor over the name of the boat, which should not be, because it's a magnificent, historic artifact," he said.

Kennedy, then 17, and his older brother, Joe, bought the Olympic-style Star Class vessel in 1934. Two years later, Kennedy, a member of the Nantucket Sound Star Fleet, raced the boat to an Atlantic Coast Championship.

The boat -- built in 1930 on Long Island, N.Y. -- originally sold for about $900. Kennedy paid between $400

Case 1:05-cv-10192-WGY   Document 41-6   Filed 01/04/2007   Page 1 of 3

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br><br>v.<br>ONE STAR CLASS SLOOP SAILBOAT<br>BUILT IN 1930 WITH HULL NUMBER 721,<br>NAMED "*FLASH II*,"<br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) | )Civil Action No.05-10192-RWZ ) |

**AFFIDAVIT OF PARALEGAL SPECIALIST LISA J. TALBOT**

I, Lisa J. Talbot, state under oath as follows:

1.   I am Paralegal Specialist in the Asset Forfeiture Unit
of the United State Attorney's Office for the District of
Massachusetts.  I have worked in the Asset Forfeiture Unit since
July, 1998.

2.   In approximately late June, 2005, Dr. Kerry Lane ("Dr.
Lane") phoned the United States Attorney's office concerning the
forfeiture of One Star Class Sloop Sailboat Built in 1930 with
Hull Number 721, Named "*Flash II*" (the "Sailboat").  The call was
transferred to me, and I spoke with him.

3.   Dr. Lane told me that he was part owner of the Sailboat,
and wanted to know what he could do to get his fair share of the
proceeds of the sale of the Sailboat, because he had heard that
the Sailboat was being forfeited and sold by the United States.

4.   I told him that the Court had entered a Notice of
Default against anyone making a claim to the Sailboat, and that
the Sailboat was being turned over to the United States for
forfeiture, but if he thought that he had standing to contest the

Case 1:05-cv-10192-WGY    Document 41-6    Filed 01/04/2007    Page 2 of 3

forfeiture, he should get find an attorney.

5.    Dr. Lane told me that he didn't want to spend $5,000 for an attorney and not get anything in return.

6.    I explained that the Court had issued a Default, and asked why Dr. Lane hadn't come forward sooner to file a claim to the Sailboat.

7.    Dr. Lane told me that he didn't come forward sooner because of two reasons:  1)  He was going through the accreditation process at (I believe Fall River Hospital) his new place of employment, and didn't want them to know of his possible affiliation with a criminal (Ole Anderson); and  2) Dr. Lane stated that he hadn't come forward sooner because he was under the impression that the Sailboat would be donated to the Smithsonian when it was forfeited, and if the Sailboat was going to be donated to the Smithsonian, Dr. Lane said that he would just let it go to the museum.

8.    Dr. Lane went on to explain that since he had found out that the Sailboat was going to be sold by the government after the forfeiture was finalized, he decided that he would come forward claiming an ownership interest in the Sailboat, to see if he could get some of the proceeds from the sale of the Sailboat.

9.    I asked Dr. Lane if he had any concrete documentation indicating an ownership interest in the Sailboat, i.e. title documents, etc., and Dr. Lane said that he did not.  I again

Case 1:05-cv-10192-WGY   Document 41-6   Filed 01/04/2007   Page 3 of 3

explained to Dr. Lane that if he truly felt that he had an ownership interest in the Sailboat, he would need to get an attorney, as the Court had already issued a Notice of Default in this case, and would need documentation before it would consider his claim of ownership.

10.   Dr. Lane balked at the suggestion of getting an attorney, again indicating that he didn't want to spend $5,000 for an attorney when he may not get anything in return.  He also told me that he had a hand written agreement on his personal stationary that he could send the Court for verification that the Sailboat belongs to him.

11.   At that point I responded that I wasn't sure how credible the Court would find hand-written notes on his personal stationary, and I again re-iterated that he needed to find an attorney if he wanted to pursue this issue.  Dr. Lane then agreed to look into getting an attorney and the conversation ended.

Signed under the pains and penalties of perjury this 22nd day of December, 2006.

/s/ Lisa J. Talbot
Lisa J. Talbot
Paralegal Specialist
United States Attorney's Office
District of Massachusetts

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA,

          Plaintiff,

    v.

ONE STAR CLASS SLOOP SAILBOAT
BUILT IN 1930 WITH HULL NUMBER
721, NAMED "FLASH II",

          Defendant.

Civil Action # 05-10192 RWZ

KERRY SCOTT LANE, M.D.

          Claimant.

## CLAIMANT KERRY SCOTT LANE'S ANSWERS TO THE UNITED STATES' FIRST SET OF INTERROGATORIES

*INTERROGATORY NO. 1:*
*Provide the following information about yourself:*
*(a) full name;*
*(b) marital status;*
*(c) if married, the identity of your spouse;*
*(d) if divorced, the date of the judgment of divorce and case number.*

ANSWER: Kerry Scott Lane MD, a single man, never married.

