```
                    UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF MASSACHUSETTS


UNITED STATES OF AMERICA,        )
          Plaintiff,             )
                                 )
          v.                     )Civil Action No.05-10192-WGY
                                 )
ONE STAR CLASS SLOOP SAILBOAT    )
BUILT IN 1930 WITH HULL NUMBER 721,)
NAMED "FLASH II,"                )
          Defendant.             )
```

**GOVERNMENT'S MEMORANDUM IN OPPOSITION TO RELIEF FROM DEFAULT**

The question on remand is whether Kerry Scott Lane is entitled to relief from the default judgment entered in this civil forfeiture action in February 2005.  Whether Lane is entitled to relief pursuant to Fed.R.Civ.P. 60(b) is dependent on whether "plainly indicated and easily accomplished efforts, undertaken with reasonable diligence during the relevant time frame, would have led the government to Lane."  United States v. One Star Class Sloop Sailboat, 458 F.3d 16, 25 (1st Cir. 2006).  The government respectfully submits that the answer to that question is no.  Moreover, Lane cannot demonstrate that he is entitled to the "extraordinary" relief of Rule 60(b).

## FACTS

The majority of facts in this case are undisputed.  During the course of a criminal investigation of marijuana distribution in Massachusetts, the government received information from a cooperating witness ("CW") that a potential target of the investigation, Gregory Olaf "Ole" Anderson, owned a sailboat,

known as the "Flash II," that had once belonged to John F. Kennedy. Statement of Facts, filed herewith at Docket Entry 41 ("Facts"), at ¶ 1. The CW stated that he had been an owner of the Flash II with Ole Anderson until Ole Anderson was arrested on drug charges in 2001. Facts at ¶3, ¶10. At that time, Ole Anderson had threatened to expose the CW's involvement in the drug activities. <u>Id.</u> at ¶11. The CW paid Ole Anderson more than one hundred thousand dollars to keep him silent. Facts at ¶12. As part of the deal, the CW also surrendered his interest in the Flash II to Anderson. <u>Id.</u>

The government debriefed the CW regarding the purchase of the Flash II. <u>Id</u>. at ¶2. The CW stated that in addition to himself and Ole Anderson, there was another owner, possibly a doctor or a dentist. <u>Id</u>. at ¶4. The CW did not know anything more about the other owner. The DEA then arranged meetings and telephone calls between the CW and Ole Anderson that were consensually recorded. <u>Id</u>. at ¶13. During these conversations, Ole Anderson confirmed his ownership of the Flash II. <u>Id</u>. at ¶14.

Ultimately, at the close of the investigation, the DEA sought a seizure warrant for the Flash II, on the grounds that the boat constituted proceeds of drug crimes, and therefore was subject to seizure and forfeiture to the United States. <u>See</u> Application, 04M-0482, RBC. Judge Collings issued the warrant, and the DEA seized the Flash II from Marblehead Trading Company

2

in Marblehead, Massachusetts, where it was stored.  Facts, at ¶18, 60, 68 & 70.  At the time of seizure, the DEA provided Ralph Anderson, who as the owner of Marblehead Trading Company was the bailee of the Flash II, with a copy of the seizure warrant.  Id. at ¶70.  Shortly after the boat was seized, the U.S. Attorney's Office issued a press release, Id. at 121, and the Boston Globe printed a story about the DEA's seizure of the Flash II.  Id. at ¶85, ¶122. The feature story included a photograph of the Flash II, id. at 122, and a quote from the U.S. Attorney. Id. In that article, the U.S. Attorney was specifically quoted as saying that forfeiture of the Flash II was being pursued, and if the proceedings were successful, the boat would be sold at auction.  Id.

United Press International picked up the press release and included a story on its UPI News wire on October 14, 2004.  Id. at ¶118.  The UPI wire story noted that the Flash II had been owned by John F. Kennedy and was confiscated from Gregory "Ole" Anderson in the hope of auctioning it off to the highest bidder.  Id. at 119.  The news wire included the quote from the U.S. Attorney stating that the "seizure and forfeiture of assets" from drug dealers is critical for deterrence.  Id. at ¶120.  The same article was included in the UPI "Quirks in the News" wire for October 16, 2004.  Id.

