UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| v. | Civil Action # 05-10192 RWZ |
| ONE STAR CLASS SLOOP SAILBOAT BUILT IN 1930 WITH HULL NUMBER 721, NAMED "FLASH II", | |
| Defendant. | |
| KERRY SCOTT LANE, M.D. | |
| Claimant. | |

**CLAIMANT KERRY SCOTT LANE'S OPPOSITION
TO THE GOVERNMENT'S MOTION FOR PARTIAL SUMMARY JUDGMENT
AND CROSS-MOTION FOR SUMMARY JUDGMENT**

Claimant, Kerry Scott Lane, M.D., through his attorneys, hereby opposes the government's motion for partial summary judgment on the issues of forfeitability and value. Additionally, he moves for summary judgment in his own favor on those two issues.

Claimant's motion is based on the attached Memorandum of Points and Authorities, Supporting Exhibits, and the record in this case.

1

Respectfully submitted,
Kerry Scott Lane, MD,

By his attorneys,


_____/s/ Brenda Grantland_____
Brenda Grantland, Esq.
Law Office of Brenda Grantland
20 Sunnyside Suite A-204
Mill Valley, CA 94941
(415) 380-9108
Pro hac vice


_____/s/ Eric B. Goldberg____
Jeffrey P. Allen (BBO# 015500)
Eric B. Goldberg (BBO# 564398)
Seegel Lipshutz & Wilchins, P.C.
Wellesley Office Park
20 William Street, Suite 130
Wellesley, MA 02481
(781) 237-4400

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br>　　v.<br><br>ONE STAR CLASS SLOOP SAILBOAT<br>BUILT IN 1930 WITH HULL NUMBER<br>721, NAMED "FLASH II",<br><br>　　　　Defendant.<br>_____<br><br>KERRY SCOTT LANE, M.D.<br><br>　　　　Claimant. | Civil Action # 05-10192 RWZ |

**CLAIMANT KERRY SCOTT LANE'S
RESPONSE TO THE GOVERNMENT'S
STATEMENT OF UNDISPUTED FACTS
PURSUANT TO LOCAL RULE 56.1**

1.　"Ole Anderson engaged in drug deals with a DEA cooperating witness ("CW"). Docket Entry 1-1 at ¶¶ 13-15."

　　This is not entirely accurate. Although Ole Anderson may have engaged in drug deals with the person who became the CW, that person was not a CW when those transactions occurred. The verified complaint [Doc # 1] states that in or around 2001, the CW, then a major marijuana trafficker, hired Ole Anderson to transport marijuana for him, and that Anderson transported between four and eight loads for him, ending with Anderson's arrest in Arizona on December 3, 2001. [Complaint ¶ 17.] There is no connection between those transactions and this sailboat.

1

2.  "The CW invested drug money in the Sailboat at the time that Anderson first purchased it. Id. at ¶ 16."

The complaint alleges the CW "invested" drug proceeds in the sailboat, but does not state when that occurred. It alleges Ole Anderson purchased the sailboat "[a]round the time the CW supplied Jim Anderson with marijuana" [Complaint ¶ 16] but does not state when that occurred, other than it was "several years" prior to 2004. [Complaint ¶ 14].

Although the complaint characterizes it as an "investment" the DEA 6 Investigation reports show the CW characterized it as a "loan" to Ole Anderson. In monitored phone calls, Ole Anderson repeatedly told the CW that he had repaid the loan, and the CW admitted to the agents that Anderson had repaid the loan. [Claimant Kerry Scott Lane's Statement of Undisputed Facts, (filed separately today) ¶¶ 3-5.]

3.  "The CW sold drugs to Ole Anderson, and Anderson was arrested in possession of the drugs. Id. at ¶ 18."

There is no evidence that the CW sold drugs to Ole Anderson. The CW claims he employed Ole Anderson to transport shipments of marijuana for a set fee per load. Anderson was caught and prosecuted for one of those shipments. [Complaint ¶ 17.]

4.  "In payment for the seized drugs, and in payment for concealing the CW's involvement in the drug transactions, Anderson received the CW's interest in the Sailboat. Id."

Anderson did not own any interest in the marijuana that was seized when Anderson was arrested. It belonged to the CW and the CW's customer: "[P]art of the 1,200 pounds in Anderson's truck was owned by Wojciechowski." [Complaint p. 12 ¶ 17.] "The CW stated that Anderson was stopped shortly after leaving Tucson with 1,200 pounds of the CW's and Wojciechowski's marijuana." [Complaint p. 11 ¶ 17.]

Although the wording of the complaint suggests that the CW gave up his interest in the sailboat after Anderson's arrest, the record shows the CW admitted several times that Anderson had already repaid the loan before Anderson's arrest in 2001. [Willoughby Affidavit ¶ 21] ("Anderson paid the CW back over the course of making two "trips" transporting marijuana for the CW.")  Since the CW claims Anderson made between four to eight trips for the CW all together, [Complaint p. 11 ¶ 17], and none of them allegedly occurred after Anderson's arrest in Arizona, any interest the CW had in the sailboat was extinguished before Anderson's arrest.

A closer reading of ¶ 18 shows that the CW bought Anderson's silence with cash and cancellation of other debts – $50,000 for Anderson's silence, $20,000 for Anderson's defense attorney's fee, $40,000 for Anderson's transportation fee, and cancellation of a loan the CW had made to Anderson's brother Jim.  Since the CW paid Anderson's $40,000 transportation fee for the last shipment (even though it was confiscated) Anderson must have paid off the loan during earlier trips for the CW.

Respectfully submitted,
Kerry Scott Lane, MD,

By his attorneys,

\_\_\_\_\_/s/ Brenda Grantland_____
Brenda Grantland, Esq.
Law Office of Brenda Grantland
20 Sunnyside Suite A-204
Mill Valley, CA 94941
(415) 380-9108
Pro hac vice

                                                   /s/ Eric B. Goldberg
Jeffrey P. Allen (BBO# 015500)
Eric B. Goldberg (BBO# 564398)
Seegel Lipshutz & Wilchins, P.C.
Wellesley Office Park
20 William Street, Suite 130
Wellesley, MA 02481
(781) 237-4400