UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
|         Plaintiff, ) | |
| ) | |
|         v. )Civil Action No.05-10192-WGY | |
| ) | |
| ONE STAR CLASS SLOOP SAILBOAT ) | |
| BUILT IN 1930 WITH HULL NUMBER 721, ) | |
| NAMED "*FLASH II,*" ) | |
|         Defendant. ) | |

**GOVERNMENT'S RESPONSE TO CLAIMANT'S OPPOSITION TO
SUMMARY JUDGMENT AND CROSS MOTION FOR SUMMARY JUDGMENT**

**I.    The Goverment Has Established Forfeitability.**

Lane contends that the government has failed to establish forfeitability because the cooperating witness who engaged in drug transactions with convicted drug dealer Anderson had been repaid by Anderson, and therefore there were no drug proceeds in the Sailboat. Lane Memorandum, Docket Entry 56-2, at page 2 & 3. Additionally, Lane argues that the drug proceeds that were used to fund the Sailboat were a "loan" and therefore the CW was a mere unsecured creditor. Id. at 3.

Lane's arguments have no merit because the funds that Anderson used to pay the CW for his interest –  whether it was an equity interest or a loan and whether it was to reimburse him or to extort him –  were drug funds. Anderson was a drug runner for the CW: he was paid $40,000 to $50,000 for transporting drugs. Government's Response to Claimant's Counter-Statement of Facts ("56.1 Response")  at ¶ D. The CW asserted that he ceded his interest in the Flash II to Anderson after Anderson was arrested while transporting the CW's drugs in 2001 as payment for Anderson not identifying the CW as Anderson's drug source. Government's Statement of Undisputed Facts Pursuant to L.R. 56.1, Docket Entry 53, at ¶ 4; 56.1 Response at ¶ E. During the course of the government's investigation of Anderson, the CW raised the CW's erstwhile

interest in the Sailboat with Anderson.  Claimant's Statement of Facts, Docket Entry 56-3 at ¶4. 56.1 Response at ¶ F.  During the course of that meeting, Anderson stated that the CW no longer had an interest in the Sailboat because Anderson had repaid the CW through the course of the trips that Anderson had made for the CW:

| | |
|---|---|
| CW: | You did pay me back everything? |
| Anderson: | yeah, see that was, that was fifteen, plus |
| CW: | fifteen thousand? |
| Anderson: | Yeah, I gave you that...yeah.... |
| CW: | Was it during working? |
| Anderson: | Yeah, yeah, |
| CW: | when you worked for me |
| Anderson: | Right, you knocked it off – |
| CW: | I took it off, the uh....? |
| Anderson: | You kept it back, I paid you. |
| CW: | Off the first trip was it? |
| Anderson: | No, we did it for two trips. |
| CW: | OK |
| Anderson: | Because I think, it was either 15 or 27, but you got that paid off the first two trips. |

56.1 Response, at Exhibit A.  However, Anderson's "repayment" was made through drug transactions.  Anderson was being paid by the CW for running drugs, and the source of the CW's funds was drugs.  Anderson stated that he paid off the CW using a portion of his usual compensation for transporting the drugs.  Since the money that the CW was paying Anderson was clearly "moneys . . . used or intended to be used to facilitate any violation of [the Controlled Substances Act]," Anderson's use of that money to re-gain the CW's interest in the Sailboat

2

establishes the forfeitability of the Sailboat pursuant to 21 U.S.C. § 881(a)(6). Moreover, since *Anderson* acquired the interest through drug moneys, the question of whether the CW had an ownership interest or an unsecured interest is not relevant.[1] The Sailboat is forfeitable.

## II.     The Government Properly Relied on This Court's Order to Auction the Sailboat.

Lane asserts that the government's submission of the Sailboat for public auction was improper and that "the government was, in effect, a thief fencing stolen property." Lane Memorandum, Docket Entry 56-2, at page 10.

Contrary to Lane's assertions, the government was authorized by an Order of this Court to sell the Sailboat. Docket Entry 15. According to the Judgment and Order entered on July 15, 2005, it was ordered, adjudged and decreed that "the United States shall dispose of the forfeited property in accordance with the law." Id. at page 2, ¶ 4. Lane moved to stay this Order, but when the motion was denied, he elected not to appeal or to seek a stay in the Court of Appeals.

