UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| v. | Civil Action # 05-10192 RWZ |
| ONE STAR CLASS SLOOP SAILBOAT BUILT IN 1930 WITH HULL NUMBER 721, NAMED "FLASH II", | |
| Defendant. | |
| KERRY SCOTT LANE, M.D. | |
| Claimant. | |

**CLAIMANT KERRY SCOTT LANE'S REPLY
TO THE GOVERNMENT'S OPPOSITION TO HIS
CROSS-MOTION FOR SUMMARY JUDGMENT**

Claimant, Kerry Scott Lane, M.D., through his attorneys, responds to the Government's Opposition to his Cross-Motion for summary judgment as follows:

**I.   Forfeitability of the property**

   **A.   The government has not submitted evidence to support its motion for summary judgment nor to survive Dr. Lane's motion for summary judgment**

The government is not entitled to summary judgment on the issue of the forfeitability of the Flash II, as it contends. Instead summary judgment should be entered in Dr. Lane's favor.

It is axiomatic that a party moving for summary judgment must support its arguments with actual evidence – such as sworn declarations by witnesses with direct knowledge – not merely unsworn allegations and hearsay. The same is true when the party is resisting summary

1

judgment. "'Neither wishful thinking...nor conclusory responses unsupported by evidence will serve to defeat a properly focused Rule 56 motion.' Thus the nonmoving party must produce 'hard evidence of a material factual dispute' to survive a summary judgment motion." *United States v. 6 Fox St.*, 480 F.3d 38 (1st Cir. 2007).

The government cannot rest on the unsworn statements of the informant and Ole Anderson. The unsworn hearsay statements of Ole Anderson are not admissible by either party, and the informant's statements are inadmissible hearsay when offered by the government.

In contrast, the government's admissions in its pleadings and the admissions of the CW *are* admissible by Dr. Lane – as admissions of a party opponent, or judicial admissions, or both. See e.g., FRE § 801(d)(2)(B)( C) & (D); *United States v. Kattar*, 840 F.2d 118, 130-131 (1st Cir. 1988); and *Sicor Ltd. v. Cetus Corp.*, 51 F.3d 848, 859-60 (9th Cir. 1995). The CW's admissions in the police reports admissions of a party opponent – since the CW was working as an agent for the government as an informant when he made the admissions, and the statements concerned "a matter within the scope of the agency or employment." FRE § 801(d)(2)(D).

Since Dr. Lane's motion for summary judgment is supported by unrebutted evidence, he is entitled to summary judgment in his favor on both issues.

> **B. The government failed to rebut Dr. Lane's argument that if the CW's loan to Ole Anderson created only an unsecured interest, the CW lacked standing to taint the property, and the government lacked grounds to forfeit it**

On page 2 of his Memorandum in support of his Cross-Motion, Dr. Lane argued:

There are two problems with the government's theory of forfeiture.

First, if the CW's drug proceeds were "loaned" to Anderson, rather than a capital investment in the sailboat, did the CW ever actually acquire an interest in the sailboat? Was the CW merely an unsecured creditor of Ole Anderson's? Since

> the sailboat was not a type of property which is titled in the name of the owners in some government database, there is no place to register a lien on it. If the CW had performed some restoration work on the sailboat, under state law he might have obtained a mechanic's lien, such as Marblehead Trading Company held at the time of the failed 1998 auction – but Anderson's debt does not fit the requirements of a mechanics lien.
>
> Under federal forfeiture law, an unsecured creditor does not have the kind of ownership that gives him standing in the forfeiture case. See *United States v. One-Sixth Share*, 326 F.3d 36, 44 (1st Cir. 2003) ("The federal courts have consistently held that unsecured creditors do not have standing to challenge the civil forfeiture of their debtors' property.")
>
> Here, the United States stepped into the shoes of the unsecured creditor. If an unsecured creditor lacks standing to defend against the forfeiture of the sailboat, certainly the CW's unsecured debt did not give the government grounds to forfeit the property.

Lane's Memo in support of Summary Judgment, pp. 2-3.

The government's memorandum fails to rebut this argument. It only mentions the argument in two brief passages:

> Additionally, Lane argues that the drug proceeds that were used to fund the Sailboat were a "loan" and therefore the CW was a mere unsecured creditor. Id. at 3. Lane's arguments have no merit because *the funds that Anderson used to pay the CW for his interest* – whether it was an equity interest or a loan and whether it was to reimburse him or to extort him – were drug funds.

