UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | )Civil Action No.05-10192-WGY | |
| | ) | |
| ONE STAR CLASS SLOOP SAILBOAT | ) | |
| BUILT IN 1930 WITH HULL NUMBER 721, | ) | |
| NAMED "*FLASH II*," | ) | |
| Defendant. | ) | |

**GOVERNMENT'S SUPPLEMENTAL MEMORANDUM
REGARDING SOVEREIGN IMMUNITY AFTER CAFRA, THE DISCRETIONARY
FUNCTION EXEMPTION & ADMINISTRATIVE EXHAUSTION**

**SUMMARY**

Congress has not waived sovereign immunity to allow a defaulted individual claiming

innocent owner status in a forfeiture case to claim damages for the sale of the forfeited property

that occurred during the pendency of his appeal of the forfeiture order.  Therefore, this Court

lacks subject matter jurisdiction to award damages to Lane in excess of his alleged share of the

proceeds from the Marshals Service's sale of the Flash II.

**FACTS**

**A.      Procedural Posture**

The defendant vessel in this forfeiture action, the "Flash II,"  was sold at auction in

December 2005, pursuant to this Court's July 15, 2005 Judgment and Order of Forfeiture,

Docket Entry 15, which forfeited the property to the United States and ordered the United States

Marshals Service to arrange for sale of the vessel and pay one-third of the proceeds to the only

then-Claimant, Harry E. Crosby.   Kerry Scott Lane ("Lane") moved unsuccessfully in the

district court pursuant to Fed. R. Civ. P. 60(b) to set aside the Order of Forfeiture, and the district

court refused to stay the Order pending appeal.  In August 2006, the First Circuit reversed, and

remanded the case for the district court to reconsider its 60(b) ruling.  This court has now

reconsidered that ruling and determined that the Rule 60(b) motion should have been granted.

### B.    Lane's Proposed FTCA Claim

Lane now seeks "monetary damages for loss of property due to the government's sale of

the Flash II while held by law enforcement pending the conclusion of these forfeiture

proceedings," and he seeks to amend his Answer to counterclaim for that purpose.  Docket Entry

6, page 2.  As addressed at oral argument on May 3, 2007 on this matter, the government submits

that sovereign immunity has not been waived as to Lane's claim, and therefore, this Court lacks

subject matter jurisdiction over Lane's claim for damages in excess of the amount of the sales

proceeds.[1]  In order to make this determination, it is necessary first to focus on the specific action

for which Lane seeks compensation.

Although Lane previously argued that it was improper for the government to sell the

Flash II while Lane's appeal was pending (asserting that the government was acting like "a thief

fencing stolen property," Docket 56-2, at page 10), the law is clear that the Marshals Service had

no right to question the facially valid order of a district court judge to sell the Flash II, and

therefore that the Marshals Service is immune from suit for that action under the doctrine of

quasi-judicial immunity.   See Baker v. McCollan, 443 U.S. 137, 145-46 (1979) (arresting officer

entitled to immunity when executing facially valid arrest warrant);  Whiting v. Kirk, 960 F.2d

248, 252 (1st Cir. 1992) (police officers who arrested a judgment debtor in faithful execution of

---

[1]Accordingly, the Court should deny Lane's motion to amend his Answer, on the grounds
that the Counterclaim that he seeks to add would be futile.  See Epstein v. C.R. Bard, Inc., 460
F.3d 183, 191 (1st Cir. 2006) (amendment of pleadings should not be permitted where an
amendment would be futile); Coyne v. City of Somerville, 972 F.2d 440, 446 (1st Cir. 1992)
(same).

a facially valid writ were shielded from liability); United Steelworkers of America v. Bishop,

598 F.2d 408, 414 (5th Cir. 1979) (where marshals were ordered by the court to provide

protection in a replevin of property, the marshals were immune from suit when acting in

obedience to court order);  Martinez v. Commonwealth of Puerto Rico, 435 F. Supp. 1204, 1208

(D.P.R. 1977) (when acting pursuant to a Judge's order, marshals enjoy quasi-judicial immunity

from damages in § 1983 civil rights suits).

