UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| v. | Civil Action # 05-10192 RWZ |
| ONE STAR CLASS SLOOP SAILBOAT BUILT IN 1930 WITH HULL NUMBER 721, NAMED "FLASH II", | |
| Defendant. | |
| KERRY SCOTT LANE, M.D. | |
| Claimant. | |

## CLAIMANT KERRY SCOTT LANE'S RESPONSE
## TO THE GOVERNMENT'S SUPPLEMENTAL MEMORANDUM

Dr. Lane's "thief fencing stolen property" analogy seems to be sticking in the government's craw. It is an apt analogy, as Claimant explained on page 10 of his Memorandum in support of his Cross-Motion. The government knew it did not provide the minimum due process requirements to obtain a valid judgment of forfeiture, and hastily disposed of the property while it was able to keep Dr. Lane out of court.

Contrary to the government's claim at page 2, Dr. Lane never argued that it was improper for the government to sell the boat – he stated in his request for a stay that he consented to the auction of the Flash II so long as a reasonable minimum reserve was set. The "facially valid order" that the government claims it could not question did not instruct the government to auction it without a minimum reserve. The order merely said "denied" and "Kerry Lane, M.D.,

may attempt to work out an escrow arrangement with the Government as to the amount he claims." The amount Dr. Lane claimed was $310,000.

Implicit in Judge Zobel's order was a requirement that the government employ reasonable commercial practices in selling the boat. After all, pursuant to 28 U.S.C. § 1355( c) the court was required to issue "any order necessary to preserve the right of the appealing party to the full value of the property at issue."

The authorities the government relies on at pages 2-3 are not on point. *Baker v. McCollan*, 443 U.S. 137 (1979) and *Whiting v. Kirk*, 960 F.2d 248 (1st Cir. 1992) do not involve sovereign immunity, but the qualified immunity of a government employee when sued in his individual capacity. They are completely irrelevant here.

The two cases cited by the government which dealt with judicial immunity and the derivative judicial immunity obtained by a government agent acting on a court order do not govern here because the court's order did not tell the government to auction the boat without a minimum reserve.

The independent contractor cases cited on page 3 do not apply because Guernsey's did not make the decision to auction the sailboat without a minimum reserve – the government did. Guernsey's was merely acting on the government's orders.

In Part A of its argument, the government tries to overly restrict the meaning of the phrase "any claim based on injury or loss of goods, merchandise or other property." As the government would have it, the word "loss" is limited to "lost" property (i.e. "misplaced" property) – not property that was stolen due to negligent security, or which the government gave away or sold. Both the language and legislative history of CAFRA prove otherwise.

When CAFRA's § 2680(c) waived sovereign immunity for money judgments for property damaged or lost while in custody of law enforcement pending forfeiture proceedings, it lifted the phrase "injury or loss of goods, merchandise or other property" from § 2679.  That provision of the Federal Tort Claims Act  waives sovereign immunity to make the U.S. liable – instead of the individual government employees – for certain torts they commit in the line of duty:

> The remedy against the United States provided by sections 1346(b) and 2672 of this title [28 USCS §§ 1346(b) and 2672] for injury or loss of property, or personal injury or death arising or resulting from the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment is exclusive of any other civil action or proceeding for money damages by reason of the same subject matter against the employee whose act or omission gave rise to the claim or against the estate of such employee.

§ 2679.  Clearly the phrase "injury or loss of property, or personal injury or death" was intended broadly to cover any potential tort.  By tracking the broad language, CAFRA clearly intended that its waiver of sovereign immunity be as broad as the FTCA itself when it comes to the types of harm to property that can now be remedied.

The House Committee Report on CAFRA confirms that Congress intended this waiver of sovereign immunity to cover any type of injury or loss to the property while held by law enforcement pending forfeiture.

> 5. COMPENSATION FOR DAMAGE TO PROPERTY WHILE IN THE GOVERNMENT'S POSSESSION
>
> The federal government is exempted from liability under the Federal Tort Claims Act for damage to property while detained by law enforcement officers.[1]
>
> Seized property awaiting forfeiture can be quickly damaged:

---

[1] 26 U.S.C. 2680(c).

> Seized conveyances devalue from aging, lack of care, inadequate storage, and other factors while waiting forfeiture. They often deteriorate--engines freeze, batteries die, seals shrink and leak oil, boats sink, salt air and water corrode metal surfaces, barnacles accumulate on boat hulls, and windows crack from heat. On occasion, vandals steal or seriously damage conveyances.[2]
>
> It cannot be categorized as victory when a boat owner gets back, for instance, a rusted and stripped hulk of a vessel. The bill amends the Federal Tort Claims Act to allow for tort claims against the United States government based on the destruction, injury, or loss of goods, merchandise, or other property while in the possession of any law enforcement officer if the property had been seized for the purpose of forfeiture. Of course, if seized property is successfully forfeited, no claim would be allowed.

