UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| v. | Civil Action # 05-10192 |
| ONE STAR CLASS SLOOP SAILBOAT BUILT IN 1930 WITH HULL NUMBER 721, NAMED "FLASH II", | |
| Defendant. | |
| KERRY SCOTT LANE, | |
| Claimant. | |

**CLAIMANT KERRY SCOTT LANE, M.D.'S,
POST-TRIAL MEMORANDUM**

At trial this Court posed a crucial question to the government: "Where is the evidence that Anderson... took one penny of the $16,000 that Milo transferred to him and used it in any way for the boat?" (Trial, p. 116.)   The government failed utterly to answer that question, stating instead that the court could infer that Anderson invested Milo's proceeds into Flash II.

This Court found that $16,000 in drug money is traceable from Gary Milo to Ole Anderson sometime during the last six months of 1997; that during this period of time the restoration of Flash II was proceeding; and that legitimate expenses of Flash II for storage and restoration work were being incurred. (Trial p. 127-128.)  The Court found a "fair inference" that Anderson was paying expenses for the Flash II (Trial p. 128), and that during the same period Dr. Lane, an owner of the vessel, was paying Anderson various sums to restore the Flash II. *Id.*

1

**ARGUMENT**

**I.     The government failed to prove that any money invested in the Flash II was "traceable to" a drug crime pursuant to 21 U.S.C. § 881(a)(6)**

The government has the burden of tracing proceeds into this specific asset, the Flash II, by a preponderance of the evidence.  18 U.S.C. § 983( c).  The government bears a heightened burden when it attempts to prove traceable proceeds under 21 U.S.C. § 881(a)(6). *United States v. McGauley*, 279 F.3d 62, 77 (1st Cir., 2002).

> Any interest in property purchased with illegitimate assets is forfeitable, but any interest purchased with legitimate assets, even the legitimate assets of a drug dealer or someone who knows they are doing business with a drug dealer, is not forfeitable because it is not "proceeds traceable to" a drug transaction. *United States v. One 1980 Rolls Royce*, 905 F.2d 89, 91 (5th Cir. 1990); *United States v. Pole No. 3172, Hopkinton*, 852 F.2d 636, 639-40 (1st Cir. 1988).

*United States v. 20832 Big Rock Drive*, 51 F.3d 1402, 1410-1411 (9th Cir. 1995).  In civil forfeiture "proceeds" cases "the government is required to trace the seized property *directly* to the offense giving rise to the forfeiture." *United States v. $8,221,877.16 in United States Currency*, 330 F.3d 141, 158 (3d Cir. 2003) (emphasis added).

**A.     The government's theory of forfeitability fades away without a trace once Gary Milo's drug money is transferred to Ole Anderson.**

"[T]he term 'traceable to' means exactly what it says." *United States v. Voigt*, 89 F.3d 1050, 1087 (3d Cir. 1996). Where the tainted drug money becomes commingled in an account or other container with untainted property, "the government's burden of showing that money in the account or an item purchased with cash withdrawn therefrom is 'traceable to' illegal activity will be difficult, if not impossible, to satisfy." *Id.*  However, that is the government's burden.

For twenty years now, courts have rejected the belief "that forfeitability spreads like a disease. ...After all, only the actual proceeds of drug transactions are forfeitable." *United States*

*v. Pole No. 3172*, 852 F.2d 636, 639 (1st Cir. 1988). "[T]he presence of one illegal dollar in an account does not taint the rest - as if the dollar obtained from fraud were like a drop of ink falling into a glass of water." *United States v. McGauley,* 279 F.3d 62, 76-77 (1st Cir. 2002), quoting *United States v. $ 448,342.85*, 969 F.2d 474, 476 (7th Cir. 1992).

Cases where courts have found commingled funds traceable to drug offenses and thus forfeitable under 21 U.S.C. § 881(a)(6) involve situations where the claimants' legitimate incomes were insufficient to explain the large value of property found in their possession.[1]  Even when the assets at issue belonged to a drug dealer, possession of large sums of money has tended to support its forfeitability as traceable drug proceeds "only where a claimant's verifiable income could not possibly account for the level of wealth displayed." *United States v. One 1980 Cessna 441 Conquest II Aircraft*, 989 F. Supp. 1465, 1469-1470 (D. Fla. 1997), quoting *United States v. Funds in the Amount of $ 9,800*, 952 F. Supp. 1254, 1262  (N.D. Ill. 1996).  In a case where cash and gold concealed in a drug dealer's house "cry out that they are illegal drug proceeds," the government was required to show more than the existence of substantial illegal proceeds to establish that vehicles, art and other luxury items were purchased with proceeds of his drug

---

[1]  See for example, *United States v. Parcels of Land*, 903 F.2d 36, 39-42 (1st Cir. 1990) (finding forfeiture appropriate when there is "scant evidence in the record of any 'substantial' sources of legitimate income" and yet over a million dollars worth of property); *United States v. Dusenbery*, 223 F.3d 422, 425 (6th Cir. 2000) (finding that defendant's admission that he purchased property with drug proceeds and his testimony that he was unemployed for two years constituted sufficient evidence of link to support forfeiture), aff'd on other grounds, 534 U.S. 161 (2002); *United States v. $ 174,206.00*, 320 F.3d 658 (6th Cir. 2003)(evidence of legitimate income that is insufficient to explain the large amount of property seized, unrebutted by any evidence pointing to any other source of legitimate income satisfies the burden imposed by the statute); *United States v. One Parcel of Real Property*, 921 F.2d 370, 376 (1st Cir 1990) (evidence that the *bulk of* defendant's *cash flow* for two years immediately prior to purchase of property was from illegal drug sales sufficient to show probable cause that property, at least in part, was acquired with illegal proceeds).

3

dealing, and thus also subject to forfeiture. *United States v. 40 Clark Rd.*, 52 F. Supp. 2d 254 (D.

Mass. 1999).  While the drug dealer's substantial illegal income in that case justified

> strong suspicion that many, if not all, of Rosenzweig's possessions were derived
> from his illegal drug activities and not from legitimate sources, suspicion is not
> enough to establish [forfeitability under a traceable proceeds theory]. See *28
> Emery Street*, 914 F.2d at 3.[2]

*Id.* at 264 (applying the probable cause burden of proof).

The government has proffered no more than mere suspicion that any of the funds that Ole

Anderson used to pay for maintenance of the Flash II during the last six months of 1997 included

any portion whatsoever of Gary Milo's $16,000 in tainted currency.  Here, in contrast, Dr.

Lane's legitimate funds, submitted to Ole Anderson to pay Marblehead's bills for materials and

labor far outstripped the amounts of Marblehead's invoices.[3]  See *United States v. Pole No.

3172*, 852 F.2d 636 (1st Cir. 1988), (under the lower probable cause standard, the court found no

grounds for forfeiture where properties sought to be forfeited as proceeds of crime were

conceivably within the financial grasp of the claimants' legitimate incomes). Furthermore, no

Marblehead invoice lists any amount past due, therefore this Court can fairly infer that all

Marblehead invoices through May 1997, which total $24,807.56 ($25,802.06 minus the $994.50

from invoice dated 12/31/1996 marked "credit labor"), were paid in full before June 1997 –

before the government alleges that Milo tainted the Flash II with drug money.  The only Flash II

expenditures during the crucial last half of 1997 (Court finding, Trial pp. 127-128) total $334.78.

The government cannot meet its burden of proof by merely tracing drug money to Ole

---

[2] *United States v. Parcel of Land & Residence at 28 Emery St.*, 914 F.2d 1 (1st Cir. 1990).

[3] As Exhibit 4 shows, by mid-year 1997, Dr. Lane had already invested at least $39,000, andby
the end of 1997 he contributed a total of $60,000.  Marblehead's invoices for the last seven
months of 1997 total a mere $334.78.

4

Anderson and asking the Court to infer that Ole spent the cash refurbishing the sailboat.  A permissive inference cannot supply the proof needed under the preponderance of the evidence standard when a competing inference is equally plausible.  See *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 2007 U.S. LEXIS 8270 (S.Ct. # 06-484, June 21, 2007).  The government has to show it to be more likely than not that Ole used Milo's cash to pay the Marblehead invoices.  Since it is more likely that Ole Anderson deposited Dr. Lane's checks and sent a check to Marblehead, the government cannot supply its missing element by inference.

If the government had shown Gary Milo's drug proceeds became commingled with Ole Anderson's untainted funds, "whether in a bank account or in a tattered suitcase" the commingled funds "cannot be divided without difficulty," *Voigt*, at 1088.   In *Voigt*, the Third Circuit vacated a judgment for forfeiture of jewelry purchased with commingled tainted and untainted funds.  Like other circuits, the court found it "difficult, if not impossible" to determine what portions of the commingled funds were used to purchase the jewelry:

> While we can envision a situation where $500,000 is added to an account containing only $500, such that one might argue that the probability of seizing "tainted" funds is far greater than the government's preponderance burden (50.1%), *such an approach is ultimately unworkable*. … Once we distinguish the money from its container, it also follows that the presence of one illegal dollar in an account does not taint the rest–as if the dollar obtained from [money laundering activity] were like a drop of ink falling into a glass of water. *$448,342.85, 969* F.2d 474, 476 (7th Cir. 1992).

*Id.* at 1087 (emphasis added).

Here, the government has a further problem – it cannot show that Milo's tainted funds were ever commingled in a bank account or tattered suitcase with the checks Dr. Lane paid to refurbish the Flash II.  Milo gave Anderson only cash.  Trial at p. 22.  Milo did not accompany Anderson to the bank to deposit the cash.  Trial at p. 54.  Depositing Milo's cash into his bank

account would have aroused suspicions at Anderson's bank.  Since he lived in South Florida and

Marblehead was located in Massachusetts, Anderson probably paid Marblehead's invoices by

check.  It would be unlikely that Anderson sent packages of cash to Marblehead, when he had

checks from Dr. Lane that he had to put through his bank account.  One of Dr. Lane's canceled

checks were endorsed over to Marblehead shipbuilder Marshal Chapman.  Trial Ex.1 p. 22.  A

cashier's check purchased by Dr. Lane (with Ole Anderson listed as remitter) was paid directly

to Marblehead shipbuilder Marshal Chapman.  Trial Ex. 1 p. 22.  More likely than not, Ole

Anderson deposited the rest of Dr. Lane's checks – but not Milo's cash – into his bank account

and sent checks by mail to Marblehead to pay for the restoration and storage.

To meet its burden of proof the government has to show it is more likely than not that

Anderson used Milo's cash, instead of Dr. Lane's checks, to pay the Marblehead invoices.  This

it cannot do.  The statutory provision governing forfeitures under a proceeds theory specifies "all

proceeds *traceable* to such an exchange...."  21 U.S.C. § 881(a)(6).  When the government

cannot show traceability, [t]he solution... is to give effect to the substitute asset provision."

*Voigt* at 1088.

**B.    The government cannot trace proceeds that have already been forfeited as substitute assets against Milo because substitute property "by its very nature is not connected to the underlying crime."**

Here, the government attempts to trace funds that have already been ordered forfeited

from Gary Milo on the theory that traceable proceeds could not be located, and therefore the

substitute assets theory applied.  The government thus has a perfectly logical solution – collect

its money judgment from Milo, who now has an "obligation to disgorge assets and to continue

disgorging assets to the government until [he has] repaid $9,967,000." (Trial p. 18.)  Of course,

collecting this judgment may prove difficult, given Milo's change of career to something far less

lucrative – but that is not this Court's concern.

The very nature of substitute assets prevents this Court from finding that any of Gary Milo's drug proceeds are traceable to the Flash II.  The government obtained an order forfeiting substitute assets *in an amount covering all of the proceeds* that it estimated Gary Milo acquired as a result of his drug dealing. Trial Ex. 4, forfeiting $9.7 million from Milo as "substitute assets" pursuant to 21 U.S.C. 853(p).

"[T]he substitute asset provision comes into play only when forfeitable property cannot be identified as directly 'involved in' or 'traceable to' [the criminal activity]," *United States v. Candelaria-Silva*, 166 F.3d 19, 43 (1st Cir. 1999), quoting *Voigt*, 89 F.3d at 1086.

> A criminal forfeiture order may take several forms. First, the government is entitled to an in personam judgment against the defendant for the amount of money the defendant obtained as proceeds of the offense. Second, to the extent the government can trace any of the proceeds to specific assets, it may seek the forfeiture of those assets directly pursuant to 21 U.S.C. § 853(a)(1). Third, *if as a result of some act or omission of the defendant, the government cannot trace the proceeds to specific assets,* it may seek the forfeiture of "any property, cash or merchandise, in satisfaction of the amount of criminal forfeiture to which it is entitled." *United States v. Voigt*, 89 F.3d 1050, 1088 (3d Cir. 1996); *see 21 U.S.C. § 853(p) (authorizing forfeiture of substitute assets).*

> In *Voigt*, the Third Circuit held that a defendant convicted of laundering $ 1.6 million was required to forfeit that amount as a money judgment. See 89 F.3d at 1084. When the government could not directly trace any forfeitable proceeds to the defendant's current assets, the court held that the government could satisfy the $ 1.6 million judgment by seeking forfeiture of the defendant's assets as substitute assets. See id. at 1088.

> Similarly, in this case, the district court ordered forfeiture of the Montanez property as a substitute asset to satisfy, at least in part, the $ 6,000,000 money judgment set forth in the preliminary order of forfeiture *because the government established that it could not trace any of the criminal proceeds* into any of the defendant's current assets.

*United States v. Candelaria-Silva*, 166 F.3d 19, 43 (1st Cir. 1999) (emphasis added).

Substitute assets, by their very nature, cannot be traced to the underlying crime.  *United*

*States v. Saccoccia*, 354 F.3d 9 (1ˢᵗ Cir., 2003)

> The operative statutory language requires that a defendant forfeit "tainted" property, viz., property (i) acquired by committing the offense, and (ii) "constituting, or derived from, any proceeds . . . obtained, directly or indirectly" from its commission. 18 U.S.C. § 1963(a)(1),(3)[4]. … In the event that tainted property is unavailable for forfeiture (as when it has been transferred to a third party), the government may recover "substitute" property, viz., defendant's other untainted property of equivalent value. See id. § 1963(m); *United States v. Lester*, 85 F.3d 1409, 1411 n.3 (9th Cir. 1996) ("'Substitute property,' . . . by its very nature is not connected to the underlying crime.'") (citation omitted).

*Id. at* 12 (footnote omitted). "[A]ssets do not become forfeitable as substitute assets unless and until a court has determined that the requirements of subsection (m) have been satisfied and a forfeiture order has been entered." *United States v. Saccoccia*, 165 F. Supp. 2d 103,113 (D.R.I. 2001) (hereinafter, *"Saccoccia I")*. "Stated another way, this category of assets does not come into play in the forfeiture process until such time as the Government can no longer trace assets as funds derived directly from the RICO activity," *United States v. Salvagno*, 2006 U.S. Dist. LEXIS 61471, 36-40 (D.N.Y. 2006).

Here, as required under 21 U.S.C. § 853(p), the government made a showing of due diligence in trying to locate any of the proceeds from Milo's drug dealing. The United States' Motion for Issuance of a Preliminary Order of Forfeiture and a Money Judgment," *United States v. Gary Milo,* (D.Mass. 04-CR-10054-NG) Exhibit 3,  states: "the Government has shown that the Defendant received $9,967,500, as proceeds of the offense charged…. The Government has attempted to locate these funds, but has been unable to do so." (*Id.*, paragraph 6.) Pursuant to its "extraordinary discovery rights in identifying and locating forfeitable property"

---

[4]  The forfeiture provisions prescribed by RICO and by 21 U.S.C § 853, are similar and cases interpreting RICO are cited as persuasive analogous authority. *Id.* at 12, citing *United States v. Hooper*, 229 F.3d 818, 821 n.7 (1st Cir. 2000).

