UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>          Plaintiff, )<br> )<br>     v. )<br> )<br>ONE STAR CLASS SLOOP SAILBOAT )<br>BUILT IN 1930 WITH HULL NUMBER 721, )<br>NAMED "*FLASH II*," )<br>          Defendant. ) | Civil Action No.05-10192-WGY |

**GOVERNMENT'S OPPOSITION TO CLAIMANT'S MOTION FOR
RECONSIDERATION OF RULING IN FAVOR OF GOVERNMENT ON FTCA CLAIM**

Claimant Kerry Scott Lane ("Lane") seeks reconsideration of the Court's ruling that sovereign immunity bars a tort claim against the government for the sale of the Flash II pursuant to a judicial order. The Court ruled in the government's favor on two grounds. First, the Court stated that the claim was outside the scope of the Federal Tort Claims Act (FTCA), which allows a claim for "any claim based on injury or loss of goods, merchandise, or other property, while in the possession of [law enforcement]," 28 U.S.C. § 2680(c), holding that that provision "does not cover this situation." Transcript of May 15, 2007 Hearing, Docket Entry 78 ("Hearing"), at page 3, lines 8-13. Additionally, the Court concluded that the government's conduct fell within the discretionary function exemption, 28 U.S.C. § 2680(a)(1). Hearing, at page 3 line 15.

In Lane's motion for reconsideration, Lane asserts, with much hyperbole and vitriol, that the government misled the Court in numerous ways. The government will limits its response to Lane's legal arguments.[1]

---

[1] One of Lane's more strident assertions bears response. The government did represent to the Court that the publication, "A Guide to Interlocutory Sales and Expedited Settlement," was an internal document not available for public release. The government's refusal to release the document was by no means a "cover up." Based on the fact that the document contains advice as

**I.       Burden of Proof**

Lane asserts first that the government has the burden of proving that the discretionary function applies, citing a treatise and a case from the United States Court of Appeals for the Ninth Circuit. Docket Entry 73, at 2-3. This is not the rule in the First Circuit. In <u>Hydrogen Technology Corporation v. United States</u>, 831 F.2d 1155, 1162 (1st Cir. 1987), the First Circuit Court of Appeals addressed a claimant's assertion that the government bore the burden to establish an exception to the sovereign immunity waiver in the FTCA. The Court rejected the claimant's assertion, as follows:

> HTC also suggested at oral argument that it is the government's burden to show that a particular exception to the FTCA applies, and we recognize that some courts seem to have adopted this approach. As we have discussed above, however, when an exception to the FTCA applies, sovereign immunity is still intact and federal courts have no subject matter jurisdiction to entertain an action.

<u>Hydrogen Technology Corp</u>., 831 F.2d at 1162 n.6 (citations omitted).

In the First Circuit, the party asserting subject matter jurisdiction has the burden of proving that jurisdiction exists – in this case, that a waiver of sovereign immunity applies. <u>Id.</u> Lane has not met that burden, and indeed cannot meet that burden, in this case.

---

to how prosecutors should settle third party claims in forfeiture cases and sample settlement pleadings, and based on the fact that the document does not appear to be available to the public on the internet, the United States Attorney's Office for the District of Massachusetts made the good faith determination that the document was not public, and that the undersigned attorney was not at liberty to disclose it. Upon further review with attorneys from the Asset Forfeiture and Money Laundering Section in Washington, D.C., it appears that that conclusion was mistaken. The undersigned regrets the error. Regardless, as set forth herein (and in the government's response to Lane's supplemental discovery request), the sale of the Flash II was not an interlocutory sale. Accordingly, the contents of the publication are wholly irrelevant to the issues before this Court.

