UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>           Plaintiff,<br>      v.<br><br>ONE STAR CLASS SLOOP SAILBOAT<br>BUILT IN 1930 WITH HULL NUMBER<br>721, NAMED "FLASH II",<br><br>           Defendant.<br>_____<br><br>KERRY SCOTT LANE,<br><br>           Claimant. | Civil Action # 05-10192 RWZ |

**CLAIMANT'S MOTION FOR LEAVE TO FILE A REPLY TO
THE GOVERNMENT'S OPPOSITION TO
CLAIMANT'S MOTION FOR RECONSIDERATION**

Claimant, Kerry Lane, M.D., through undersigned counsel, hereby requests leave to file the attached reply memorandum, pursuant to Local Rule 7.1(b)(3).

The reply memorandum is made necessary by the fact that the government's opposition cites cases for propositions they do not stand for, makes unsupported legal arguments that are contrary to statutes, and makes misleading claims about the facts.

Pursuant to Local Rule 7.1(a)(2), Claimant has emailed opposing counsel, stating that he intended to file this motion for leave to file a reply, and that if his attorney Brenda Grantland did not hear from AUSA Rue in time to file the motion by the close of business East Coast time, he would assume that they objected. Time being of the essence, Claimant has proceeded in the filing of this motion.

1

Respectfully submitted,
Kerry Scott Lane, MD,

By his attorneys,


        s/Eric B. Goldberg
Jeffrey P. Allen (BBO# 015500)
Eric B. Goldberg (BBO# 564398)
Seegel Lipshutz & Wilchins, P.C.
Wellesley Office Park
20 William Street, Suite 130
Wellesley, MA 02481
(781) 237-4400

Brenda Grantland, Esq.
Law Office of Brenda Grantland
20 Sunnyside Suite A-204
Mill Valley, CA 94941
(415) 380-9108
(Pro hac vice application pending)

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br>v.<br><br>ONE STAR CLASS SLOOP SAILBOAT BUILT IN 1930 WITH HULL NUMBER 721, NAMED "FLASH II",<br><br>Defendant.<br><br>KERRY SCOTT LANE,<br><br>Claimant. | Civil Action # 05-10192 |

POINTS AND AUTHORITIES IN REPLY TO
THE GOVERNMENT'S OPPOSITION TO CLAIMANT'S MOTION
FOR RECONSIDERATION OF THE ORAL RULING ON SOVEREIGN IMMUNITY

**I.   The government bears the burden of proof on the discretionary function exception**

The government claims Dr. Lane's burden of proof argument relies only on a treatise and an out of circuit precedent, and that First Circuit precedent rejects his argument. In fact, the lead authority Dr. Lane cited (and quoted) in his memorandum, pp. 2-3, is the Supreme Court case *Dolan v. U.S. Postal Service*, 546 U.S. 481, 491-92 (2006). If the First Circuit precedent the government cited actually said what the government claimed it said, it would have been overruled by *Dolan*. However, the case the government cited – *Hydrogen Technology Corporation v. United States*, 831 F.2d 1155, 1162 (1st Cir. 1987) – does not reject the premise that the government bears the burden of proving an exception to the Federal Tort Claims Act

1

applies. *Hydrogen Technology* merely finds the burden of proof to be irrelevant, because jurisdictional issues can be raised at any time, even for the first time on appeal.

## II.     Dr. Lane's claim is within the words and reason of CAFRA's exception to FTCA

In part II of its Opposition the government argues that CAFRA's exception in § 2680(c) only applies when the asset is lost or damaged, and not when the property is intentionally sold by the government for less than its fair market value while litigation is pending. The government provided no authority whatsoever for this contention. Dr. Lane cited a case directly on point. *Intrigue Trading v. United States*, C.D. Cal. # CV-04-02360[1] held that CAFRA's § 2680(c) entitled the successful forfeiture claimant to a money judgment for the fair market value of property sold by the government for a tenth of its value while forfeiture litigation was pending. The government made no attempt to distinguish *Intrigue Trading*.

There is no reason why Congress would have distinguished between misplaced property and government sales of property for a fraction of its value, when it waived sovereign immunity in CAFRA's § 2680(c).

The "words and reason" of CAFRA's waiver of sovereign immunity are clear – Congress wanted to make sure forfeiture claimants did not experience Pyrrhic victories. Claimants who won their forfeiture cases on the merits, should not be forced to settle for a fraction of their property's value because of the government's negligence or wrongdoing.

