UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA,       )
            Plaintiff,           )
                                 )
        v.                       )Civil Action No.05-10192-WGY
                                 )
ONE STAR CLASS SLOOP SAILBOAT    )
BUILT IN 1930 WITH HULL NUMBER 721,)
NAMED "*FLASH II*,"              )
            Defendant.           )

## GOVERNMENT'S REPLY MEMORANDUM REGARDING CROSBY'S INTEREST

For more than two years, Claimant Kerry Scott Lane ("Lane") has asserted in this Court that the 12/4/97 handwritten statement by Ole Anderson listing investors in the Flash II (the "12/4/97 Statement") was the crucial evidence of the relative ownership interests in the Flash II. However, in Lane's Memorandum on Crosby's Interest filed on October 15, 2007, Lane conspicuously ignores the express provisions of the previously vaunted 12/4/97 Statement. Lane's calculations are therefore erroneous and should be rejected by this Court.

### ARGUMENT

Throughout this litigation, Lane has asserted that the 12/4/97 Statement proved his ownership interest in the Flash II. In Lane's 9/15/05 Points and Authorities in Reply to The Government's Opposition to Claimant's Rule 59(e) Motion to Alter/Amend Order Denying His Motion to Vacate Default Judgment, ["Lane's Rule 59(e) Reply"], Docket Entry 23-2, Lane argued that the 12/4/97 Statement showed the relative ownership interests, particularly delineating the competing interests of Lane and

Crosby.  Lane asserted:

> Of particular evidentiary value is the
> handwritten contract signed by Ole Anderson
> dated 12/4/1997 – Exhibit D [the 12/4/97
> Statement].  *This document shows the relative
> interests in the property owned by various
> investors as of 12/4/1997*.  At that time,
> this sailboat was put up for auction – with
> the knowledge and consent of the investors,
> who expected to share the profits if it sold.
> Before the anticipated auction, Anderson
> negotiated a complex agreement with all of
> the investors, and drew up Exhibit D [the
> 12/4/97 Statement], showing what portion of
> the proceeds of sale each person would get.
> See Exhibit D.  Dr. Lane got a copy of this
> document, as, presumably, everybody else did.
> . . .
>
> Eddie Crosby, the claimant who was actually
> served process in this case, is listed [in]
> Ex. D.  It is clear from the tenor of the
> language in the document, particularly
> paragraphs E and F on the second page, that
> both Eddie Crosby and Kerry Lane were
> involved in negotiating the terms of this
> document, to safeguard their *competing*
> interests. . . .

Docket Entry 23-2, at page 9 of 11 (emphasis supplied).

Likewise, in Lane's "Response to Government's Statement of

Facts," Docket Entry 44, filed 1/23/07, Lane cited the 12/4/97

Statement as a contract and legal document evidencing his

interest."[1]  In his own Statement of Facts, submitted to this

_____

[1]The 12/4/97 Statement was produced as pages 31-32 of Lane's
document production, and was referred to in Lane's briefing as
LaneDocReqResp 31-32.  See Docket 45-13, pages 23-24 of 27 (the
12/4/97 Statement, bearing Bates Numbers LaneDocReqResp000031-
32.)  In his Response to the Government's Statement of Facts,
Lane states that he obtained "contracts and legal documents
evidencing his interest" and cites pages 31-32 of his document

Court on January 23, 2007, Lane asserted that the 12/4/97 Statement "outline[d] the formula for computing what each investor and lienholder would be paid if the sailboat [were] sold . . . ."  Docket Entry 45-1 at ¶ 10.

The 12/4/97 Statement by its terms "supercedes any and all previous statements," which would include Lane's December 24, 1996 agreement with Ole Anderson (Docket Entry 82-5, the "12/24/96 Lane Agreement"), from which Lane extrapolates his argument regarding Crosby's share.  12/4/97 Statement at page 1. In Lane's filing regarding the allocation of the sales proceeds, Lane cites the 12/4/97 Statement (as his attached Exhibit 5) but simply ignores its express payout provisions.

Under the 12/4/97 Statement, sales proceeds from the Flash II were to be paid out under a "complex agreement," Lane's Rule 59(e) Reply at page 9, under which certain investors received flat sums, other investors (Crosby) received flat sums in *addition* to a percentage of the profit, while others (Lane and Jean Anderson) received either a flat sum or a percentage, depending on the sales price, with the flat sum to be *deducted* from the percentage if the percentage clause was in fact triggered.  See 12/4/97 Statement at page 2, clauses E through G.

---

production, the 12/4/97 Statement, in support.  Lane's Response to the Government's Statement of Facts further cited the 12/4/97 Statement was a "handwritten agreement . . . that he could send the Court for verification that the Flash II belonged to him." Docket Entry 44, at ¶ 103, citing "Lane DocReq Resp 31-32" (the 12/4/97 Statement).