*INTERROGATORY NO. 2:*
*Identify any person with knowledge of the ownership, at any time from 1996 to July 27, 2005, of the Flash II.*

ANSWER: Persons with knowledge of ownership of Flash II: Ann Kleinrichert, my then

girlfriend, who also invested in the Flash II; Donna Bickmeyer Hoffner, (the woman who

introduced me to Mr. Anderson);  my brother Jeffrey Lane R.Ph.;  my mother Peggy Welch RN;

my brother Robert Haarde;  my sister Lisa Scarpa;  all my Colleagues at Delray Medical Center

numbering in the hundreds (Drs. Colletta, Klein, Wideroff, Motta, Keusch, Buchalter, Ross,

Cohen, Owitz, et al);  Sailorman of Ft. Lauderdale-Chuck Fitzgerald;  Attorney Robert A. Harper,

who represented "the consortium" of owners in Flash II with regards to the 1998 auction;

employees at Marblehead Trading Company;  co-investor Eddie Crosby;  my accountant Vincent

Morrelli;  Ann Wattlington;  my lawyer Donald Dowling Esq.;  my yardman Will Sasser;  Jeff Teitz

(legislative aide to Senator Kennedy) - to name a few.  I also wrote a letter to John Kennedy Jr. in

an effort to interest him in our venture.

### INTERROGATORY NO. 3:
*Describe every communication between you (or any agent or employee) and Gregory "Ole"*
*Anderson (or any agent or employee of Gregory "Ole" Anderson) from October 2004 to July 27,*
*2005, and for each communication:*
*(a) state the date of the communication;*
*(b) state whether the communication was oral or written;*
*(c) describe in detail the substance of the communication;*
*(d) identify any parties to the communication;*
*(e) identify any persons present during any part of the communication;*
*(f) identify the place(s) of the communication; and*
*(g) identify any documents concerning any part of the communication.*

ANSWER:  Ole Anderson called me at 7 a.m. on either October 13th, 14th or 15th, 2004 and told

me that the sailboat had been seized, but I did not understand the significance of that statement.  I

did not know about the asset forfeiture laws, and it did not occur to me that this seizure could

affect my ownership interest in the boat.  The phone call woke me up and I was too groggy and

startled by his call to ask Ole the significance of the seizure.  During that call Ole did not say

anything about forfeiture.  He was very upset.  He kept saying he had been "set up" and that the

2

police were going to prosecute him again, which would be double jeopardy. Basically my attitude was "I don't want to get involved in your problems." I did not want his problems to become my problems. It did not occur to me that his legal problems could affect my ownership interest in the sailboat. He said he was going talk to the newspaper, or had gone to the newspaper about it, and I told him I don't want my name in the press. I told him not to tell the police about me – at that time – because I did not want the police coming to my new job asking questions while I was trying to get through the credentialing process. I also did not want the newspaper publicity connecting my name to a drug dealer while my credentialing process was going on. A few weeks later, the credentialing process ended and after that it would not have bothered me if Anderson told the police about my interest in the sailboat. I told Anderson to keep me posted on any further developments, and expected him to do that. He had always been good about communicating with me about any matters affecting the boat. He may have called me back again that day or the next day, but I'm not sure. After that I never heard from him again, and could not reach him after that. There were no documents associated with this conversation. There were no other parties to the conversation.

### *INTERROGATORY NO. 4:*

*Describe in full every communication between you (or any agent or employee) and Harry Crosby (or any agent or employee of Harry Crosby from October 2004 to July 27, 2005, on any subject and for each communication:*
*(a) state the date of the communication;*
*(b) state whether the communication was oral or written;*
*(c) describe in detail the substance of the communication;*
*(d) identify any parties to the communication;*
*(e) identify any persons present during any part of the communication;*
*(f) identify the place(s) of the communication; and*
*(g) identify any documents concerning any part of the communication.*

3

12/09/2Case 1:05-cv-10192-WGY    Document 41-7 BREFiled 01/04/2007SQ  Page 4 of 13  PAGE  05

ANSWER: I do not specifically recall if I spoke to Crosby at all during that period. I recall speaking to Crosby's attorney Thomas Kerner by telephone during the week of June 27 to July 1, 2005. No one else was on the call. I may have talked to Kerner about the court documents Marblehead's attorney faxed me [Doc. Req. pp. 31-33] if I talked to Kerner after I got them.

## INTERROGATORY NO. 5:
*Describe any actions undertaken by you from October 2004 to July 27, 2005, to determine the whereabouts of the Flash II, and for each action:*
*(a) state the date(s) on which you took such action;*
*(b) describe in detail the action taken;*
*(c) identify any persons with knowledge of each action; and*
*(d) identify any documents concerning such action.*

ANSWER: Sometime after Flash was seized I contacted the Kennedy Library in Dorchester by phone and spoke with the Assistant Curator. Anderson had told me in his October 2004 phone call that he thought the seizure was a 'setup' and 'they' planned to put the Flash II in the Kennedy Library. I was curious so I called the Kennedy Library and I was given strange answers. I asked the curator at length if they would take the boat on loan while I retained ownership. I was told after several calls they had no room inside for *Victura,* another Kennedy boat, so it seemed it would not be a place for a second boat. I don't know the dates or the names of the people I spoke to there. There were no associated documents.

I set up a Google alert thinking that would keep me apprised of any legal action. That Google alert turned up numerous articles about unrelated topics, but none about the Flash II until late June 2005 - if then. In trying to locate the article that alerted me to the possibility the boat would be forfeited, I searched my hard drive and was only able to find an email from a girlfriend dated August 28, 2005, which had attached to it the October 13, 2004 Boston Globe article by Shelley Murphy.

4

In the week of June 27 to July 1, 2005, after my friend told me that the seizure of the boat might lead to a forfeiture of my interest in the sailboat, I contacted Marblehead, Marblehead's lawyer Kenneth Lindauer, Thomas Kerner, and Lisa Talbot at the U.S. Attorney's Office. Kenneth Lindauer faxed me some court documents [Doc. Req. pp. 31-33], and consulted several attorneys in the attempt to find a Boston lawyer experienced in forfeiture defense. After failing to find an experienced forfeiture attorney, I hired Eric Goldberg, and we filed a motion to vacate the default.