Subsequent to the publication of these articles, Harry Crosby came forward, through attorney Thomas Kerner, to claim an

3

ownership interest in the boat.  Id. at ¶31,¶32,¶89.

Crosby had been told by Ole Anderson that the sailboat had been seized by the DEA.  Id. at ¶52. He contacted attorney Kerner, who performed a simple Google search for information about the "John F. Kennedy Flash II."  Id. at ¶¶84-89.  That search produced the Boston Globe article described above.  Id. Kerner contact the U.S. Attorney's Office to note his client's claim.  Id. at ¶89.

Meanwhile, the DEA case agent sought information about the value of the Flash II in order to determine the method for the forfeiture proceedings.[1]  Id. at ¶¶15-16. Special Agent Gregg Willoughby undertook searches of commercial databases and the internet, looking for information about the Flash II.  Id.  He also arranged for Lexis property databases to be searched.  None of these searches provided any information about any additional owners of the Flash II beyond Ole Anderson.  Id. at ¶17.

In February 2005, the government filed a civil complaint for forfeiture of the Flash II, and this Court (Zobel, D.J.) issued a Warrant and Monition, finding probable cause for forfeiture of

---

[1] When the value of seized personal property is determined to be less than $500,000, administrative forfeiture proceedings are undertaken initially.  If there is no contest to the administrative proceeding, the asset is forfeited and no judicial proceeding is undertaken.  Assets with a potential value exceeding $500,000 cannot be processed administratively.  Here, Guernseys indicated that the reserve set on the boat when it was auctioned in 1998 exceeded $800,000.  Accordingly, the government determined that judicial forfeiture proceedings were appropriate.

4

the boat. Docket Entry 1 & 2. Because Kerner had contacted the government to say that Harry Crosby had an ownership interest, notice of the civil forfeiture action was served on Crosby via Kerner. Facts, at ¶91. The government also sent notice to Ole Anderson and to Marblehead Trading Company, the bailee of the boat. Docket Entry 12, at ¶¶6-7. Neither Marblehead nor Ole Anderson responded to the notice of forfeiture. Id. However, Harry Crosby filed a verified claim and produced documents showing that he had provided funds for the boat when it was purchased at auction in 1996. Docket Entry 4; Facts at ¶59.

No one from the government, either the U.S. Attorney's Office or the DEA, spoke directly with Crosby during the pendency of the district court forfeiture proceedings, relying simply on his affidavit and accompanying documentation. Facts, at ¶35. Had the government contacted Crosby and asked specifically about a doctor having an ownership interest, Crosby could have supplied the doctor's name as Kerry Lane. Facts, at ¶43. He could not, however, have supplied an address. Id. at ¶44. He had met Lane on only one occasion, at an unsuccessful Guernsey's auction of the Flash II in 1998. Id.

The putative claimant in this matter, Kerry Scott Lane, also learned from Ole Anderson that the Flash II had been seized by the DEA within a day or two of its seizure. Id. at ¶105. His statements about this have varied over the course of the

litigation in this case.[2] However, from the beginning, Lane has admitted that he received the call from Ole Anderson about the seizure of the boat by the DEA, and he told Ole Anderson to keep him out of it. Docket 17, at ¶13; Facts, at ¶¶ 105-107. He stated that Ole Anderson offered to identify Lane as the owner of the Flash II, but Lane specifically directed Ole Anderson not to do so. Docket 17, at ¶13. Lane told Anderson not to provide Lane's name to the press or to law enforcement during his credentialing process, Facts at ¶107, which was not completed until May 21, 2005. Facts, at ¶38.