---

[1]The government notes that in the same September 27 2004 conversation, Anderson agrees that the Flash belongs to Anderson, and lists the anesthesiologist [presumably Lane] among the persons he "owes" for the Sailboat:

| | |
|---|---|
| CW: | So now the Flash is yours again? |
| Anderson: | Yeah. |
| CW: | You still owe anybody else for it? |
| Anderson: | Oh Yeah, yeah, yeah |
| CW: | who the dentist, or? |
| Anderson: | Yeah, well, it's not a dentist – an anesthesiologist – plus my buddy Eddie, plus my mom, they're all gettin' a piece – |

56.1 Response, Exhibits A & B. Lane's arguments regarding unsecured creditors would therefore appear to apply to Lane. See Docket 56-2, at page 3. However, because the government has not moved for judgment as to ownership, that question is not currently before the Court.

Given the Court's July 15, 2005 Order, the government had a right to act on the Order in the absence of a stay of its execution. United States v. Real Property Located at 1447 Plymouth S.E., Grand Rapids, MI, 702 F. Supp. 1356 (W.D. Mich. 1988) (in a case contesting the distribution of forfeited assets, where "distribution was undertaken by the United States in execution of judgments duly entered by the Court[, . . .] the government had every right to rely on them absent an appeal and action to stay their execution."). See also United States v. One Lear Jet Aircraft, Serial Number 35A-280, 836 F.2d 1571, 1573 (11th Cir. 1988) (noting that where claimant failed to file a stay or a supersedeas bond, government properly moved the forfeited asset) .

Lane now asserts that he should have received a stay, in essence arguing that this Court's failure to grant one was improper. Lane Memorandum, Docket Entry 56-2 at page 7. While this argument is defective on the merits, [2] it is also misplaced in this procedural posture. If Lane believed he was entitled to a stay, he should have appealed the Order denying his Motion to Stay, or in the alternative, filed a motion in the Court of Appeals for the First Circuit pursuant to Rule 8(a). Having failed to do so, the Order denying the stay is now the law of the case, and Lane cannot now be heard to argue that the ruling was erroneous.

---

[2] Numerous courts have held that, despite the seemingly mandatory language of the civil forfeiture stay provision of 28 U.S.C. § 1355(c) [cited by Lane in the current filings, but not cited in Lane's original motion for stay, see Docket Entries 25-1 & 25-2, passim]], a court considering an application for stay under this section must instead apply the four part test applicable to other motions to stay pending appeal. See United States v. Various Tracts of Land in Muskogee & Cherokee Counties, 74 F.3d 197, 198 (10th Cir. 1996); In re Seizure of All Funds in Accounts in Names Registry Pub'g, 58 F.3d 855, 856 (2d Cir. 1995); United States v. 1993 Bentley Coupe, 1997 WL 803914, at *1 (D.N.J. 1997).

**III.    Sovereign Immunity Bars Recovery of Damages In Excess of the Auctioned Value of the *Res*.**

Lane argues that he is entitled to a value for the Sailboat eight times greater than that obtained at public auction. Lane's factual claims as to the Sailboat's worth are on faulty ground, and legally they are wholly without merit.

    A.    <u>Lane's claims are without factual support</u>.

From a factual standpoint, Lane's entire claim rests on the assertion that at an unsuccessful auction of the Sailboat in March 1998, an unknown bidder placed a bid of $800,000 for the Sailboat. Lane cannot report whether this was an authentic bid, or merely a promotional attempt by Anderson (or even Guernsey's) to generate interest in or publicity for the Sailboat. <u>See</u> 56.1 Response, ¶ 6. Even if the bid was genuine, having failed to achieve a sale at the March 1998 auction, there is no experiential basis to assert that the Sailboat would achieve another bid at that level. <u>See</u> Ettinger Declaration at ¶ 14. The value of the Sailboat – separate and apart from having once been owned by John F. Kennedy – was significantly less than the price it sold for at the December 2005 auction. <u>Id</u>. at ¶ 16. The prior claims regarding the value of the Sailboat depended on the Kennedy mystique. The experience at the December 2005 auction suggests that value of that mystique has faded since the auction of Jacqueline Kennedy's belongings. <u>Id</u>. at ¶¶ 23-25.