U.S. Memo, Doc 59 p. 1 (emphasis added), and:

> Moreover, *since Anderson acquired the interest* through drug moneys, the question of *whether the CW had an ownership interest or an unsecured interest* is not relevant.

U.S. Memo, Doc 59 p. 3 (emphasis added). Both passages assume the CW obtained an interest in the sailboat. However, there is no evidence that the CW ever obtained an interest in the sailboat.

The government has not submitted any evidence showing that the CW's loan to Ole Anderson gave the CI a legally cognizable interest in Flash II. Dr. Lane produced a signed contract with "the Consortium," documenting his share of the ownership of Flash II. It lists the members of the Consortium as Dr. Lane, Ole Anderson and Eddie Crosby. The CI's name is not listed in the document. See Doc. 45-12 pp. 9-10. If the CI obtained an ownership interest in the sailboat through his loan to Ole Anderson, he should have had such documentation. In discovery, Dr. Lane asked for "any documentation of the Confidential Informant's interest" in Flash II. The government failed to produce any such documents.

An unsecured loan to Anderson does not create an interest in any of Anderson's specific property, therefore, no matter how much drug money the informant loaned Anderson, the loan did not taint any of Anderson's specific property absent evidence that the money was invested in the property.

It is well settled that only owners of legally recognized interests in the property have standing to defend it against forfeiture. "The federal courts have consistently held that unsecured creditors do not have standing to challenge the civil forfeiture of their debtors' property." *United States v. One-Sixth Share of James J. Bulger in All Present & Future Proceeds of Mass Millions Lottery Ticket No. M246233*, 326 F.3d 36, 44 (1st Cir. 2003).

> [A] general creditor can never have an interest in specific forfeited property, no matter what the relative size of his claim vis-a-vis the value of the defendant's post-forfeiture estate. Were it otherwise, the court litigating the forfeiture issue would be converted into a bankruptcy court and would not be able to grant forfeiture to the government until it determined that no general creditor would be unable to satisfy its claim against the defendant.

Id.

If unsecured creditors lack standing as defendants in civil forfeiture proceedings, how could they have standing as plaintiffs?

Merely loaning drug money to Ole Anderson does not create a legally recognizable interest in the sailboat – or any specific property in which Anderson owned an interest. Unless the informant obtained a legally recognized interest in the sailboat in exchange for his loan to Anderson of tainted drug money, his actions could not taint the sailboat. To hold otherwise would transform courts litigating civil forfeitures into mutated bankruptcy courts, where every asset owned by a person who accepted tainted money, and every asset that person co-owned with innocent third parties would be sucked into the bankruptcy estate to be devoured by the federal government. Our system of government has not devolved to that level yet.

*In rem* civil forfeiture is based on the legal fiction that the property itself is guilty. A tainting act, such as the investment of drug proceeds in *specific* property, gives the government an unperfected interest in that specific property, and gives the government standing to pursue civil forfeiture of the specific property. Without that nexus tracing the alleged proceeds into the specific property the government seeks to forfeit, there is no taint, no in rem jurisdiction, and the government lacks standing to forfeit the property civilly.

    **C.**    **Dr. Lane is entitled to summary judgment on the issue of forfeitability since the government has presented no evidence that drug money was actually invested in Flash II**

The government has the burden of proof that the property is forfeitable. When it relies on a proceeds theory pursuant to 21 U.S.C. § 881, the government is required to trace drug proceeds into the purchase of the specific property. See § 881(d)(6) – "all proceeds *traceable* to such an exchange."

There are several problems with the government's theory.

First, the government's claim that its informant loaned Ole Anderson drug proceeds to invest in Flash II is not supported by admissible evidence. Its only support for the claim is in the unsworn hearsay statements of the CW and Ole Anderson. As Claimant showed earlier, these are not admissible evidence when proffered by the government.

Even if the government could present admissible evidence of the CW's loan to Anderson, there is no evidence at all that Anderson actually invested the drug money in Flash II. Dr. Lane and Chuck Fitzgerald have submitted uncontradicted affidavits stating that to their knowledge, Ole Anderson never invested any money in the sailboat. By all accounts, Ole Anderson acquired his interest in the sailboat by "sweat equity" – his efforts in managing the purchase, refurbishing, public display, promotion, etc. of the Flash II – while Dr. Lane (and to a lesser extent Eddie Crosby) invested the money to finance the project. It is as likely as not that Anderson lived off the drug proceeds the informant loaned him.