Likewise, Lane cannot make a claim against the government for the manner in which the

auction was conducted:  it is beyond dispute that the Marshals Service cannot be held

responsible for the actions of its independent contractor.  See 28 U.S.C. § 2671 (definition of

agency within waiver of sovereign immunity "does not include any contractor with the United

States"); Logue v. United States, 412 U.S. 521, 531-32 (1973) (FTCA waiver of immunity does

not cover contractors); Heinrich v. Sweet , 308 F.3d 48, 53 (1st Cir. 2002) (affirming 83 F.Supp.

2d 214, 224 (D.Mass. 2000)(Young, J.) (the government "cannot be held liable under the

[FTCA] for the alleged negligence of private defendants")).

Lane cannot complain about the selection of Guernsey's as contractor to conduct the

auction: he himself agreed in advance that Guernsey's was an appropriate choice, and therefore

he is estopped from complaining about that choice.[2]  See Docket Entry 20, Exhibit 3 at ¶ 6 ("I do

not oppose the sale of the sailboat at the auction in December").

Accordingly, Lane's claim, as narrowed by this analysis and as amplified by the

responses to the Court's questioning at oral argument, is that the Marshals Service was negligent

---

[2]Additionally, the decision of which contractor to select is a discretionary decision to which
the discretionary function exemption applies.  See discussion, infra.

in contracting for the sale of the vessel without setting a reserve.  The government respectfully submits that this claim – even as narrowed –  is barred by the doctrine of sovereign immunity for two reasons.  First, while Lane asserts that the Civil Asset Forfeiture Reform Act (CAFRA) expanded the waiver of sovereign immunity in the Federal Tort Claims Act (FTCA) to cover a claim that a sale price was inadequate by an alleged owner whose interest had been forfeited at the time that the sale took place, the government submits that, construed properly, the FTCA waiver created by CAFRA does not in fact cover such a claim.  Moreover, even if the FTCA could otherwise be so construed, the discretionary function exemption from the waiver of sovereign immunity otherwise set forth by the FTCA bars the claim, because the choice by the Marshals Service not to set a reserve was an exercise of discretion which Congress has insulated from judicial review under 28 U.S.C. § 2680(a).

## ARGUMENT

### A.      Sovereign Immunity Still Bars this Claim after Cafra.

It is axiomatic that sovereign immunity bars claims against the government unless the government agrees to be sued.[3]  Lane contends that the government has agreed to be sued through the CAFRA amendment to the FTCA.  The government disagrees.

Prior to CAFRA, the exceptions to the FTCA waiver of sovereign immunity included the following:

> (c)      Any claim arising in respect of the assessment or collection of any tax or customs duty, or the detention of any goods or merchandise by any law

---

[3]No action lies against the United States unless Congress has authorized it.  See Hercules, Inc. v. United States, 516 U.S. 417, 422 (1996);  United States v. Testan, 424 U.S. 392, 399 (1976);  Dalehite v. United States, 346 U.S. 15, 30 (1953).

enforcement officer of customs or excise or any other law-enforcement
officer.

28 U.S.C. § 2680(c) (2000).  Therefore, prior to the enactment of CAFRA, the waiver of

sovereign immunity inherent in the FTCA did not extend to claims arising in respect of "the

detention of goods or merchandise."

CAFRA amended the FTCA to allow certain claims arising out of government detention

of goods.  Under the new provision, the exception to the waiver of sovereign immunity provision

of Section 2680 reads as follows:

(c)     Any claim arising in respect of the assessment or collection of any tax or
customs duty, or the detention of any goods, merchandise, or other
property by any officer of customs or excise or any other law enforcement
officer, except that the provisions of this chapter and section 1346(b) of
this title *apply to any claim based on injury or loss of goods, merchandise,
or other property, while in the possession* of any officer of customs or
excise or any other law enforcement officer, if--

(1)     the property was seized for the purpose of forfeiture
under any provision of Federal law providing for
the forfeiture of property other than as a sentence
imposed upon conviction of a criminal offense;

(2)     *the interest of the claimant was not forfeited;*

(3)     the interest of the claimant was not remitted or
mitigated (if the property was subject to forfeiture);
and

(4)     the claimant was not convicted of a crime for which
the interest of the claimant in the property was
subject to forfeiture under a Federal criminal
forfeiture law.