H.Rep. Committee Report 106-192, June 18, 1999. It is significant that Congress quoted this laundry list of typical injuries to property held pending forfeiture – which includes naturally occurring processes – aging, deterioration, rust, barnacles – that cause the property to be "devalued" while detained. Certainly Congress did not intend the waiver of sovereign immunity to be limited to car accidents and such as the government claimed at the hearing. The language above shows Congress intended that the successful forfeiture claimant be made whole, whatever negligent act the government agents may have made, causing the property to devalue while in government custody.

The government's argument at pages 6-7, that Dr. Lane does not qualify because the default judgment was in effect when Flash II was sold is simply ridiculous. That judgment was not final then, because it was on appeal, and now it is void.

---

[2] U.S. Comptroller Gen., U.S. Gen. Accounting Office, *Better Care and Disposal of Seized Cars, Boats, and Planes Should Save Money and Benefits Law Enforcement*, at ii (GAO/PLRD-83-94, 1983).

If the government's argument on discretionary function in Part B were correct, there would rarely if ever be an enforceable Federal Tort Claim.

As the National Institute for Trial Advocacy's comments on 28 U.S.C. § 2680 point out, this discretionary function exception is more complex – and more limited – than the government suggests.

> The Supreme Court applies a two-part test to determine whether the government is protected by the discretionary function exception. First, the employee's alleged act must involve an element of judgment or choice. Second, the conduct must be based on considerations of public policy. *United States v. Gaubert, 499 U.S. 315, 113 L.Ed.2d 335, 111 S.Ct. 1267 (1991).*
>
> One of the factors considered by courts applying this test is whether the employee charged with negligent or wrongful conduct was engaged in "planning level" or "operational" activities. Planning is considered inherently discretionary, while operational activities are not. For example, a suit based on a negligent plan for the cleanup of a hazardous waste site is probably barred by section 2680(a), but a suit based on negligence by an employee who mishandles toxic waste at the site is probably not barred.
>
> Another factor is whether the employee's conduct is governed by a regulation. The existence of such a regulation creates a strong presumption that the employee's conduct is protected by section 2680(a) because it involves the same policies that caused the agency to issue the regulation. Many agencies have regulations clearly identifying which official has the discretion to make certain decisions. A detailed analysis of these regulations is often the key to applying section 2680(a). Section 2680(a) frequently comes into play in cases involving public safety. Many agencies are charged with inspecting potentially dangerous conditions or monitoring compliance with safety regulations. However, because these programs inevitably force an agency to allocate its limited budget and manpower to fight the most pressing safety concerns, allegations involving the government's failure to properly inspect and disclose potential safety hazards are covered by the discretionary function exception. *United States v. Varig Airlines, 467 U.S. 797, 81 L.Ed.2d 660, 104 S.Ct. 2755 (1984).* For the same reasons, claims based on negligent designs and specifications written or approved by government employees are often barred because the employees were exercising professional judgment when they chose among competing options, even if they knew of potential dangers created by their choices. Employees with a duty to issue

warnings of potential dangers, such as park rangers and meteorologists, are generally protected as well.

The examples in the NITA commentary show the negligent decision to auction the Flash II without a minimum reserve does not even come close to falling into the discretionary function category. "The burden of proof is usually placed on the government to establish that one of the exceptions of section 2680 bars the plaintiff's claim." Id. The government has not met that burden.

Furthermore, to the extent that the discretionary function exception of § 2680(a) conflicts with the CAFRA amendments to § 2680( c), CAFRA, as the more recent statute, prevails.

          Respectfully submitted,
          Kerry Scott Lane, MD,

          By his attorneys,


          _____/s/ Brenda Grantland_____
          Brenda Grantland, Esq.
          Law Office of Brenda Grantland
          20 Sunnyside Suite A-204
          Mill Valley, CA 94941
          (415) 380-9108
          Pro hac vice


          _____/s/ Eric B. Goldberg_____
          Jeffrey P. Allen (BBO# 015500)
          Eric B. Goldberg (BBO# 564398)
          Seegel Lipshutz & Wilchins, P.C.
          Wellesley Office Park
          20 William Street, Suite 130
          Wellesley, MA 02481
          (781) 237-4400