> The United States ... identified $650,000 in cash as directly forfeitable.
> Specifically, (1) $150,000 in drug proceeds that the Defendant transferred to one
> of his relatives, believed to be his sister, Sandra Milo, (2) $100,000 in drug
> proceeds the Defendant transferred to another relative, believed to be another
> sister of the Defendant, (3) $100,000 in cash currently in the Defendant's
> possession, and (4) $300,000 in various checking accounts controlled by the
> Defendant.

Ex. 3 paragraph 7.

The government reserved "the right to conduct additional discovery to locate forfeitable

assets to satisfy the Money Judgment" (*Id.*, paragraph 10) and requested that it be permitted to

undertake whatever discovery is necessary to identify, and locate property subject to forfeiture:

> In the event that additional assets are identified which are subject to forfeiture
> either directly or pursuant to 21 U.S.C. § 853(p), as incorporated by 18 U.S.C. §
> 982, the United States will seek an amended Preliminary Order of Forfeiture.

*Id.*, paragraph 13-14.

Then, on June 29, 2006, Judge Gertner issued a Second Amended Preliminary Order of

Forfeiture of Substitute Assets in an amount up to $9,967,000 – the entire value *all of the*

*proceeds* the government estimated that Gary Milo had acquired as a result of his drug dealing

career.  In that Order Judge Gertner recited that in the Preliminary Order of Forfeiture the court

permitted the United States to conduct discovery to locate any and all assets, or substitute assets,

subject to forfeiture pursuant to 21 U.S.C. § 853 (m) and (p), and that the United States would

seek to amend the Order if such assets were identified.  The Second Amended Preliminary Order

of Forfeiture listed 13 real properties identified as substitute assets.  Trial Exhibit 4.

Nowhere in those criminal forfeiture proceedings did the government suggest that it had

traced any of Gary Milo's proceeds to Ole Anderson or the Flash II.

*Voigt* rejected as illogical "the government's contention that the 'traceable to' and

substitute asset theories merely create alternative paths to forfeiture, which the government may

choose at its option." *United States v. Voigt*, 89 F.3d at 1086.  Accordingly, the Third Circuit

concluded that the government was improperly in possession of jewelry Voigt purchased with

commingled tainted and untainted funds, stating, "the government must satisfy its forfeiture

judgment through the substitute asset provision." *Id.* at 1088.

Substitute assets are the government's forfeiture vehicle of last resort when it is unable to

trace a defendant's illicit proceeds.  For the purpose of obtaining an order to forfeit substitute

assets from Gary Milo, the government declared that, with due diligence, it has only been able to

locate 13 real properties and $650,000 cash possessed by Milo or transferred to family members,

and that it has been and continues to be *unable to locate any other proceeds of Milo's criminal

activity*.  Having obtained an order subjecting substitute assets up to an amount covering all of

Milo's drug proceeds, it certainly follows that the government cannot now claim an alternative

theory that some portion of those same drug proceeds are traceable to defendant property in this

in rem proceeding.

Collateral estoppel applies to Judge Gertner's finding that Milo's drug proceeds were

untraceable.  Allowing the government to pursue this civil forfeiture now under a traceable

proceeds theory gives the government a forbidden second bite of the apple.  See *United States v.

Cunan*, 156 F.3d 110, 115 (1st Cir. 1998), citing *United States v. Parcels of Real Property*, 913

F.2d 1, 4 (1st Cir. 1990) (rejecting defendant's argument that his state narcotics convictions

should have no collateral estoppel effect).  The test is whether the same parties pursued a remedy

that arose from the same "transaction" in an earlier proceeding that ended with a final judgment.

*Id*. at 116.  See also *United States v. One Parcel of Real Property*, 900 F.2d 470, 472 (1st Cir.

1990) (state guilty pleas collaterally estopped claimants from relitigating the issues disposed of

in their criminal case).

II.    **Gary Milo did not own a legal interest in "Flash II" and could not taint it**

The government attempts to trace a portion of Milo's previously forfeited substitute assets to a sailboat that Mr. Milo lacked even a colorable ownership interest in, much less an ownership interest that could be proven.

The government's forfeiture theory rests on quicksand.  Gary Milo's drug proceeds – which he allegedly gave or loaned to Ole Anderson to invest in the Flash II – gave Milo no documented interest in the property, either as a co-owner or lienholder.  Under the statute of frauds of both Massachusetts (where Flash II was stored) and Florida (where Dr. Lane, Ole Anderson, and Gary Milo all lived) – without written documentation of his interest, Gary Milo acquired no enforceable interest in Flash II.  Therefore, the specific property Flash II can not be reached or tainted by Ole Anderson's acceptance of Gary Milo's drug proceeds.

A.    **Milo did not have an ownership interest**

Dr. Lane had already bought into the Consortium, and the Consortium had bought out all other interests in Flash II, by the end of July 1996, when Dr. Lane bought out Chuck Fitzgerald's interest.  Dr. Lane and each of the members of the Consortium all had contracts evidencing their ownership in the Consortium that owned Flash II.  None of these documents listed Milo as a co-owner.

Government informant Gary Milo said he loaned Ole Anderson $16,000 in drug money in the last half of 1997.  Unlike the Consortium members, Milo obtained no documentation of any ownership interest or lien.  He claimed he only had an oral agreement with Anderson.

Given the value of this historic relic, an oral agreement to buy into the consortium that owned Flash II would be unenforceable in the first instance because of the statute of frauds.  Under both Massachusetts and Florida state laws, without written documentation of an

ownership interest, Gary Milo never acquired *any* interest in the Flash II.[5]

Furthermore, under both Massachusetts and Florida law, Ole Anderson had no power under the Consortium agreement to transfer any portion of the Flash II to anyone without the express written consent of the owners.[6]  Obviously, Ole Anderson could not possibly "reacquire" an ownership interest (Rue, Trial, pp 114-115) that Gary Milo never acquired in the first place.

### B.     Milo did not have a valid lien

Milo's claimed lien fails because of the same defect as his claim of an ownership interest – his lack of documentation.

At best, before Anderson repaid the loan, Milo may have been in a position similar to having a mechanic's lien on the boat – *if* the money was actually used to supply parts or labor toward refurbishing or storing the sailboat.

---

[5]See: General Laws of Massachusetts (M.G.L.), PART I, TITLE XV,CHAPTER 106. UNIFORM COMMERCIAL CODE, ARTICLE 2, PART 2.Chapter 106: Section 2-201. Formal Requirements: Statute of Frauds, Section 2-201 (1): ("a contract for the sale of goods for the price of five hundred dollars or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his authorized agent or broker."); and Florida Statute of Frauds, Title XXXIX, Chapter 672, UNIFORM COMMERCIAL CODE: SALES, 672.201(1), Formal requirements; statute of frauds: ("[e]xcept as otherwise provided in this section a contract for the sale of goods for the price of $500 or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his or her authorized agent or broker").

[6]See: M.G.L., PART I, TITLE XV, Chapter 106: Section 2-202. Final Written Expression: Parol or Extrinsic Evidence ("with respect to which the confirmatory memoranda of the parties agree or which are otherwise set forth in a writing intended by the parties as a final expression of their agreement with respect to such terms as are included therein may not be contradicted by evidence of any prior agreement or of a contemporaneous oral agreement"); and Florida Statutes, 672.209(2) Modification, rescission, and waiver: ("[a] signed agreement which excludes modification or rescission except by a signed writing cannot be otherwise modified or rescinded."

Under Massachusetts law at some point Marblehead had a mechanics lien on the Flash II for storage and cost of supplies until any debt for storage, labor or supplies was satisfied.[7] However, by operation of law, the mechanics lien dissolved 30 days after the Flash II was moved from the Massachusetts port where the lien was incurred unless Marblehead filed a sworn statement claiming such lien with the city where the debt was contracted.[8]

Gary Milo did not comply with the mechanics lien provision. With no written contract to evidence his lien he has no enforceable lien. At best he was an unsecured creditor of Ole Anderson's. Thus Milo's loan to Anderson failed to create a forfeitable property interest in any specified property which may be co-owned by Anderson.

## C.    Unsecured creditors lack standing to defend or taint property

"The federal courts have consistently held that unsecured creditors do not have standing to challenge the civil forfeiture of their debtors' property." *Id.*, quoting *United States v. $20,193.39*, 16 F.3d 344, 346 (9th Cir. 1994)(collecting cases). Even a person with an in personam judgment against the property owner has no secured interest in any particular asset, and therefore lacks standing to contest the forfeiture of specific property, as a "mere equitable interest in the property was historically not deemed sufficient to confer standing" *United States*

---

[7] M.G.L., PART III, TITLE IV.,Chapter 255: Section 14: ("*If by virtue of a contract, express or implied, with the owners of a vessel or with the agents, contractors or sub-contractors of such owners*, or with any of them, or with a person who has been employed to construct, repair or launch a vessel or to assist therein, *money is due for labor performed, materials used or labor and materials furnished* in the construction, launching or repairs of, …, t*he person to whom such money is due shall have a lien upon the vessel,* … to secure the payment of such debt,…; and Section 14A (same lien upon vessel for storage and incidental expenses).

[8] Chapter 255: Section 15. Statement; effect of filing; fees: ("Section 15. Such lien shall be dissolved unless the person claiming it within thirty days after the vessel departs from the port at which she was when the debt was contracted, files in the office of the clerk of the city or town where the vessel was at such time, a statement, subscribed and sworn to by him...").

*v. One-Sixth Share of James J. Bulger in All Present & Future Proceeds of Mass Millions*

*Lottery Ticket No. M246233*, 326 F.3d 36, 44 (1st Cir. 2003).

Section 983(d)(6)(B)(i) codifies pre-CAFRA law holding that the term "owner" does not include a person with only a general unsecured interest in, or claim against, the property or estate of another.  Therefore, even assuming that Ole Anderson "reacquired Gary Milo's interest" (Trial p. 114, Ms. Rue's statement of government's theory), Gary Milo never had an ownership interest in the Flash II for Anderson to acquire.

### D.    Any taint flowed back to Milo once Ole repaid the loan

In any event Ole Anderson had repaid the unsecured loan to Milo, long before Flash II was seized.  Any taint flowing from Milo to Anderson transferred back to Milo when Ole repaid the debt.

### Conclusion

This Court accurately stated the crucial finding needed for the government to prevail on the issue of forfeitability: "at a minimum factually, I would have to find by a fair preponderance of the evidence that some of that $16,000 in drug money that went from Milo to Anderson was expended by Anderson on the upkeep or storage of the boat." Trial p.128.  "It's clear to me that the evidence is deficient in deciding in any way..."  this Court noted.  "[I]t would be sheer speculation to try and figure out how much, if anything did go into the boat...." Trial p. 129.

"The government cannot rely on innuendo and speculation about the source of the money to justify a forfeiture." *United States v. One 1980 Cessna 441 Conquest II Aircraft*, 989 F. Supp. 1465, 1470 (D. Fla. 1997), quoting *Funds in the Amount of $9,800*, at 1263.  The government has improperly been in possession of the Flash II because it has failed to prove forfeitability of any portion of the defendant boat. (*Voigt* at 1088, supra.)

14

Respectfully submitted,
Kerry Scott Lane, MD,

By his attorneys,

_____/s/Brenda Grantland_____
Brenda Grantland, Esq.
Law Office of Brenda Grantland
20 Sunnyside Suite A-204
Mill Valley, CA 94941
(415) 380-9108
(Pro hac vice)


_____s/Eric B. Goldberg_____
Jeffrey P. Allen (BBO# 015500)
Eric B. Goldberg (BBO# 564398)
Seegel Lipshutz & Wilchins, P.C.
Wellesley Office Park
20 William Street, Suite 130
Wellesley, MA 02481
(781) 237-4400

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA, |
                        |
         Plaintiff, |
       v.                   |    Civil Action # 05-10192 RWZ
                        |
ONE STAR CLASS SLOOP SAILBOAT |
BUILT IN 1930 WITH HULL NUMBER |
721, NAMED "FLASH II", |
                        |
         Defendant. |
_____ |
                        |
KERRY SCOTT LANE, M.D. |
                        |
         Claimant. |
_____ |

## CLAIMANT KERRY SCOTT LANE'S RESPONSE TO THE UNITED STATES' REQUEST FOR PRODUCTION OF DOCUMENTS

REQUEST NO. 1:

Any documents that you identified and/or relied upon in response to the United States' First Set of Interrogatories, as well as any documents concerning your responses to the Interrogatories.

      ANSWER: Dr. Kerry S. Lane has produced all documents responsive to this request currently in his possession, custody or control. If additional documents responsive to this request turn up, he will supplement this response.

REQUEST NO. 2:

Any documents concerning the assertions in your Affidavit dated July 27, 2005.

      ANSWER: Dr. Kerry S. Lane has produced all documents responsive to this request currently in his possession, custody or control. If additional documents responsive to this request turn up, he will supplement this response.

REQUEST NO. 3:

1

Any documents concerning the Flash II, including without limitation:

    a. the ownership of the Flash II as of October 2004;

    b. any changes in the ownership of the Flash II between 1996 and October 2004.

    ANSWER:  Dr. Kerry S. Lane has produced all documents responsive to this request currently in his possession, custody or control.  If additional documents responsive to this request turn up, he will supplement this response.

REQUEST NO. 4:

Any documents concerning any business or financial dealings between you and Gregory "Ole" Anderson.

    ANSWER:  Dr. Kerry S. Lane has produced all documents responsive to this request currently in his possession, custody or control.  If additional documents responsive to this request turn up, he will supplement this response.

                    Respectfully submitted,


                    _____ /s/ Brenda Grantland_____
                    Brenda Grantland, Esq.
                    Law Office of Brenda Grantland
                    20 Sunnyside Suite A-204
                    Mill Valley, CA 94941
                    (415) 380-9108
                    Pro hac vice


## CERTIFICATE OF SERVICE

    This is to certify that a true copy of the above document was served upon counsel for the government, by email, and fax, ~~and first class mail,~~ on this date.


Dated: December 8, 2006                  /s/ Brenda Grantland
                                    BRENDA GRANTLAND

2

08/30/2005 14:13 FAX 5225          DSC                                    ☎007



**SOLD:** Ole Anderson packs the sail of Flash II the 22-foot, Star Class boat sailed by John F. Kennedy to victory in the 1936 Atlantic Coast Championship, after making the winning bid of $18,500 Saturday at the Don Ehler estate auction in Monticello.

*The Associated Press*

# Dealer wins JFK sailboat
# with $18,500 bid at auction

The Associated Press

MONTICELLO — When John F. Kennedy raced sailboats as a teenager, one of his prized boats was a Star Class sloop named Flash II.

The future president skippered the sleek 22-footer to an Atlantic Coast Championship in 1936 as a 19-year-old, member of the Nantucket Sound Star Fleet.

Six decades later, far from Cape Cod, its mast broken and its white paint weathered, the boat brought $18,500 at auction Saturday at a Florida estate-sale form.

The buyer, Chuck Fitzgerald, owner of Sailorman Used Marine Gear Emporium in Fort Lauderdale, will restore the 66-year-old wooden craft, said Ole Anderson, who bid on Fitzgerald's behalf.

"We are delighted the yacht is in such good condition after her years in storage and look forward to giving the boat the tender love and care she deserves to bring her back to 100 percent Bristol quality," Fitzgerald said in a statement.

Anderson said, "She's very good. She has a tiny bit of dry rot around the keel, which I expected."