**II.     The FTCA Does Not Waive Sovereign Immunity for Lane's Claims**

As the government demonstrated in its initial brief, Docket Entry 63-1, and as this Court expressly found during the Hearing, Lane's claim falls outside the clear words of the FTCA provision that he seeks to use to allow his claim. That provision allows a claim, under limited circumstances, "based on injury or loss of goods, merchandise, or other property, while in the possession of [law enforcement]." 28 U.S.C. § 2680(c). In interpreting the FTCA, the Court must "'identify "those circumstances which are within the words and reason of the exception" – no less and no more.'" Dolan v. United States Postal Service, 546 U.S. 481, 491-92 (2006) (quoting Kosak v. United States, 465 U.S. 848, 853 (1984), which in turn quoted Dalehite v. United States, 346 U.S. 15, 31 (1953)). Here, Lane's claim does not fall within "the words and reason of the exception." As this Court has already held, "the statute, properly read, pertains to situations where the asset is lost or damaged while in the custody of the government." Hearing, page 3, lines 8-13. The exception was created to provide a means for relief for persons whose property was injured or lost in the possession of law enforcement while awaiting forfeiture. See H.R. Rep. 105-385(I), 105th Cong., 1st Sess.1997 (Leg. Hist.)(relevant pages attached as Exhibit A). That did not occur here. There is simply no contention that the Flash II was lost or injured – or in any way harmed – while in the possession of the government. Instead, *after* the property was forfeited by a *final* court order, the government sold the property – still unharmed – in accordance with that order. Lane had a means of preventing this sale, by seeking a stay from the First Circuit Court of Appeals pursuant to Federal Rule of Appellate Procedure 8(a). He elected

not to do so.[2] His failure to avail himself of that remedy does not create subject matter jurisdiction for a tort claim in this Court.

### III. The Court Properly Found that the Discretionary Function Exemption Also Bars Lane's Claim

Lane contends that the discretionary function exemption to the FTCA does not apply because the government violated a mandatory rule. As set forth above and in the government's initial brief on this issue, Docket Entry 63-1), the Court need not reach the discretionary function exception because there is no waiver of sovereign immunity for this claim under the FTCA. However, even if the Court were to determine that a tort claim could otherwise lie, the government's conduct falls within the discretionary function exemption ("DFE"), as the Court previously found.

Lane asserts that the DFE does not apply, because the government had no discretion. In essence, Lane asserts that there were mandatory rules regarding the sale of the Flash II in the government's "Guide to Interlocutory Sales," which the United States Marshals Service ("USMS") failed to follow. This is not true. All of the provisions that Lane refers to in his brief, which Lane asserts were "mandatory," apply exclusively to certain limited *interlocutory* sales. Such provisions are therefore irrelevant – wholly inapplicable – to the sale of the Flash II, which was sold on the basis of a final judicial order.

#### A. The Sale of the Flash II was Not Interlocutory

---

[2]As the record demonstrates, Lane did seek a stay in this Court. However, rather than citing the statutory provision for stays pending forfeiture appeals, 28 U.S.C. § 1355(c), Lane cited a different provision. See Docket Entry 25. The government did not oppose Lane's motion, but the other claimant in this case did, and the Court denied the stay. Docket Entry on 11/17/05. Lane could have appealed that denial, or he could have moved for a stay in the Court of Appeals. He chose to do neither. He cannot now claim that the government's sale of the Flash II pursuant to the lawful order of the Court was therefore tortious.

The First Circuit Court of Appeals addressed the distinction between "interlocutory" and "final" in Zayas-Green v. Casaine, 906 F.2d 18, 21 (1st Cir. 1990). A "final decision" is generally considered a decision that "'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.'" Id. (quoting Catlin v. United States, 324 U.S. 229, 233 (1945)). The Court then noted that "by definition, interlocutory orders are not final decisions." Id. See also BLACK'S LAW DICTIONARY 832 (8th ed. 2004) (defining interlocutory as "interim or temporary, not constituting a final resolution of the whole controversy." ); Feret Marine Supply v. M/V Enchanted Capri, 2001 WL 649764, *1 (E.D. La. 2001) ("[b]y definition, an interlocutory event is 'Something intervening between the commencement and end of suit which decides some point or matter, but is not a final decision of the whole controversy.'")

Here, Judge Zobel's July 15, 2005 Judgment and Order of Forfeiture (the "July 15 Order") was a final order. Paragraph 5 of the judgment states, "[t]his shall be and is the full, final, and complete disposition of this civil forfeiture action." (July 15 Order ¶ 5.) Lane himself recognized the judgment as "final" by filing a motion to vacate the judgment pursuant to Federal Rule of Civil Procedure 60(b). Courts have held consistently that Rule 60(b) applies only to final determinations and not to interlocutory orders. See, e.g., Farr Man & Co., Inc. v. M/V Rozita, 903 F.2d 871 (1st Cir. 1990); James by James v. Sadler, 909 F.2d 834 (5th Cir. 1990); Remington Products, Inc. v. North American Philips, Corp., 755 F. Supp. 52 (D.Conn. 1991); Sank v. City University of New York, 1997 WL 65910 (S.D.N.Y. 1997); Pierce v. Multnomah County, 2001 WL 34047079 (D. Or. 2001). Therefore, since the Court's July 15 Order was a final judgment, the sale of the Flash II was not an interlocutory sale. Therefore, none of the provisions cited by Lane from the Guide to Interlocutory Sales have any applicability.