The exact means by which the government agent committed the tort is irrelevant to the waiver of sovereign immunity under the FTCA. The question is whether the loss or damage

---

[1] (Doc. 73-1 p. 1).

resulted from the "wrongful act or omission"[2] of government employees under circumstances where the U.S., if a private person, would be liable under state tort law. Id.

As Dr. Lane explained in his Response Memorandum, Doc. 64 pp. 2-4, CAFRA's phrase "injury or loss of property" is the same broad language used throughout the Federal Tort Claims Act's provisions. See e.g. 28 U.S.C. § 2679. Thus the definition of "injury or loss of property" under § 2680(c) is as broad as the Federal Tort Claims Act permits.

Black's Law Dictionary (Rev. 4th Edition) states: "Loss is a generic and relative term; it is not a word of limited, hard and fast meaning."

> It may mean ... a decrease in value of resources or increase in liabilities; depletion or depreciation or destruction of value; ... failure to keep that which one has or thinks he has; ... shrinkage in value of estate or property; ... that which is gone and cannot be recovered or that which is withheld or that of which a party is dispossessed; unintentional parting with something of value.

*Id*. Clearly the term "loss" is broad enough to encompass the selling of the Flash II for a tenth of its fair market value.

The FTCA provides a remedy for any type of damages for loss or injury to property that is actionable under state tort law (subject to specific FTCA exceptions). It is not necessary that the "loss" of the property be accidental or *un*intentional. An intentional tort also subjects the government to FTCA liability, so long it does not fall within the list of intentional torts itemized in §2680(h). The tort of conversion falls within the FTCA's waiver of sovereign immunity and is not on the list in § 2680(h). *Price v. United States*, 69 F.3d 46, 50 (5th Cir. 1995) (holding that because the conversion occurred in Germany, the court lacked jurisdiction under 28 U.S.C. § 2680(k), which exempts claims arising in a foreign country.) Here, the government tortiously

---

[2] 28 U.S.C. § 1346(b)(1).

converted the property when it sold it at auction for a tenth of its value in violation of Dr. Lane's demand for a minimum reserve acceptable to him.

The government argues on page 3 that Dr. Lane could have stopped the interlocutory sale by seeking a stay from the First Circuit, and accused Dr. Lane of "electing" not to do so. That is incorrect. Although Dr. Lane filed his notice of appeal on Novemeber 9, 2005 (Docket at Doc. 25), the district court did not transfer the record to the Court of Appeals until January 4, 2006. See Docket at Doc. 29. The First Circuit docketed the case on January 13, 2006 (Docket at Doc. 30). By then it was too late to seek any relief from the Court of Appeals, for the sailboat had already sold at the Guernsey's auction on December 15, 2005.

### III. The discretionary function does not apply

#### A. "Interlocutory" means while litigation is pending

In Part II of his Memorandum, Doc. 73-2, pp. 3-8, Dr. Lane argued that federal statutes as well as the government's own manual, *A Guide to Interlocutory Sales*, created mandatory procedures which the government violated in auctioning the Flash II without a minimum reserve acceptable to Dr. Lane. Rather than address these arguments, the government plays with semantics, arguing that these procedures do not apply because the government had obtained a default judgment and therefore the sale was not "interlocutory."

As Dr. Lane explained in his Memorandum, "interlocutory" means while litigation is pending. A narrower use of the term "interlocutory" applies in the context of appeals, because of the "final order rule" – which prohibits appeals from orders disposing of less than the entire case unless the order fits into a small category of permissible "interlocutory appeals." See 28 U.S.C. §§ 1291, 1292. As Claimant stated before:

4

> Because appeals are limited by the final judgment rule, the term "interlocutory" in appellate procedure does not necessarily coincide with the meaning of the term in relation to the forced sale of subject property while litigation is ongoing. Indeed, the *Guide* uses the term quite broadly. "Such sales [are] called "interlocutory" because they occur *during the pendency of litigation*...." *Guide* at II-1.

Doc. 73-2 p. 7 n. 5.

The final order rule is a rule of appellate procedure, and has nothing to do with forced sales of property that is the subject matter of pending litigation. The only legitimate purpose of such a sale is to preserve the value of the property for the party who eventually prevails. There is no reason to distinguish a sale while litigation is pending on appeal from a sale prior to entry of the appealed judgment.