Lane was to receive "$60,000 **OR** 30% of [sales proceeds less flat sum payments], whichever sum is greater." Id. (emphasis in original). The 12/4/97 Statement reiterated this point, stating expressly "His initial payment of $60,000 in Section B will be deducted from his 30% should the 30% figure be greater than $60k." Id. (emphasis in original). Therefore, under this 12/4/97 Statement, sales proceeds from the Flash II would be allocated $30,000 to Crosby, $70,000 to Lane. See Government's Brief Regarding Crosby's Interest in the Defendant Res, Docket 83, at page 3.

Contrary to the express terms of the 12/4/97 Statement, Lane asserts that he should have received a flat sum of $140,000, which he claims would be double the $70,000 that he invested.[2] Claimant's Memorandum on Crosby's Interest, Docket 82, at page 6. There is simply no support in the 12/4/97 Statement for Lane's calculation. The 12/4/97 provides a clear formula for payment of the investors in the Flash II. Under this formula, Lane was to receive a flat sum of $10,000 plus either 30% or $60,000, whichever was greater. For sales proceeds of $100,000, $60,000 exceeded the potential percentage, rendering Lane's share $70,000

---

[2]As noted in earlier filings, there is no evidentiary support for Lane's claim that he paid Anderson $70,000 toward the Flash II. The total checks submitted by Lane in this litigation totaled less than $25,000. Moreover, notations on certain of those checks appear to include a running total: check 4783 notes "$15K" [Docket Entry 45-13 at page 13] while check 3920 asserts "$11,000 to date." See Chart at Docket 77-2, and analysis at Docket Entry 77, page 10, n.3.

and Crosby's share $30,000.  See Government's Brief Regarding
Crosby's Interest in Defendant Res ("Government's Brief Re
Crosby," Docket Entry 83, at page 3.  Lane's calculation to the
contrary has no merit.

Even if, despite Lane's prior reliance on the 12/4/97
Statement, the various 12/24/96 separate agreements with Crosby
and Lane were to control the relative ownership interests in the
Flash II, Lane's calculation fails, because those agreements
likewise do not support his calculations.  Lane argues that there
is a "double the investment" clause in these contracts that
promised him 200% of his investment, whatever that may be.
Claimant's Memorandum, Docket Entry 82, at pp. 5-6.  This simply
is not true.  The two agreements have different terms and
different results, and neither provides that Lane will invest (or
has invested) $70,000.  Neither provides that Lane would receive
"double his investment."  Instead, as demonstrated in the
Government's Brief Re Crosby, under the 12/24/96 Crosby
Agreement, Crosby was entitled to $21,000 plus a percentage, for
a total of $32,572.  See Government's Brief Re Crosby, Docket 83,
at pages 3-4.  Even if one were to review only the 12/24/96 Lane
Agreement, Lane's calculations do not hold.[3]  There is nothing in

_____

[3]There is no legal construct under which one would look to
the 12/24/96 Lane Agreement for calculation of Crosby's share.
First, as noted earlier, this document was expressly superseded
by the 12/4/97 Statement.  Additionally, there is no indication
that Crosby ever knew of or acceded to this document.

that agreement that provides that Lane will receive double his money back, and nothing that indicated he would invest $70,000. Accordingly, Lane's calculations are erroneous and should be rejected by this Court.

Lane additionally argues that he is entitled to pre- and post-judgment interest and attorney's fees.  The government respectfully notes that these items are outside the scope of the issues that the Court ordered the parties to address.[4] Accordingly, the government respectfully reserves the right to brief these issues when they are ripe for resolution.

## CONCLUSION

Lane's calculation of the relative shares of the proceeds from the sale of the Flash II is not consistent with the evidence in this case.   Accordingly, Lane's calculation should be rejected.

---

[4]In addition to these items not being ripe for decision, the undersigned attorney notes that she is currently out of the office on medical leave.  Government counsel made arrangements to address the issues within the scope of the Court's order – the amount of Crosby's share – while on leave, in order to meet the previously scheduled briefing deadlines.  However, the issues raised by Claimant's brief – the applicability of Larson's sovereign immunity analysis to the post-CAFRA environment in a case involving the proceeds of a post-judgment sale where the judgment was vacated – is simply beyond the scope of what counsel is prepared to address without library access.

Respectfully Submitted,

MICHAEL J. SULLIVAN
United States Attorney


By:    /s/Nancy Rue
       NANCY RUE
       Assistant U.S. Attorney
       U.S. Attorney's Office
       J. Jos. Moakley U.S. Courthouse
       One Courthouse Way, Suite 9200
       Boston, MA  02210




                    CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system
will be sent electronically to the registered participants as
identified on the Notice of Electronic Filing (NEF).

                         /s/ Nancy Rue
                         Nancy Rue
                         Assistant United States Attorney


Date:    October 22, 2007