### INTERROGATORY NO. 6:

*Describe any actions undertaken by you from October 2004 to July 27, 2005, to determine what would happen to the Flash II as a result of its seizure by DEA, and for each action:*
*(a) state the date(s) on which you took such action;*
*(b) describe in detail the action taken;*
*(c) identify any persons with knowledge of each action; and*
*(d) identify any documents concerning such action.*

ANSWER: See 5 above. I set up a Google alert, but it did not turn up any articles about the seizure of the boat until late June 2005 (at the earliest).

During the week of June 19-26, 2005, I spent the week in Philadelphia and New Jersey. While there, on Saturday June 25, 2005, I met with my oldest childhood friend, Inspector Richard Heathwood of the New York State Police who has been with the Joint DEA, New York State Police and NYPD drug task force since about 1985. I told him that Flash II had been seized. He urged me to act immediately, warning me that the boat might be sold if I did not act quickly. I was not familiar with the forfeiture process before that. On Monday June 27 I called Marblehead and they referred me to their lawyer, Kenneth Lindauer, who faxed me the notice of default in the forfeiture case on July 1, 2005. I also called Thomas Kerner, then several lawyers, then Lisa Talbott at the U.S. Attorney's Office on Friday July 1, 2005. I told Lisa Talbot that I was the doctor mentioned in the

5

Case 1:05-cv-10192-WGY    Document 41-7    Filed 01/04/2007    Page 6 of 13

complaint who was the primary investor in the sailboat, she told me that she was a paralegal and

couldn't give me any legal advice and that I would have to hire a lawyer.

### INTERROGATORY NO. 7:

*Explain what you thought, believed or understood would happen to the Flash II, based on the seizure referred to in paragraph 12 of your July 27, 2005 Affidavit, prior to the time that you learned in June 2005 that the Flash II would be auctioned. If that belief or understanding changed over the period described above, explain how and why it changed.*

ANSWER:  I thought the government might have seized the sailboat as evidence in the criminal

case Ole Anderson believed they were about to file against him. At the time I did not know that

innocent owners' property could be taken in a forfeiture case. I had never heard of "forfeiture" in

the context of the taking of property by the government.

I expected Ole Anderson to contact me if any new developments occurred regarding the

sailboat. He had always been reliable in keeping me informed about matters relevant to the Flash

II.  I also expected the Google alert I had set up would turn up any new developments.

### INTERROGATORY NO. 8:

*If you have ever been involved in any legal action, whether civil or criminal, as a plaintiff, defendant, or witness, provide for each such action:*
*(a) a description of the nature of the action;*
*(b) the identity of the court where the action was, or is pending;*
*(c) the caption or title of such action; and*
*(d) the docket number of such action.*

ANSWER: I was the defendant in a Medical Malpractice Case in Palm Beach County, Florida,

*Gisela Taitel v. Delray Medical Center et al.* It settled in January 2004, and the case was sealed. I

was also involved in a case settled in the mid 1990s, *Brennan v. Delray Medical Center.* It also

settled and the case was sealed. I don't know the docket numbers.

6

12/09/2006se 01:05-cv-10192-WGY    Document 41-7 BREFiled-04/04/2007SQ  Page 7 of 13   PAGE  08

*INTERROGATORY NO. 9:*
*Describe the ownership of the Flash II from 1996 through and including July 27, 2005, including without limitation:*

*(a) the identities of any persons whom you allege had an ownership interest in the Flash II during the relevant time period;*

*(b) a full description of any alleged transfer of ownership interest that occurred during the relevant time period, including the date of any such transfer, the identities of any parties to any such transfer, and the amount of consideration paid in connection with any such transfer;*

*(c) the identity of any person with knowledge of the ownership of the Flash II during the relevant time period;*

*(d) the identity of any document regarding any alleged ownership interest in the Flash II during the relevant time period.*

ANSWER: I was the primary owner of Flash II. I purchased my interest on July 12, 1996 from

Chuck Fitzgerald, who retained a 1% interest. At that time, the only other members of the

"consortium" that owned the sailboat were Ole Anderson (who invested sweat equity only) and

Eddie Crosby. We then had the vessel delivered to my home [See photo at Doc. Req. p. 12.]. I

provided shelter to the vessel and underwrote, to the best of my knowledge, all the costs of

restoration and storage from then on. In December 1997, we were planning on placing the restored

boat up for auction, and Ole Anderson compiled a handwritten agreement listing all of the people

who would be compensated from the proceeds of sale if the boat sold at auction, and how much each

would be paid. I did not know the other people on the list, but I believe most of them were not co-

owners but people with mechanics lien. The relevant documents are at Doc. Req. pp. 1-30.

*INTERROGATORY NO. 10:*
*Describe the newspaper article through which you learned that the Flash II was to be auctioned, including the date, the newspaper, and the edition.*

ANSWER: I don't recollect whether the article said the Flash II was to be auctioned, or whether it

said the government was or would be pursuing a forfeiture action against the sailboat. I am not

7

12/09/2006 01:05  Case 1:05-cv-10192-WGY    Document 41-7    Filed 01/04/2007    Page 8 of 13   PAGE  09

certain what this article was, and at this point my recollection is very hazy.  I had originally thought it was an article published in June 2005, but I was not able to find an article published then.  In looking on my hard drive, I found a copy of the Shelley Murphy article published in the Boston Globe dated October 13, 2004, on my hard drive, as an attachment to an email sent to me by a friend on September 28, 2005. [Due to a malfunction in my computer, I was not able to print this document or send it to my attorney in time to include it in the document production, but I will supplement it once I get my computer working right again.] That is the only copy of the article I could find on my hard drive.  I am not even certain that this is the article I was thinking of.