Shortly after the Sailboat was seized, Lane called the Marblehead Trading Company and spoke to its owner, Ralph Anderson. Id. at 71. Ralph Anderson told Lane that the DEA had seized the boat and that if he wanted more information, he needed to call the DEA. Id. at ¶¶72-73. Lane responded that he could not call the DEA, because he "did not want them to know where he

---

[2]There are numerous inconsistencies among Lane's affidavit of July 27, 2005, Docket Entry 17, his affidavit of August 29, 2005, Docket Entry 20-4, his responses to Interrogatories (Exhibit 6 to the Statement of Facts, filed herewith, and the Requests for Admissions (Exhibit 7 to the Statement of Facts). For example, in his first Affidavit, July 27, 2005, he admits that "Ole Anderson telephone me and informed me that the Sailboat had been seized from the Marblehead storage facility by the Drug Enforcement Agency." Docket Entry 17, ¶ 12. However, in response to the Requests for Admissions, "I am not sure that Ole Anderson told me that the DEA had seized it." Admissions, Exhibit 8, at No.3.
    The government will not explore all of these inconsistencies in this memorandum. However, if the Court is inclined to credit Lane's testimony over that of another witness, the government respectfully requests an opportunity to be heard.

was." Id. at ¶ 74. Ralph Anderson repeatedly told Lane to call the DEA if he wanted to get information about the boat, but Lane chose not to do so. Id.

Lane understood that there might be legal action related the seizure that he should keep apprised of. Id. at ¶108. Nevertheless, instead of calling the DEA, as recommended by Ralph Anderson, or hiring a lawyer, Lane's solution was to place a "Google alert" to apprise him of articles in Google that provided information regarding the search terms "John F. Kennedy Flash II." Id. He first contacted an attorney regarding his claim in July 2005 after he learned that a default notice had been issued in the forfeiture action on the Flash II. Id. at ¶ 111.

### ARGUMENT

**1. There were No "Plainly Indicated" Efforts That the Government Failed to Undertake.**

Prior to Crosby's entry of a claim, the government had absolutely no information about the unknown owner described by the CW. The government had documents, supplied from Ole Anderson to the CW, clearly showing that Ole Anderson had bought the Flash II in 1996. It had a specific understanding from the CW that there had been three investors: the CW, Ole Anderson, and another person whom the CW did not know. It had only vague information from the CW to characterize this other owner: "possibly a doctor or a dentist." The government provided all of this information in its affidavit to the Court applying for the seizure warrant,

and the government included the information in its press release. At the time of the seizure therefore, it is beyond dispute that the government had no information from which it could have deduced that Kerry Lane had a claim.

Nothing in the government's subsequent investigation, prior to moving for default in the forfeiture action on May 5, 2005, led to Kerry Lane. None of the commercial database or internet searches for information about the Flash II provided any information about any owners of the Flash II other than Ole Anderson. The government was aware from its initial investigation that the Flash II had at one time been placed for auction. Following the seizure, the government had contacted Arlan Ettinger, the President of Guernsey's auction house. Guernsey's had put the Flash II up for auction in March 1998 (not Fall 1999 as asserted by Lane). When Guernsey's undertook that contract, the only person it dealt with, according to the DEA's discussions with Ettinger, was Ole Anderson.

The First Circuit opinion assumed – based on appellant Lane's representations – that the government could have found Lane through Marblehead Trading Company. See One Star Class Sloop Sailboat, 458 F.3d 16, 25 n.9. However, that assumption is not borne out by the facts. The government had contacted Marblehead, and Ralph Anderson, the owner of Marblehead, had no knowledge of Kerry Lane. Ralph Anderson does not know Lane. In eight years of storing and maintaining the Flash II, Ralph

Anderson had only dealt with Ole Anderson.  None of the Marblehead Trading Company documents relating to the Flash II, reflecting thousands of dollars in payments and restoration work regarding the Flash II over nearly eight years, gave any indication that Lane had any relationship with the Flash II.