    B.    <u>Lane's claims are barred by sovereign immunity</u>.

Even if Lane's claim to damages otherwise had merit, it is barred by the doctrine of sovereign immunity. <u>See</u> <u>Lane v. Pena</u>, 518 U.S. 187, 192 (1996); <u>Larson v. United States</u>, 274 F.3d 643, 647 (1st Cir. 2001) (sovereign immunity barred award of interest on money improperly seized). It is axiomatic that the United States is entitled to immunity from suit without its

5

consent. Pena, 518 U.S. at 192. A waiver must be unequivocally expressed in statutory text; it will not be implied. Id. Sovereign immunity "operates on the broadest possible level: it stands as an obstacle to virtually all direct assaults on the public fisc, save only those incursions from time to time authorized by Congress." United States v. Horn, 29 F.3d 754, 761 (1st Cir. 1994) (reviewing the historical background of sovereign immunity in the context of awards of attorney's fees). "[N]either fairness considerations nor rules applicable to private disputes can alone provide grounds for abrogating sovereign immunity." Larson, 274 F.3d at 647.

The First Circuit has made clear that sovereign immunity principles apply rigorously in forfeiture cases. In Larson, the First Circuit determined that sovereign immunity precluded the award of prejudgment interest in forfeiture cases prior to the effective date of a statute specifically providing for such interest. 274 F.3d at 646-47. The First Circuit reviewed the law from other circuits, and noted that in United States v. 1461 West 42nd Street, Hialeah, Florida, 251 F.3d 1329 (11th Cir. 2001), the Eleventh Circuit struggled with the question of remedy where the government had illegally seized parcels of realty, collected rents while refusing to make mortgage payments, and ultimately allowed the realty to be sold for mortgage default, before seeking to dismiss the improperly brought forfeiture case. Id. at 1332. The Eleventh Circuit considered whether to impose interest on the illegally seized rental payments that were to be returned to the claimants. Id. Ultimately, however, the Eleventh Circuit concluded that no interest had been earned, constructively or otherwise, because all the rental income had gone to payment of expenses. Id.

The First Circuit analyzed 1461 West 42nd Street and questioned why the Eleventh Circuit had had such a struggle with the equities of the case. The First Circuit observed: "It seems the same result could have been reached (i.e., a result in favor of the government) by

6

finding that sovereign immunity barred the claim." Id. at 646.

By comparison to Larson and 1461 West 42nd Street, the instant case is simple. The government properly seized a forfeitable asset. Lane knew of the seizure but chose not to come forward. The government subsequently sold the Sailboat pursuant to a lawful order of sale that the Court refused to stay. Lane elected not to appeal the Court's refusal to stay. The government arranged for a highly publicized auction of the Sailboat with other memorabilia of the late owner (President John F. Kennedy) of the Sailboat. The government then maintained the proceeds of the auction in escrow pending resolution of Lane's claims.

Under these circumstances, Lane cannot seek recovery of more than his alleged share of the auction proceeds. Any greater recovery would be equivalent to an action for damages, "which would, absent waiver, trespass on the government's sovereign immunity." 1461 West 42nd Street, 251 F.3d at 1339. See also 1447 Plymouth S.E., Grand Rapids, MI, 702 F. Supp. at 1360 (no principle exist s which could require government to replace assets). Equity would be against the imposition of a remedy here, balancing the lawfulness of the government's conduct against Lane's willful blindness to consequences of the seizure. Regardless however, the question is not the "appropriate" remedy, but the one for which sovereign immunity has been waived. Just as the principle of sovereign immunity foreclosed the award of prejudgment interest prior to the amendment of the forfeiture statute to specifically allow such awards, so sovereign immunity here forecloses the award of speculative lost profits based on disappointment in the results of the December 2005 auction. Since Lane points to no statute authorizing an award in excess of recovery of a portion of the escrowed sale proceeds, his claim must fail. See Adeleke v. United States, 355 F.3d 144, 150-51 (2d Cir. 2004) (inherent in the doctrine of sovereign immunity is that some aggrieved parties may be left without relief.)

## IV.  CONCLUSION

For the reasons set forth above, the government respectfully requests that this Court grant the government's motion for partial summary judgment and deny the Claimant's motion, and therefore order that the Sailboat is forfeitable and that the recovery possible under an innocent owner defense is limited to Lane's alleged share of the proceeds of the lawful auction of the Sailboat pursuant to this Court's July 15, 2005 Order.  Such ruling will dispose of all issues except the question of whether Lane is in fact an innocent owner of the Sailboat.

Respectfully submitted,

MICHAEL J. SULLIVAN
United States Attorney

By:   /s/ Nancy Rue
      Nancy Rue
      Assistant U.S. Attorney

### CERTIFICATE OF SERVICE

I hereby certify that these documents filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

 /s/ Nancy Rue
Nancy Rue
Assistant U.S. Attorney