Finally, as shown in Part B above – there is no evidence that the informant obtained a legally recognizable interest in the sailboat.

The government has failed to submit evidence that traces drug proceeds into the specific property sought to be forfeited. Here – even at best, the informant's claim that he loaned Ole Anderson drug money only goes half way to meet the government's tracing burden. The government would still have to trace the loaned drug money from Anderson into the sailboat. This it cannot do. Since traceability is an element of the government's cause of action, on which it bears the burden of proof, the court must grant summary judgment in favor of Dr. Lane on the issue of forfeitability.

## II.     Dr. Lane's remedy and the measure of damages

### A.     The fact that Dr. Lane did not separately appeal the denial of his request for a stay does not limit his damages remedy

As Dr. Lane pointed out in his Opposition/Cross-Motion (Doc. 56-1) pp. 5-6, the authorities the government initially relied on in support of this argument were all based on a bankruptcy rule that does not apply to forfeiture cases. Furthermore, the principle those bankruptcy cases espouse – that the appellate court loses jurisdiction over a case if the appellant fails to obtain a stay pending appeal – was rejected (for forfeiture cases) by the U.S. Supreme Court in *Republic National Bank v. United States*, 506 U.S. 80 (1992).

Now, instead of defending its original bankruptcy theory, the government turns to civil forfeiture cases that were overruled by *Republic National Bank*. *United States v. One Lear Jet*, 836 F.2d 1571 (11th Cir. 1998) held that:

> Where an appellant fails to file a stay of judgment or a supersedeas bond, and the *res* is removed from the court's territorial jurisdiction, the appellate court does not have *in rem* jurisdiction.

836 F.2d at 1573. *Republic National Bank* held otherwise: "We hold that, in an *in rem* forfeiture action, the Court of Appeals is not divested of jurisdiction by the prevailing party's transfer of the res from the district." 506 U.S. at 88-89.

*United States v. 1447 Plymouth S.E.*, 702 F.Supp. 1356 (W.D. MI. 1988) also relied on reasoning overruled by *Republic National Bank*:

> the *res* which provided jurisdiction in each case is not now within the court's control, each item having been distributed long ago by the United States in execution of the judgments in its favor. Accordingly, he cannot dispute that the court presumptively lacks in rem jurisdiction to consider the present motions.

702 F.Supp. 1359.

7

The government has not presented any valid and relevant authorities supporting its argument that failure to file a separate appeal from a denial of a motion for a stay limits the successful appellant to a portion of what the government sold the property for at a forced sale.

Instead, it gerrymanders Dr. Lane's argument, saying "Lane now asserts that he should have received a stay." That is not Dr. Lane's argument. Under First Circuit precedents, a stay was unnecessary to preserve his right to be made whole if he won his appeal. His Memorandum (Doc. 56-1) p. 4, cited passages from *United States v. Woburn City Athletic Club*, 928 F.2d 1, 4 (1st Cir. 1991) (affirmed on other grounds), and *United States v. $25,721*, 938 F.2d 1417, 1419 (1st Cir. 1991) stating that in forfeiture cases, because the res is in government custody and unlikely to disappear, the claimant need not seek a stay pending appeal.

Dr. Lane could reasonably rely on those First Circuit precedents in deciding that, when his attempt to stay the judgment was denied by the district court, all he need do was litigate his appeal on the merits. The First Circuit held in *United States v. $25,721*, 938 F.2d at 1420 that in civil forfeiture cases "the filing of a timely appeal makes the filing of a request for a stay of the district court judgment and the posting of a supercedeas bond unnecessary for jurisdictional purposes." 938 F.3d at 1420. The court noted:

> "In other types of proceedings, when a judgment for property is rendered, the losing party has a choice. He need not post a bond. He can still appeal the judgment. If he wins on appeal, he can bring an action to recover his property or its value."

938 F.3d at 1420, quoting Judge Clark in *United States v. One Lear Jet*, 836 F.2d 1571,1584 (11th Cir.) cert. denied, 487 U.S. 1204 (1988). That is what Dr. Lane is seeking here: recovery of his property or its fair market value.