28 U.S.C.A. § 2680 (emphasis supplied).

Parsing the double exceptions in the statute, the *waiver* of sovereign immunity (thus, the

consent to be sued) now applies to "*any claim based on injury or loss of goods, merchandise, or*

5

*other property, while in the possession of [law enforcement]*" provided that the four criteria set forth in 28 U.S.C. § 2680(c) apply.   Therefore, in order for Lane to make a claim within this waiver, he must show that he has a claim for injury or loss of goods while in the possession of law enforcement *and* that the four enumerated criteria in Section 2680(c) apply to him.  Lane can make neither showing.  <u>See</u> <u>In re Rivera Torres</u>,  432 F.3d 20, 23 (1st Cir. 2005) (party seeking to establish a waiver of sovereign immunity bears the burden of proof).

First, there is no dispute that the Flash II was not injured or lost while in government possession: it was sold.  Lane's claim is therefore outside of the literal terms of the scope of the waiver.  This ends the matter.  The terms of a statute waiving immunity from suit define the court's jurisdiction to entertain suit, and the consent is no broader than the limitations which condition it.  <u>See</u> <u>Lane v. Pena</u>, 516 U.S. 187, 192 (1996) ("A waiver of the Federal Government's sovereign immunity must be unequivocally expressed in statutory text, and will not be implied.")   Statutes waiving sovereign immunity must be strictly construed in favor of the United States.  <u>Id</u>. ("a waiver of sovereign immunity will be strictly construed, in terms of its scope, in favor of the sovereign");  <u>Gonsalves v. IRS</u>, 975 F.2d 13, 15-16 (1st Cir.1992) ("Courts may not 'enlarge . . . beyond what the language [of the statute creating the waiver] requires.' ") ( quoting <u>Eastern Transp. Co. v. United States</u>, 272 U.S. 675, 686, 47 S.Ct. 289, 291 (1927)).

Since the express terms of the waiver cover only injury to or loss of "goods, merchandise or other property while in the possession of [law enforcement]", this provision provides no means for recovery for damages when an individual asserts that property, rather than being lost, was intentionally sold, and the price was somehow inadequate.

Additionally, by the express terms of the waiver, Lane is not a proper party.  At the time of the sale of the Flash II (and therefore at the time of the alleged tort for which a waiver of

sovereign immunity is sought), Lane's interest in the property had in fact been forfeited by

judicial order.  Therefore, Lane does not meet the criteria under 28 U.S.C. § 2680(c)(2).[4]

### B.    The Discretionary Function Exemption Also Bars this Claim.

Moreover, even if the FTCA were construed to permit Lane's claim, the action of the

Marshals Service in this case is insulated from judicial review by the discretionary function

exemption.   Section 2680(a)(1) provides that the government is not liable for:

> Any claim based upon the act or omission of an employee of the
> Government, exercising due care, in the execution of a statute or
> regulation, whether or not such statute or regulation be valid, or
> based upon the exercise or performance or the failure to exercise or
> perform a discretionary function or duty on the part of a federal
> agency or an employee of the Government, whether or not the
> discretion involved be abused.

26 U.S.C. § 2680(a).  The Supreme Court addressed the scope of the preservation of sovereign

immunity inherent in the discretionary function exemption at length in United States v. Gaubert,

499 U.S. 315 (1991).  In Gaubert, the Federal Home Loan Bank Board gradually took control of

a savings and loan.  Id. at 319.  The regulators initially required the chairman of the savings and

loan to remove himself from management, then required all of the managers and directors to

resign, and then took over the day to day operations.  Id. at 319-20.  Ultimately, two years after

the first intervention, the regulators declared the savings and loan insolvent, and the chairman

sued under the FTCA.  Id. at 320.  The Fifth Circuit Court of Appeals held that claims

concerning the regulators' activities after they took over the day to day management of the

---

[4]Indeed, the existence of criterion (c)(2) – that the claimant's interest not have been
forfeited – belies Lane's assertion that this provision is designed to cover his alleged loss.  If this
provision were intended to provide a basis for suit by individuals who were successful in
overcoming a default order after a forfeited property had been sold, it can be presumed that
Congress would have addressed that circumstance, rather than setting up a bar to recovery
through the requirement that the claimant's interest not have been forfeited.

savings and loan were not exempt from liability under the discretionary function exemption, because they were operational, rather than planning, and therefore were not in the nature of a policy decision that the discretionary function exemption was designed to shield from judicial scrutiny. Id. at 322, 327-28. The Supreme Court reversed and held that "all the challenged actions involved the exercise of discretion in furtherance of public policy goals." Id. at 334.