The price didn't approach the $453,500 paid for Kennedy's oak rocking chair or $772,500 paid for his golf clubs at the auction of Jacqueline Kennedy Onassis' estate in April.

But it was a big jump from the $300 the late Don Ehler paid for the boat in 1962 in Clearwater — with no idea who the former owner was.

Ehler, who died in April, kept the boat in a shed since 1972 when he

**"I guarantee you this is a piece of history. Don't miss out."**

— TOMMY ROWELL,
auctioneer

retired from St. Petersburg-based Florida Power Corp. and moved from the Tampa Bay area to rural northern Florida.

"I guarantee you this is a piece of history. Don't miss out," auctioneer Tommy Rowell urged the crowd.

The boat sat for a trailer under live oak trees in the dusty yard full of farm gear, vehicles, tools and grass-chewing horses and other sale items.

In less than five minutes the price ran up to $18,500 and Anderson made the winning bid.

"That was really a plus its something that was going to preserve it and keep it as a special thing. Don would be pleased with that," said Ehler's widow, Quido Ehler.

Despite the price, she said it "It's kind of sad selling something that means a lot to him."

The Kennedy family, not acting for sailboats, didn't try to buy the Star. "They sold it originally and moved on to other boats," said Melodie Miller, a family spokeswoman in Washington, D.C.

Kennedy sold the boat in 1942 and it went through at least three other owners before Ehler.

Ehler discovered its history when he read the 1936 yearbook of the

International Star Class Yacht Racing Association, which the group dedicated to the slain president. Kennedy was assassinated Nov. 22, 1963.

The boat, built in 1936, was bought in 1934 by John F. Kennedy and his elder brother, Joseph P. Kennedy, confirmed Diane Dorr, curator in Gloview, Ill.

Star records show John F. Kennedy sailed Flash II to a four-mile victory in the 1936 Atlantic Coast race, she said.

According to the John F. Kennedy Library in Boston, Mass., Kennedy continued his sailing success. Re won a MacMillan Cup Race for Harvard University in 1938 at Annapolis, Md., defeating, among others, future America's Cup winning skippers Bus Mosbacher and Robert Vivian.

Ehler offered to sell his Star to the family. In 1960, but received a polite decline on behalf of Jacqueline Kennedy.

"The 'Victura', another boat which the late President are happily used for many, many years being donated to the Library, and family feels, at this time, that it would be an adequate representation of his cutting interests," said the reply signed by her secretary, Pam Turnure.

1

LaneDocReqResp000003

05 30 2005 14:14 FAX 5225          DSC                                    ⊘008



Ole Anderson packs up the sail of the Flash II on Saturday after an auction in Monticello.

He made the winning bid — $18,500 — for the boat, once owned by John F Kennedy, on behalf of Fort Lauderdale marine gear dealer Chuck Fitzgerald.

Fitzgerald will restore the 66-year-old wooden craft, Anderson said.

ASSOCIATED PRESS

# Boat that JFK sailed as teen gets new owner

ASSOCIATED PRESS

MONTICELLO — When John F Kennedy raced sailboats as a teenager, one of his prized boats was a Star Class sloop named Flash II.

The future president skippered the sleek 22-footer to an Atlantic Coast Championship in 1936 as a 19-year-old member of the Nantucket Sound Star Fleet

Its mast broken and its white paint weathered, the boat brought $18,500 at auction Saturday at a Florida Panhan-

dle farm.

The buyer, Chuck Fitzgerald, owner of Sailorman Used Marine Gear Emporium in Fort Lauderdale, will restore the 66-year-old wooden craft, said Ole Anderson, who bid on Fitzgerald's behalf.

"We are delighted the yacht is in such good condition after her years in storage and look forward to giving the boat the tender love and care she deserves to bring her back to 100 percent Bristol quality," Fitzgerald said in a statement

Anderson said, "She's very good.

She has a tiny bit of dry rot around the keel, which I expected"

The price was a big jump from the $300 the late Don Ehler paid for the boat in 1963 in Clearwater — with no idea who the former owner was.

Ehler discovered its history when he read the 1964 yearbook of the International Star Class Yacht Racing Association, which the group dedicated to the slain president.

Ehler, who died in April, had kept the boat in a shed since 1972 when he retired and moved from the Tampa Bay area to rural northern Florida.

2

LaneDocReqResp000004

# ROBERT AUGUSTUS HARPER
## LAW FIRM, P.A.

| | | |
|---|---|---|
| State of Florida | 904/224-5900 | Board Certified |
| State of Georgia | fax    904/224-9800 | Appellate Criminal Law |
| St. James on Park | 1-800-64-L-A-W-Y-E-R | Criminal Law |
| 300 West Park Avenue  32301-1414 | | Appellate Practice |
| P. O. Box 10132 | | Major & Complex Civil Litigation |
| Tallahassee, Florida  32302-2132 | | |
| | | • *Steven Brian Whittington* |

03 July 1996

**Via Certified Mail/Return Receipt Requested**
Ms. Chapin Carson
c/o Sotheby's
1334 York Avenue
New York, NY 10021

Re: *Flash II*/Star Class #721

Dear Ms. Carson:

Pursuant to our telephone conversation of 01 July 1996, you will please find some preliminary information on the sailing vessel *Flash II*, a Star Class racing yacht, formerly owned and sailed by President John F. Kennedy. My client is interested in selling the vessel through your company and has authorized these inquires. Thank you for your attention and interest.

Sincerely,

Robert Augustus Harper

RAH/mms

Enc. (7)

3

LaneDocReqResp000005



**4**

LaneDocReqResp000006



# SAILORMAN
350 East State Road 84
FORT LAUDERDALE, FLORIDA 33316
(954) 522-6716
FAX (954) 760-7686
1-800-523-0772

| CUSTOMER'S ORDER NO. | | | PHONE | | | DATE 7/12/96 | | |
|---|---|---|---|---|---|---|---|---|
| NAME | | | | | | | | |
| ADDRESS | | | | | | | | |
| CITY | | | | STATE | | ZIP | | |
| SOLD BY | CASH | C.O.D. | CHARGE | ON ACCT. | MDSE. RET'D | PAID OUT | RETR'R | |

| QTY | PART NO. | DESCRIPTION | | PRICE | AMOUNT |
|---|---|---|---|---|---|
| | | received from Kerry Sea | | | |
| | | cashiers check # 1767 | | | |
| | | for $5000.00 | | | |
| | | received from Brenda & Anderson | | | |
| | | cashiers check # 1667 | | | |
| | | $5000.00 | | | |

No return on new items after 14 days and used items after 3 days

All claims and returned goods MUST be accompanied by this bill.

RECEIVED BY

TAX

TOTAL

_Thank You!_

LaneDocReqResp000007

JUL. 21. 2005  3:58PM    Sailorman                      NO. 618   P. 1

I, Chuck Fitzgerald, have agreed to
sell my interest in the Star Class Boat, # 721,
to the consortium headed by Ole Anderson
for the sum of $22,000.

I will hold all monies paid to me by
Mr. Anderson, or the Consortium members,
until July 26, 1996. If AT THAT TIME
Mr. Anderson and the Consortium have not
paid me the entire $22,000, I will refund
all money paid + held by me to Mr. Anderson
and the members of the Consortium.

7/12/96

6

LaneDocReqResp000008

# AGREEMENT

This agreement is to codify all previous understandings between Gregory Olaf Anderson (Anderson) and _Charles B. Fitzgerald_. This agreement supersedes any previous understandings relative to the purchase, refurbishment, and eventual sale of the sailing vessel *Flash II*, Star Class Boat #721, previously owned by former President of the U. S., John F. Kennedy.

1.    **Purpose of Consortium.** Anderson and _Fitzgerald_ understand and agree that the purpose of the Consortium is to obtain legal title to and possession of said vessel, *Flash II*. It is intended that the vessel is to be refurbished to as new condition and then resold at a profit, either to a private party or at auction to the highest bidder. A minimum reserve figure may be agreed upon by consensus of the members. The vessel will be resold promptly upon completion of refitting and restoration to the satisfaction of Mr. Anderson. The appropriate value of the vessel is not now known, but may be determined after appraisal by a qualified appraiser. If a reasonable offer for the purchase of the vessel is received before refurbishment, or if after written disclosure of said offer and consultation with the contributors Anderson concludes such offer satisfies the terms of the investment prospectives of this agreement, Anderson is authorized on behalf of the parties to accept or reject such offer as will satisfy the investment distribution as further set forth below. Anderson has the sole discretion to reject any offer

2.    **Contribution of Funds for the Purchase and Refit.** The Consortium shall consist of the two present members, Anderson and Mr. Eddie Crosby, and new members whose participation shall be the sum of $5,000.00 each. Any member may take more than one $5,000.00 position. The funds obtained from these members shall be used solely for the purchase, refurbishment, and related expenses to the vessel.

3.    **Distribution of Proceeds Upon Sale.** Each member shall be a primary recipient of $7,500.00 or 5 percent of the net sale proceeds after auction house and attorney fees are deducted, whichever sum is greater. Robert Augustus Harper Law Firm of Tallahassee, Florida, has been retained as exclusive agent for the consortium. Anderson's participation in the sharing of profits shall

1 of 2

7

LaneDocReqResp000009

not begin before each member of the Consortium has received $7,500.00 for each initial $5,000.00 investment. This $7,500.00 payment will be the first and primary obligation of the Consortium after Mr. Crosby's receipt of $10,500.

4.  **Responsibility.** Mr. Anderson will be general director and general manager of this entire project from purchase through the refurbishment and eventual sale of the vessel. He shall be responsible for keeping an accurate accounting of all costs associated with the project, including receipts and records of all disbursements. These records shall be available for inspection by any member upon demand. Viewing of and access to the vessel shall be permitted to any member upon reasonable notification to Anderson.

It is agreed that Anderson will solely coordinate and be responsible for any and all media access to *Flash II*. This access will be administered in such a manner as to derive maximum sustained publicity and interest in *Flash II* culminating in a successful sale of the vessel.

Anderson will also be responsible for researching and obtaining any documents, film, correspondence, articles of historical significance pertaining to the vessel, and any other such memorabilia deemed useful to receiving maximum profit from the eventual sale of *Flash II*.

5.  WE HEREBY AGREE to the above terms and conditions and hereby contribute $ *1.00* for *1%* ~~participation units,~~ receipt of which being hereby acknowledged.

GREGORY OLAF ANDERSON

Signature

Charles B. Fitzgerald
Printed Name

350 E. State Rd 84
Address

(_) 522-6716
Telephone Number

Sworn to and subscribed before me this
_24th_ day of _July_ 19, _96_.
by: _Gregory Olaf Anderson_
_Marsha L. Holm_
Signature of Notary Public
Marsha L. Holm

Notary's Name, Printed, Stamped or Typed
Personally Known: ___ or Produced ID ___
Type of ID produced _FL DL   A536-294-50-245-0_

2 of 2

**OFFICIAL NOTARY SEAL**
**MARSHA L HOLM**
**NOTARY PUBLIC STATE OF FLORIDA**
**COMMISSION NO. CC444816**
**MY COMMISSION EXP. APR. 29,1999**

Sworn to and subscribed before me this
___ day of ___ 19, ___.
by: ___

Signature of Notary Public

Notary's Name, Printed, Stamped or Typed 8
Personally ___ ___ or Produced ID ___
Type of ID produced ___

LaneDocReqResp000010

# BILL OF SALE AND GENERAL RELEASE

IN CONSIDERATION of ten and no/100th dollars ($10.00) and other good and valuable consideration, receipt of which being hereby acknowledged, the undersigned does sell, bargain and convey all right, title and interest in *Flash II*, #721, Star Craft sailing vessel, unto G. Olaf Anderson and does further by these presents release G. Olaf Anderson from any and all claims and causes of action of whatsoever nature or kind arising prior to this date.

_____
Signature

*Charles B Fitzgerald*
Printed Name

*2616 Barcelona Dr*
Address

*Ft. Lauderdale, Fl 33301*
City/State/Zip

*7/22/96*
Date

## ACKNOWLEDGMENT

STATE OF FLORIDA      :

COUNTY OF BROWARD  :

Sworn to and subscribed before me by *Charles B Fitzgerald* who is personally known to me or who has produced Florida driver's license _____ as identification this *22nd* day of July, 1996.

_____
Notary Public
State of Florida at Large         Marsha L. Holm
My commission expires:

OFFICIAL NOTARY SEAL
MARSHA L HOLM
NOTARY PUBLIC STATE OF FLORIDA
COMMISSION NO. CC444516
MY COMMISSION EXP. APR. 29,1999

9

# AGREEMENT

This agreement is to codify all previous understandings between Gregory Olaf Anderson (Anderson) and ___K. LANE___. This agreement supersedes any previous understandings relative to the purchase, refurbishment, and eventual sale of the sailing vessel *Flash II*, Star Class Boat #721, previously owned by former President of the U. S., John F. Kennedy.

1.   **Purpose of Consortium.** Anderson and ___K. LANE___ understand and agree that the purpose of the Consortium is to obtain legal title to and possession of said vessel, *Flash II*. It is intended that the vessel is to be refurbished to as new condition and then resold at a profit, either to a private party or at auction to the highest bidder. A minimum reserve figure may be agreed upon by consensus of the members. The vessel will be resold promptly upon completion of refitting and restoration to the satisfaction of Mr. Anderson. The appropriate value of the vessel is not now known, but may be determined after appraisal by a qualified appraiser. If a reasonable offer for the purchase of the vessel is received before refurbishment, or if after written disclosure of said offer and consultation with the contributors Anderson concludes such offer satisfies the terms of the investment prospectives of this agreement, Anderson is authorized on behalf of the parties to accept or reject such offer as will satisfy the investment distribution as further set forth below. Anderson has the sole discretion to reject any offer

2.   **Contribution of Funds for the Purchase and Refit.** The Consortium shall consist of the two present members, Anderson and Mr. Eddie Crosby, and new members whose participation shall be the sum of $5,000.00 each. Any member may take more than one $5,000.00 position. The funds obtained from these members shall be used solely for the purchase, refurbishment, and related expenses to the vessel.

3.   **Distribution of Proceeds Upon Sale.** Each member shall be a primary recipient of $7,500.00 or 5 percent of the net sale proceeds after auction house and attorney fees are deducted, whichever sum is greater. Robert Augustus Harper Law Firm of Tallahassee, Florida, has been retained as exclusive agent for the consortium. Anderson's participation in the sharing of profits shall

1 of 2

**10**

LaneDocReqResp000012

not begin before each member of the Consortium has received $7,500.00 for each initial $5,000.00 investment.  This $7,500.00 payment will be the first and primary obligation of the Consortium after Mr. Crosby's receipt of $10,500.

4.    **Responsibility.**  Mr. Anderson will be general director and general manager of  this entire project from purchase through the refurbishment and eventual sale of the vessel.  He shall be responsible for keeping an accurate accounting of all costs associated with the project, including receipts and records of all disbursements.  These records shall be available for inspection by any member upon demand.  Viewing of and access to the vessel shall be permitted to any member upon reasonable notification to Anderson.

It is agreed that Anderson will solely coordinate and be responsible for any and all media access to *Flash II*.  This access will be administered in such a manner as to derive maximum sustained publicity and interest in *Flash II* culminating in a successful sale of the vessel.

Anderson will also be responsible for researching and obtaining any documents, film, correspondence, articles of historical significance pertaining to the vessel, and any other such memorabilia deemed useful to receiving maximum profit from the eventual sale of *Flash II*.

5.    WE HEREBY AGREE to the above terms and conditions and hereby contribute $ 20,000.⁰ for ___20%___ ⁸ ᴺᴱᵀ ~~participation units~~, receipt of which being hereby acknowledged.