**B. The Government Acted in Accordance With DOJ Policy and Federal Statutes.**

The July 15 Order specifically directed the United States Marshals Service to arrange for the sale of the Flash II "in accordance with United States Department of Justice policies regarding the disposition of forfeited property." (July 15 Order ¶ 2.) According to Chapter 5 of DOJ's 2005 Asset Forfeiture Policy Manual ("Manual"), "[t]he disposition of property forfeited to the Untied States is an executive branch decision and not a matter for the court." Manual at 84. It goes on to state that, ordinarily, "the U.S. Marshals Service is to determine the best method and conditions of the sale of forfeited property in its custody." Manual at 85. The Manual maintains that "forfeiture sales do not require judicial confirmation pursuant to 28 U.S.C. § 2001." Manual at 85. Rather, the Government is to dispose of forfeited property in accordance with the relevant forfeiture statute, such as 21 U.S.C. § 881(e) or § 853(h). Manual at 86-87. The Ninth Circuit Court of Appeals supports this view, having held that 21 U.S.C. § 881(e)(1) "gives the Attorney General, not the court, the power to sell forfeited property. Nowhere in this provision is there a requirement for a judicial sale." United States v. Vacant Land Known as Palm Estates, Ltd., 1992 WL 61917, *5 (9th Cir. 3/31/92).

The Flash II was sold after a final order of the court had been issued and the vessel had been forfeited to the Government pursuant to 21 U.S.C. § 881(a)(6). According to Section 881 (e)(1)(B), "Whenever property is civilly or criminally forfeited under this subchapter the Attorney General may . . . sell, by public sale or any other commercially feasible means, any forfeited property which is not required to be destroyed by law and which is not harmful to the public. . . ." 21 U.S.C. § 881(e)(1)(B). In contrast to Lane's assertion, the Government did have discretion as to how to dispose of the Flash II. The Government's sale of the vessel at the

Guernsey's auction was in full compliance with DOJ policy and federal law.

      **C.     The Government Did Not Violate Any Warranty Provisions**.

Lane asserts that the government improperly gave warranties regarding the Flash II in the course of the sale.[3] Lane does not explain how this would be relevant in the instant proceeding. At the hearing in this matter on May 3, 2007, the Court offered Lane an opportunity to address whether he sought recovery of the Flash II from the auction purchaser. Lane waived any such claim. He stated instead that he seeks money damages from the government. Accordingly, whether or not warranties were given would have no relevance.

Moreover, as a factual matter, it is simply wrong. In the consignment contract between the USMS and Guernsey's, the parties stated "The Property is bein [sic] sold 'as is', where is, with no guarantee or warrantees [sic] intended or implied." Ettinger Deposition Ex. 31, at ¶10, filed as Docket Entry 75; also Docket Entry 73-6. This contract clause, not cited in Lane's brief, makes clear that no warranties were provided. Finally, as a legal matter, the Manual provisions cited by Lane refer to the provision of deeds in the course of the conveyance of realty and do not apply to the conveyance of personalty.

Accordingly, from a procedural, factual, and legal factual standpoint, Lane's arguments regarding warranty deeds are erroneous.

---

[3]Indeed, if warranties were given, it would undermine Lane's oft-cited argument that "the potential clouds on the title could deter potential bidders from offering full value." Docket Entry 73-2, citing Docket Entry 25-1.

## CONCLUSION

As set forth above, Lane's motion to reconsider the Court's ruling in favor of the government on Lane's FTCA claims has no merit and should be denied.

Respectfully submitted,

MICHAEL J. SULLIVAN
United States Attorney

By: /s/ Nancy Rue
     Nancy Rue
     Assistant U.S. Attorney

## CERTIFICATE OF SERVICE

I hereby certify that these documents filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

/s/ Nancy Rue
Nancy Rue
Assistant U.S. Attorney

Willie Jones did not challenge the forfeiture under the normal mechanism provided by law [FN28] because he could not afford to post the required 10% cost bond. [FN29] He instead filed suit in federal district court alleging that his Fourth Amendment right to be secure against unreasonable searches and seizures had been violated. [FN30] The court ruled that the "frisk" that produced the $9,000 in currency was an unconstitutional search, [FN31] and that the subsequent seizure of the money was made without probable cause and therefore illegal. [FN32]