The government's manuals make a distinction between "interlocutory sales" and "forfeiture sales." "Since the forfeiture process vests title to the property in the United States, a forfeiture sale is a sale by the Government of property it owns." *Asset Forfeiture Policy Manual* p. 86 (2005).

> Forfeiture divests an owner of property of all his or her right, title, and interest therein, and vests such right, title, and interest in the Government. In other words, because of the property's or its owner's involvement in criminal activity, forfeiture extinguishes all of the former owner's interests in that criminally derived or criminally involved asset and vests title in the United States.

*Id*. Here, the government had not completed the forfeiture process, and title had not permanently vested in the government.

The government did not have a reasonable expectation of finality in its default judgment in December 2005, when it sold Flash II over Dr. Lane's objections. Dr. Lane, who the government had every reason to believe was the doctor/co-owner identified by the government's informant, had come forward and identified himself. The government knew he had not been

served notice, and – though the government kept the fact secret until the remand – its agents knew that they had not made reasonable efforts to identify and notify the co-owners of the sailboat. In fighting Dr. Lane's attempt to vacate the default judgment, the government ignored First Circuit precedent, and led the district court into error. On appeal the default judgment was voided for failure to provide due process notice.

When the boat was sold, the government's right to forfeiture had not been established. There had not been any adjudication of the merits, whether by summary judgment or trial. Claimant Harry Crosby, who had been served notice, settled. A default judgment was entered against Ole Anderson, who was served, and a default was entered against the rest of the world after notice by publication alone.

Now, after the trial on remand it is clear that the government never had a case for forfeiture in the first place. Clearly, when the Flash II was sold, it was not the government's property.

### B. The government failed to comply with federal statutes

As Claimant pointed out, the strict procedures for contested sales discussed in the *Guide to Interlocutory Sales* came from "federal statutes that do not limit their reach to sales prior to entry of a judgment. The word 'interlocutory' is not mentioned" in 28 U.S.C. §§ 2001 - 2004." Doc. 73-2 p. 7. Those statutes apply to property "sold under any order or decree" of a federal court.

The government cited the unpublished decision *United States v. Vacant Land Known as Palm Estates, Ltd.*, 1992 WL 61917, *5 (9th Cir. 1992) as holding a judicial sale is not required when the property is forfeited. Not only is that decision non-precedential (since it is designated

not for publication), but it is not on point. *Palm Estates* involved an interlocutory sale by stipulation agreed to by all of the parties, which was later challenged by a judgment creditor of the property owner, who had never filed a claim, and had never become a party. The judgment creditor had not recorded a judgment lien against the property before the forfeiture lis pendens was recorded, and therefore his potential lien was cut off under the rules on priority of liens. As merely an unsecured creditor of a forfeiture claimant, he lacked standing in the forfeiture case. Nowhere in the opinion did the court apply or construe 28 U.S.C. §§ 2001 or 2004.

In *United States v. Macia*, 157 F.Supp.2d 1369, 1371-72 (S.D. Fla. 2001), the court considered the question "Does 28 U.S.C. § 2001 apply to the sale of forfeited properties?" The court held that the statute does apply. The government's own *Guide to Interlocutory Sales* also concludes that 28 U.S.C. §§ 2001 & 2004 apply in forfeiture cases – and it instructs that the only way to get around those strict statutory requirements is by stipulation among all the parties and persons with interests. *Guide* at II-6. See Doc. 73-2 at pp. 5-8.

      **C.**      **The government's warranties to Guernsey's destroyed any reasonable possibility that Dr. Lane could have obtained Flash II back**

The government's deviations from policy in the warranties it provided to Guernsey's is not particularly relevant to Dr. Lane's discretionary function argument. However, these further deviations from policy buttress the evidence of conversion. By warranting that the buyer at auction and Guernsey's would be reimbursed in full, including attorneys fees, if they had to litigate over the government's title to Flash II, the government "laundered" the Flash II by passing title to an alleged bona fide purchaser for value – making the conversion complete and virtually irreversible.

The government argues in note 3 page 7, that the warranties in the Guernsey's contract undermine Dr. Lane's claim that the potential cloud on the title deterred bidders from offering full value. It is unlikely that any potential bidder would ever learn about the provisions in the Guernsey's contract. In contrast, the notoriety of the forfeiture case – and Dr. Lane's challenge to it – would have been obvious to any person who ran an internet search for Flash II. Even now, a Google search for "Kennedy sailboat Flash II" prominently lists articles – published before the December 2005 auction – about the forfeiture case and Dr. Lane's challenge to the default judgment. The DEA press release about the seizure is still the top article in Google.