*INTERROGATORY NO. 11:*
*Describe the circumstances under which you came to view the newspaper article referenced in Interrogatory No. 12.*

ANSWER: I read it on-line.  I don't know if I got it through the Google alert I had set up, or if I ran a Google search for all articles about the Flash II, or if a friend emailed it to me.

*INTERROGATORY NO. 12:*
*Identify the "then girlfriend" with whom you traveled in Summer of 1996, according to paragraph 3 of your Affidavit of July 27, 2005.*

ANSWER:  Ann Kleinrichert, as in Interrogatory 1 above.

*INTERROGATORY NO. 13:*
*Identify the "mutual acquaintance" through whom you met Gregory "Ole" Anderson, according to your Affidavit of July 27, 2005.*

ANSWER: Donna Bickmeyer Hoffner, as in Interrogatory #1 above.

*INTERROGATORY NO. 14:*
*Describe any communications you had concerning your alleged ownership interest in the Flash II between October 2004 and July 27, 2005, and for each communication:*
*(a) state the date of the communication;*

8

*(b) state whether the communication was oral or written;*
*(c) describe in detail the substance of the communication;*
*(d) identify any parties to the communication;*
*(e) identify any persons present during any part of the communication;*
*(f) identify the place(s) of the communication; and*
*(g) identify any documents concerning any part of the communication.*

ANSWER:

Ole Anderson called me at 7 a.m. on either October 13th, 14th or 15th, 2004 and told me that the sailboat had been seized, but I did not understand the significance of that statement. I did not know about the asset forfeiture laws, and it did not occur to me that this seizure could affect my ownership interest in the boat. The phone call woke me up and I was too groggy and startled by his call to ask Ole the significance of the seizure. During that call Ole did not say anything about forfeiture. He was very upset. He kept saying he had been "set up" and that the police were going to prosecute him again, which would be double jeopardy. Basically my attitude was "I don't want to get involved in your problems." I did not want his problems to become my problems. It did not occur to me that his legal problems could affect my ownership interest in the sailboat. He said he was going talk to the newspaper, or had gone to the newspaper about it, and I told him I don't want my name in the press. I told him not to tell the police about me – at that time – because I did not want the police coming to my new job asking questions while I was trying to get through the credentialing process. I also did not want the newspaper publicity connecting my name to a drug dealer while my credentialing process was going on. A few weeks later, the credentialing process ended and after that it would not have bothered me if Anderson told the police about my interest in the sailboat. I told Anderson to keep me posted on any further developments, and expected him to do that. He had always been good about communicating with me about any matters affecting the boat. I never heard

9

12/09/2005 Case 1:05-cv-10192-WGY    Document 41-7    Filed 01/04/2007    Page 10 of 13    PAGE    11

from him again, and could not reach him after that because his phone was disconnected. There were no documents associated with this conversation.

As I explained in answer to interrogatory number 6, on June 25, 2005, I discussed my ownership of the boat and the seizure with my friend Richard Heathwood, and on June 27 I called Marblehead. Between June 27 and July 1, I also called Thomas Kerner and the U.S. Attorney's Office. See interrogatory 6.

I don't know the dates of most of these conversations, but I also discussed my ownership interest in the boat with the Kennedy Library, Mystic Seaport, Senator Kennedy's Aide in DC-Jeffrey Teitz, a woman banker at Fall River- Bank of America (Main Street and Route 6) Braga Bridge; the State of Florida, Tallahassee (seeking to secure title) and possibly others (friends).

### INTERROGATORY NO. 15:
*Describe every business transaction of any kind between yourself and Gregory "Ole" Anderson prior to July 27, 2005, including without limitation:*
*(a) the date of the transaction;*
*(b) the nature of the transaction;*
*(c) the identity of any parties to the transaction;*
*(d) the identity of any persons with knowledge of the transaction;*
*(e) the identify of any documents concerning the transaction.*

ANSWER:    In connection with the joint ownership of Flash II, I was involved in dozens of transactions with Anderson between 1996 and 2005. See the canceled checks at Doc. Req. pp. 17-26.

In approximately 1999, on Ole Anderson's suggestion, I invested in a software company called Wiznet, but my transaction was directly with the owner, Safwat Fahmy.

I had no contact with Anderson after his phone call in October, 2004.

10

*INTERROGATORY NO. 16:*

*Describe any communication between yourself and Harry Crosby prior to July 27, 2005, and for each communication:*

*(a) state the date of the communication;*

*(b) state whether the communication was oral or written;*

*(c) describe in detail the substance of the communication;*

*(d) identify any parties to the communication;*

*(e) identify any persons present during any part of the communication;*

*(f) identify the place(s) of the communication; and*

*(g) identify any documents concerning any part of the communication.*

ANSWER: I believe Crosby was one of the people Ole Anderson brought with him to the auction

in 1998, but I'm not sure. If so, we had conversations about the boat and auction, but I do not recall

what was said. If not, I cannot recall if I ever spoke to Crosby at all. I believe I only spoke to Crosby

through Kerner.