The First Circuit also assumed, based on Lane's representations, that the government could have learned Lane's identity from Crosby.  <u>Id.</u>  The Court queried whether contacting Crosby to determine the doctor's identity would have been an obvious step.  <u>Id.</u>  The government respectfully submits that, while Crosby knew Lane's name, asking Crosby about other owners would not have been an obvious step.  To the contrary, all of the information known to the government at the time Crosby came forward indicated that there were no more than three investors (or owners) of the Flash II: Ole Anderson, the CW and a third investor, <u>possibly</u> a doctor or a dentist.  Once Crosby established through documents that he had a credible claim, the government's reason for further investigation ended: It had found the third owner.  According to the CW, Ole Anderson had bought the boat at auction, and the CW and the third investor had each put in additional money.  Crosby's documents showed that he had wired money for the initial purchase of the sailboat from auction in 1996.  Once Crosby proved he had a genuine ownership interest in the boat, all three owners were accounted for and there would have been no reason for the government to undertake any other

efforts – including questioning Crosby – to locate more owners.

The end of the government's inquiry at that point was entirely reasonable. The government had taken possession of a sailboat. The government told the company that had stored the boat that the DEA was taking it in relation to a drug case and was taking it for forfeiture. The government knew of three owners: two who were drug dealers, and one who was likely innocent. One of the drug dealers fled; the other acknowledged that his interest in the sailboat was terminated. An innocent person promptly came forward and made a claim.

    **2.    Even if the Government had contacted Crosby, the Government would not have had Lane's Address, and Personal Notice to Lane would Therefore Not Have Been Required.**

As set forth above, the government submits that there was no reason for the government to contact Crosby about other owners of the Flash II. Once it appeared that he had a valid claim, the government simply had no basis to believe that there was an additional owner out there.

Regardless, even if the government had contacted Crosby, Crosby could not have provided Lane's address. Under due process caselaw, actual notice to a person with a known property interest is constitutionally required "if its name <u>and address</u> are reasonably ascertainable." <u>Mennonite Board of Missions v. Adams</u>, 462 U.S. 791, 800 (1983). However, "less reliable means of notice suffice where . . . claimants are hard to ascertain or

their addresses are unknown." Lombard v. United States, 356 F.3d 151, 155 (1st Cir. 2004), cited with approval in One Star Class Sloop Sailboat, 458 F.3d at 23. See also Plemons v. Gale, 396 F.3d 569, 577 (4th Cir. 2004) (consulting telephone directory, or contacting other known owners not required), cited with approval in One Star Class Sloop Sailboat, 458 F.3d at 24. For persons who are missing or unknown, "even a probably futile means of notification is all that the situation permits." Mullane v. Central Hanover Bank & Trust, 339 U.S. 306, 317 (1950), quoted with approval in Lombard at 155.

Nevertheless, the government in this case did not just publish notice of the forfeiture – the methods undertaken by the government to notify any parties with an interest in the Flash II were reasonably calculated to afford real notice to anyone with a potential interest in the boat. The government took possession of the vessel itself, and it sent notice of the seizure to Ole Anderson and to Marblehead Trading Company. It also – far from the "advertisement in small type inserted in the back pages of a newspaper" disdained by Mullane, 339 U.S. at 315 – issued a press release stating that the government expected to forfeit the vessel and stating that an unknown individual had invested money in the Flash II. An article quoting the U.S. Attorney regarding the forfeiture was published in the Boston Globe the day after the seizure. United Press International included a similar article on its UPI News Wire and on its UPI "Quirks in the News."

Each of these items noted that the boat was going to be forfeited and auctioned. The government's actions show that its notice was intended to apprise the world of the seizure and forfeiture.

### 3. Lane is Responsible for His Failure to Answer in Time

It is beyond dispute that the government's activities did in fact afford notice of the vessel's seizure within days of its occurrence to both Crosby and Lane, as described above. The difference in conduct between Crosby and Lane resulted, not from a difference in the information they received, but from a difference in how they chose to proceed.

Crosby was told by Ole Anderson that the Flash II had been seized by the DEA within a day or two of its seizure. He then hired an attorney who investigated the matter and promptly contacted the U.S. Attorney's Office to make note of his claim.