### B.    Sovereign immunity was waived by CAFRA

The government's authorities holding sovereign immunity bars the recovery of money damages were legislatively overruled by the Civil Asset Forfeiture Reform Act of 2000 (hereinafter cited as "CAFRA.")  CAFRA amended 28 U.S.C. 2680( c) to waive sovereign immunity for money damages based on injury or loss of property held by law enforcement pending forfeiture proceedings.  Under CAFRA, the Federal Tort Claims Act (28 U.S.C. §§ 2671 et. seq.) and the jurisdictional statute authorizing suits against that United States, 28 U.S.C. § 1346(b)

> apply to any claim based on injury or loss of goods, merchandise, or other property, while in the possession of any officer of customs or excise or any other law enforcement officer, if–
>
>    (1) the property was seized for the purpose of forfeiture under any provision of Federal law providing for the forfeiture of property other than as a sentence imposed upon conviction of a criminal offense;
>
>    (2) the interest of the claimant was not forfeited;
>
>    (3) the interest of the claimant was not remitted or mitigated (if the property was subject to forfeiture); and
>
>    (4) the claimant was not convicted of a crime for which the interest of the claimant in the property was subject to forfeiture under a Federal criminal forfeiture law.

28 U.S.C. § 2680( c).  See *Adeleke v. United States*, 355 F.3d 144, 154 (2nd Cir. 2004) – a case cited by the government – (acknowledging that CAFRA waived sovereign immunity for such money damage claims.)

In contrast, Dr. Lane meets all the criteria.  His property was seized pursuant to a civil forfeiture statute, his interest was not forfeited, nor remitted or mitigated, and he was not

convicted of a crime. Pursuant to § 2674, the United States is liable to Dr. Lane "in the same manner and to the same extent as a private individual under like circumstances." Pursuant to § 1346, the government is liable "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." Clearly the government's actions, if committed by a private person, would have been tortious under state law. If a private party had seized another person's property under an attachment proceeding, obtained a default judgment without providing due process notice to an owner, and then had sold the property for a fraction of its value while the property owner was attempting to vacate the default judgment, the private party would be liable for conversion, abuse of process and/or negligence. Certainly the fact that the tortfeasor used the processes of the court to accomplish his tortious acts would not prevent the property owner from obtaining a judgment for the fair market value of his property.

      C.     **The government failed to address Dr. Lane's voidness argument**

In part III-A of his Memorandum, Doc. 56-1 pp. 6-7, Dr. Lane argued that he was entitled to the return of the sailboat as an alternative remedy. Since the government did not make reasonable efforts to locate Dr. Lane and give him notice of the judicial forfeiture proceedings, the default judgment of forfeiture was void. *United States v. Giraldo*, 45 F.3d 509, 512 (1st Cir. 1995). A void judgment is a nullity. The government did not have good title to the sailboat at the time of the auction, and therefore could not transfer good title to the purchaser at the auction.

Since the government failed to rebut this argument, it should be treated as conceded. Therefore, Dr. Lane should have the option of obtaining the sailboat back in lieu of an award of monetary damages.

### D.     There is a factual dispute as to the fair market value of Flash II

The government suggested at page 5 that the fact that Flash II sold for only $100,000 was because the "Kennedy mystique" has faded since the 1998 auction, and that the $800,000 bid in 1998 may have been faked by Anderson or even Guernsey's – even after the government has consistently relied on the $800,000 bid in its pleadings. In support for this claim, the government submits a declaration from Arlan Ettinger.

Ettinger's new declaration goes out of its way to paint a picture favorable to the government's current allegations. For example, in paragraph 4, he claims that it was his understanding that Ole Anderson was the owner of Flash II. This is an irrational assumption, considering the contract between Guernsey's and Ole Anderson (Doc. 58-3, pp. 7-10) is signed "Ole Anderson - Agent."

Ettinger's new declaration is in many ways inconsistent with his statements in the appraisal which the government commissioned him to perform on behalf of the U.S. on November 18, 2004. Doc. 45-15 pp. 30-31. There Ettinger claims the sailboat was worth $800,000 to $1,000,000.

In any event, the fair market value is a factual dispute which cannot be resolved on summary judgment.

WHEREFORE, for the foregoing reasons Dr. Lane should be awarded partial summary judgment on both issues.

Respectfully submitted,
Kerry Scott Lane, MD,

By his attorneys,


_____/s/ Brenda Grantland_____
Brenda Grantland, Esq.
Law Office of Brenda Grantland
20 Sunnyside Suite A-204
Mill Valley, CA 94941
(415) 380-9108
Pro hac vice


_____/s/ Eric B. Goldberg____
Jeffrey P. Allen (BBO# 015500)
Eric B. Goldberg (BBO# 564398)
Seegel Lipshutz & Wilchins, P.C.
Wellesley Office Park
20 William Street, Suite 130
Wellesley, MA 02481
(781) 237-4400