The discretionary function exemption applies where Congress has delegated authority to the executive branch by statute, and actions of executive branch personnel involving choices grounded in social, economic or political considerations are needed to carry out the authority that was delegated. Id. at 323. When a statute allows a government agent to exercise discretion, "it must be presumed that the agent's acts are grounded in policy when exercising that discretion." Id. at 324. Moreover, as emphasized by the Supreme Court in Gaubert, the "discretion" involved in the discretionary function exemption need not be high level policy making.  Day to day business activities "regularly require[] judgment as to which of a range of permissible courses is best." Id. at 325. These actions are covered by the discretionary function exemption. Therefore, the court lacks subject matter jurisdiction for claims based on those actions. Muniz-Rivera v. United States, 326 F.3d 8, 17 (1st Cir. 2003) (when discretionary function exemption exists, court lacks subject matter jurisdiction); Wood v. United States, 290 F.3d 29, 42 (1st Cir. 2002) (same).

Here, Lane asserts that the Marshals Service's decision to contract for the auction of the Flash II without imposing a reserve was commercially unreasonable. Lane further asserts that because the decision was simply a routine commercial decision, it was not covered by the discretionary function exemption. As demonstrated by Gaubert, the decisions by the Marshals Service regarding the sale of the Flash II were in fact discretionary, and therefore the Court

cannot reach the question of whether the decisions were reasonable.  The law *presumes* that a decision is grounded in policy (social, economic or political).  Accordingly, unless Lane can make a showing either that the decision violated a mandatory regulation (and therefore was not within the government actor's discretion at all), it "must be deemed discretionary."  Wood, 290 F.3d at 37.   Lane bears this burden, id., and here, it is a burden that Lane cannot meet.  In the instant case, consistent with the legal presumption, the Marshals Service's decisions clearly involved economic factors and were therefore grounded in policy.  The Marshals Service had a judicially imposed obligation to sell the Flash II.  Having selected a means of sale (the Guernsey's auction), the decision whether to impose a reserve was clearly grounded in economic factors.  The Marshals Service had incurred monthly expenses to store the Flash II, and it would continue to incur such costs until the vessel was sold.  See Declaration of Mary Magno, filed herewith, at ¶ 5.  Additionally, the Marshals Service incurred expenses to transport the Flash II to New York for the Guernsey's auction.  Id.  Therefore, at the time the Marshals Service made the decision regarding a reserve, the Marshals Service was aware that if the Flash II did not sell, the Marshals Service would have to incur additional costs to transport the vessel back to Boston, additional costs to store it pending further attempts at sale, and additional costs to advertise further attempts at sale.  Id.  These costs would be incurred with no assurance – indeed, no reason to believe – that the vessel would sell in the future at a higher price than the best bid at the Guernsey's auction.  In the absence of a mandate to place a reserve on the vessel, the Marshals Service's decision not to impose a reserve is shielded from tort review by the discretionary function exemption.  It is Lane's burden to show that this decision violated a mandatory statute or regulation.  Lane cannot meet this burden, and therefore, no claim against the government on this basis can be maintained.

9

C.      **Administrative Exhaustion Is Not Required.**

The government noted at oral argument that the Lane had failed to exhaust his

administrative remedies by submitting his FTCA claim to the Marshals Service, but also noted

that the failure of exhaustion may be excused by the counterclaim exception of the FTCA.  The

government respectfully concludes that this is so, and therefore that administrative exhaustion is

not an issue here.  Under 28 U.S.C. § 2675(a), administrative exhaustion is not required for

counterclaims.  Caselaw has made clear that this exception applies only when the counterclaim is

inherently intertwined with the merits of the complaint such that any of the following conditions

are met:  if issues of law and fact raised by the claim and the counterclaim are largely the same;

if *res judicata* would bar subsequent suit on the counterclaim; if substantially the same evidence

would support or refute the claim and counterclaim; or if there is a logical relationship between

the claim and counterclaim.  United States v. Bloom, 925 F. Supp. 426, 434 (E.D. La.), affirmed,

112 F.3d 200 (5th Cir. 1996).  Here, the government respectfully submits that there is a logical

relationship between the claim and counterclaim, and the facts that Lane must prove regarding

ownership will be the same in both the claim and the counterclaim.  Accordingly, the

government asserts that administrative exhaustion is not required in this proceeding.