_Gregmy Olaf Anders_
GREGORY OLAF ANDERSON

_Investors Copy - #1 & 2_ ᵀᴼᵀᴬᴸ

_L Slane_
Signature

_Kerry Lane_
Printed Name

_621 Andrews Ave_
Address _Delray_

_462 278 3060_
Telephone Number

LaneDocReqResp000013



**12**

LaneDocReqResp000014

7 Positions available @ ⁵5K per — ⁵35K
Each position to receive ⁵7.5K return off the Top.
Sale Price of ⁵91K will Achieve this End.
After this Figure is Reached Each Position Has
A 5% interest in the boat, plus return of ⁵5K investment

TOTAL Return - each position (⁵5K)

Selling Price

upto ⁵150K — ⁵7500

⁵150K — ⁵8,231.25

⁵250K    ⁵12,318.75

⁵500     ⁵22,411.25

⁵1M      ⁵42,500.00

**13**

LaneDocReqResp000015

I get.

$50,000 or 25% after costs

whichever is greater

_____

Costs are: 1). Sothebys  15%

∴ Repayment    2). Harpers   5%

Priorities are: 3). Refit - approx 20,000 in

(40,000 after retired.)

Refit:
Lane  5k → 10k
Crosby  5k → 10k
G. Arden  10k → 20k

4) Crosby      $10,500

5) Lane  - 50k or 25% of overage

Jan Arden - 10k or 5% of overage

Peggy O. Arden  12/24/96

(Back of page 2 of 2)
          KSL

14

## AGREEMENT

12/24/96 Gregory Olf Anderson

This agreement is to codify all previous understandings between Gregory Olaf Anderson (Anderson) and DR. KERRY LANE . This agreement supersedes any previous understandings relative to the purchase, refurbishment, and eventual sale of the sailing vessel *Flash II*, Star Class Boat #721, previously owned by former President of the U. S., John F. Kennedy.

1.    **Purpose of Consortium.** Anderson and LANE understand and agree that the purpose of the Consortium is to obtain legal title to and possession of said vessel, *Flash II*. It is intended that the vessel is to be refurbished to as new condition and then resold at a profit, either to a private party or at auction to the highest bidder. A minimum reserve figure may be agreed upon by consensus of the members. The vessel will be resold promptly upon completion of refitting and restoration to the satisfaction of Mr. Anderson. The appropriate value of the vessel is not now known, but may be determined after appraisal by a qualified appraiser. If a reasonable offer for the purchase of the vessel is received before refurbishment, or if after written disclosure of said offer and consultation with the contributors Anderson concludes such offer satisfies the terms of the investment prospectives of this agreement, Anderson is authorized on behalf of the parties to accept or reject such offer as will satisfy the investment distribution as further set forth below. Anderson has the sole discretion to reject any offer.

2.    **Contribution of Funds for the Purchase and Refit.** The Consortium shall consist of the two present members, Anderson and Mr. Eddie Crosby, and new members whose participation shall be the sum of $5,000.00 each. Any member may take more than one $5,000.00 position. The funds obtained from these members shall be used solely for the purchase, refurbishment, and related expenses to the vessel.

3.    **Distribution of Proceeds Upon Sale.** Each member shall be a primary recipient of $ 10,000. For each participation unit ( 12/24 ) $2,000 or 5 percent of the net sale proceeds after auction house and attorney fees are deducted, whichever sum is greater. Anderson's participation in the sharing of profits shall not begin before

1 of 2

15

*+ $10,000.* *on 12/24*

each member of the Consortium has received $~~7,500.00~~ for each initial $5,000.00 investment. This

*$ 10,000~ on 12/24*

$~~3,000.00~~ payment will be the first and primary obligation of the Consortium after Mr. Crosby's

receipt of $10,500. *, AND REPAYMENT OF COSTS OF REFURBISHMENT.* *GOA 12/24*

*(APPROX. $2½ → $40K) GOA*

*12/24*

4.    **Responsibility.** Mr. Anderson will be general director and general manager of this

entire project from purchase through the refurbishment and eventual sale of the vessel. He shall be

responsible for keeping an accurate accounting of all costs associated with the project, including

receipts and records of all disbursements. These records shall be available for inspection by any

member upon demand. Viewing of and access to the vessel shall be permitted to any member upon

reasonable notification to Anderson.

It is agreed that Anderson will solely coordinate and be responsible for any and all media

access to *Flash II*. This access will be administered in such a manner as to derive maximum sustained

publicity and interest in *Flash II* culminating in a successful sale of the vessel.

Anderson will also be responsible for researching and obtaining any documents, film,

correspondence, articles of historical significance pertaining to the vessel, and any other such

memorabilia deemed useful to receiving maximum profit from the eventual sale of *Flash II*.

5.    WE HEREBY AGREE to the above terms and conditions and hereby contribute

$~~25,000~~.00 for ____5____ participation units, receipt of which being hereby acknowledged.

*(25% TOTAL) GOA 12/24*

_____          *K S Lane* *AND*
**GREGORY OLAF ANDERSON**          Signature

                                   *Kerry Lane*
                                   Printed Name

                                   *621 Andrews DelRay*
                                   Address

                                   *561-278-3060*
                                   Telephone Number

2 of 2

16

LaneDocReqResp000018

Check 4656:
KERRY S. LANE
621 Andrews Ave.
Delray Beach, FL 33483-7207
12/25/97
PAY TO THE ORDER OF Greg Anderson $ 1,500.—
One thousand five hundred DOLLARS
SUNTRUST
SunTrust Bank, South Florida, N.A.
Palm Beach Lakes Office
West Palm Beach, Florida (561) 467-4788
FOR JFK 7 T. ull
K S Lane
4656 0000150000

Check 4679:
KERRY S. LANE
621 Andrews Ave.
Delray Beach, FL 33483-7207
11/97
PAY TO THE ORDER OF Greg Anderson $ 2,000.
Two thousand + one DOLLARS
SUNTRUST
SunTrust Bank, South Florida, N.A.
Palm Beach Lakes Office
West Palm Beach, Florida (561) 467-4788
FOR JFK 27
K S Lane
4679 0000200000

Check 4751:
KERRY S. LANE
621 Andrews Ave.
Delray Beach, FL 33483-7207
DATE 2/6/98
PAY TO THE ORDER OF Greg Anderson $ 1,500.
One Thousand five hundred DOLLARS
SUNTRUST
SunTrust Bank, South Florida, N.A.
Palm Beach Lakes Office
West Palm Beach, Florida (561) 467-4788
FOR JFK Z.1
K S Lane
4751 0000150000

Check 4783:
KERRY S. LANE
621 Andrews Ave.
Delray Beach, FL 33483-7207
DATE 3/3/98
PAY TO THE ORDER OF Greg Anderson $ 2500.00
Twenty five hundred dollars DOLLARS
SUNTRUST
SunTrust Bank, South Florida, N.A.
Palm Beach Lakes Office
West Palm Beach, Florida (561) 467-4788
FOR JFK Z.1 #15K 12+2500
K S Lane
17

LaneDocReqResp000019



**18**

LaneDocReqResp000020

LaneDocReqResp000021

**KERRY S. LANE** 03-05-88
621 Andrews Ave.
Delray Beach, FL 33483-7207

4656

63-607/670

12/25 19 97

PAY TO THE ORDER OF _Greg Anderson_ $ 1,500.—

One Thousand Five hundred —————— DOLLARS

**SUNTRUST**
SunTrust Bank, South Florida, N.A.
Palm Beach Lakes Office
West Palm Beach, Florida (561) 497-4798

FOR _JFK 21 > 1 Mch_

_K S Lane_

⑆067006076⑆ 0496002018394⑈ 4656 ⑇0000150000⑈

---

**SUNTRUST**
SunTrust Bank, South Florida, N.A.
Ft. Lauderdale, FL 33310

1815445

If this Cashier's Check is lost, stolen or destroyed, it will be necessary for the Purchaser/Remitter to supply the Bank with an Indemnity Agreement in addition to a Surety bond, for twice the value of the check with a waiting period of 30 days, before a duplicate check is issued or any refund is made.

63-607/670 607

**#8 - 490**

Remitter **Ola Anderson**

Date **January 8, 1997**

$ **3,000.00**

Pay to the order of ****Marshall Chapman****

_from KSL for_
_JFK_
_bast_

Cashier's Check

CUSTOMER FILE COPY
NON-NEGOTIABLE

Authorized Signature

---

**KERRY S. LANE** 03-05-88
621 Andrews Ave.
Delray Beach, FL 33483-7207

4679

63-607/670

11 19 98

PAY TO THE ORDER OF _Greg Anderson_ $ 2,000.—

Two Thousand + one DOLLARS

**SUNTRUST**
SunTrust Bank, South Florida, N.A.
Palm Beach Lakes Office
West Palm Beach, Florida (561) 497-4798

FOR _JFK 21_

_K S Lane_

⑆067006076⑆ 0496002018394⑈ 4679 ⑇0000200000⑈

---

KERRY S. LANE 03-05-88
621 Andrews Ave.
Delray Beach, FL 33483-7207

4191

DATE _2/6/98_

63-607/670

PAY TO THE ORDER OF _Greg Anderson_ $ 1,500.—

One Thousand five hundred DOLLARS

**SUNTRUST**
SunTrust Bank, South Florida, N.A.
Palm Beach Lakes Office
West Palm Beach, Florida (561) 497-4798

_JFK 21_

_K S Lane_ 20

**KERRY S. LANE**    03-05-86
621 Andrews Ave.
Delray Beach, FL 33483

63-607/670
BRANCH 496

3920

5/19  19 98

PAY TO THE
ORDER OF  Matt Joined

DOLLARS

Five hundred + none —

SunBank/South Florida, N.A.
Palm Beach Lakes Office    .46
540 Village Boulevard
West Palm Beach, Florida 33409

FOR  2-1 over 1M, 1.5 under

K S Lane

⑈067006076⑈049600⑈2⑈18394⑈ 3920  ⑈00000050000⑈

---

**KERRY S. LANE**    03-05-86
621 Andrews Ave.
Delray Beach, FL 33483

63-607/670
BRANCH 496

3917

5/19  19 98

PAY TO THE
ORDER OF  Gregory O. Anderson              $ 500. xx

DOLLARS

Five hundred + none —

SunBank/South Florida, N.A.
Palm Beach Lakes Office    .46
540 Village Boulevard
West Palm Beach, Florida 33409

FOR    007NGBM  3-25-282026     $500.0000

K S Lane

⑈067006076⑈049600⑈2⑈18394⑈ 3917  ⑈00000050000⑈

---

**KERRY S. LANE**    03-05-86
621 Andrews Ave.
Delray Beach, FL 33483-7207

63-607/670

DATE  6/7/98

4717

PAY TO THE
ORDER OF  Kerry Lane              $ 4000. xx

DOLLARS

Four thousand and none

**SunTrust**
SunTrust Bank, South Florida, N.A.
Palm Beach Lakes Office
West Palm Beach, Florida (564) 467-6788

FOR  2500/TRANSFER 2.17/M

K S Lane

⑈067006076⑈049600⑈018394⑈ 4717  ⑈0000400000⑈

---

**KERRY S. LANE**    03-05-86
621 Andrews Ave.
Delray Beach, FL 33483-7207

63-607/670

DATE  6/1/98

4894

PAY TO THE
ORDER OF  Ole Anderson              $ 150.—

DOLLARS

One hundred fifty + none

**SunTrust**
SunTrust Bank, South Florida, N.A.
Palm Beach Lakes Office
West Palm Beach, Florida (564) 467-6788

FOR

K S Lane

LaneDocReqResp000023



4899

KERRY S. LANE 03-05-88
621 Andrews Ave.
Delray Beach, FL 33483-7207          63-607/670

DATE 5/4/98

PAY TO THE
ORDER OF _Re Anderson_                    $ 500.—

_Five hundred + none_                    DOLLARS

**SUNTRUST**
SunTrust Bank, South Florida, N.A.
Palm Beach Lakes Office
West Palm Beach, Florida (954) 497-4700

FOR _JFK 2.1_                    K S Lane

⑆067006076⑆049600 018394⑈ 4899 ⑈0000050000⑈

---

4949

KERRY S. LANE 03-01-88
621 Andrews Ave.
Delray Beach, FL 33483-7207          63-607/670

DATE 5/12/98

PAY TO THE
ORDER OF _Che Greg Anderson_            $ 1,500.—

_One thousand, five hundred —_          DOLLARS

**SUNTRUST**
SunTrust Bank, South Florida, N.A.
Palm Beach Lakes Office
West Palm Beach, Florida (954) 497-4700

FOR _JFK 2.1_                    K S Lane

⑆067006076⑆049600 018394⑈ 4949 ⑈0000150000⑈

---

5033

KERRY S. LANE 03-88
621 Andrews Ave.
Delray Beach, FL 33483-7207          63-607/670

DATE 7/2/98

PAY TO THE
ORDER OF _Rich Delhauty_                $ 300

_Three hundred + none_                  DOLLARS

**SUNTRUST** _757_
SunTrust Bank, South Florida, N.A.
Palm Beach Lakes Office
West Palm Beach, Florida (954) 497-4700

FOR _JFK 5 shaded_                K S Lane

⑆067006076⑆049600 018394⑈ 5033 ⑈0000030000⑈

---

_FDLA 536-294-50-245-0_

5171

KERRY S. LANE 03-88
621 Andrews Ave.
Delray Beach, FL 33483-7207          63-607/670

DATE 9/2/98

PAY TO THE
ORDER OF _Greg Anderson_                $ 1,000.—

_One thousand and none —_              DOLLARS

**SUNTRUST**
SunTrust Bank, South Florida, N.A.
Palm Beach Lakes Office
West Palm Beach, Florida (954) 497-4700

_uni JFK 1.1_                    K S Lane [23]

LaneDocReqResp000025



KERRY S. LANE
621 Andrews Ave.
Delray Beach, FL 33483-7207

5202
63-607/670

DATE 9/29/98

PAY TO THE
ORDER OF  Greg Anderson                              $ 2,000.-

Two Thousand Fonce                              DOLLARS

SUNTRUST
SunTrust Bank, South Florida, N.A.
Palm Beach Lakes Office
West Palm Beach, Florida (561) 687-4766

of 800

FOR  Len Pool                                   K S Lane

⑆06700607⑆:049600 ⑈048394⑈  5202  ⑆0000200000⑈

---

KERRY S. LANE
621 Andrews Ave.
Delray Beach, FL 33483-7207

5215
63-607/670

DATE 10/7/98

PAY TO THE
ORDER OF  Greg Anderson                              $ 3,000.-

Three Thousand + once                              DOLLARS

SUNTRUST
SunTrust Bank, South Florida, N.A.
Palm Beach Lakes Office
West Palm Beach, Florida (561) 687-4766

FOR  Marblehead Med Co.                          K S Lane

⑆06700607⑆:049600 ⑈048394⑈  5215  ⑆0000300000⑈

---

KERRY S. LANE
621 Andrews Ave.
Delray Beach, FL 33483-7207

5286
63-607/670

DATE 11/13/98

PAY TO THE
ORDER OF  Greg Anderson                              $ 1,000.-

One Thousand + once                              DOLLARS

SUNTRUST
SunTrust Bank, South Florida, N.A.
Palm Beach Lakes Office
West Palm Beach, Florida (561) 687-4766

7000

FOR                                              K S Lane

⑆06700607⑆:049600 ⑈048394⑈  5286  ⑆0000100000⑈

25

LaneDocReqResp000027



LaneDocReqResp000028

FLASH II
c/o Robert A. Harper Law Firm, P.A.
325 West Park Avenue
Post Office Box 10132
Tallahassee, Florida 32302-2132
(904) 224-5900/ fax (904) 224-9800

---

We are pleased to announce the arrival of "FLASH II," Starboat #721, to Marblehead Trading Co. "FLASH II" was previously owned and sailed by President John F. Kennedy in the 1930's and 1940's. President Kennedy once created a sensation by winning a race of the 1936 Atlantic Coast Championships in "FLASH II" by more than four minutes, an almost unheard of margin.