The court's final comments gave rise for pause:

> The Court also observes that the statutory scheme as well as its administrative implementation provide substantial opportunity for abuse and potentiality for corruption. [Drug Interdiction Unit] personnel encourage airline employees as well as hotel and motel employees to report "suspicious" travelers and reward them with a percentage of the forfeited proceeds. The forfeited monies are divided and distributed by the Department of Justice among the Metropolitan Nashville Airport and the Metropolitan Nashville Police Department partners in the DIU and itself. As to the local agencies, these monies are "off-budget" in that there is no requirement to account to legislative bodies for its receipt or expenditure. Thus, the law enforcement agency has a direct financial interest in the enforcement of these laws. The previous history in this country of an analogous kind of financial interest on the part of law enforcement officers-i.e., salaries of constables, sheriffs, magistrates, etc., based on fees and fines-is an unsavory and embarrassing scar on the administration of justice. The obviously dangerous potentiality for abuse extant in the forfeiture scheme should trigger, at the very least, heightened scrutiny by the courts when a seizure is contested. [FN33]

Although Mr. Jones' case had a happy ending, his case typifies the kind of case apparently that this Committee is gravely concerned about. That is, citizens innocent of any criminal wrongdoing, who happen to fit a drug courier profile, are subjected to unlawful searches and investigations. If they have large sums of cash, it is seized. They don't have to be arrested, indicted, or convicted of a crime because civil forfeiture requires no related criminal proceeding.

To seize and forfeit property, all the government has to prove is that it had probable cause to believe the property was involved in criminal activity. For property owners to get their property back, they must overcome tremendous procedural hurdles like posting cost bonds and proving that their property is "innocent" (once probable cause has been shown). The abuses can even be worse under certain state forfeiture laws. [FN34]

Billy Munnerlyn testified before the Judiciary Committee on June 11, 1997. The following is a short summary of his experience with federal civil forfeiture laws:

> For years Billy Munnerlyn and his wife Karon owned and operated a successful air charter service in Las Vegas, Nevada. In October 1989, Mr. Munnerlyn was hired for a routine job-flying Albert Wright, identified as a "businessman," from Little Rock, Arkansas, to Ontario, California. When the plane landed, DEA agents seized Mr. Wright's luggage and the $2.7 million it contained. Both he and Mr. Munnerlyn were arrested. The DEA confiscated the airplane, the $8,500 charter fee for the flight, and all of Munnerlyn's business records. Although drug trafficking charges against Mr. Munnerlyn were quickly dropped for lack of evidence, the government refused to release his airplane (similar charges against Mr. Wright, who unbeknownst to Mr. Munnerlyn was a convicted cocaine dealer, were eventually dropped as well). Mr. Munnerlyn spent over $85,000 in legal fees trying to get his plane back, money raised by selling his three other planes. A Los Angeles jury decided his airplane should be returned because they found Mr. Munnerlyn had no knowledge that Mr. Wright was transporting drug money; however, a U.S. District Court judge reversed the jury's verdict. Mr. Munnerlyn eventually was forced to settle with the government, paying $7,000 to get his plane back. He then discovered that DEA agents had caused about $100,000 of damage to the aircraft. Under federal law the agency could not be held liable for the damage. Unable to raise enough money to restart his air charter business, Mr. Munnerlyn declared bankruptcy. He is now driving a truck for a living. [FN35]

For Mr. Munnerlyn, there was no happy ending.

## IV. H.R. 1965, THE CIVIL ASSET FORFEITURE REFORM ACT

H.R. 1965 is designed to make federal civil forfeiture procedures fair for property owners-to give innocent property owners the means to recover their property and make themselves whole. H.R. 1965 is not designed to emasculate federal civil forfeiture efforts. To the contrary, by making civil forfeiture fairer, this Committee is prepared to (and H.R. 1965 does) expand the reach of civil forfeiture and make it an even stronger law enforcement tool. It is the Committee's belief, however, that criminal forfeiture should be used in lieu of civil forfeiture where feasible because it has the heightened due process safeguards of the criminal law. The bill also expands the reach of federal criminal forfeiture, such as to crimes that frequently generate criminal proceeds.