The government's argument – that the specific warranties in the Guernsey's contract were somehow cancelled out by the clause "The Property is bein [sic] sold 'as is', where is, with no guarantee or warrantees [sic] intended or implied" – defies legal precedent. The Uniform Commercial Code, which applies to transactions in "goods"[3] – contains rules for interpreting contracts for the sales of goods. Section 2-316 provides: "Words or conduct relevant to the creation of an express warranty and words or conduct tending to negate or limit warranty shall be construed wherever reasonable as consistent with each other" § 2-316(1).

Here, the clause "The Property is bein [sic] sold 'as is', where is,[4] with no guarantee or warrantees [sic] intended or implied" has a reasonable meaning consistent with – rather than in conflict with – the detailed warranties of title. The Flash II is a valuable historical artifact, but it is also a vintage sailboat that had not been in water in over 50 years. The "as is" clause warns

---

[3] "'Goods' means all things that are moveable at the time of identification to the contract for sale." U.C.C. § 2-103(k). See also *ITT Corporation v. LTX Corporation*, 926 F.2d 1258, 1266 (1st Cir. 1991).

[4] "Where is" means the purchaser is responsible for transporting it from the auction site.

the purchaser that the boat might not be seaworthy – i.e. the normally implied warranty that property is fit for its purpose. "[A]ll implied warranties are excluded by expressions like 'as is'." U.C.C. § 2-316(3)(a).

Under the UCC, where clauses creating and negating warranties cannot reasonably be construed consistently with each other, specific warranties prevail and the clause negating warranties is inoperative. Id. ("[N]egation or limitation is inoperative to the extent that such construction is unreasonable.") Thus, legally it is impossible that the clause with two misspellings could cancel several paragraphs of specific warranties of title, indemnification, etc.

## CONCLUSION

The "vitriol" that Claimant expressed toward the government for its actions in this case was entirely justified. The government has proven itself to be a thief, fencing stolen property, and laundering the proceeds to prevent Dr. Lane from undoing the sale.

The bigger and more important question is – why did the government do this? Why did they go after this sailboat in the first place? The government knew that its informant Gary Milo could not trace any proceeds into the sailboat, and on that basis it obtained an order forfeiting substitute assets from Gary Milo. Why did they not bother finding out who actually owned the sailboat – a fact the records of Marblehead Trading Company and attorney Robert Harper would readily have shown? Why did they not bother trying to find the anaesthesiologist[5] that the government's own informant told them was a primary investor? Once Dr. Lane came forward,

---

[5] The government has repeatedly insinuated in its pleadings, including on appeal, that it knew only that this other investor was a "possibly a doctor or dentist" – when the wire taped conversations of Ole Anderson and Gary Milo that the government keeps trying to rely on, show that the investor was a Florida anaesthesiologist. If the government had instructed Milo to ask Ole Anderson for the name of this doctor, he could have easily obtained it.

why did the government continue to fight him – to this day – despite the government's concession at trial that Dr. Lane is innocent?

The farther we go, and the deeper we dig, the more corruption we uncover in this case. This case is much bigger than Dr. Lane and the amount of money he will eventually get in recompense.

What more fitting symbol could a cynical and corrupt Department of Justice steal from an innocent citizen? The Flash II represents John F. Kennedy's "youthful enthusiasm" – the former president's optimism that, working together as citizens for the common good, we can make our country great. That sentiment inspired generations. This spirit is not yet dead.

Why the government targeted this asset and abused its forfeiture powers to take Flash II away from an innocent citizen remains an unsolved mystery. A case like this should never have happened. Strict measures should be taken by the court to ensure that it never happens again..

    Respectfully submitted,
    Kerry Scott Lane, MD,

    By his attorneys,

       /s/Brenda Grantland
    Brenda Grantland, Esq.
    Law Office of Brenda Grantland
    20 Sunnyside Suite A-204
    Mill Valley, CA 94941
    (415) 380-9108
    (Pro hac vice)


       s/Eric B. Goldberg
    Jeffrey P. Allen (BBO# 015500)
    Eric B. Goldberg (BBO# 564398)
    Seegel Lipshutz & Wilchins, P.C.
    Wellesley Office Park

20 William Street, Suite 130
Wellesley, MA 02481
(781) 237-4400