*INTERROGATORY NO. 17:*

*Describe any communication between yourself and Gary Milo prior to July 27, 2005, and for each communication:*

*(a) state the date of the communication;*

*(b) state whether the communication was oral or written;*

*(c) describe in detail the substance of the communication;*

*(d) identify any parties to the communication;*

*(e) identify any persons present during any part of the communication;*

*(f) identify the place(s) of the communication; and*

*(g) identify any documents concerning any part of the communication.*

ANSWER: I do not know if I ever met or spoke to Gary Milo. There were several persons at the

auction in NYC in 1998 whom I did not know. Milo may have been there. If he was there Anderson

kept me in the dark as to his identity.

*INTERROGATORY NO. 18:*

*Other than the items described previously, describe every interaction of any kind that occurred between 1996 and July 27, 2005 between yourself and any other person whom you believe or*

Case 1:05-cv-10192-WGY   Document 41-7   Filed 01/04/2007   Page 12 of 13

*believed had an ownership interest in the Flash II, and for each interaction:*
*(a) state the date of the interaction;*
*(b) state whether the interaction was oral or written;*
*(c) describe in detail the substance of the interaction;*
*(d) identify any parties to the interaction;*
*(e) identify any persons present during any part of the interaction;*
*(f) identify the place(s) of the communication; and*
*(g) identify any documents concerning any part of the interaction.*

OBJECTION: Overbroad.

ANSWER: I had numerous conversations with Ole Anderson during that period – too many to recall. We spoke on the phone and in person in Florida. I do not recall the dates or other specifics about the conversations. Documents we would have discussed included the letter from Senator Kennedy, documents filed in our attempt to get a title for the boat,

As I said above, I am not sure whether I ever met or talked to Crosby or any of the other people listed on the handwritten contract (other than Marblehead). Because Ole Anderson was the manager of the Flash II, everything went through him, and all of my communications were with him rather than the other investors.

### *INTERROGATORY NO. 19:*
*Identify any person who assisted you in preparing answers to any these Interrogatories or the United States' Request for the Production of Documents, or who provided any information in connection with preparing answers to any of these Interrogatories, or whose files and/or documents were reviewed for the purpose of gathering or identifying documents potentially responsive to these Interrogatories or the United States' Request for the Production of Documents, and specify the information supplied by each such person.*

ANSWER: My attorney Brenda Grantland assisted me in preparing answers to these interrogatories.

## Verification

I, Kerry Scott Lane, M.D., declare under penalty of perjury under the laws of the United States

and the state of Florida that the foregoing answers are true and correct.

Dated: 12/8/2006                            _Kerry Scott Lane MD_
                                            KERRY SCOTT LANE, M.D.

## CERTIFICATE OF SERVICE

This is to certify that a true copy of the above document was served upon counsel for the
government, by email, as well as first class mail, postage prepaid, on this date.
                                    FAX

Dated: 12-8- 2006                    /s/ Brenda Grantland
                                     BRENDA GRANTLAND

13

Case 1:05-cv-10192-WGY    Document 41-8    Filed 01/04/2007    Page 1 of 3

12/09/2005  01:02  4153015105    Case 1:05-cv-10192-WGY    Document 41-8    Filed 01/04/2007    Page 1 of 3    BRENDA GRANT AND CSP    PAGE   15

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA,

        Plaintiff,

        v.

ONE STAR CLASS SLOOP SAILBOAT
BUILT IN 1930 WITH HULL NUMBER
721, NAMED "FLASH II",

        Defendant.

KERRY SCOTT LANE, M.D.

        Claimant.

Civil Action # 05-10192 RWZ

## CLAIMANT KERRY SCOTT LANE'S ANSWERS TO THE UNITED STATES' REQUEST FOR ADMISSIONS

REQUEST NO. 1:

On or before July 1, 2005, you telephoned the United States Attorney's Office for the District of Massachusetts regarding your claim of ownership of the Flash II.

ANSWER: Admitted.

REQUEST NO. 2:

On or before July 1, 2005, you telephoned attorney J. Thomas Kerner regarding your claim of ownership of the Flash II.

ANSWER: Admitted.

REQUEST NO. 3:  Prior to July 1, 2005, you knew that the United States Drug Enforcement Administration had seized the Flash II in October 2004.

ANSWER: I am not sure Ole Anderson told me that the DEA had seized it, but on October 13, 14 or 15, 2004, he told me it had been seized. Between June 27 and July 1, 2005, I

1

12/09/2005 Case 1:05-cv-10192-WGY    Document 41-8    Filed 01/04/2007    Page 2 of 3
DEC-08-2006  13:50    BRENDA GRANTLAND ESQ    8818347    PAGE 16

learned about the forfeiture case.

REQUEST NO. 4:

Prior to July 1, 2005, you knew that the United States had instituted forfeiture proceedings against the Flash II.

ANSWER: I learned about the forfeiture case for the first time between June 27 and July 1, 2005.

REQUEST NO. 5:

You did not file a claim in the civil forfeiture proceeding prior to July 2005 because you believed the Flash II would go to a museum.

ANSWER: Absolutely false.

REQUEST NO. 6:

You did not file a claim in the civil forfeiture proceeding prior to July 2005 because you were undergoing accreditation at a hospital.

ANSWER: False. I was only undergoing the accreditation process between October and December 2004. The forfeiture action was not even filed then.

REQUEST NO. 7.

In a telephone call with someone at the U.S. Attorney's Office prior to July 27, 2005, you said that you thought the Flash II was going to go to the Smithsonian.