By contrast, Lane learned from Ole Anderson that the Flash II had been seized by the DEA within a day or two of its seizure. Lane told Anderson to keep Lane out of it. Lane specifically directed Anderson not to provide Lane's name to the press or to law enforcement during his credentialing process. Massachusetts Medical Board's records show that Lane's credentialing process was completed on May 21, 2005, more than three months after the warrant and monition issued, and nearly three weeks after the government had applied for default against all persons who had

12

not yet made a claim.[3]

Lane understood that there might be legal action related the seizure that he should keep apprised of.  Nevertheless, he made no effort to retain an attorney until July 2005, and even then he failed to file with the Court prior to the Court's entry of default on July 15, 2005.

Ultimately, Lane now asserts that he learned of the forfeiture action when a conversation with a friend about the seizure of the Flash II impelled him to call Marblehead Trading and that Marblehead's lawyer faxed him paperwork related to the forfeiture.  All of the information that caused Lane to "discover" the forfeiture was was available to Lane in October

---

[3] Lane asserts that the credentialing process ended a few weeks after the Flash II was seized.  This is inconsistent with Massachusetts records regarding Lane's credential renewal date.  Moreover, Lane's memory regarding dates is demonstrably poor based on the record in this case.  In his affidavit dated July 27, 2005, Lane stated that the Flash II had been put up for auction in the fall of 1999.  See Docket Entry 17, page 3, para 9.  In fact, the Flash II was put up for auction on March 18-19, 1998, a year and a half before the date recalled by Lane.  Likewise, in his interrogatory responses, he claims to have called Marblehead Trading Company on Monday, June 27, 2005.  Exhibit 7, Int. 6.  In an affidavit, he stated that he called Marblehead on June 30, 2005.  Docket Entry 20-4 at ¶ 3.  Both dates are stated with precision, but either date is in dramatic contrast with the statement of Ralph Anderson, a neutral third party, who asserts that Lane called him within a month of the boat's October 2004 seizure.  Facts at ¶69 (Exhibit 3, Anderson Affidavit, at ¶12.)  The government recognizes that it cannot seek an inference against Lane in the current procedural context.  However, the government respectfully notes that if the Court is inclined to credit Lane's testimony, the government requests an opportunity for examination.

2004.  Lane knew of the seizure of the Flash II in October 2004. He knew that the boat had been seized from Marblehead Trading Company.  Ralph Anderson had documentation that showed that the boat was being seized for forfeiture.  Lane failed to receive this information because in October 2004, he actively chose not to do anything.  Marblehead's Ralph Anderson that Lane within a month of the seizure that he should call the DEA to find out the status of the boat.  Lane responded that he could not, because he did not want the DEA to know where he was.  Ralph Anderson could have given Lane all of the information about the seizure, which would have clearly shown that the boat was being seized for forfeiture.  However, Lane did not want to be identified, and so he did not even leave Anderson his name.

Lane knew the sailboat had been seized, and he had all of the information from which to learn about the full scope of the forfeiture action.  He chose to hide from that information for his own reasons.  The government respectfully submits that these are not the "exceptional circumstances that justify invoking the extraordinary relief of a Rule 60(b) motion.  Karak v. Bursaw Oil Corp., 288 F.3d 15, 19 (1st Cir. 2002).

### Conclusion

There were no facts in the possession of the that would have led a reasonable person to be able to provide Lane with actual notice of the forfeiture action.  The only facts in this case that would have led the government to provide notice Lane were in

the possession of Lane himself, and he deliberately hid them from the government. Despite that, the government provided notice reasonably calculated to inform owners of the seizure.

For these reasons, the government respectfully requests that the Court deny Lane's motion to set aside the default judgment.

Respectfully submitted,

MICHAEL J. SULLIVAN
United States Attorney

By: /s/ Nancy Rue
Nancy Rue
Assistant U.S. Attorney
U. S. Attorney's Office
9200 J.Jos. Moakley U.S. Courthouse
1 Courthouse Way, Suite 9200
Boston, MA  02210


CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

/s/ Nancy Rue

Nancy Rue
Assistant U.S. Attorney

Date:    January 5, 2007