## CONCLUSION

For all the reasons set forth above, the government respectfully submits that the

government has not waived sovereign immunity for Lane's assertion that the government is

liable in tort for damages in excess of the amount of proceeds received at auction for the Flash II.

Therefore, this Court should rule that the proceeds of the sale constitute the amount at issue with

regard to Lane's claim of ownership.

Respectfully submitted,

10

MICHAEL J. SULLIVAN
United States Attorney

By:     /s/ Nancy Rue_____
Nancy Rue
Assistant U.S. Attorney


<u>CERTIFICATE OF SERVICE</u>

I hereby certify that these documents filed through the ECF system will be sent electronically to
the registered participants as identified on the Notice of Electronic Filing (NEF).

/s/ Nancy Rue_____
Nancy Rue
Assistant U.S. Attorney

11

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

```
UNITED STATES OF AMERICA,        )
                Plaintiff,       )
                                 )
                v.               )Civil Action No.05-10192-WGY
                                 )
ONE STAR CLASS SLOOP SAILBOAT    )
BUILT IN 1930 WITH HULL NUMBER 721,)
NAMED "FLASH II,"                )
                Defendant.       )
```

## DECLARATION OF MARY MAGNO

I, Mary Magno, declare, under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the following is true and correct to the best of my knowledge and belief:

1.  I am employed by the U.S. Marshals Service as a Property Management Specialist, U.S. Marshal's Office (D. Mass.), have held that position since July 1997.

2.  In that capacity, my duties include facilitating the sale of federally seized and forfeited property on behalf of the U.S. Marshal's Office (D. Mass.), when directed to do so pursuant to federal court orders and/or upon the direction of the U.S. Attorney's Office (D. Mass.).

3.  Pursuant to the Court Order of July 15, 2005 in the above-captioned case, I facilitated the sale of the "Flash II," a federally seized sailboat previously owned by John F. Kennedy, Jr., on behalf of the U.S. Marshals Service.  In doing so, I selected Guernsey's Auction House, an independent contractor, on behalf of the U.S. Marshals

Service, to conduct the sale of the "Flash II" by public auction on December 15-17, 2005.

4.    I selected Guernsey's Auction House as the independent contractor to sell the "Flash II," on behalf of the U.S. Marshals Service, based on its excellent reputation and expertise as an auction facility, and its familiarity with the "Flash II." I knew that Guernsey's Auction House had previously placed the "Flash II" for bid at an auction of John F. Kennedy artifacts, and that the bid submitted for the "Flash II" at that auction formed the basis of an appraisal of the "Flash II" procured by the U.S. Drug Enforcement Agency (DEA) in October 2004. I also knew that Guernsey's Auction House was scheduled to conduct another auction of John F. Kennedy artifacts in December 2005, and believed that offering the "Flash II" for sale at that auction would generate the highest possible sale price for the "Flash II."

5.    The Court Order of July 15, 2005, did not direct the U.S. Marshals Service to place a minimum "reserve" bid or sale price on the "Flash II" for sale. Although the U.S. Marshals Service had the discretion to do so, the U.S. Marshal's Office (D. Mass.) decided not to set a minimum "reserve" bid on the sale of the "Flash II" due to the accumulating costs associated with the vessel. These costs

included, but were not limited to:  (1) the continuing monthly storage and maintenance costs for the vessel; (2) the cost of transporting the vessel to and from the auction house; (3) the cost of alternative options for disposing of the vessel; and (4) the costs of conducting a second auction of the "Flash II", including but not limited to the costs of readvertisement, and additional storage, maintenance and transportation, if the original auction did not produce the minimum "reserve" bid.

6.  In addition to the factors listed in Paragraph 5 of this Declaration, the U.S. Marshals Service also considered the Court Order dated July 15, 2005, which directed the Government to pay one third of the net proceeds from the sale of the "Flash II" to Claimant Harry Crosby.  Based on this Order, the U.S. Marshals Service sold the "Flash II" in the manner which we believed was most likely to produce the optimal selling price for all concerned, _i.e._, selling the "Flash II" through a highly reputed auction facility in the manner described above without a minimum "reserve" bid.

I declare, under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the foregoing is true and correct, to the best of my knowledge and belief.

Executed on this 9th
 Day of May, 2007

*Mary Magno*
Mary Magno