The boat is in remarkable condition considering she is 66 years old and has been in storage for the last 27 years. We plan to clean her up and do a complete survey to determine the best way to proceed.

We feel it is fitting for "FLASH II" to be here in Marblehead. The Marblehead Trading Co. is exactly the kind of establishment President Kennedy would have been familiar with during his years of ownership of "FLASH II." It is entirely possible that the boat was hauled out at this very yard during her years in Massachusetts. In that sense you could say that "FLASH II" has come home.

**27**

LaneDocReqResp000029

EDWARD M. KENNEDY
MASSACHUSETTS

# United States Senate
### WASHINGTON, DC 20510-2101

August 6, 1997

Mr. Ole Anderson
c/o Marblehead Trading Company
89 Front Street
Marblehead, MA 01945

Dear Mr. Anderson:

Thank you very much for your delightful and packet of information regarding your restoration of Flash II, Starboat #721, which belonged to my older borthers, Joe, Jr., and John. What an impressive project!

Due to the demands of my schedule in the Senate, as well as many long-standing engagements, it is difficult to schedule a time when I could stop by to meet you. I will keep your kind invitation to me pending, though, for sometime when I am in the Marblehead area. As a sailor myself, I would most certainly enjoy viewing the boat, whether at the Marblehead Trading Company, or after it is moved to the Museum of Yachting. I would like to offer my warmest regards to you, and thank you again for all of the information.

With my very best wishes,

Sincerely,

Edward M. Kennedy

2400 John F. Kennedy Federal Building
Government Center
Boston, MA 02203

28

This Statement is a summary of total investment dollars and terms of repayment to all investors in FLASH II, Star Boat #721. This statement supercedes any and all previous statements.

A. — When FLASH II is sold and all Fees, Costs, and any other expenses incurred by the sale have been paid, Mr. Robert A. Harper, Atty. will receive 5% of the net proceeds. The remainder will be [Figure #1]

B — [Figure #1] will be paid out in this manner:

Eddie Crosby — $11,000
Kerry Lane — $60,000
Jean Anderson — $10,000
$81,000 Total

[Figure #2 will be Figure #1 minus $81,000]

C — [Figure #2] will be paid out in this manner:

EDDIE CROSBY — $10,000
KERRY LANG — $10,000
JEAN Anderson — $10,000
OLG ANDERSON — $32,000
MARBLEHEAD TRADING CO — $14,500
GARY MILO — $16,000   ($16,000)
(954) 764-7154  Pete + Carole Walker — $12,000
Homer Earnest — 2,000
Jim Anderson — 2,000
$108,000 Total

12/4/97
Gregory Olf Anderson

[Figure #3 will be Figure #2 minus $108,000]

29

LaneDocReqResp000031

08/30/2005 14:11 FAX 5228          DSC          ☒002

D — [Figure #3] will be paid at in this manner:

EDDIE CROSBY — 16.6 %
KERRY LANE — 30.0 %
JOAN ANDERSON — 10.0 %
Mr/mrs Homer Earnest — 1.0 %
Chuck Fitzgerald — 1.0 %
Ole Anderson 41.4 %
100.0 %

E — EDDIE CROSBY WILL BE PAID 16.6% in ADDITION TO his $11,000 payment in Section B

F — KERRY LANE WILL BE PAID $60,000 or 30% of FIGURE 3, whichever sum is greater. His initial payment of $60,000 in Section B will be deducted from his 30% should the 30% figure be greater than $60C.

G — JOAN ANDERSON WILL BE PAID $10,000 or 10% of Figure 3, whichever sum is greater. Her initial payment of $10,000 in section B will be deducted from her 10% should the 10% figure be greater than $10K.

12/4/97

Gregory Olaf Anderson

30

LaneDocReqResp000032

CLIFF STREET

Invoice #    500715
Invoice Date  04/24/98

```
┌─────────────────────────────────┐
│ MARBLEHEAD TRADING CO.          │
│    89 FRONT STREET              │
│ MARBLEHEAD, MA    01945         │
│                                 │
│    (781) 631-4650               │
└─────────────────────────────────┘
```

*Kim for your file.*

Boat Name: FLASH II

To:  Harper, Robert A.
     Law Firm, P.A.
     P.O. Box 10132
     Tallahassee     FL  32302

Work Order # 500715
Mooring #
C/J:        0

Home Phone:  (0  ) 0  -0
Work Phone:  (561) 278-3979

Launch/Haul Date:
Launch/Haul:     0

*TERMS: PAYABLE UPON RECEIPT. Finance Chg. 1.5% per Month on Overdue Accounts

| CODE | DESCRIPTION | QTY | RATE | AMOUNT |
|------|-------------|-----|------|--------|
| – – | Transport boat from New York to Marblehead, MA | 1.00 | 500.00 | 500.00 |

*Mailed to O.le Anderson 4/24/98*

** YARD IS NOT RESPONSIBLE FOR MAST HEAD GEAR **
** ALL WORK MUST BE PAID IN FULL BEFORE BOAT LEAVES YARD **

COMMENTS:

TOTAL MATERIAL  $
TOTAL LABOR     $
TOTAL TAX       $
                --------------
TOTAL DUE       $    500.00

Marblehead 000006

INVOICE NO

**MARBLEHEAD TRADING CO.**
89 Front Street
MARBLEHEAD, MA 01945-3201

(617) 639-0029
FAX (617) 631-0542

TO

Robert A. Larpar Jr. Yith
205 Part Av
P. O. Box 10132
Tallahassee, FL 32302-0132

| QTY. | MATERIAL | PRICE | AMOUNT |
|------|----------|-------|--------|
| | Inv. 976304 | | |
| | 76930 | | |
| | BB271 | | |
| | MC321 | | 7 37 |
| | B3417 | | 05 |
| | TR434 | | 96 43 |
| | I8454 | | 55 05 |
| | T8495 | | 01 10 |
| | T8520 | | 68 09 |
| | | | 475 00 |
| | Less 20% | | 94 40 |
| | | | 377 60 |

\* \* YARD IS NOT RESPONSIBLE FOR MAST HEAD GEAR \* \*

In the event that credit is extended by Marblehead Trading Co., the undersigned agrees as follows:
1. Payment for parts and service invoices is due 30 days from date of invoice.
2. Any account past due over 60 days will automatically be placed on C.O.D. and credit privileges withdrawn.
3. Pay reasonable attorney fee and court costs incurred in enforcing collection of the account
4. Finance charges at a rate of 1% per month will be charged on amounts past due over 30 days.

I have read, understand and agree to the above terms

SIGNATURE

---

TERMS    C/o Anderson, 716 C. Lake Av. Delray Beach, Fl.

DESCRIPTION OF WORK

4/30/97 - 7/30/97

AMOUNT

Moving

Step and unstep

Hanging boat

Paint/Varnish

Prep for shipping

Load on trailer

TRUCKING    400 00

TOTAL LABOR    987 50

TOTAL MATERIALS    377 60

TAX    18 28

PAY THIS AMOUNT →

**MARBLEHEAD TRADING CO.**
89 Front Street
MARBLEHEAD, MA 01945-3201

(617) 639-0029
FAX (617) 631-0542

**INVOICE NO.** 25-63

| JOB PHONE | | DATE OF ORDER 4/10/07 |
| --- | --- | --- |
| JOB NAME LOCATION | | |
| FLASH II | | |
| Starboat #721 | | |
| | PHONE | |
| | ORDER TAKEN BY | |

TO:
Robert A. Harper Law Firm
325 Park Av
P. O. Box 10132
Tallahassee, FL 32302-9132

Ole Anderson, 718 S. Lake Av., Delray Beach, FL

| QTY | MATERIAL | PRICE | AMOUNT |
| --- | --- | --- | --- |
| | 7612 X | | 13-1-7-2 |
| | Ba 12 6 | | 33 2 0 |
| | 8/2 x | | 72 0X |
| | 812 2 | | 71 |
| | 85 72 2 | | 72 09 |
| | 6 432x | | 33 |
| | Ba45 8 | | 35 66 |
| | 3 9 09 6 | | 9 10 |
| | 1 000 | | 28 97 |
| | less 6/0 | | |
| | 36 0 | | |

| TERMS | DESCRIPTION OF WORK | AMOUNT |
| --- | --- | --- |
| | 4 - 30 - 97 | 7 - 30 - 97 |
| | Mouing | |
| | Ship / unship | |
| | Mirc : 99 | Bot F |
| | Paint OFF / varnish | Cont of tank |
| | Prep for varnish | PKG K . 29 6 20 00 |
| | Drop Foc shipping | 767 50 |
| | Cy Railer | |

** YARD IS NOT RESPONSIBLE FOR MAST HEAD GEAR **

In the event that credit is extended by Marblehead Trading Co. the undersigned agrees
as follows:
1. Payment for parts and service invoices is due 30 days from date of invoice.
2. Any account past due over 60 days will automatically be placed on C.O.D. and
   credit privileges withdrawn.
3. Pay reasonable attorney fee and court costs incurred in enforcing collection of
   the account.
4. Finance charges at a rate of 1% per month will be charged on amounts past due
   over 30 days.

I have read, understand and agree to the above terms

SIGNATURE _____

| | |
| --- | --- |
| WORK ORDERED BY | |
| SIGNATURE (I hereby acknowledge the satisfactory completion of the above described work) | DATE COMPLETED |
| | TOTAL MATERIALS |
| | TOTAL LABOR |
| | TAX |
| | PAY THIS AMOUNT → |

TRANK YOU!

Marblehead 000029

**MARBLEHEAD TRADING CO.**
89 Front Street
MARBLEHEAD, MA 01945-3201

(617) 639-0029
FAX (617) 631-0542

INVOICE NO. _____

| JOB PHONE | | DATE OF ORDER |
| JOB NAME, LOCATION | | 9/18/97 |

PLACE II

Starboat #791

TO:
Robert A. Harper Law Firm
325 Park Ave
P. O. Box 10189
Tallahassee    FL    32302-0189

Ole Anderson
719 S. Lake Ave, Delray Beach
Fla.

| QTY | MATERIAL | PRICE | AMOUNT | | TERMS | DESCRIPTION OF WORK | | AMOUNT |
|---|---|---|---|---|---|---|---|---|
| | Try 1 #2159 | | 42.00 | | | LABOR 3-18-97 thru 3-19-97 | | |
| | #2373 | | 79.05 | | | Mount deck hardware | | |
| | 37983 | | 39.00 | | | Install keel | | |
| | 3700E | | 78.51 | | | Swan trailers | | |
| | T-451 | | 87.97 | | | Install rudder | | |
| | | | 257.11 | | | Re:Install bronze knees | | |
| | Less 20% | | 71.49 | | | | | |
| | | | 985.69 | | | | | |
| | Metric Aluminex | | 10.99 | | | | | |
| | 3 Spar 101 Semi White | | 44.80 | | | | | |
| | Bronze Fasteners | | 24.40 | | | | | |
| | Mahogany | | 10.80 | | | | | |
| | | | 385.77 | | | | | |

** YARD IS NOT RESPONSIBLE FOR MAST HEAD GEAR **

In the event that credit is extended by Marblehead Trading Co., the undersigned agrees as follows:

1. Payment for parts and service invoices is due 30 days from date of invoice.
2. Any account past due over 60 days will automatically be placed on C.O.D. and credit privileges withdrawn.
3. Pay reasonable attorney fee and court costs incurred in enforcing collection of the account.
4. Finance charges at a rate of 1½% per month will be charged on amounts past due over 30 days.

I have read, understand and agree to the above terms.

SIGNATURE

| | |
|---|---|
| TOTAL LABOR | 1003.00 |
| TOTAL MATERIALS | 1832.77 |
| TAX | |
| PAY THIS AMOUNT → | 3835.77 |

PAY THIS AMOUNT!

Marblehead 000039

**MARBLEHEAD TRADING CO.**
89 Front Street
MARBLEHEAD, MA 01945-3201

(617) 639-0029
FAX (617) 631-0542

INVOICE NO.

JOB PHONE
JOB NAME/LOCATION
DATE OF ORDER

TO:

| QTY | MATERIAL | PRICE | AMOUNT |
|---|---|---|---|
| | | | |
| | | | |

TERMS

| DESCRIPTION OF WORK | AMOUNT |
|---|---|
| | |

TOTAL MATERIALS
TOTAL LABOR
TAX
PAY THIS AMOUNT ➤

**THANK YOU!**

In the event that credit is extended by Marblehead Trading Co., the undersigned agrees as follows:

1. Payment for parts and service invoices is due 30 days from date of invoice.
2. Any account past due over 60 days will automatically be placed on C.O.D. and credit privileges withdrawn.
3. Pay reasonable attorney fee and court costs incurred in enforcing collection of the account.
4. Finance charges at a rate of 1½% per month will be charged on amounts past due over 30 days.

I have read, understand and agree to the above terms.

SIGNATURE

** YARD IS NOT RESPONSIBLE FOR MAST HEAD GEAR **

Marblehead 000041

INVOICE NO.

**MARBLEHEAD TRADING CO.**
89 Front Street
MARBLEHEAD, MA 01945-3201

(617) 639-0029
FAX (617) 631-0542

| JOB PHONE | DATE OR ORDER |
|---|---|
| | 2/2/07 |
| JOB NAME / LOCATION | |
| | BLANK II |
| | Seaport #521 |

TO: c Robert A. Warner Law Firm, P.A.

508 High Ave

P. O. Box 19199
Tallahassee, FA 32309-0199

Ole Anderson

| ORDER TAKEN BY: | PHONE |
|---|---|

## DESCRIPTION OF WORK

| QTY | MATERIAL | PRICE | AMOUNT |
|---|---|---|---|
| | | | |

Floor boards

Glue up rub rail

Dry fit rub rails and remove for finishing

Fabricate deck hardware

| | | TOTAL LABOR | 1057 50 |
| | | TOTAL MATERIALS | 00 00 |
| | | TAX | |
| | | PAY THIS AMOUNT | 11.9 10 |

Marblehead 000054

THANK YOU!

WORK ORDERED BY

DATE COMPLETED 2/3/07

SIGNATURE

** YARD IS NOT RESPONSIBLE FOR MAST HEAD GEAR **

In the event that credit is extended by Marblehead Trading Co., the undersigned agrees as follows:
1. Payment for parts and service invoices is due 30 days from date of invoice.
2. Any account past due over 60 days will automatically be placed on C.O.D. and credit privileges withdrawn.
3. Pay reasonable attorney fee and court costs incurred in enforcing collection of the account.
4. Finance charges at a rate of 1% per month will be charged on amounts past due over 30 days.

I have read, understand and agree to the above terms.