### A. The Eight Core Reforms of H.R. 1965

#### 1. Burden of Proof

When a property owner goes to federal court to challenge the seizure of his property under federal civil forfeiture laws, the government is required to make an initial showing of probable cause that the property is subject to forfeiture. The property owner must then establish by a preponderance of the evidence that the property is not subject to forfeiture. [FN36] As mentioned previously, the government can meet its burden without having obtained a criminal conviction. Since the government does not have to prove its case beyond a reasonable doubt-as it would to gain a criminal conviction-even the acquittal of the owner following a criminal trial will not bar the forfeiture his property. Probable cause-what the government needs to show-is the lowest standard of proof in the criminal law. It is the same standard required to obtain a search warrant and can be established by evidence with a low indicia of reliability such as hearsay. [FN37]

Allowing property to be forfeited upon a mere showing of probable cause can be criticized on many levels:

[T]he current allocations of burdens and standards of proof requires that the [owner] prove a negative, that the property was not used in order to facilitate illegal activity, while the government must prove almost nothing. This creates a great risk of erroneous, irreversible deprivation. "The function of a standard of proof, as that concept is embodied in the Due Process Clause and in the realm of fact finding, is to 'instruct the fact finder concerning the degree of confidence our society thinks he should have in the correctness of factual conclusions for a particular type of adjudication.'" Addington v. Texas, 441 U.S. 418, 423 ... (1979).... The allocation of burdens and standards of proof implicates similar concerns and is of greater importance since it decides who must go forward with evidence and who bears the risk of loss should proof not rise to the standard set. In civil forfeiture cases, where claimants are required to go forward with evidence and exculpate their property by a preponderance of the evidence, all risks are squarely on the claimant. The government, under the current approach, need not produce any admissible evidence and may deprive citizens of property based on the rankest of hearsay and the flimsiest evidence. This result clearly does not reflect the value of private property in our society, and makes the risk of an erroneous deprivation intolerable. [FN38]

Some federal courts have even intimated that probable cause is an unconstitutional standard:

The Supreme Court ... has recently expanded the constitutional protections applicable in forfeiture proceedings to include those of the Eighth Amendment.... We therefore agree with the Second Circuit: "Good and Austin reopen the question of whether the quantum of evidence the government needs to show in order to obtain a warrant in rem allowing seizure-probable cause- suffices to meet the requirements of due process." United States v. One Parcel of Property Located at 194 Quaker Farms Road, 85 F.3d 985, 990 (2nd Cir.), cert denied ... 117 S.Ct. 304 ... (1996).

* * * * *

[W]e observe that allowing the government to forfeit property based on a mere showing of probable cause is a "constitutional anomaly".... As the Supreme Court has explained, burdens of proof are intended in part to "indicate the relative importance attached to the ultimate decision." ... The stakes are exceedingly high in a forfeiture proceeding: Claimants are threatened with permanent deprivation of their property, from their hard-earned money, to their sole means of transport, to their homes. We would find it surprising were the Constitution to permit such an important decision to turn on a meager burden of proof like probable cause. [FN39]

The Committee concludes that probable cause is an insufficient quantum of evidence to justify the forfeiture of property, and H.R. 1965 will therefore require proof by a preponderance of the evidence. Preponderance of the evidence is the quantum of evidence required in most civil proceedings.

Under H.R. 1965 the property owner would still have the burden of proving affirmative defenses-such as the "innocent owner" defense-by a preponderance of the evidence. Additionally, current law would be retained allowing the government to forfeit property on a showing of probable cause if the property owner elects not to challenge the forfeiture by filing a claim.

## 2. Appointment of Counsel

There is no Sixth Amendment right to appointed counsel for indigents in civil forfeiture cases, since imprisonment is not threatened. [FN40] This is undoubtedly one of the primary reasons why at least 80% of civil forfeiture cases are not challenged: "The reason they are so rarely challenged has nothing to do with the owner's guilt, and everything to do with the arduous path one must journey against a presumption of guilt, often without the benefit of counsel, and perhaps without any money left after the seizure with which to fight the battle." [FN41] This Committee believes that given the punitive, quasi-criminal nature of civil forfeiture proceedings, legal representation should be provided for those who are indigent in appropriate circumstances.

H.R. 1965 provides that a federal court may appoint counsel to represent an individual filing a claim in a civil forfeiture proceeding who is financially unable to obtain representation. In determining whether to appoint counsel, the court shall take into account (1) the nature and value of the property subject to forfeiture, including the hardship to the claimant from the loss of the property seized, compared to the expense of appointed counsel, (2) the claimant's standing to contest the forfeiture, and (3) whether the claim appears to be made in good faith or to be frivolous. The first consideration described