OBJECTION: Vague and irrelevant.

ANSWER: I may have mentioned the Smithsonian or another museum as a possible purchaser of the boat.

**Verification**

I, Kerry Scott Lane, M.D., declare under penalty of perjury under the laws of the United States and the state of Florida that the foregoing answers are true and correct.

Dated:

2

Case 1:05-cv-10192-WGY     Document 41-8     Filed 01/04/2007     Page 3 of 3

Respectfully submitted,

_____ /s/ Brenda Grantland _____
Brenda Grantland, Esq.
Law Office of Brenda Grantland
20 Sunnyside Suite A-204
Mill Valley, CA 94941
(415) 380-9108
Pro hac vice

## CERTIFICATE OF SERVICE

This is to certify that a true copy of the above document was served upon counsel for the

government, by email, as well as ~~first class mail, postage prepaid,~~ fax on this date.

Dated: December 8, 2006                          /s/ Brenda Grantland
                                                 BRENDA GRANTLAND

3

Westlaw.                                                                   **News**Room

10/14/04 UPINEWS 20:50:48                                                  Page 1


10/14/04 UPI News 20:50:48

UPI News
Copyright 2004 Copyright 2004 by United Press International.

October 14, 2004

JFK   sailboat   seized by DEA


MARBLEHEAD, Mass., Oct 14, 2004 (United Press International via COMTEX) --Federal
agents seized a   sailboat   once owned by John F.   Kennedy   as a teenager, accusing
the current owner of having bought and restored it with drug money.

U.S. Drug Enforcement Administration agents Wednesday hauled The Flash II, a Star
Class sloop   Kennedy   sold in 1942, out of it storage space at the Marblehead
Trading Co. in Marblehead, Mass., confiscating it from Gregory "Ole" Anderson of
Florida in the hopes of auctioning it off to the highest bidder, the Boston Globe
reported.

"Crime doesn't pay. The seizure and forfeiture of assets allegedly gained from drug
proceeds is critically important and sends a deterrent message to those who want to
get involved in the illegal drug business," said U.S. Attorney Michael J. Sullivan.

The DEA's affidavit said an informant and former drug dealer contacted Anderson in
February and gave him between $12,000 and $15,000 to refurbish the sailboat.

Anderson was convicted of an earlier marijuana-transportation charge for which he
served one year in an Arizona state prison.

---- INDEX REFERENCES ----

REGION:   (USA (1US73); Americas (1AM92); North America (1NO39))

Language:   EN

OTHER INDEXING:   (DEA; JFK; MARBLEHEAD TRADING CO; US DRUG ENFORCEMENT
ADMINISTRATION)   (Anderson; John F. Kennedy; Kennedy; Michael J. Sullivan; Press
International)

KEYWORDS: arizona; business; crime; dealer; federal; florida; money

Word Count: 219
10/14/04 UPINEWS 20:50:48

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

10/14/04 UPINEWS 20:50:48                                        Page 2


END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.                                                              **News**Room

10/16/04 UPIQUIRKSN 00:00:00                                          Page 1


10/16/04 UPI Quirks News 00:00:00

UPI Quirks in the News
Copyright 2004 United Press International

October 16, 2004

Jockstrip: The world as we know it

United Press International

BEREA, Ohio, Oct. 14 (UPI) -- Cincinnati Bengals wide receiver Chad Johnson sent
some Cleveland Browns bottles of Pepto Bismol to soothe their stomachs before
Sunday's big game.

Each of Cleveland's four defensive backs got a package from Johnson, WEWS-TV,
Clevland, reported Thursday.

One of the recipients, cornerback Daylon McCutcheon, said he got a good laugh out of
the prank but "some of the guys are taking it personal," WEWS said.

"But I think for the most part, he is not an in-your-face guy," he told the TV
news. "He just likes to have fun. He enjoys playing football. He's a jokester."

In reality, both teams are probably a littel queasy at this point.

The Browns, 2-3, are coming off a 34-23 loss to Pittsburgh. Cincinnati, 1-3, had
last weekend off, but also fell to the Steelers, 28-17, two weeks ago.

The intrastate rivals kick off at 1 p.m. at Cleveland Browns Stadium.

ERUSALEM, Oct. 14 (UPI) -- Crocodiles -- the African kind that can grow to 23 feet
-- may be Israel's next threat, brought on by its own citizens because of their love
for the man-eaters.

Experts say thieves peddling crocodile eggs have sold hundreds of them to animal
lovers who may be forced to abandon them in Israel's waterways when the crocs no
longer fit the family fishpond or develop a liking for tasty human flesh.

Even when they are young, these crocs can tear off a human's arm with ease, reports
Sky News.

"It is a race against time," said Amnon Nachmias, a parks authority spokesman.
"These crocodiles grow to a size that is dangerous to a man within three years.
After a year they can bite off a hand."

So far wildlife officials have found 10 crocodiles in raids on apartments in central
Israel where the baby reptiles were found swimming in bathtubs and sinks.

"The concern is they will enter fresh water lakes and rivers where they will be a
threat to people and to the environment," Nachmias said.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

10/16/04 UPIQUIRKSN 00:00:00                                          Page 2

It was the Romans who brought the crocs to Israel some 2,000 years ago for gladiator fights.

WESTCHESTER, N.Y., Oct. 14 (UPI) -- New York Attorney General Eliot Spitzer charged the Westchester company behind TV ads selling "2004 Freedom Tower Silver Dollar" coins with fraud.