SIGNATURE

**MARBLEHEAD TRADING CO.**
89 Front Street
MARBLEHEAD, MA 01945-3201

(617) 639-0029
FAX (617) 631-0542

INVOICE NO. 55028

| QTY | MATERIAL | PRICE | AMOUNT |
|-----|----------|-------|--------|
| | Inv. # 55042 | | 51 67 |
| | 55420 | | 10 74 |
| | 17873 | | 50 91 |
| | 57801 | | 73 03 |
| | 57804 | | 38 42 |
| | less 20% | | 256 27 |
| | | | -46 47 |
| | | | 185 80 |
| ¾" Monel Staples 1 bx | | | 19 46 |
| Putty knife, etc. | | | 28 04 |
| Lumber, Pine | | | 63 94 |
| Mahogany | | | 140 10 |
| Honduras Mahogany | | | 186 00 |
| 18 P.MachScrews w/nuts wash | | | 29 62 |
| | | | 857 19 |

TO:
John A. Harper (ew Firm B.J.
775 West Park Ave
Tallahassee, FL 32302-0132

JOB NAME/LOCATION: Seawind #501

ORDER TAKEN BY:

**DESCRIPTION OF WORK**

| | AMOUNT |
|---|--------|
| LABOR furn the 2nth of January 1997 | |
| Fabricate and install rudder tube | |
| Block and install rudder tube | |
| Install Forestay fitting | |
| Fare/deck beams | |
| Install decking | |
| Fame decking | |
| Fabricate floor boards | |
| Install canvas | |
| Fabricate stem plate | |
| Modify sleeve assembly for Forestay | |

DATE OF ORDER: 1/29/07

Firm For Marshall

| TOTAL LABOR | 3130 00 |
| TOTAL MATERIALS | 857 19 |
| TAX | |
| Freight | 2 19 |
| **PAY THIS AMOUNT** → | 3913 57 |

THANK YOU!

**YARD IS NOT RESPONSIBLE FOR MAST HEAD GEAR**

In the event that credit is extended by Marblehead Trading Co., the undersigned agrees as follows:
1. Payment for parts and service invoices is due 30 days from date of invoice.
2. Any amount past due over 60 days will automatically be placed on C.O.D. and credit privileges withdrawn.
3. Pay reasonable attorney fee and court costs incurred in enforcing collection of the account.
4. Finance charges at a rate of 1% per month will be charged on amounts past due over 30 days.

I have read, understand and agree to the above terms.

SIGNATURE

Marblehead 000060

# MARBLEHEAD TRADING CO.

89 Front Street
MARBLEHEAD, MA 01945-3201

**(617) 639-0029**
**FAX (617) 631-0542**

INVOICE NO. **25228**

| JOB PHONE | DATE OF ORDER 1/22/97 |

JOB NAME/LOCATION

FLASH II

TO:

Robert A. Harper Law Firm, P.A.

325 West Park Ave

P. O. Box 10132
Tallahassee, FA 32302-2132

Starboat #721

| QTY | MATERIAL | PRICE | AMOUNT |
|---|---|---|---|
| | | | |

| DESCRIPTION OF WORK | AMOUNT |
|---|---|

•• YARD IS NOT RESPONSIBLE FOR MAST HEAD GEAR ••

In the event that credit is extended by Marblehead Trading Co., the undersigned agrees as follows:
1. Payment for parts and service invoices is due 30 days from date of invoice.
2. Any account past due over 60 days will automatically be placed on C.O.D. and credit privileges withdrawn.
3. Pay reasonable attorney fee and court costs incurred in enforcing collection of the account.
4. Finance charges at a rate of 1% per month will be charged on amounts past due over 30 days.

I have read, understand and agree to the above terms.

SIGNATURE

| | |
|---|---|
| TOTAL LABOR | |
| TOTAL MATERIALS | |
| TAX | |
| PAY THIS AMOUNT → | |

Marblehead 000062

**MARBLEHEAD TRADING CO.**
89 Front Street
MARBLEHEAD, MA 01945-3201

(617) 639-0029
FAX (617) 631-0542

INVOICE NO. 5203

| JOB PHONE | | | | DATE OF ORDER |
|---|---|---|---|---|
| | CAR NAME/LOCATION | | | 1/10/97 |
| | | | NASH II | |
| | | | Starboat #751 | |

TO:
S. Robert A. Harper Law Firm, P.A.
325 West Park Avenue
P. O. Box 10132
Tallahassee, FL 32302-0132

TERMS:

| | DESCRIPTION OF WORK | | PHONE | ORDER TAKEN BY |
|---|---|---|---|---|

| | | AMOUNT |
|---|---|---|
| LABOR for chain plates and hull fairing    Ole Anderson | | 1075 50 |
| Misc heating costs | | 120 00 |
| (Through 1/20/97) | | |

| | |
|---|---|
| TOTAL LABOR | |
| TOTAL MATERIALS | |
| TAX | |
| **THANK YOU!** **PAY THIS AMOUNT →** | |

**QTY | MATERIAL | PRICE | AMOUNT**

| QTY | MATERIAL | PRICE | AMOUNT |
|---|---|---|---|
| 1 gal. #75386 | | 339 55 |
| | B7812 | 50 59 |
| | B3836 | 196 48 |
| | B7849 | 496 06 |
| | B7856 | 48 27 |
| | | 1138 04 |
| | Less 20% | -227 79 |
| | | 911 15 |
| Bronze Flat Stock | | 91 50 |
| Lumber | | 28 74 |
| Canvas | | 34 14 |
| Mahogany | | 17 96 |
| Stripper (net) | | 91 83 |
| | | 1045 25 |

·· YARD IS NOT RESPONSIBLE FOR MAST HEAD GEAR ··

In the event that credit is extended by Marblehead Trading Co., the undersigned agrees as follows:
1. Payment for parts and service invoices is due 30 days from date of invoice.
2. Any account past due over 60 days will automatically be placed on C.O.D. and credit privileges withdrawn.
3. Pay reasonable attorney fee, and court costs incurred in enforcing collection of the account.
4. Finance charges at a rate of 1¾% per month will be charged on amounts past due over 30 days.

I have read, understand and agree to the above terms.

SIGNATURE

Marblehead 000080

# MARBLEHEAD TRADING CO.

89 Front Street
MARBLEHEAD, MA 01945-3201

**(617) 639-0029**
**FAX (617) 631-0542**

**INVOICE NO.** 05203

| | |
|---|---|
| JOB PHONE | DATE OF ORDER 1/10/97 |
| JOB NAME/LOCATION | PLASH II |
| | Starboat #721 |

TO:
% Robert A. Tarror law Firm, P.A.
325 West Park Bteve
P. O. Box 10130
Tallahassee FA 32392-3130

**TERMS:** Ole Anderson          **ORDER TAKEN BY** _____  **PHONE** _____

## DESCRIPTION OF WORK

| QTY | MATERIAL | PRICE | AMOUNT | DESCRIPTION OF WORK | AMOUNT |
|---|---|---|---|---|---|
| 1 | 5386 | | 339.67 | LABOR For Olwia Plastics | |
| R | 7812 | | 51.58 | 0.48 Hull towing. | 1075.56 |
| R | 7836 | | 196.48 | Stock Charges | |
| R | 7848 | | 498.06 | MISC Hauling Costs | 100.00 |
| R | 7856 | | 482 | Tillough 1/20/97 Freight | |
| | less 21% | 911.15 | 1159.99 | | |
| | | | (227.79) | | |
| | | | | | |
| BRONZE FLAT STOCK | | 31.50 | | | |
| Lumber | | 28-24 | | | |
| Conners | | 34.14 | | | |
| Mastig | | 17.86 | | | |
| Shippah (mast) | | 21.83 | | | |

** YARD IS NOT RESPONSIBLE FOR MAST HEAD GEAR **

In the event that credit is extended by Marblehead Trading Co., the undersigned agrees as follows:
1. Payment for parts and service invoices is due 30 days from date of invoice
2. Any account past due over 60 days will automatically be placed on C.O.D. and credit privileges withdrawn.
3. Pay reasonable attorney fee and court costs incurred in enforcing collection of the account.
4. Finance charges at a rate of 1% per month will be charged on amounts past due over 30 days.

I have read, understand and agree to the above terms

SIGNATURE _____

| | |
|---|---|
| WORK ORDERED BY | DATE LOCATION/TER |
| SIGNATURE (I hereby acknowledge the satisfactory completion of the above described work) | TOTAL MATERIALS |
| | TOTAL LABOR |
| | TAX |
| | **PAY THIS AMOUNT →** THANK YOU! |

TOTAL MATERIALS 1045.72
TAX 2030

Marblehead 000082

**MARBLEHEAD TRADING CO.**
89 Front Street
MARBLEHEAD, MA 01945-3201

(617) 639-0029
FAX (617) 631-0542

INVOICE NO. 55035

TO: Robert A. Turner law firm P.A.
325 West Park Ave.
P.O. Box 10132
Tallahassee FL 32000-3132

PHONE 904 224-5000
FAX 224 0800

DATE OF ORDER 11/08/96

JOB NAME/LOCATION: PIASE II #201 Starbot...

DESCRIPTION OF WORK: Mr. Ole' Anderson
Work to date rebuilding PIASE II
11-06-96 thru 12-20-96

| QTY | STOCK | MATERIAL | PRICE | AMOUNT |
|---|---|---|---|---|
| | | INV. # 5345 | | 177 12 |
| | | B7735 | | 88 52 |
| | | B7756 | | 46 40 |
| | | B7767 | | 44 49 |
| | | B7777 | | 52 42 |
| | | less one | | 406 78 |
| | | | | 8 76 |
| | | | | 327 00 |
| | | Lumber (Cedar Mahog Pine) | | 835 00 |
| | | Silicone Bnze Fasteners | | 163 00 |
| | | | | 1896 95 |

** YARD IS NOT RESPONSIBLE FOR MAST HEAD GEAR **

In the event that credit is extended by Marblehead Trading Co., the undersigned agrees
as follows:

1. Payment for parts and service invoices is due 30 days from date of invoice.
2. Any account past due over 60 days will automatically be placed on C.O.D. and credit privileges withdrawn.
3. Pay reasonable attorney fee and court costs incurred in enforcing collection of the account.
4. Finance charges at a rate of 1½ per month will be charged on amounts past due over 30 days.

I have read, understand and agree to the above terms.

SIGNATURE

TOTAL MATERIALS 1 226 95
TOTAL LABOR
TAX
THANK YOU! 111 0 45
PAY THIS AMOUNT

Marblehead 000096

## MARBLEHEAD TRADING CO.

89 Front Street
MARBLEHEAD, MA 01945-3201

(617) 639-0029
FAX (617) 631-0542

INVOICE NO. 5095

| | |
|---|---|
| JOB PHONE | DATE OF ORDER 11/26/96 |
| JOB NAME/LOCATION | |
| | FLASH II |
| | ORDER TAKEN BY #721  Starbo |

TO:
Robert A. Harper Law Firm, P.A.
325 West Park Ave.
P. O. Box 10132
Tallahassee   FL   32302-0132

Mr. Ole' Anderson

PHONE   904 224-5000
FAX   224 0800

| QTY | MATERIAL | PRICE | AMOUNT | DESCRIPTION OF WORK | AMOUNT |
|---|---|---|---|---|---|
| 1 | 5347 | | 177.12 | Work to Date Rebuilding | |
| 8 | 7758 | | 46.19 | Flash II | |
| 6 | 7736 | | 88.52 | 11-26-96  —  12-20-96 | |
| 8 | 7767 | | 44.49 | | |
| 8 | 7777 | | 51.46 | | |
| | | | 409.78 | | |
| | | Less 20% | (81.76) | | |
| | | | 327.02 | | |
| 1 | Luggle | | 92.40 | | |
| | Cedar Malloy | | 82.07 | | |
| | Pine | | 76.46 | | |
| | | | 560.00 | | |
| 5 | Silicon Bearze Fastenings 163 | | 26.30 | | |
| | | | 163.00 | | |
| | | | | Labor | 985.50 |

** YARD IS NOT RESPONSIBLE FOR MAST HEAD GEAR **

In the event that credit is extended by Marblehead Trading Co., the undersigned agrees as follows:
1. Payment for parts and service invoices is due 30 days from date of invoice.
2. Any account past due over 60 days will automatically be placed on C.O.D. and credit privileges withdrawn.
3. Pay reasonable attorney fee and court costs incurred in enforcing collection of the account.
4. Finance charges at a rate of 1% per month will be charged on amounts past due over 30 days.
I have read, understand and agree to the above terms.

SIGNATURE _____

| | |
|---|---|
| TOTAL LABOR | 985.50 |
| TOTAL MATERIALS | 1326.95 |
| TAX | |

WORK ORDERED BY _____

SIGNATURE (parties acknowledge the satisfactory completion of work above described)

DATE COMPLETED _____

THANK YOU!
PAY THIS AMOUNT → 1132.45

Less Deposit (3000.00)
8132.45

Marblehead 000098

**MARBLEHEAD TRADING CO.**
89 Front Street
MARBLEHEAD, MA 01945-3201

(781) 639-0029
FAX (781) 631-0542

INVOICE NO. 27633

| JOB PHONE | | DATE OF ORDER |
|---|---|---|
| JOB NAME - LOCATION | | |
| | KLASH II | |
| | | Sailboat #104 |

TO: Mr. Ole Anderson

718 South Lake Ave.

Del Ray Beach, FL 33483

PHONE

ORDER TAKEN BY

| QTY | MATERIAL | PRICE | AMOUNT |
|---|---|---|---|

| TERMS | DESCRIPTION OF WORK | AMOUNT |
|---|---|---|
| | SUMMER STORAGE @ $100.00/mo | 300 00 |
| | WINTER STORAGE, 1998-99 | 300 00 |

* * YARD IS NOT RESPONSIBLE FOR MAST HEAD GEAR * *

In the event that credit is extended by Marblehead Trading Co. the undersigned agrees as follows:
1. Payment for parts and service invoices is due 30 days from date of invoice.
2. Any account past due over 60 days will automatically be placed on C.O.D. and credit privileges withdrawn.
3. Pay reasonable attorney fee and court costs incurred in entering collection of the account.
4. Finance charges at a rate of 1½ per month will be charged on amounts past due over 30 days.

I have read, understand and agree to this above terms.

SIGNATURE

TOTAL LABOR

TOTAL MATERIALS

TAX

TOTAL AMOUNT ➤

THANK YOU!

Marblehead 000112



**MARBLEHEAD TRADING CO.**
89 Front Street
MARBLEHEAD, MA 01945-3201

**(617) 639-0029**
**FAX (617) 631-0542**

INVOICE NO.

DATE OF ORDER

JOB NAME & LOCATION
FLASH II
stardust #701

JOB PHONE

TO: Robert A. Harper Law Firm
3?5 Park Ave
P. O. Box 10132
Tallahassee,    32302-21??

ORDER TAKEN BY

PHONE

Mr. Ole Anderson
718 S. Lake Ave
Delray Beach, FL 33483

TERMS.

| QTY | MATERIAL | PRICE | AMOUNT |
|-----|----------|-------|--------|

** YARD IS NOT RESPONSIBLE FOR MAST HEAD GEAR **

In the event that credit is extended by Marblehead Trading Co., the undersigned agrees as follows:

1. Payment for parts and service invoices is due 30 days from date of invoice
2. Any account past due over 60 days will automatically be placed on C.O.D. and credit privileges withdrawn
3. Pay reasonable attorney fee and court costs incurred in enforcing collection of the account
4. Finance charges at a rate of 1½ per month will be charged on amounts past due over 30 days

I have read, understand and agree to the above terms

| STOCK | DESCRIPTION OF WORK | AMOUNT |
|-------|--------------------|--------|
| | Inv. #7005 | 58.47 |
| | 7034 | 46.35 |
| | 7040 | 50.21 |
| 1 CT Dolomite 3005 Natural Redding | | 16.51 |
| | | 161.24 |
| | | .39.05 |
| | less 20% | 128.09 |
| Mahogany | | 96.27 |
| | | 205.26 |

| TOTAL LABOR | | |
| TOTAL MATERIALS | | |
| TAX | | |
| PAY THIS AMOUNT ▸ | |

THANK YOU!