Spitzer charged National Collector's Mint of Port Chester aims to "profit from a national tragedy" by getting TV viewers to pay $19.05 for medallions it says were produced from silver discovered in a vault below Ground Zero and has obtained a restraining order terminating their sale, the New York Post reported.

 "This product has been promoted with claims that are false, misleading or unsubstantiated. It is a shameless attempt to profit from a national tragedy," Spitzer said, adding that the company's claim to have recovered Ground Zero silver is untrue.

 "Our many repeat customers demonstrate the quality of our products and the integrity of our company. We stand by the accuracy of the statements in our marketing for the 2004 Freedom Tower Silver Dollar. Our efforts in marketing 9/11 commemorative items have already enabled us to donate over $1.5 million to various official Sept. 11-related charities," the company replied in a statement.

MARBLEHEAD, Mass., Oct. 14 (UPI) -- Federal agents seized a sailboat once owned by John F. Kennedy as a teenager, accusing the current owner of having bought and restored it with drug money.

U.S. Drug Enforcement Administration agents Wednesday hauled The Flash II, a Star Class sloop Kennedy sold in 1942, out of it storage space at the Marblehead Trading Co. in Marblehead, Mass., confiscating it from Gregory "Ole" Anderson of Florida in the hopes of auctioning it off to the highest bidder, the Boston Globe reported.

 "Crime doesn't pay. The seizure and forfeiture of assets allegedly gained from drug proceeds is critically important and sends a deterrent message to those who want to get involved in the illegal drug business," said U.S. Attorney Michael J. Sullivan.

The DEA's affidavit said an informant and former drug dealer contacted Anderson in February and gave him between $12,000 and $15,000 to refurbish the sailboat.

Anderson was convicted of an earlier marijuana-transportation charge for which he served one year in an Arizona state prison.

                            ---- INDEX REFERENCES ----

INDUSTRY:  (Entertainment (1EN08); Sports (1SP75); Gen Y Entertainment (1GE14); Gen Y TV (1GE33); U.S. Football (0AA68))

REGION:  (Middle East (1MI23); USA (1US73); Americas (1AM92); Ohio (1OH35); North America (1NO39); New York (1NE72); Israel (1IS16); Mediterranean (1ME20))

Language:  EN

OTHER INDEXING:  (AFRICAN; BROWNS; CLEVLAND; DEA; FREEDOM TOWER SILVER DOLLAR; JFK; MARBLEHEAD TRADING CO; NATIONAL COLLECTORS MINT; NEW YORK POST; TV; US DRUG

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

10/16/04 UPIQUIRKSN 00:00:00                                            Page 3

ENFORCEMENT ADMINISTRATION)  (Amnon Nachmias; Anderson; Daylon McCutcheon; Eliot
Spitzer; John F. Kennedy; Kennedy; Michael J. Sullivan; Nachmias; Spitzer)

KEYWORDS:  (11006002);  (15003001);  (08003002);  (08003004);  (01016000);
(02004000);  (04016000);  (15003000);  (02001000);  (08001000);  (08002000);
(08003000)

Word Count: 859
10/16/04 UPIQUIRKSN 00:00:00


END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.



**U.S. Department of Justice**

*Michael J. Sullivan*
*United States Attorney*
*District of Massachusetts*

*Press Office: (617) 748-3139*

*John Joseph Moakley United States Courthouse*
*1 Courthouse Way*
*Suite 9200*
*Boston, Massachusetts 02210*
October 13, 2004

PRESS RELEASE

### U.S. ATTORNEY AND DEA MOVE TO SEIZE SAILBOAT
### FORMERLY OWNED BY PRESIDENT KENNEDY

Boston, MA... Special Agents from the DEA executed a federal Seizure Warrant today for the Star Class Sloop Sailboat once owned by President John F. Kennedy, alleging that the boat was purchased by its present owner with proceeds from marijuana distribution.

United States Attorney Michael J. Sullivan and Mark R. Trouville, Special Agent in Charge of the U.S. Drug Enforcement Administration in New England, announced today that a civil Seizure Warrant was executed in Marblehead where the sailboat has been stored.

According to an affidavit filed in support of the Seizure Warrant, it is alleged that the *Flash II*, a Star Class Sloop Sailboat built in 1930, once owned by President Kennedy, and currently owned by Gregory Olaf Anderson, constitutes property derived from proceeds Anderson obtained as the result of narcotics distribution and is therefore subject to federal forfeiture.

It is alleged that a DEA-led investigation begun in February, 2004, gained information from a cooperating witness ("CW") concerning large-scale marijuana trafficking in Massachusetts. The CW stated that in the past he/she had obtained large amounts of marijuana from suppliers in Arizona and Texas which were transported to Massachusetts for distribution.

It is alleged that CW came to know Anderson through Anderson's brother to whom the CW had supplied wholesale quantities of marijuana in the past. It is alleged that Anderson had long been involved in the smuggling of marijuana and that sometime in 1996 used proceeds from his marijuana trafficking to purchase the sailboat that President Kennedy had once used in sailing races off of Hyannis. The Olympic class sailboat was purchased by President Kennedy and his brother Joe Kennedy in 1934. President Kennedy sold the boat in 1942 just before shipping out to the Pacific theater during World War II. It is alleged that, at Anderson's request, the CW invested $12,000 to $15,000 to cover the purchase price and materials to repair the sailboat. It is alleged that a second unknown individual also invested a similar amount of money. According to the affidavit Anderson intended to refurbish the sailboat and sell it for a

significant profit, (as much as $1 to $1.2 million), based on its association with President Kennedy and its historical value. According to the affidavit the CW and the second investor were each to receive 20% of the profit.