Marblehead 000116

**MARBLEHEAD TRADING CO.**
89 Front Street
MARBLEHEAD, MA 01945-3201

**(617) 639-0029**
**FAX (617) 631-0542**

INVOICE NO. 25290

| JOB PHONE | | DATE OF ORDER 3/6/97 |
| --- | --- | --- |
| JOB NAME/LOCATION | | MAST II |

Starboat #751

TO:
Robert A. Warner Law Firm
325 Park Ave.
P. O. Box 10132
Tallahassee, FL 32302-2132

Mr. Ole Andersen
713 S. Lake Ave.
Delray Beach, FL 33483

TERMS
561-278-3975

| QTY | MATERIAL | PRICE | AMOUNT |
| --- | --- | --- | --- |
| | | | |

| DESCRIPTION OF WORK | AMOUNT |
| --- | --- |

TOTAL LABOR
TOTAL MATERIALS
TAX
PAY THIS AMOUNT ➞

*THANK YOU!*

WORK ORDERED BY

SIGNATURE: I hereby acknowledge the satisfactory completion of the above described work

SIGNATURE _____ DATE COMPLETED: _____

** YARD IS NOT RESPONSIBLE FOR MAST HEAD GEAR **

In the event that credit is extended by Marblehead Trading Co., the undersigned agrees as follows:

1. Payment for parts and service invoices is due 30 days from date of invoice.
2. Any account past due over 60 days will automatically be placed on C.O.D. and credit privileges withdrawn.
3. Pay reasonable attorney fee and court costs incurred in enforcing collection of the account.
4. Finance charges at a rate of 1½% per month will be charged on amounts past due over 30 days.

I have read, understand and agree to the above terms

SIGNATURE

Marblehead 000118



# MARBLEHEAD TRADING CO.

89 Front Street
MARBLEHEAD, MA 01945-3201

(617) 639-0029
FAX (617) 631-0542

**INVOICE NO.** 25166

| QTY | MATERIAL | PRICE | AMOUNT |
|-----|----------|-------|--------|

Threaded Poly Fasteners

Silicone Bnz Fasteners

** YARD IS NOT RESPONSIBLE FOR MAST HEAD GEAR **

In the event that credit is extended by Marblehead Trading Co., the undersigned agrees as follows:

1. Payment for parts and service invoices is due 30 days from date of invoice.
2. Any account past due over 90 days will automatically be placed on C.O.D. and credit privileges withdrawn.
3. Pay reasonable attorney fee and court costs incurred in enforcing collection of the account.
4. Finance charges at a rate of 1% per month will be charged on amounts past due over 30 days.

I have read, understand and agree to the above terms.

SIGNATURE

**DESCRIPTION OF WORK**

**AMOUNT**

| | |
|---|---|
| TOTAL LABOR | 418 50 |
| TOTAL MATERIALS | 793 46 |
| TAX | 1008 04 |

THANK YOU!

PAY THIS AMOUNT 2210 40

## MARBLEHEAD TRADING CO.

89 Front Street
MARBLEHEAD, MA 01945-3201

**(617) 639-0029**
**FAX (617) 631-0542**

INVOICE NO.

| | | |
|---|---|---|
| JOB PHONE | | DATE OF ORDER |
| JOB NAME/LOCATION | | 10/31/06 |

TO:
% Robert A. Harper Law Firm, P.A.
325 West Park Ave
P. O. Box 10132
Tallahassee FL 32302-9132

JOB NAME/LOCATION: Flash II
Star Boat #721

TERMS:

ORDER TAKEN BY:

| QTY | MATERIAL | PRICE | AMOUNT |
|---|---|---|---|
| 100 | Inc. & 2716... | | 87 91 |
| | 97287 | | 69 96 |
| | 57900 | | 54 02 |
| | 15362 | | 424 80 |
| | Less 20% | | -126 96 |
| | | 507 84 | |
| | Threaded Rod & fasteners | | 25 34 |
| | Silicone Brz fasteners | | 254 28 |
| | | 788 46 | |

** YARD IS NOT RESPONSIBLE FOR MAST HEAD GEAR **

DESCRIPTION OF WORK

| | | AMOUNT |
|---|---|---|
| LABOR 12/3 9/05 - 01/08/07 | | 418 50 |

TOTAL MATERIALS

TOTAL LABOR

TAX

**PAY THIS AMOUNT ➤** | 418 50

In the event that credit is extended by Marblehead Trading Co., the undersigned agrees as follows:

1. Payment for parts and service invoices is due 30 days from date of invoice.
2. Any account past due over 60 days will automatically be placed on C.O.D. and credit privileges withdrawn.
3. Pay reasonable attorney fee and court costs incurred in enforcing collection of the account.
4. Finance charges at a rate of 1% per month will be charged on amounts past due over 30 days.

I have read, understand and agree to the above terms.

SIGNATURE

WORK ORDERED BY
SIGNATURE

DATE COMPLETED

THANK YOU!

Marblehead 000126

**MARBLEHEAD TRADING CO.**
89 Front Street
MARBLEHEAD, MA 01945-3201

(617) 639-0029
FAX (617) 631-0542

INVOICE NO. _____

| | | |
|---|---|---|
| OWN PHONE | | DATE OF ORDER 1/15/97 |
| JOB NAME/LOCATION | | |

TO:
C Robert A. Harper Law Firm
325 Park Ave
P. O. Box 10132
Tallahassee, FL 32302-2132

PLASU II
Starboard #721

TERMS _____  ORDER TAKEN BY _____

DESCRIPTION OF WORK

GLF ANDERSON, 718 N. Lake Ave.,
Delray Beach, FL

| QTY | MATERIAL | PRICE | AMOUNT |
|---|---|---|---|
| | Lav r 18" 40 | | 18.50 |
| | DB017 | | 39.23 |
| | Less 30% | | 59.07 |
| | | | 11.65 |
| | | | 46.62 |
| | 75486 | | 6.45 |
| | | | 40.17 |
| 2 Qts 101 Semi White | | | 44.80 |
| | | | 84.97 |

Description of work (right column):
Move boat for filming
Fabricate mast wedges
Glue up mast and boom cradle

| | |
|---|---|
| TOTAL LABOR | |
| TOTAL MATERIALS | |
| TAX | |
| FAX THIS AMOUNT → | |

THANK YOU!

Marblehead 000137

** YARD IS NOT RESPONSIBLE FOR MAST HEAD GEAR **

In the event that credit is extended by Marblehead Trading Co., the undersigned agrees as follows.

1. Payment for parts and service invoices is due 30 days from date of invoice.
2. Any account past due over 60 days will automatically be placed on C.O.D. and credit privileges withdrawn.
3. Pay reasonable attorney fee and court costs incurred in enforcing collection of the account.
4. Finance charges at a rate of 1% per month will be charged on amounts past due over 30 days.

I have read, understand and agree to the above terms.

SIGNATURE _____

 

# INVOICE

7601-1

## Marblehead Trading Company

89 Front St. Marblehead, MA 01945
Phone: 781-639-0029  Fax: 781-631-0542

**Date:** 11/2/2004
**Page 1**

Bill To:  Anderson, Ole
321 W Arcade

Clewiston, FL 33440-

**Boat Name:** **FLASH**

**Home Phone:** (561) 573-2602

**Work Phone:**

| Work Order No. | Customer ID | WO Date | Terms | Boat ID | Launch/Haul Date |
|---|---|---|---|---|---|
| 7601 | AND012 | 11/2/2004 | | FLASH1 | |

| Code | Description | | | Quantity: | Unit Price: | Extended Price: |
|---|---|---|---|---|---|---|
| CREDIT | CREDIT | CREDIT | CREDIT | | | |
| S7 | INSIDE STORAGE 2004-2005 SEASON | | | -1 | 600.00 | -600.00 |

|  | | | | |
|---|---|---|---|---|
| **Total Material** | | $0.00 | **Tax:** | 0.00 |
| ** Yard is not responsible for mast head gear ** | | | **Total:** | ($600.00) |

** Yard is not responsible for mast head gear **
** All work must be paid in full before boat leaves yard **
** Finance Charge 1.5% per Month on Overdue Accounts **



Marblehead 000160





# INVOICE

### 7415-1

**Marblehead Trading Company**
89 Front St. Marblehead, MA 01945
Phone: 781-639-0029 Fax: 781-631-0542

**Date:** 9/18/2004
**Page 1**

Bill To: Anderson, Ole
321 W Arcade

Clewiston,FL 33440-

**Boat Name:** **FLASH**

**Home Phone:** (561) 573-2602

**Work Phone:**

| Work Order No. | Customer ID | WO Date | Terms | Boat ID | Launch/Haul Date |
|---|---|---|---|---|---|
| 7415 | AND012 | 9/18/2004 | | FLASH1 | |

| Code | Description | Quantity: | Unit Price: | Extended Price: |
|---|---|---|---|---|
| S7 | INSIDE STORAGE 2004-2005 SEASON | 1 | 600.00 | 600.00 |

**Total Material** $0.00

**Tax:** 0.00

** Yard is not responsible for mast head gear **
** All work must be paid in full before boat leaves yard **
** Finance Charge 1.5% per Month on Overdue Accounts **

**Total:** $600.00



# INVOICE

**7559-1**

**Marblehead Trading Company**
89 Front St.  Marblehead, MA  01945
Phone: 781-639-0029   Fax: 781-631-0542

Date:    10/13/2004
Page 1

Bill To:  Anderson, Ole
321 W Arcade

Clewiston, FL  33440-

Boat Name:    **FLASH**

Home Phone:   (561) 573-2602

Work Phone:

| Work Order No. | Customer ID | WO Date | Terms | Boat ID | Launch/Haul Date |
|---|---|---|---|---|---|
| 7559 | AND012 | 10/13/2004 | | FLASH1 | |

| Code | Description | Quantity: | Unit Price: | | Extended Price: |
|---|---|---|---|---|---|
| | Remove and launder cover (7/13/04) | 1 | 50.00 | | 50.00 |
| | STOCK: Inv. #B16459 | 1 | 57.68 | T | 57.68 |

**Total Material**          $57.68

Tax:          2.88

Total:          $110.56

** Yard is not responsible for mast head gear **
** All work must be paid in full before boat leaves yard **
** Finance Charge 1.5% per Month on Overdue Accounts **





# INVOICE

6937-1

**Marblehead Trading Company**

89 Front St. Marblehead, MA 01945
Phone: 781-639-0029   Fax: 781-631-0542

Date:      7/16/2004
Page 1

| | |
|---|---|
| Bill To: Anderson, Ole | Boat Name: **FLASH** |
| 321 W Arcade | Home Phone: (561) 573-2602 |
| Clewiston, FL  33440- | Work Phone: |

| Work Order No. | Customer ID | WO Date | Terms | Boat ID | Launch/Haul Date |
|---|---|---|---|---|---|
| 6937 | AND012 | 7/16/2004 | | FLASH1 | |

| Code | Description | Quantity: | Unit Price: | Extended Price: |
|---|---|---|---|---|
| - | Summer Storage | 3 | 100.00 | 300.00 |
| - | | | | |
| - | | | | |
| - | | | | |
| - | | | | |
| - | | | | |

|  |  |  |  |
|---|---|---|---|
| Total Material | $0.00 | Tax: | 0.00 |

** Yard is not responsible for mast head gear **

** All work must be paid in full before boat leaves yard  **

** Finance Charge 1.5% per Month on Overdue Accounts **

Total:      $300.00

JUL 1 9 2004

Marblehead 000166



# INVOICE

6328-1

**Marblehead Trading Company**

89 Front St.  Marblehead, MA  01945
Phone: 781-639-0029  Fax: 781-631-0542

**Date:**     1/6/2004
Page 1

Bill To:  Anderson, Ole
321 W Arcade

Clewiston,FL  33440-

**Boat Name:**     **FLASH**

**Home Phone:**   (561) 573-0021

**Work Phone:**

| Work Order No. | Customer ID | WO Date | Terms | Boat ID | Launch/Haul Date |
|---|---|---|---|---|---|
| 6328 | | 1/6/2004 | | FLASH1 | |

| Code | Description | Quantity: | Unit Price: | Extended Price: |
|---|---|---|---|---|
| - | Temporary Storage | 1 | 500.00 | 500.00 |
| - | Remove covers.  Wash/dry.  Recover | 1 | 100.00 | 100.00 |
| - | | | | |
| - | | | | |
| - | | | | |
| - | | | | |

|  | **Total Material** | **$0.00** | **Tax:** | 0.00 |
|---|---|---|---|---|

** Yard is not responsible for mast head gear **

** All work must be paid in full before boat leaves yard **

** Finance Charge 1.5% per Month on Overdue Accounts **

**Total:**     $600.00

- 7 2004

Marblehead 000167



# INVOICE

### 5871-1

## Marblehead Trading Company

89 Front St.  Marblehead, MA  01945
Phone: 781-639-0029   Fax: 781-631-0542

Date:    09/05/2003
Page 1

Bill To:  Anderson, Ole
145 NE 6th Ave

Delray Beach, FL  33483-5422

Boat Name:   **FLASH**

Home Phone:  (561) 573-0021

Work Phone:

| Work Order No. | Customer ID | WO Date | Terms | Boat ID | Launch/Haul Date |
|---|---|---|---|---|---|
| 5871 | | 09/05/2003 | | FLASH1 | |

| Code | Description | Quantity | Unit Price | Extended Price |
|---|---|---|---|---|
| - | Temporary Storage | 1 | 500.00 | 500.00 |
| - | | | | |
| - | | | | |
| - | | | | |
| - | | | | |
| - | | | | |

Total Material          $0.00

Tax:          0.00

** Yard is not responsible for mast head gear **

** All work must be paid in full before boat leaves yard  **

** Finance Charge 1.5% per Month on Overdue Accounts **

Total:          $500.00

SEP - 8 2003

Marblehead 000172



# INVOICE

### 4201-1

## Marblehead Trading Company

89 Front St. Marblehead, MA 01945
Phone: 781-639-0029  Fax: 781-631-0542

**Date:** 05/02/2002
Page 1

Bill To:  Anderson, Ole
145 NE 6th Ave

Delray Beach, FL 33483-5422

**Boat Name:** **FLASH**

**Home Phone:** (561) 573-0021

**Work Phone:**

| Work Order No. | Customer ID | WO Date | Terms | Boat ID | Launch/Haul Date |
|---|---|---|---|---|---|
| 4201 | | 05/02/2002 | | FLASH1 | |

| Code | Description | Quantity | Unit Price | Extended Price |
|---|---|---|---|---|
| - | Temporary Storage | 1 | 500.00 | 500.00 |

| | | |
|---|---|---|
| **Total Material** | $0.00 | **Tax:** 0.00 |

** Yard is not responsible for mast head gear **
** All work must be paid in full before boat leaves yard  **
** Finance Charge 1.5% per Month on Overdue Accounts **

**Total:** $500.00

*For storage per note on check [handwritten]*

*INVOICE TO COVER 500.01 TEMP STORAGE [handwritten]*

MAY - 2 2002

Marblehead 000174

Invoice #        1741
Invoice Date   08/07/100

MARBLEHEAD TRADING CO.
AS FRONT STREET
MARBLEHEAD, MA    01945

(781) 639-0029

Boat Name: Flash

To:  Anderson, Ole
145 NE 5th Ave                        Work Order #   1741
                                      Mooring #
Lake Worth     FL  33483              C/J:           C

                                      Launch/Haul Date:  07/08/100
                                      Launch/Haul:       0

Finance Charge 1.5% per Month on Overdue Accounts.

| DESCRIPTION | QTY | RATE | AMOUNT |
|---|---|---|---|
| Labor & Materials | 22.00 | 3.50 | 84.60 |
| Winter Boston | | | |
| Power & Bottom 2 Back | 1.00 | 51.50 | 171.50 |