According to the affidavit, sometime in 2001 the CW hired Anderson to be a transporter of marijuana from Arizona to Massachusetts; paying Anderson between $40,000 to $50,000 per load delivered. In 2001, Anderson was arrested and ultimately sentenced to serve a year and a half in Arizona state prison for a conviction relating to transporting approximately 1,300 pounds of the CW's marijuana. It is alleged that in exchange for Anderson "keeping silent" about the CW's role in the marijuana distribution, the CW agreed to give up his 20% stake in the Kennedy sailboat as well as give Anderson another $40,000 and pay for his legal representation.

It is alleged that after serving the Arizona state prison sentence, Anderson contacted the CW to discuss starting up another marijuana trafficking business. It is alleged that in subsequent conversations and as recently as September of this year, Anderson stated that he was preparing to take the Kennedy sailboat out of storage in Marblehead to ready it for sale.

The investigation is continuing.

The case is being investigated by members of the U.S. Drug Enforcement Administration's Cross Borders Initiative Task Force in Lowell, Massachusetts, including the Massachusetts State Police, the Haverhill Police Department, the Salem, New Hampshire Police Department and the Essex County Sheriff's Department. The case is being handled by Shelbey D. Wright, Chief of Sullivan's Asset Forfeiture Unit.

Press Contact: Samantha Martin, (617) 748-3139

ton ·

to tell
v coun-
·hy
win the

isn't
ingo is
ly peo-
security
e United
ig those
night.
:, so I
Carlos
ince
for the
ne team
ent us."
he city's
accord-
: Domini-
pper
5, Page B6

:d

ig

, unaware of
officials said.
:he communi-
tts that have
permission to
ind opt out of
quire trains to
es for at least
every street-
ossing. That
tle was sound-
ter train ap-
i, according to
s on the acci-
·ral Railroad
id the Massa-
ınsportation

io was working
action project
said he heard
immediately
train.
EVERLY, Page B8

the company.
"The inattentiveness can't be tolerat-
ed, but, secondly, the employee that
filmed the senior reactor operator did
not immediately report the potential
**PILGRIM NUCLEAR, Page B8**


AP FILE PHOTO

**The Flash II, bought by John
F. Kennedy when he was 17
for between $400 and $600.**

# Agents seize JFK's old sailboat

### By Shelley Murphy
GLOBE STAFF

A 22-foot sailboat that a teen-
age John F. Kennedy raced in re-
gattas off Cape Cod was seized
yesterday by federal agents who
allege that its current owner
bought and refurbished it with
marijuana profits.

The Flash II — a Star Class
sloop that the late president
owned for six years and sold in
1942, before shipping out to the
Pacific during World War II —
was hauled away from its storage
spot at the Marblehead Trading
**SAILBOAT, Page B7**

ıııııııııııııııııııııııııııııııııııııııııııııııııı

**Writings condemned**
The Islamic Society of Boston
distances itself from a trustee and
treasurer accused of publishing
anti-Semitic articles. **B3**

THE BOSTON GLOBE

**City & Region** B7

# Drug agents seize JFK's old sailboat

► SAILBOAT
Continued from Page B1

Co. in Marblehead by agents from the US Drug Enforcement Administration.

"Crime doesn't pay," said US Attorney Michael J. Sullivan. "The seizure and forfeiture of assets allegedly gained from drug proceeds is critically important and sends a deterrent message to those who want to get involved in the illegal drug business."

If the government wins its forfeiture case, then it will probably sell the boat to the highest bidder, Sullivan said.

In 1998, the sloop drew an $800,000 offer during an auction of Kennedy memorabilia, but the owner turned it down, saying at the time that he hoped it would fetch up to $1.2 million.

In an affidavit released yesterday, the DEA asserted that Gregory "Ole" Anderson of Florida was the sole or primary owner of the Flash II and had bought and refurbished it with drug profits.

Anderson, who spent a year in an Arizona state prison for transporting marijuana, was contacted in February by a former drug-dealing associate who was secretly cooperating with the DEA and helped agents build a forfeiture case, according to the affidavit.

The drug dealer said that he gave Anderson between $12,000 and $15,000 toward refurbishing the boat and that Anderson used other money he obtained from transporting drugs.

But in a telephone interview last night, Anderson insisted that the boat's primary owner is a doctor, whom he would not identify,

and that drug profits were never used to buy the boat or restore it.

Anderson said that after helping someone else buy the boat in 1996 for $18,500, he has invested years of "sweat equity" restoring the boat, with the understanding that he would get a percentage of the sale, possibly as much as a third. He said he was storing the boat in Marblehead so that he could sell it close to the boat's history.

"This boat has nothing to do with a mistake I made which I paid for," Anderson said, adding

that the boat was bought long before his involvement in drugs.

"They do this and bring this up to put some sort of pallor over the name of the boat, which should not be, because it's a magnificent, historic artifact," he said.

Kennedy, then 17, and his older brother, Joe, bought the Olympic-style Star Class vessel in 1934. Two years later, Kennedy, a member of the Nantucket Sound

Star Fleet, raced the boat to an Atlantic Coast Championship.

The boat — built in 1930 on Long Island, N.Y. — originally sold for about $900. Kennedy paid between $400 and $600 for it and sold it six years later for $300 to a man who owned it for 27 years before the 1996 sale.

*Shelley Murphy can be reached at smurphy@globe.com.*