TOTAL MATERIAL  $
TOTAL LABOR     $
TOTAL TAX       $

TOTAL DUE       $

**Marblehead 000176**



Marblehead 000177

WORK ORDER  #  1741
ORDER DATE   07/08.96

MARBLEHEAD TRADING CO.
45 FRONT STREET
MARBLEHEAD, MA   01945

(781) 639-0029

Boat Name: Flash

Class:  Star #721
Length:  20.00
Type:   S (Sail/Power)
Color:
Key/Combo:

To:  Anderson, Ole
1540 4th Ave

Fort Lauderdale    FL   33385

Mooring #
C/J:        C

Launch/Haul Date:  07/08/96
Launch/Hours:       0
Haul Site:
Launch Site:

Description                                      QTY    RATE    AMOUNT

Off load @ Cliff St
Haul to Beacon Street
Store mast

PARTS MUST BE PAID IN FULL BEFORE BOAT LEAVES YARD **

TOTAL MATERIAL  $
TOTAL LABOR     $
TOTAL TAX       $

TOTAL DUE       $

Marblehead 000179

Invoice #        1741
Invoice Date   09/15/2000

MARBLEHEAD TRADING CO.
83 FRONT STREET
MARBLEHEAD, MA    01945

(781) 639-0029

Boat Name: Flash

To:  Anderson, Ole
     145 NE 6th Ave                    Work Order #   1741
                                       Mooring #
     Del Ray Beach    FL  33483        C/I:           0

     Home Phone:  (561) 573-21         Launch/Haul Date: 07/08/100
     Work Phone:                       Launch/Haul:      0

*TERMS: Net 30 DAYS.  Finance Charge 1.5% per Month on Overdue Accounts.

| CODE | DESCRIPTION | QTY | RATE | AMOUNT |
|---|---|---|---|---|
|  | Off Load @ Cliff St | 22.00 | 3.80 | 83.60 |
|  | Rig for Boston |  |  |  |
|  | Truck to Boston & Back | 1.00 | 571.50 | 571.50 |
|  |  |  |  |  |
| NOTE: | Ole, the rig & truck to Boston & back |  |  |  |
|  | 11 hours, plus fuel, plus the use |  |  |  |
|  | of the truck was a deal! |  |  |  |
|  |  |  |  |  |
|  | Received on MAKE | -400.00 | 1.00 | -400.00 |

COMMENTS:                                    TOTAL MATERIAL  $
                                             TOTAL LABOR     $
                                             TOTAL TAX       $

                                             TOTAL DUE      **Marblehead 000181**

[illegible]
FRONT STREET
[illegible]

Boat Name: [illegible]

Work Order # [illegible]
Mooring # [illegible]

[illegible] Charge 1.5% per Month on Overdue [illegible]

| DESCRIPTION | QTY | RATE | AMOUNT |
|---|---|---|---|
| [illegible] | [illegible].000 | [illegible] | [illegible] |
| [illegible] | [illegible] | [illegible] | [illegible] |
| [illegible] | [illegible]400.00 | 1.[illegible] | [illegible] |

TOTAL MATERIAL :
TOTAL LABOR :
TOTAL TAX :

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA,          )
                Plaintiff,         )
                                   )
        v.                         )  CRIMINAL NO. 04-10054-NG
                                   )
GARY MILO,                         )
                Defendant.         )

### UNITED STATES' MOTION FOR ISSUANCE OF A PRELIMINARY ORDER OF FORFEITURE AND A MONEY JUDGMENT

The United States, by and through its attorney, Michael J. Sullivan, United States Attorney for the District of Massachusetts, hereby moves that this Court issue a Preliminary Order of Forfeiture and Money Judgment in the above-captioned case pursuant to Title 21, United States Code, Section 853, and Rule 32.2(b)(1), (c)(1), and (e) of the Federal Rules of Criminal Procedure. A proposed Preliminary Order of Forfeiture and Money Judgment is submitted herewith. In support thereof, the United States sets forth the following:

1.   On or about February 17, 2004 a one-count Information was filed charging the defendant Gary Milo (the "Defendant") with the following violation: Conspiracy to Possess With Intent To Distribute and to Distribute Marijuana, a Schedule I controlled substance, in violation of Title 21, United States Code, Section 841(a)(1) and 21 U.S.C. §846 (Count One).

2.   The Information also contained a Criminal Forfeiture Allegation, in which, as a result of the Defendant's commission of the offense alleged in Count One of the Information, and pursuant

to 21 U.S.C. §853, sought the forfeiture of: (1) any and all property constituting or derived from any proceeds the Defendant obtained directly or indirectly as a result of the charged offenses; and (2) any and all property used or intended to be used in any manner or part to commit and/or to facilitate the charged offenses.

3.     On or about April 29, 2004, the Defendant, pursuant to a written plea agreement, entered a plea of guilty to Count One of the Information.  In the plea agreement, the Defendant agreed to forfeit to the United States any and all assets subject to forfeiture, pursuant to 21 U.S.C. §853.

4.     At the time of charging Information, the United States charged the Defendant with 1,000 kilograms of marijuana. Pursuant to the Plea Agreement, Defendant admitted responsibility for between 1,000 kilograms to 3,000 kilograms of marijuana. Subsequently, based on additional information obtained by the Government, the United States has learned the total amount of marijuana for which the Defendant is responsible under the conspiracy to which the Defendant has plead guilty is approximately 5,034 kilograms of marijuana.  One kilogram is equal to 2.2 pounds. Therefore, approximately 5,034 kilograms of marijuana is equal to approximately 11,075 pounds of marijuana.

5.     Based on the training and experience of United States Drug Enforcement Administration Special Agent Gregg A. Willoughby

2

("Special Agent Willoughby"), the case agent, the price of marijuana charged by the Defendant during the conspiracy varied between $900 to $1,000 per pound. Taking the low end, $900 per pound, the total proceeds earned by the Defendant during the conspiracy are $9,967,500. Based on the Defendant's guilty plea and conviction on Count One, and the Criminal Forfeiture Allegation of the Information, pursuant to 21 U.S.C. §853, the United States is now entitled to forfeit from the Defendant $9,967,500, or substitute assets in a value up to $9,967,500.

6. In this case, the Government has shown that the Defendant received $9,967,500, as proceeds of the offense charged in Count One of the Information to which the Defendant has pled guilty. The Government has attempted to locate these funds, but has been unable to do so.

7. The United States had identified $650,000 in cash as directly forfeitable. Specifically, (1) $150,000 in drug proceeds that the Defendant transferred to one of his relatives, believed to be his sister, Sandra Milo, (2) $100,000 in drug proceeds the Defendant transferred to another relative, believed to be another sister of the Defendant, (3) $100,000 in cash currently in the Defendant's possession, and (4) $300,000 in various checking accounts controlled by the Defendant. If received, this $650,000 United States Currency will then be used to reduce the money judgment.

8.    By virtue of the Defendant's guilty plea and conviction, and the Criminal Forfeiture Allegation of the Information, the United States is now entitled to the forfeiture of $9,967,500, or substitute assets in an amount up to the value of $9,967,500 to satisfy the money judgment.    See Rule 32.2(b)(2); 18 U.S.C. §1963(m) and 21 U.S.C. §853(p); United States v. Candelaria-Silva, 166 F.3d 19, 41 (1st Cir. 1999).

9.    An order of forfeiture may take several forms, including an order for a money judgment, directly forfeitable property, and substitute assets.  The entry of an Order of Forfeiture in the form of a money judgment is specifically authorized by Rule 32.2(b)(1) and (c)(1) of the Federal Rules of Criminal Procedure.  See United States v. Hall, 2006 WL 60959, *10 (1st Cir. Jan 12, 2006) (holding that a money judgment for the total value of the ill-gotten proceeds is appropriate regardless whether the proceeds of the defendant's crime are still in his possession.).  Such orders of forfeiture are commonplace.  In this case, the United States is entitled to a money judgment for $9,967,500.

10.    Therefore, the Court may enter a Preliminary Order of Forfeiture and Money Judgment in the amount of $9,967,500, pursuant to 21 U.S.C. §853.  The Government reserves the right to conduct additional discovery to locate additional forfeitable assets to satisfy the Money Judgment.

11.    This Court's jurisdiction in this matter is founded upon

4

21 U.S.C. §853(a), which provides that, with respect to any person convicted of drug offense punishable by imprisonment for more than one year:

> [t]he Court, in imposing sentence..., shall order...that the person forfeit to the United States all property described in this subsection.

12.    Rule 32.2(b)(1), (b)(2), and (b)(3) of the Federal Rules of Criminal Procedure provide that as soon as is practicable after entering a guilty verdict on any count on which forfeiture is sought in an indictment, the Court shall determine whether the government has established the requisite nexus between the property and the offense, subjecting the property to forfeiture.   The Defendant is responsible for approximately $9,967,500 in conspiracy proceeds.  By virtue of the Defendant's guilty plea and conviction, the United States is entitled the forfeiture of $9,967,500 or substitute assets in that amount.  At sentencing - or at any time before sentencing if the defendant consents - the order of forfeiture becomes final as to the Defendant and shall be made part of the sentence and included in the judgment.

13.    In accordance with the provisions of 21 U.S.C. §853(m) and Rule 32.2(b)(3) of the Federal Rules of Criminal Procedure, the United States requests that it be permitted to undertake whatever discovery is necessary to identify, locate, or dispose of property subject to forfeiture, including substitute assets.

14.    In the event that additional assets are identified which

are subject to forfeiture either directly or pursuant to 21 U.S.C. §853(p), as incorporated by 18 U.S.C. §982, the United States will seek an amended Preliminary Order of Forfeiture.

WHEREFORE, the United States respectfully moves that this Court enter a Preliminary Order of Forfeiture and Money Judgment of $9,967,500 in the form submitted herewith.

Respectfully submitted,
MICHAEL J. SULLIVAN
United States Attorney,

/s/ Jennifer H. Zacks
RACHEL E. HERSHFANG
JENNIFER H. ZACKS
Assistant U.S. Attorneys
United States Courthouse
Suite 9200
1 Courthouse Way
Boston, MA 02210
Date: 2/7/06                      (617) 748-3100

### CERTIFICATE OF SERVICE

I hereby certify that the foregoing document(s) have been filed through the Electronic Court Filing System and also have been sent by first class mail and facsimile to Robert L. Sheketoff, Esquire, One McKinley Square, Boston, MA 02109 on February 7, 2006.

/s/Jennifer H. Zacks
Jennifer H. Zacks
Assistant U.S. Attorney

Dated: 2/7/06

**Exhibit 4: Flash II expenses compared with Dr. Lane's investment**

The figures contained in *The Forepeak Marine Hardware and Supplies* invoices appear to be included in Marblehead bills for corresponding dates, with the exception of *Forepeak Suuplies* invoices from May - July 1997, for which we have found no corresponding bills from Marblehead . Therefore, the only Forepeak invoices included in this spreadsheet are those dated 5/7/1997 or later.  There are no Marblehead invoices for the last half of 1997.

Spreadsheet of Marblehead Invoices

|    | A | B | C | D | E | F | G | H | I | J | K |
|----|---|---|---|---|---|---|---|---|---|---|---|
| 2  | Year | m.day | Labor | materials | trucking | storage | **page** | | | | |
| 3  | 1996 | 12/26 | $ 9,805.50 | $ 1,326.95 | | | **98** | "work to date 11/26/96-12/20/96" "less deposit -$3000" | | | |
| 4  | 1996 | 12/31 | $ 418.50 | $ 788.46 | | | **123** | minus "credit labor -$994.50" | | | |
| 5  | 1996 | 12/31 | | $ 96.27 | | | **118** | | | | |
| 6  | 1997 | 2/18 | $ 1,623.00 | $ 362.00 | | | **39** | | | | |
| 7  | 1997 | 4/8 | $ 967.50 | $ 377.60 | $ 400.00 | | **27** | | | | |
| 8  | 1997 | 2/18 | | | | $ 50.00 | **41** | | | | |
| 9  | 1997 | 2/18 | $ 1,057.50 | $ 90.60 | | | **54** | | | | |
| 10 | 1997 | 2/1 | $ 3,198.00 | $ 653.18 | | | **60** | | | | |
| 11 | 1997 | 1/30 | | $ 1,045.22 | | | **80** | | | | |
| 12 | 1997 | 1/10 | $ 1,075.50 | | $ 20.30 | | **82** | | | | |
| 13 | 1997 | 2/6 | | $ 225.00 | | $ 1,200.00 | **116** | | | | |
| 14 | 1997 | 3/17 | $ 697.50 | $ 84.97 | | | **137** | | | | |
| 15 | 1998 | 10/3 | | | | $ 1,200.00 | **112** | | | | |
| 16 | Forepeak invoices w/o corresponding Marblehead bill: | | | | | | | | | | |
| 17 | 1997 | 5/7 | | $ 33.26 | | | **31** | | | | |
| 18 | 1997 | 5/17 | | $ 72.93 | | | **32** | | | | |
| 19 | 1997 | 6/2 | | $ 7.37 | | | **33** | | | | |
| 20 | 1997 | 6/25 | | $ 52.05 | | | **34** | | | | |
| 21 | 1997 | 7/1 | | $ 35.43 | | | **35** | | | | |
| 22 | 1997 | 7/9 | | $ 55.65 | | | **36** | | | | |
| 23 | 1997 | 7/29 | | $ 9.10 | | | **37** | | | | |
| 24 | 1997 | 7/8 | | $ 68.99 | | | **38** | | | | |
| 25 | | | | | | | | | | | |
| 26 | | | | | | | | | | | |
| 27 | | | | | | **Total expenses paid through June 1997:** | | | | **$24,807.56** | |
| 28 | | | | | | **Total invoices for final 7 months of 1997:** | | | | **$ 334.78** | |
| 29 | | | labor | materials | trucking | storage | | | | | |
| 30 | **1996 totals:** | | $ 10,224.00 | $ 2,115.41 | | | **All 1996:** | $ 12,339.41 | minus $994.50 "credit labor" | | |
| 31 | **1997 totals:** | | $ 8,619.00 | $ 3,173.35 | $ 420.30 | $ 1,250.00 | **All 1997:** | $ 13,462.65 | | | |
| 32 | **1998 totals:** | | | | | $ 1,200.00 | **All 1998:** | $ 1,200.00 | | | |
| 33 | | | | | | | | | | | |
| 34 | | | | | | | | | | | |

**Table of Dr. Lane's documented contributions to the consortium**

| Date | Amount | Type of documentation | Exhibit #/page |
|------|--------|----------------------|----------------|
| 7-12-1996 | $10,000[1] | receipt re: cashiers checks | Ex. 1 p. 5 |
| 7-19-1996 | $20,000 | Dr. Lane's testimony about a cashier's check he paid after visit to Sailorman, to finish buying out Fitzgerald's interest and pay $8,000 toward restoration | Trial pp. 68, 71 |
| 12-24-1996 | $25,000 | Consortium agreement shows Dr. Lane had paid $25,000 in participation units by 12-24-97 | Ex. 1 pp. 15-16 |
| 1-8-1997 | $3,000 | cashier's check purchased by Dr. Lane | Ex. 1 p. 19 |
| 12-24-1997 | $60,000 | handwritten agreement shows that by 12-24-1997 Dr. Lane had contributed a total of $60,000 to the Consortium | Ex. 1 p. 29, Trial p. 78 |
| 12-25-1997 | $1500 | cancelled check submitted after the 12-24-97 itemization | Ex. 1 p. 20 |

---

[1] Chuck Fitzgerald's receipt shows the Consortium was paying $22,000 to buy out Fitzgerald's interest.