UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| v. | Civil Action # 05-10192 RWZ |
| ONE STAR CLASS SLOOP SAILBOAT BUILT IN 1930 WITH HULL NUMBER 721, NAMED "FLASH II", | |
| Defendant. | PETITION FOR ATTORNEYS FEES PURSUANT TO 28 U.S.C. § 2465(b)(1) |
| KERRY SCOTT LANE, M.D. | |
| Claimant. | |

Claimant, Kerry Scott Lane, M.D., through undersigned counsel, hereby petitions for attorneys fees pursuant to 28 U.S.C. § 2465(b)(1). In support of this petition he submits his attorneys' declarations and the itemization of their fees and expenses, the timesheet for Ms. Grantland's paralegal, Judy Osburn, and the following memorandum of points and authorities.

**STATEMENT OF FACTS**

Although Dr. Lane has only been litigating this case for two years and three months, the litigation has been extremely active at all times. By the time Dr. Lane found out about the litigation in district court, the clerk had entered a notice of default. He had only days to spare to hire a lawyer and try to avert the default judgment; default judgment was entered before his new attorney Eric Goldberg could file anything. The uphill battle to undo the default judgment had tight deadlines, with everything at stake and very little time to make the record. When his Rule

60(b) motion was denied, he brought in California forfeiture specialist Brenda Grantland, and she filed a Rule 59(e) motion within the rigid ten day deadline. Roughly a month after Dr. Lane filed his Rule 59(e) reply memorandum, the district court denied the motion. Claimant's attorneys were under new pressing deadlines. They filed the notice of appeal and motion to stay the interlocutory sale of the Flash II three weeks later.

The appeal also proceeded at a fast pace. Two months after the notice of appeal was filed, the parties were engaged in mandatory settlement conference procedures. Two and a half months after the settlement conference, Claimant's opening brief was filed. Oral argument was held only 33 days after Appellant filed his Reply Brief. The First Circuit issued an opinion only two weeks after oral argument.

On remand, the case was put on a fast track. The first status hearing on remand was held less than a month after the First Circuit's decision was handed down. Since the First Circuit opinion was issued there has not been a lull in the litigation. In the 14 months between the docketing of the First Circuit's decision (Doc. #33, 8/18/2006) and this Court's Supplemental Findings and Order (Doc. # 86, 10/25/2007) there were 53 separate docket entries, most of them motions and pleadings filed by the parties. Many of those included extensive memoranda and documentary exhibits. Additionally, numerous orders were issued which were not given docket numbers.

Not only was this case voluminous, but the issues were complex. This Court noted

This case requires this Court to face vexing questions of first impression at virtually every turn. It is not often that a claimant overcomes an initial default and has the chance to contest the forfeiture proceeding after the res has long since been sold. This is a hazardous course for claimants to chart but, having overcome these obstacles, Lane was entitled to his day in court, and this Court on May 24,

2

2007 afforded him a full evidentiary hearing and welcomed substantial briefing. As a result, the Court has considerable work to do in unwinding this case's tortured factual and procedural posture -- a collateral consequence of the government's failure to provide Lane with adequate notice and his late appearance in the case.

Memorandum of Decision, entered 10/1/2007, Doc. 81 p. 2.

## LEGAL ARGUMENT

The Civil Asset Forfeiture Reform Act of 2000 states that reasonable attorneys fees shall be awarded "in any civil proceeding to forfeit property... in which the claimant substantially prevails." 28 U.S.C. § 2465(b)(1).

[P]laintiffs may be considered 'prevailing parties' for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit.

*Hensley v. Eckerhart*. 461 U.S. 424, 433 (1983), quoting *Nadeau v. Helgemoe,* 581 F.2d 275, 278-279 (1st Cir.1978)*.* Here, there is no question that Dr. Lane prevailed. He won on the merits after trial, in which this Court found that the sailboat was not forfeitable.

This Court is well aware of the standards for determining a reasonable attorney fee under the lodestar approach. See *Cerqueira v. American Airlines, Inc.*, 484 F.Supp.2d 241 (D. Mass. 2007) (J. Young). Under this approach, the court scrutinizes the hours counsel spent on the case and subtracts "duplicative, unproductive, or excessive hours." *Id.* at 244.

Here, both counsel – as well as Ms. Grantland's paralegal – have submitted detailed contemporaneous billing records. Unlike the *Cerqueira* case, there was very little redundancy between the attorneys. Mr. Goldberg handled the case for the opening weeks, consulting from time to time with a more senior attorney at his firm. Once Ms. Grantland came into the case, she handled most of the research and writing of motions, and all of the discovery and depositions.

3

To cut down on expenses, she appeared alone at two of the four court appearances, one of which was the trial on the merits.

Dr. Lane prevailed on appeal; on the hearing before this Court on January 31, 2007 on the failure to give reasonable notice; and at trial on the merits.

In *Hensley*, the Supreme Court made it clear that litigants who prevail on some but not all of their arguments may nevertheless be entitled to full compensation for their time. *Hensley*, 461 U.S. at 435. Additionally, although some of Dr. Lane's briefings over which a great deal of ink was spilt, Memorandum of Decision filed October 1, 2007, Doc. 81 p. 22 – such as the motion for reconsideration of the Court's tentative ruling on sovereign immunity – the fact that Dr. Lane's reconsideration motion was rendered moot by the Court's fact-finding on fair market value should not be grounds for reduction of fees. "[T]he court's... failure to reach certain grounds is not sufficient reason for reducing a fee." *Hensley*, 461 U.S. at 435.

Once each attorneys reasonable number of hours are determined, the court multiplies that figure by the "prevailing rates in the community (taking into account the qualifications, experience, and specialized competence of the attorneys involved.)." *Cerqueira*

Hourly rates under CAFRA are not subject to a statutory cap such as the $125 per hour cap in the Equal Access to Justice Act. *United States v. $60,201*, 291 F.Supp.2d 1126, 1129-30 (C.D. Cal. 2003). Instead, the same "prevailing rates in the community" standard used in 42 U.S.C. § 1988 cases, applies in CAFRA cases.

In determining prevailing rates in the community, the "community" at issue is Boston, where the case was tried. There are no published cases awarding CAFRA fees in the First Circuit. Indeed, the only published cases on the prevailing rates under CAFRA are both

4

California cases, involving Los Angeles forfeiture specialist Eric Honig.  The most recent of the two cases, *United States v. 4,432 Mastercases of Cigarettes*, 322 F.Supp.2d 1075 (C.D. Cal. 2004) found $400 per hour to be a reasonable hourly rate for a forfeiture lawyer of Eric Honig's experience.  Eric Honig had been practicing since 1981 and specializing in forfeiture cases since 1989.)  Ms. Grantland has been practicing since 1982, handling forfeiture since 1983, and specializing in forfeiture defense since approximately 1987-88.  The fact that she gives forfeiture victims reduced rates does not reduce the amount she is entitled to under the "prevailing rate" formula used in fee shifting.  *Blum v. Stenson*, 465 U.S. 886 (1984).

To compensate for delay in payment, counsel are requesting that all hours be paid at the appropriate current prevailing rate for their levels of experience and expertise.

In the Boston area, prevailing rates for attorneys in civil rights litigation provide an equivalent measure – particularly in this case which raises so many Constitutional issues and statutory construction issues of first impression, making prior civil rights litigation experience more closely equivalent than ordinary forfeiture litigation.

This Court has recently found the prevailing rates for Boston area civil rights litigators in the *Cerqueira* case: $200 - $350 per hour for lead attorneys, $100 - $200 per hour for assisting counsel, and $65 per hour for paralegals.  Ms. Grantland, like attorney Godkin in the *Cerqueira* case, has more than 25 years of litigation experience, *more than* two high-profile cases on constitutional issues in forfeiture cases, and extensive participation in nonprofit foundation activities on behalf of forfeiture issues.  Accordingly $325 per hour would be a reasonable hourly rate for her.

Mr. Goldberg, who handled the case alone from July 19, 2005 until Ms. Grantland came

into the case on August 23, 2005, should qualify for lead counsel rates during that period.  Mr.

Goldberg has been a member of the Massachusetts bar for 14 years and has extensive civil trial

experience including federal civil litigation.  Using the *Cerqueira* case as a model, Mr.

Goldberg's experience falls between Nazum ($150 per hour) and Kirkpatrick ($275 per hour).

Nazum had less experience as a lawyer (Nazum was a 1988 law school graduate, whereas Mr.

Goldberg graduated in 1983).  While Mr. Goldberg has been practicing nearly as long as

Kirkpatrick, he did not have dedicated experience in the forfeiture realm.  Therefore Mr.

Goldberg's current billing rate of $240 per hour seems appropriate under the standards for

prevailing rates in *Cerqueira*.

Respectfully submitted,
Kerry Scott Lane, MD,

By his attorneys,


_____/s/ Brenda Grantland_____
Brenda Grantland, Esq.
Law Office of Brenda Grantland
20 Sunnyside Suite A-204
Mill Valley, CA 94941
(415) 380-9108
Pro hac vice


_____/s/Eric B. Goldberg_____
Jeffrey P. Allen (BBO# 015500)
Eric B. Goldberg (BBO# 564398)
Seegel Lipshutz & Wilchins, P.C.
Wellesley Office Park
20 William Street, Suite 130
Wellesley, MA 02481
(781) 237-4400
Local counsel

UNITED STATES OF AMERICA
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 05-10192-WGY

UNITED STATES OF AMERICA,
    Plaintiffs,

v.

ONE STAR CLASS SLOOP SAILBOAT
BUILT IN 1930 WITH HULL NUMBER
721, NAMED "FLASH II",
    Defendant.

## AFFIDAVIT OF ERIC GOLDBERG IN SUPPORT
## OF APPLICATION FOR ATTORNEYS' FEES

Now comes Eric B. Goldberg, and being duly sworn, does hereby depose and say as follows:

1.      I am a senior associate with Seegel, Lipshutz & Wilchins, P.C., a full-service firm located in Wellesley, Massachusetts, with sixteen attorneys. I am counsel to claimant Kerry Scott Lane, M.D. in connection with this action.

2.      I make this affidavit in support of Dr. Lane's application for attorneys' fees under 28 U.S.C. § 2465(b)(1). This Affidavit is submitted based on my own personal knowledge and records of my law firm in order to establish the attorneys' fees and expenses incurred by Dr. Lane in connection with my firm's representation of Dr. Lane in connection with this matter.

3.      I am a member in good standing of the bar of the Commonwealth of Massachusetts. I was admitted to the Bar of the Commonwealth in 1993. I have gathered extensive civil trial experience throughout my career in the courts of the Commonwealth,

as well as in the courts of other states and in the Federal Courts. My experience in the

Federal Courts includes whale conservation litigation representing the interests of a

lobster-fishing trade organization, and a supporting role in the trial of a patent

inventorship action. I have practiced at small, medium and large firms, including nearly

four years at the Boston office of Duane Morris, a large national firm headquartered in

Philadelphia, from February 2001 through November 2004. All of the fees so incurred in

my judgment were fair, reasonable, and necessary to assert Dr. Lane's interest in the

Flash II sailboat which is the subject of this forfeiture action.

4.      During the period of July 19, 2005 through April 27, 2007, my firm billed

Dr. Lane $10,608.00 in time. Attached hereto as Exhibit A is a true and accurate report

summarizing the bills submitted to Dr. Lane. My billing rate through November 14, 2005

was $225 an hour. My rate thereafter was $240 an hour. These billing rates are fair and

reasonable compared to other senior litigation associates with comparable experience, and

are less than my hourly rate at the time I left Duane Morris more than three years ago.

5.      In addition to the work itemized in the attached report, I also reviewed

documents and conferred by telephone with Attorney Brenda Grantland on numerous

occasions throughout the course of the action as local counsel. While I did not bill Dr.

Lane for my time, I estimate that I spent an additional three to five hours on the matter

after April 27, 2007 through the present. None of the fees incurred by my firm as

reported in the attached fee statement were duplicative of the fees incurred by Ms.

Grantland.

6.      I further request that the Court award Dr. Lane the additional reasonable

2

attorneys' fees as were incurred in preparation of this affidavit, a total of approximately $240 (one hour).

7.    The time charges that were the subject of these bills included, among other things, time spent mastering the underlying facts, researching and preparing Dr. Lane's motion for relief from judgment and supporting affidavit, and providing assistance to Attorney Brenda Grantland as local counsel.

Signed under the penalties of perjury, this 13th day of November, 2007.


/Eric B. Goldberg/_____

324862.1.3738.8000

3

# Seegel Lipshutz & Wilchins, P.C.
## Time And Expense Details

Report ID: OT2025 - 34734
Thursday, October 25, 2007

Printed By   KMT
Page    1

| Client | Client Reporting Name | Matter | Matter Reporting Name | Billing Timekeeper |
|---|---|---|---|---|
| 3738 | LANE, KERRY 3738 | 8000 | Flash II | Starr, Sherman H. |

Date [01/01/1995 - 10/31/2007]

**Billed Time**

| Date | Timekeeper | Hours Worked | Hours On Bill | Rate | Amount Task | Activity | Narrative |
|---|---|---|---|---|---|---|---|
| 7/19/2005 | EBG | 2.00 | 2.00 | 225.00 | $450.00 | | Confer with Sandy Starr regarding removal of default in boat forfeiture case; Legal research regarding same |
| 7/20/2005 | EBG | 6.70 | 6.70 | 225.00 | $1,507.50 | | Continued legal research regarding removal of default judgment in civil forfeiture cases; Draft Memorandum in Support of Motion for Relief from Judgment; Review e-mail received from client regarding same |
| 7/21/2005 | EBG | 6.50 | 6.50 | 225.00 | $1,462.50 | | Draft Affidavit of Kerry Lane; Continue drafting Memorandum in Support of Motion for Relief from Judgment; Confer with Sandy Starr and Jeffrey Allen regarding same; Review documents received from client; Teleconference with client |
| 7/21/2005 | SHS | 0.30 | 0.30 | 275.00 | $82.50 | | Conference with Eric Goldberg; Telephone conference with client |
| 7/22/2005 | SHS | 0.30 | 0.30 | 275.00 | $82.50 | | Conference with Eric Goldberg; Telephone conference with Attorney Eubanks |
| 7/22/2005 | EBG | 5.50 | 5.50 | 225.00 | $1,237.50 | | Revise/edit Affidavit of Kerry Lane; Revise/edit Memorandum in Support of Motion for Relief from Judgment; Draft Motion for Relief from Judgment; Teleconference with DOJ attorney regarding client's involvement; Teleconference with client regarding same |
| 7/25/2005 | EBG | 4.50 | 4.50 | 225.00 | $1,012.50 | | Review documents received from client; Confer with Sandy Starr regarding review of draft Motion and Affidavit; Revise/edit Affidavit and Memorandum in Support of Motion; Legal research regarding review of civil forfeiture statute |
| 7/25/2005 | SHS | 0.70 | 0.70 | 275.00 | $192.50 | | Review and amend pleadings; Conference with Eric Goldberg; Fax to client |
| 7/26/2005 | EBG | 1.20 | 1.20 | 225.00 | $270.00 | | Review e-mail received from client regarding draft Motion and Affidavit; Teleconference with Thomas Kerner regarding Motion to Set Aside Default Judgment; Draft e-mail to Shelbey Wright regarding same; Confer with Jeffrey Allen regarding same; Revise/edit Affidavit of Kerry Lane; Teleconference with client regarding same |
| 7/27/2005 | EBG | 2.50 | 2.50 | 225.00 | $562.50 | | Revise/edit Affidavit; Telephone conference with client regarding same; Finalize Motion for filing; Revise/edit Memorandum in Support of Motion to Conform to Affidavit; Assemble exhibits to Affidavit; Prepare electronic filing |
| 8/19/2005 | EBG | 0.50 | 0.50 | 225.00 | $112.50 | | Teleconference with client and conference with Sandy Starr regarding ruling on Motion |
| 8/22/2005 | EBG | 1.00 | 1.00 | 225.00 | $225.00 | | Teleconference with client regarding case status and review of civil forfeiture statutes and rules |
| 8/24/2005 | EBG | 0.50 | 0.50 | 225.00 | $112.50 | | Teleconference with client and California counsel regarding Motion for Reconsideration |
| 8/26/2005 | SHS | 0.50 | 0.50 | 275.00 | $137.50 | | Conferences with Eric Goldberg concerning appeal and motion of reconsideration |
| 8/29/2005 | EBG | 2.00 | 2.00 | 225.00 | $450.00 | | Review Motion to Alter/Amend Order; Teleconference with Brenda Grantland regarding same; Confer with Jeffrey Allen regarding same; Confer with Sandy Starr regarding same |
| 9/8/2005 | EBG | 1.20 | 1.20 | 225.00 | $270.00 | | Review Rule 11 Motion; Confer with Jeffrey Allen regarding same; Teleconference with Brenda Grantland regarding same |
| 11/14/2005 | EBG | 0.50 | 0.50 | 225.00 | $112.50 | | Teleconference with Thomas Kerner regarding Motion to Stay Pending Appeal; Teleconference with Brenda Grantland regarding same |
| 8/2/2006 | EBG | 4.00 | 4.00 | 240.00 | $960.00 | | Attend hearing on appeal before First Circuit Court of Appeals; Travel to/from Boston |
| 9/14/2006 | EBG | 0.50 | 0.50 | 240.00 | $120.00 | | Status conference; Conference with Brenda Grantland regarding same |

Report ID:   OT2025 - 34734
Thursday, October 25, 2007

# Seegel Lipshutz & Wilchins, P.C.
## Time And Expense Details

Date [01/01/1995 - 10/31/2007]

**Billed Time**

| Date | Timekeeper | Hours Worked | Hours On Bill | Rate | Amount | Task | Activity | Narrative |
|------|-----------|--------------|---------------|------|--------|------|----------|-----------|
| 12/19/2006 | EBG | 0.50 | 0.50 | 240.00 | $120.00 | | | Attend telephonic status conference with Court |
| 1/31/2007 | EBG | 4.50 | 4.50 | 240.00 | $1,080.00 | | | Attend hearing on remand; Travel to/from Boston Federal Court; Meeting with Brenda Grantland |
| 4/27/2007 | EBG | 0.20 | 0.20 | 240.00 | $48.00 | | | Teleconference with Brenda Grantland regarding hearing on motion for summary judgment |

**Billed Time**

| | Hours Worked | Hours To Bill | Amount | | | | Expense Amount | Total Amount |
|---|--------------|---------------|--------|---|---|---|----------------|--------------|
| **Totals** | 46.10 | 46.10 | $10,608.00 | | | | | |

| | Hours Worked | Hours To Bill | | | Fee Amount | | Expense Amount | Total Amount |
|---|--------------|---------------|---|---|------------|---|----------------|--------------|
| **Report Totals** | 46.10 | 46.10 | | | $10,608.00 | | $0.00 | $10,608.00 |

*** End Of Report ***

# Seegel Lipshutz & Wilchins, P.C.
## Time And Expense Details

Report ID:  OT2025 - 34735
Thursday, October 25, 2007

Printed By   KMT
Page    1

| Client | Client Reporting Name | Matter | Matter Reporting Name | Billing Timekeeper |
|---|---|---|---|---|
| 3738 | LANE, KERRY 3738 | 9901 | Expenses | Starr, Sherman H. |

Date [01/01/1995 - 10/31/2007]

**Billed Time**

| Date | Timekeeper | Hours Worked | Hours On Bill | Rate | Amount | Task | Activity | Narrative |
|---|---|---|---|---|---|---|---|---|
| 7/31/2005 | SHS | 0.00 | 0.00 | 0.00 | $0.00 | | | |

**Billed Time Totals**  0.00  0.00  $0.00

**Billed Expenses**

| Date | Amount | Exp Code | Narrative |
|---|---|---|---|
| 7/31/2005 | $1.25 | 2 | Copies |
| 7/31/2005 | $86.55 | 7 | Online research - July, 2005 |
| 9/30/2005 | $5.25 | 2 | Copies |
| 10/31/2005 | $3.54 | 24 | Telephone charges - long distance |
| 11/8/2005 | $42.49 | 6 | Federal Express |
| 1/31/2006 | $2.50 | 24 | Telephone charges - long distance |
| 1/31/2007 | $9.00 | 9 | Parking |
| 4/27/2007 | $0.50 | 24 | Telephone charges |

**Billed Expenses Totals**  $151.08

| | Hours Worked | Hours To Bill | Fee Amount | Expense Amount | Total Amount |
|---|---|---|---|---|---|
| Report Totals | 0.00 | 0.00 | $0.00 | $151.08 | $151.08 |

*** End Of Report ***

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | | |
| Plaintiff, | | |
| v. | | Civil Action # 05-10192 RWZ |
| ONE STAR CLASS SLOOP SAILBOAT BUILT IN 1930 WITH HULL NUMBER 721, NAMED "FLASH II", | | DECLARATION OF CLAIMANT KERRY SCOTT LANE M.D. IN SUPPORT |
| Defendant. | | OF PETITION FOR ATTORNEYS FEES PURSUANT TO 28 U.S.C. § 2465(b)(1) AND COSTS |
| KERRY SCOTT LANE, M.D. | | |
| Claimant. | | |

I, Kerry Scott Lane, M.D., depose and state as follows:

1. I am the claimant in this case.

2. During the course of litigation in this case, I have paid my attorney Eric Goldberg and his firm a total of $10,581.58.

3. During the course of litigation I have paid my attorney Brenda Grantland a total of $29,250.

4. Additionally I have paid the following expenses directly:

trip to Boston, Ma 7/31/06 to 8/2/06 Oral Argument

| K. Lane | | airfare | WPB to Bos R/t | 369.18 |
|---|---|---|---|---|
| BG | | hotel | Boston Park Plaza 2 nites | 412.00 |
| KL | | hotel | Hotel Suburb Ext Stay | 167.93 |

1

| | | | |
|---|---|---|---|
| BG/KL | meals | Legal Seafood | 123.32 |
| `` | | Barking Crab | 78.14 |
| | `` | Cab Fares | 45.00 |

BG's trip to Boston, Ma  1/30/07 to 1/31/07

| | | | |
|---|---|---|---|
| BG | airfare | SFO to Bos R/t | 574.70 |
| BG | hotel | | 148.14 |

BG's trip to Boston, Ma  5/02/07 to 5/3/07

| | | | |
|---|---|---|---|
| BG | airfare | SFO to Bos R/t | 574.70 |
| BG | hotel | | 169.38 |

trip to Boston, Ma for trial   5/23/05 to 5/25/05

| | | | |
|---|---|---|---|
| BG | airfare | SFO to Bos R/t | 738.72 |
| BG/KL | hotel | Westin Intercontinental 2 rooms/2 nites | 403.00 |
| KL | airfare | WPB to Bos R/t | 524.90 |
| BG/KL | meals | Westin | 42.75 |
| | | Barking Crab | 40.08 |
| | | Cab Fare | 35.00 |
| | | Total expenses | $4446.94 |

I declare under penalty of perjury under the laws of the United States and the State of

Florida that the foregoing is true and correct.

Dated: 11/13/2007

Kerry Scott Lane, MD

2

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA,                 |
                                          |
                   Plaintiff,             |
          v.                              |     Civil Action # 05-10192 RWZ
                                          |
ONE STAR CLASS SLOOP SAILBOAT             |
BUILT IN 1930 WITH HULL NUMBER            |     DECLARATION OF ATTORNEY
721, NAMED "FLASH II",                    |     BRENDA GRANTLAND IN SUPPORT
                                          |     OF PETITION FOR ATTORNEYS
                   Defendant.             |     FEES PURSUANT TO 28 U.S.C.
                                          |     § 2465(b)(1) AND COSTS
_____  |
                                          |
KERRY SCOTT LANE, M.D.                    |
                                          |
                   Claimant.              |
_____  |

        I, Brenda Grantland, depose and state as follows:

        1.      On August 23, 2005, I was retained by Kerry Scott Lane, M.D., as co-counsel with

Eric Goldberg, Esq.  At that point, Dr. Lane's motion to vacate default judgment had been denied

and he was facing a very imminent deadline to seek alteration or amendment of that order

pursuant to Fed. R.Civ. Proc. 59(e).  I took over as lead counsel when my motion for admission

pro hac vice was granted on November 3, 2005, and have served as lead counsel ever since .

        2.      I have specialized in forfeiture defense for most of my 25 year career as a lawyer.

Since 1978-88, asset forfeiture defense, or forfeiture-related civil rights litigation, has made up

the vast bulk of my practice, with the rest being federal criminal appeals (usually involving a

unique constitutional issue).  I have substantial experience in constitutional rights litigation.  In

addition to my §1983 challenge to unconstitutional forfeiture practices in *Patterson v. District of*

1

*Columbia* and the forfeiture "takings" case *Shelden v. United States* (see paragraph 4 below), I

have handled two Civil Rights Act cases that were not forfeiture-related: a racial discrimination

suit I successfully defended in federal court in Baltimore Maryland (*Hunt v. Lee*), and a *Bivens*

conspiracy case against ABC and Warner Brothers for invasion of privacy by a reality "cop

show" whose film crew entered my clients' home without their consent under the authority of the

police, filmed them cooperating as informants, then broadcast it on national television.

(*Roseveare v. American Broadcasting Companies, et al.* in federal court in Sacramento

California; settled mid-trial in 2000 after six years of litigation.)

      3.      I defended my first forfeiture case in 1983, in the District of Columbia, and

became widely known as a forfeiture "expert" in the District of Columbia and Maryland by 1987-

1988.  The dearth of forfeiture defense lawyers nationwide led to my being retained in out-of-

state cases beginning in 1988, when I took on the California case of *Shelden v. United States*.

The *Shelden* case was litigated in the U.S. Court of Federal Claims (and the Federal Circuit) for

11 years, resulting in five published opinions.  For a number of years I have been widely known

as one of the top forfeiture defense lawyers in the country.

      4.      A number of my forfeiture cases have involved complex constitutional issues of

first impression.  In 1987 I filed a § 1983 civil rights suit against the District of Columbia (on

behalf of a number of plaintiffs) raising due process challenges to D.C.'s practices in

implementing its new civil forfeiture statute, including routine failures to provide due process

notice and the opportunity to be heard.  A published trial court opinion in that case established

the right to a prompt post-seizure hearing when automobiles are seized and detained with no

procedural mechanism to secure their release.  *Patterson v. District of Columbia*,  117

2

D.Wash.L.Rptr. 741 (April 13, 1989).  That case is still pending, on remand from the second appeal from the award of attorneys fees.  The *Shelden* case, mentioned above, set precedent establishing a "takings" remedy for third party property owners where property was forfeited in a criminal forfeiture case, but the statutory scheme provided no due process rights to third parties. *Shelden v. United States*, 7 F.3d 1022 (Fed. Cir. 1993).  In *United States v. Hyde*, 287 F. Supp. 2d 1095 (N.D. Cal. 2003)[1] I represented third party owners in a criminal forfeiture case, and established a limited right to relief for third parties prior to the criminal judgment.  In *United States v. Rodriguez-Aguirre*, 264 F.3d 1195 (10th Cir. 2001) I established precedent on several issues of first impression regarding motions for return of property pursuant to Criminal Rule Rule 41(e) (now codified at 41(g)) when the property is seized and disposed of without due process notice.

    5.     I received my law degree from George Washington University in 1981, and started practicing law in 1982 in Washington, D.C.  I am an active member of the bars of the District of Columbia (1982), Maryland (1985) and California (1993).  I am (or have been in the past[2]) admitted to practice before the 1st, 3rd, 4th, 5th, 9th, 10th and Federal Circuits, several federal district courts, the U.S. Court of Federal Claims and the U.S. Supreme Court.

    6.     I have litigated several constitutional challenges to illegal property seizures and

---

[1]  In the published opinion, Lexis-Nexis does not list my name as counsel, but incorrectly lists the lawyer for the criminal defendant instead, although he was not involved in litigating this issue.  The mistake probably occurred because my clients were not listed in the docket as parties (and I was not listed as their counsel) since this was a criminal forfeiture case and they were not indicted.

[2]  Because in some circuits admission expires after a certain period of time unless the attorney litigates further cases or pays further dues, I have allowed rarely used circuit memberships to expire between cases, and merely renew them if and when I get a new case there.

forfeitures.  My oldest case – *Patterson v. District of Columbia*, a § 1983 action challenging the constitutionality of certain practices of the District of Columbia in asset forfeiture proceedings – was filed in 1987 and is still in litigation (20 years later) on the issue of §1988 attorneys fees. My other constitutional challenges to property seizures include *Shelden v. U.S.*, 7 F.3d 1022 (1993) and *United States v. Rodriguez-Aguirre*, 264 F.3d 1195 (10th Cir. 2001).  I have defended hundreds of forfeiture cases (mostly in federal courts), and have consulted on numerous forfeiture cases handled by other attorneys.

7.      I have authored three published books on asset forfeiture: *Your House Is Under Arrest* (Society for Preservation of Wealth, 1993; currently out of print); *Forfeiture and Double Jeopardy* (coauthored with Jeffrey Steinborn, published by FEAR Foundation, 1994, 1995, 1996; out of print); and *FEAR's Asset Forfeiture Defense Manual*, published by FEAR Foundation 2001 (coauthored with Judy Osburn and Susan Raffanti, Esq.; still in distribution).

8.      I have been a board member of Forfeiture Endangers American Rights Foundation since its founding in 1992, and currently serve as board president.  I spend hundreds of hours per year, without pay, advancing the cause of FEAR Foundation.  My lobbying efforts in reforming forfeiture laws included testimony before the House Government Operations Committee (1992), consulting with California Assemblyman John Burton on California's forfeiture reform bill (passed in 1994) and consulting with U.S. Representative Henry Hyde's staff in his 8-year effort to reform the federal forfeiture statute, resulting in passage of the Civil Asset Forfeiture Reform Act of 2000 ("CAFRA").  Representative Hyde thanked me personally in his speech  before

4

Congress on April 11, 2000, the day CAFRA passed.[3]

9.    I was listed in Who's Who in America for my forfeiture achievements beginning in 2000 (although I am not certain of the current status of the listing).

10.    My standard billing rate has been $275 per hour since 2002, but I occasionally offer clients a reduced rate of $250 per hour – as I did Dr. Lane – when I believe their cases to be important test cases.  Because forfeiture claimants are already in a financial bind from the seizure of their property, I give them a reduced billing rate as a type of pro bono service.  Additionally I volunteer hundreds of hours a year giving free advice to forfeiture victims and forfeiture lawyers who call FEAR Foundation, as well as in developing programs and materials to educate lawyers and pro se litigants in forfeiture defense.

11.    The prevailing rate for forfeiture lawyers of my level of experience is substantially higher than the fees I generally charge.  See *United States v. 4,432 Mastercases of Cigarettes*, 322 F.Supp.2d 1075 (C.D. Cal. 2004) (finding $400 per hour to be a reasonable hourly rate for Los Angeles forfeiture lawyer Eric Honig, who had been practicing since 1981 and specializing in forfeiture cases since 1989.)  I have been practicing since 1982, handled my first forfeiture case in 1983, and have been specializing in forfeiture since 1987-88.

12.    I could not find any CAFRA fee awards to forfeiture counsel in the Boston area to compare prevailing rates.  I do not know of any prominent forfeiture lawyers located in the Boston area – nor even any lawyers with significant forfeiture experience in the Boston area.  Dr. Lane tried unsuccessfully to find a forfeiture specialist in the Boston area before hiring Mr.

---

[3]  "I also must thank our former colleague Bob Bauman and Brenda Grantland of Forfeiture Endangers American Rights for their long and dedicated work on behalf of forfeiture reform." 106 Cong.Rec. H2046, April 11, 2000.

Goldberg, who had no previous forfeiture experience. He concluded that he would have to go out of state to find a forfeiture specialist.

13.     In *Shelden v. United States*, 41 Fed. Cl. 347, 352, former Chief Judge Loren Smith of the U.S. Court of Federal Claims approved $200 per hour as a reasonable rate for my services for the period of 1988-1998. In 1988 I had been in practice only six years and had not yet earned a reputation as a forfeiture lawyer. My billing rates were $125 per hour in 1988, $150 for 1989, $175 for 1990-91, $200 in 1992, and $250 for 1993 to 1998. *Id*. Chief Judge Smith awarded me $336,380 in attorneys fees. The government appealed, but I settled that appeal and my subsequently filed supplemental petition for attorneys fees for the post-judgment fee litigation, for a total of $368,000 and some change.

13.     The itemization of my attorneys fees and expenses (Exhibit 5) is based on contemporaneous records I kept while performing the services. In compiling this itemization, I have compared my contemporaneous records to my computer files in this case to obtain further detail about the individual tasks and have double checked for arithmetical errors. I have carefully reviewed my itemization of attorneys fees and expenses and certify that it accurately reflects the actual time I spent on the activities listed.

14.     When I took on the case, I expected my attorney fee bills to be paid promptly after being incurred. The heightened level of litigation and frequent short deadlines in this case rapidly ran up my bill, and Dr. Lane's finances caused him to lag further and further behind in paying me. Since the remand, I have been forced to fund many of the expenses of this case out of my pocket, and have been paid pennies on the dollar for my time. To compensate for the delay in payment, I request that all of my hours be paid at the prevailing rate for Boston attorneys of

equivalent experience.

15.  To date Dr. Lane has paid me $29,250, paid as follows:

| | | |
|---|---|---|
| 8/25/05 | initial retainer | $5,000 |
| 1/27/06 | | 3,000 |
| 2/10/06 | | 3,000 |
| 2/21/06 | | 3,000 |
| 10/2/06 | | 2,000 |
| 10/18/06 | | 1,000 |
| 12/6/06 | | 1,000 |
| 12/20/06 | | 1,000 |
| 1/7/07 | | 1,000 |
| 1/23/07 | | 1,000 |
| 3/1/07 | | 1,000 |
| 5/18/07 | | 500 |
| 6/12/07 | | 500 |
| 6/20/07 | | 500 |
| 7/1/07 | | 500 |
| 8/27/07 | | 1,000 |
| 9/5/07 | | 500 |
| 9/18/07 | | 500 |
| 10/1/07 | | 500 |
| 10/9/07 | | 750 |

TOTAL PAID BY DR. LANE TO ATTORNEY GRANTLAND          $29,250

This amount of my fees should be paid to Dr. Lane, along with the expenses he paid out of his

own pocket.

16.    My itemization of time, Exhibit 5, shows that I have spent a total of 823.53 hours

performing legal services on this case, broken down as follows:

2005 total - 87.65 hours

2006 total - 259.2 hours

2007 total - 476.68 hours

17.   Additionally, I have incurred out-of-pocket expenses totaling $2,621.90, which have

not been reimbursed by my client.  (See Exhibit 5 page 18).

18.   My paralegal, Judy Osburn, has billed 113.50 hours, at the rate of $65 per hour,

totaling $7,377.50.  See Exhibit 6.  Mrs. Osburn has not been paid for these hours by myself or

my client, and should be paid directly by the government.

I declare under penalty of perjury under the laws of the United States and the State of

California that the foregoing is true and correct.


Dated:                                              _____/s/ Brenda Grantland_____
                                                    Brenda Grantland, Esq.
                                                    Law Office of Brenda Grantland
                                                    20 Sunnyside Suite A-204
                                                    Mill Valley, CA 94941
                                                    (415) 380-9108
                                                    Pro hac vice

8

**Brenda Grantland's Itemization of Fees and Costs - Brenda Grantland**

**2005**

| | | |
|---|---|---|
| 8/23 | review documents & pleadings, conferences with client | 4.8 |
| 8/24 | conference with client & research | 1.75 |
| 8/25 | research vacating defaults, phone calls with client & cocounsel, download motions from Pacer & review | 4.25 |
| 8/26 | research vacating defaults, due process/notice, phone conferences with client, notes re: issues and strategy for reconsideration motion, draft 59(e) motion | 3.25 |
| 8/27 | research notice, vacating defaults, drafting 59(e) motion, pro hac vice documents | 8 |
| 8/28 | phone conferences with client, drafting 59(e) motion, claim & answer | 5.25 |
| 8/29 | finish drafting 59(e), phone conferences with client & cocounsel | 3.5 |
| 8/30 | read emails, phone conferences with client & cocounsel | .7 |
| 9/6 | phone calls to client, draft new declaration, read emails, phone interview of Chuck Fitzgerald, notes to file | 2.0 |
| 9/7 | phone call to client, local counsel, letter to Kerner | 1.1 |
| 9/8 | research Rule 11, review documents, phone conferences w/ Marblehead, Dr. Lane, consultation with Jody Neal-Post | 4.0 |
| 9/9 | research & drafting, draft timeline, phone calls with client | 4.25 |
| 9/12 | research local rules | .5 |
| 9/13 | read opposition to 59(e) motion, phone conferences w/ co-counsel, client & Robert Harper, draft reply & motion for leave to reply | 8.9 |
| 9/14 | draft reply motion, exhibits, phone conferences w/ Fitzgerald, Harper & client, consultation with Jody Neal-Post, draft letter and fax to AUSA Wright and Kerner | 9.5 |

| Date | Description | Hours |
|---|---|---|
| 9/15 | phone calls with client | .5 |
| 9/22 | phone calls with client & cocounsel | .1 |
| 9/24 | draft letter to Kerner, phone calls to client & cocounsel | 1.5 |
| 9/27 | phone call with local counsel | .1 |
| 9/29 | phone calls w/ client | .75 |
| 10/18 | read order denying 59(e) motion, phone calls to cocounsel | .25 |
| 10/20 | phone call to client | .5 |
| 11/1 | emails to Dr. Lane & local counsel re: strategy on appeal, stay, research on deadlines | 2.5 |
| 11/2 | email to Dr. Lane re: filing fee for appeal, supersedeas research, drafting motion to stay and to set nominal supersedeas bond | 2.25 |
| 11/3 | research & drafting stay pending appeal, draft motion, calls to AUSA | 4.85 |
| 11/4 | research stay pending appeal & supersedeas, draft motion, phone calls | 1.5 |
| 11/7 | phone calls to client, Sailorman, Marblehead's lawyer, client, review file, notes re: facts and strategy | 2.7 |
| 11/8 | notice of appeal, draft motion & order re stay, re-check research re: deadline for appeal after 59(e) motion | 3.0 |
| 11/9 | refile notice of appeal, phone call to Shelby, read article re: auction, notice of correction re: notice of appeal | .75 |
| 11/16 | read Crosby opp to stay, phone call from client re: Kerner's request to release his settlement money now, letter to Kerner, phone call & email to cocounsel, email from client re: minimum reserve | 3.25 |
| 11/17 | read notice from court re: Kerner filing, get docket, calls to clerk's office | .25 |
| 11/29 | phone call with Shelbey Wright | .1 |
| 12/1 | phone call with Shelbey Wright | .1 |

| | | |
|---|---|---|
| 12/2 | phone call to client | .2 |
| 12/27 | research local rules re: appeal docs, phone calls to clerk's office | .75 |

TOTAL HOURS FOR 2005 - 87.65

**2006**

| | | |
|---|---|---|
| 1/10 | review case opening notice from court | .1 |
| 1/11 | conference w/ Dr. Lane | .2 |
| 1/13 | read clerk's certificate, phone calls with Dr. Lane | .2 |
| 1/17 | phone conference with Eric Goldberg | .6 |
| 1/18 | research deadlines for appeal, prepare docketing statement, transcript order form & appearance form; phone calls to client, clerk's office, settlement counsel's office | 4.25 |
| 1/23 | read notice re: mandatory settlement conference, phone call to settlement counsel's office, letter to Dr. Lane re: settlement conference | .3 |
| 2/1 | phone call to Shelbey Wright | .1 |
| 2/2 | letter to Justice Lynch re: holding conference telephonically, phone calls to Shelbey Wright & settlement counsel | .5 |
| 2/8 | phone calls with settlement counsel, emails to Dr. Lane re: settlement conference statement | .75 |
| 2/13 | calls to Shelbey Wright & Dr. Lane, download appellate docket, prepare & file motion for extension of time because of settlement procedures | 1.25 |
| 2/14 | draft settlement conference statement, phone calls to client, Google research on Flash II, Pacer research on Gary Milo, research statutory notice requirements | 4.5 |
| 2/15 | research statutory notice requirements, finish settlement conference statement, call & fax to settlement counsel's office & Dr. Lane | 1.9 |
| 2/21 | research due process notice, prepare for settlement conference, phone calls with client | 5 |

| | | |
|---|---|---|
| 2/22 | phone calls to client, prepare for settlement conference, telephonic settlement conference, phone calls to client & cocounsel | 6 |
| 2/23 | phone call with client | .1 |
| 2/26 | Flash II research on Google | .2 |
| 4/20 | research for appeal | 3.25 |
| 4/21 | research for appeal | 2.75 |
| 4/24 | review docket & documents in record, begin outlining appeal brief, research, drafting opening brief | 6 |
| 4/25 | read cases, draft brief | 5.75 |
| 4/26 | research, draft brief | 7.0 |
| 4/27 | draft brief, conf. w/ client, Shelbey, local counsel | 4.5 |
| 4/28 | draft brief | 4.75 |
| 5/1 | research due process notice, draft brief | 7.75 |
| 5/2 | draft brief, phone call to Shelbey Wright | 8.5 |
| 5/3 | final revisions on brief, phone conf. w/ client, assemble appendix | 2.5 |
| 5/5 | packaged brief and sent to parties & court | .25 |
| 6/12 | read government's brief, conf. w/ Dr. Lane | 1.75 |
| 6/13 | research for reply brief - vacating defaults, late filing of claim | 3 |
| 6/20 | review docket, research for reply brief | 2 |
| 6/22 | research for reply brief, called Marblehead, client, Eric, notes for reply | 4 |
| 6/23 | read cases, draft reply brief | 4.25 |
| 6/25 | research, draft reply brief | 5.1 |
| 6/26 | proofread reply brief and make final corrections, take to printer | 1.5 |

| | | |
|---|---|---|
| 7/7 | phone call with client | .1 |
| 7/10 | phone calls to client, local counsel | .25 |
| 7/21 | phone calls to client, local counsel, hotel, prepare for argument | 1.5 |
| 7/25 | research, prepare for oral argument, phone calls to local counsel, client, 1st Cir. clerk's office | 2.9 |
| 7/26 | read Shelbey's Rule 28(j) letter, research & prepare response, phone calls to local counsel, client | 4.45 |
| 7/27 | letter to clerk re: jurisdiction, draft response to 28(j) letter & fax to court, prepare for oral argument, phone calls to local counsel, clerk | 6.75 |
| 7/28 | prepare for oral argument | 5.25 |
| 7/29 | Shepardize cases, reread key cases, prepare for oral argument | 4 |
| 7/30 | review research, outline arguments, organize notebook for argument | 6.75 |
| 7/31 | travel to Boston, read cases & outline of argument on plane | 7 |
| 8/1 | final review of briefs and preparation for oral argument | 3 |
| 8/2 | oral argument, conference with client and co-counsel, travel home | 8 |
| 8/3 | phone call with client | .1 |
| 8/5 | Pacer research on investors, Milo, download Milo documents | 1.0 |
| 8/16 | read First Circuit opinion, phone calls to client, local counsel, etc. | 2 |
| 8/17 | phone calls to client, Chuck Fitzgerald, reread opinion, plan strategy on remand, emails to Marblehead's lawyer, Marblehead | 3.5 |
| 8/18 | phone call to Chuck Fitzgerald | .1 |
| 8/22 | read notice of status conference,  phone calls to client & local counsel | .25 |
| 9/5 | phone calls w/ client, Judge Zobel's clerk, local counsel, U.S. Attorney's Office | .5 |

| | | |
|---|---|---|
| 9/6 | phone calls to local counsel, Shelbey Wright, clerk's office | .25 |
| 9/7 | letter, phone call and fax to Kerner, draft motion and order for telephonic hearing, get Milo's dockets from Pacer | 2.0 |
| 9/14 | phone calls to Marblehead's lawyer & cocounsel, telephonic status hearing, memo to client re: what happened at status hearing | 1.0 |
| 9/19 | phone call to client; begin drafting interrogatories, notes re: settlement figures | 4.0 |
| 9/21 | drafting interrogatories | 2.5 |
| 9/25 | review file, draft interrogatories & document requests | 5.25 |
| 9/26 | finish drafting interrogatories & doc requests, phone calls to client, fax to AUSA | 3.0 |
| 9/27 | Internet search for news articles re: Flash II | .5 |
| 9/28 | phone calls to court | .1 |
| 10/17 | phone calls to AUSA Kristina Barclay, US Attorney's Office re: who is asssigned as AUSA, email from Nancy Rue, calls to Nancy Rue & client | .3 |
| 10/20 | phone calls to client, draft settlement offer and send to AUSA Rue | 2.75 |
| 10/25 | email to Dr. Lane re: Google alert for Flash II article from Boston Globe | .1 |
| 10/26 | review email from Nancy Rue, with attached discovery responses, email to Dr. Lane, email to & from AUSA Rue about documents not being attached | .25 |
| 10/27 | review government's interrogatory answers, and documents production, make notes, review objections, research for response, phone call to client, cocounsel, read email from client | 3.0 |
| 10/28 | email to local counsel re: discovery responses & new facts we learned | .25 |
| 10/30 | phone calls to client, cocounsel, research discovery objections | 1.75 |
| 10/31 | phone calls to Fitzgerald & Marblehead's attorney, letter to AUSA Rue re: incomplete discovery responses | 3.5 |

| | | |
|---|---|---|
| 11/1 | read & respond to emails from AUSA Rue re: incomplete discovery responses | 1.5 |
| 11/7 | email to AUSA Rue re: her delay responding to meet & confer question re: motion to compel discovery | .1 |
| 11/08 | review government's discovery requests served on Dr. Lane, phone call to client, email to client | 1.75 |
| 11/09 | read AUSA Rue's response to request to depose DOJ employees, phone calls to local counsel, research Touhy regulations, review discovery requests | 5.5 |
| 11/13 | calls to client and local counsel | .6 |
| 11/14 | call to client | .1 |
| 11/15 | calls to client and local counsel, letter to AUSA re: discovery, deposition plan, research for motion to compel | 5.25 |
| 11/16 | research & drafting motion to compel | 2.75 |
| 11/20 | research and notes for memorandum supporting motion to compel | 2.5 |
| 11/26 | finish drafting and file motion to compel | 6.5 |
| 12/5 | work on answers to discovery, review government subpoenas, calls to client, read & response to email from Nancy Rue re: objection to Dr. Lane's deposition on 3 days' notice | 4.25 |
| 12/6 | calls to/from client, draft interrogatory responses, review & revise | 1.75 |
| 12/7 | edit interrogatory responses, calls to client, | 6.0 |
| 12/8 | final edits of interrogatory responses, calls to client, AUSA Rue, fax documents produced to AUSA Rue, emails to and from AUSA Rue re: stipulated facts, review government opposition to motion to compel discovery | 6.25 |
| 12/11 | research re: compelling discovery, objections to discovery, drafting motion | 2.5 |
| 12/12 | notes and strategizing re: further discovery & subpoenas, calls to client, local counsel, Marblehead's lawyer, research on compelling discovery | 3.0 |
| 12/13 | prepare for hearing, telephonic pretrial conference, calls to client, local | |

|  | counsel, Marblehead's attorney, notes re: government's contentions, read notice of reassignment to Judge Young | 2.75 |
|---|---|---|
| 12/15 | calls to local counsel, Judge Young's docket clerk, Nancy Rue, AUSA Jennifer Zachs (standing in for Rue) | 3.0 |
| 12/18 | calls to Bonnie Smith, attorney for Marblehead, process server, email to cocounsel, email to AUSA re: Marblehead subpoena | 2.75 |
| 12/19 | prepare for telephonic hearing, calls to local counsel, client, attorney Sheketoff (Milo's lawyer) and attorney Kerner, plan discovery, prepare subpoenas duces tecum, Pacer research on Milo, download Milo pleadings, draft questions for Milo deposition | 5.25 |
| 12/20 | prepare subpoenas duces tecum to witnesses, discovery plan notes, possible deposition questions | 3.75 |
| 12-22 | call to local counsel | .1 |
| 12-26 | call to local counsel | .1 |
| 12/27 | calls to local counsel, client, attorney Kerner, atty. Sheketoff, fax to Kerner, read Kerner letter and Crosby declaration, finalize and send out our subpoenas, review government subpoenas | 2.75 |

TOTAL HOURS FOR 2006 259.2 hours

## 2007

| 1/02 | read letter from Kerner and proposed motion to quash subpoena, call to client, call to Kerner | 2.0 |
|---|---|---|
| 1/3 | calls to client and Kerner re: motion to quash, review motion & plan subpoena/discovery strategy, | 1.5 |
| 1/04 | finish Milo subpoena duces tecum and fax to Sheketoff, calls to Sheketoff's office, Rue, client, download government's motion for summary judgment and forward to client, review briefly | 4.0 |
| 1/05 | calls to client, local counsel, Sheketoff, draft letters and fax to Sheketoff and Kerner, review Milo dockets on Pacer, review government motion for summary judgment, research, begin | |

|  | drafting response | 8.25 |
|---|---|---|
| 1/06 | calls to client, response memorandum - research & drafting | 6.5 |
| 1/07 | call to client, draft response memorandum, gather exhibits and excerpts from discovery | 5.0 |
| 1/08 | research & drafting response memorandum, calls to attorney Harper, client, Fitzgerald, draft new Fitzgerald declaration, read order quashing our subpoena | 5.75 |
| 1/09 | call to attorney Harper, research and drafting of response memorandum | 6.0 |
| 1/10 | calls to Harper, client, research and drafting response memorandum, download Crosby's Joint Motion for Judgment, assemble exhibits from discovery materials | 4.75 |
| 1/11 | drafting response memorandum | .75 |
| 1/19 | drafting response memorandum, calls to client | 3.25 |
| 1/20 | call to client, draft new affidavit for Dr. Lane | 3.75 |
| 1/21 | revise memorandum & response to US statement of facts, calls to client, revise Lane declaration | 5.25 |
| 1/22 | final revisions of memorandum, response to US statement of facts, calls to client, local counsel, assemble exhibits and efile | 9.0 |
| 1/24 | draft and file notice errata to statement of facts and memorandum | .5 |
| 1/29 | call to hotel for reservations | .1 |
| 1/30 | travel to Boston, prepare for hearing | 8 |
| 1/31 | final preparation, hearing, conference with local counsel, phone call to client, travel home | 8 |
| 2/13 | call to client | .2 |
| 2/15 | draft our portion of case management conference statement, call to AUSA Rue | 1.5 |

9

| | | |
|---|---|---|
| 2/21 | calls to AUSA Rue, prepare and file verified statement and answer | 1.25 |
| 2/22 | read Case Management Conference order | .1 |
| 3/15 | read & respond to email from AUSA re: extending her deadline | .1 |
| 3/19 | read supplementary responses to discovery | .1 |
| 3/20 | read order granting motion for extension of time, read & respond to email from AUSA Rue asking to extend discovery deadline, call to client, research who is the party when interrogatories are served on government | 1.0 |
| 3/22 | call to client | .2 |
| 3/27 | read order re: hearing on government motion for summary judgment | .1 |
| 3/31 | review, research & draft opposition to Government motion for summary judgment, response to U.S. statement of facts, Lane statement of facts, exhibits | 8.0 |
| 4/1 | cross-motion for summary judgment  (same as above) | 7.05 |
| 4/2 | cross-motion for summary judgment  (same as above) | 8.0 |
| 4/3 | email to Nancy Rue re: extending discovery deadline, cross-motion for summary judgment (same as above) | 8.75 |
| 4/4 | cross motion for summary judgment | 9.0 |
| 4/5 | call to client, research on Lexis, finish & efile cross-motion for summary judgment and attachments | 6.75 |
| 4/10 | call to AUSA Rue | .1 |
| 4/19 | review & study U.S. reply to Lane Opposition to Partial Summary Judgment, with attachments, and US Response to Lane Cross-Motion for Summary Judgment, with attachments; makes notes and outline research needed for our reply | 4.25 |
| 4/20 | research, begin drafting reply | 3.5 |
| 4/21 | research on Lexis, Federal Tort Claims legal websites, download cases, notes and outline for reply | 4.0 |

| | | |
|---|---|---|
| 4/24 | research on Lexis, call to client, read downloaded cases, make notes for reply | 8.4 |
| 4/25 | draft reply, research on Lexis, review US reply, exhibits, read cases, research legislative history of CAFRA, research sovereign immunity | 8.0 |
| 4/26 | calls to local counsel, attorney Harper, Fitzgerald, review file exhibits, research online, draft reply | 4.75 |
| 4/27 | draft amended answer and motion to amend answer, calls to local counsel, AUSA Rue, finalize draft and file reply | 4.5 |
| 4/29 | outline points for summary judgment argument | 1.5 |
| 4/30 | calls to AUSA Rue, client, research on Lexis | 4.25 |
| 5/1 | finish drafting motion to amend answer to add FTCA claim, amended answer; FTCA research; review DOJ manual and FTCA cases, prepare for oral argument | 7 |
| 5/2 | travel to Boston, review notes, motions, cases, prepare for hearing | 8 |
| 5/3 | hearing on summary judgment motion, travel home | 8 |
| 5/7 | looking online for appraiser, calls to client, AUSA Rue, JFK Library, appraisal society | 2.25 |
| 5/8 | calls to client, JFK Library, potential appraisers, AUSA Rue | 3.5 |
| 5/9 | calls to Guernsey's, client, AUSA Rue, local counsel, review Ettinger appraisal, Ettinger declaration and auction documents from file, draft questions for Ettinger depo and subpoena duces tecum | 5.25 |
| 5/10 | read and respond to email from Bonnie Smith re: requested memorandum, calls to Guernsey's, client, AUSA Rue; review prior US filing and make notes for memorandum, read email from Bonnie Smith saying memo not required, prepare and send Ettinger subpoena duces tecum, list of documents, email depo notice to parties, witnesses & court reporter, prepare questions for Ettinger depo; read US supplemental memorandum, review, make notes for response, research for response | 7.15 |
| 5/11 | research, draft and efile response to U.S. supplemental memorandum, call to Guernsey's, prepare for Ettinger deposition | 5.0 |

| | | |
|---|---|---|
| 5/14 | prepare for Ettinger depos, call to Guernsey's auction house re: documents and depos | 2.0 |
| 5/15 | telephonic hearing, calls to client, AUSA Rue, local counsel, attorney Harper; email to client; draft Ettinger depo questions, assemble exhibits; email to AUSA Rue re: supplementing discovery before trial, email to Harper re: need for depo; emails to and from paralegal, prepare for trial | 6.6 |
| 5/16 | calls to Guernsey's, client, AUSA Rue, prepare for Ettinger depo; call from Ettinger's office re: need to postpone depo; email to Bonnie Smith & AUSA Rue re: Ettinger scheduling conflict & need to postpone depo; prepare for trial; read respond to email from Bonnie Smith re: discovery cutoff | 5.65 |
| 5/17 | calls to Guernsey's, client, draft and fax letters to AUSA Rue about need to extend discovery cutoff; read email from AUSA re: DOJ manual, get & review Milo documents, DEA reports, prepare questions for Milo; prepare and email depo notices, draft and file motion to extend discovery deadline | 4.75 |
| 5/18 | calls to client, trial preparation, read email from AUSA Rue re: settlement proposal, read & respond to email from client, read government opposition to extension of discovery & for protective order, research re: protective order, draft reply re: extension of discovery, read order denying extension of discovery, research takings law | 5.5 |
| 5/19 | prepare for trial, assemble exhibits, calls to client, attorney Harper; research on Lexis, email to Harper; review Milo documents from Pacer, US interrogatory responses, DEA reports Willoughby affidavit and prepare questions for Milo; draft memo on hearsay inadmissibility after CAFRA; takings research | 8.1 |
| 5/20 | calls to client, prepare questions for Dr. Lane, Lexis research on takings, draft and file motion for clarification of discovery order and response to government's motion for protective order | 4.6 |
| 5/21 | calls to client, attorney Harper; Lexis research & phone consultations with attorneys David Smith & Jody Neal-Post re: inapplicability of takings theory and sovereign immunity;  prepare for trial, assemble exhibits, review USAO manual section on disposition of assets; draft questions for witnesses Milo, Willoughby, Dr. Lane | 7.0 |

| | | |
|---|---|---|
| 5/22 | trial preparation - finish writing out witness questions and exhibits, further research, review statutes & guidelines to compute Milo's potential exposure, draft and efile motion on inadmissibility of hearsay, draft memo on preliminary matters | 8.0 |
| 5/23 | travel to Boston, review documents and final revisions to witness questions, read email & letter from AUSA Rue re: FRE 807, Lexis research on FRE 807, | 8.0 |
| 5/24 | trial on the issue of forfeitability, conference with client, phone call to local counsel | 5.5 |
| 5/25 | travel home | 6.0 |
| 5/26 | research online | .25 |
| 5/27 | research online re: sovereign immunity, damages/loss of property while detained, Federal Tort Claims Act, download cases & read & make notes | 3.3 |
| 5/28 | research online (same as above) | 1.25 |
| 5/30 | calls to client, consult with Attorney Eric Honic re: his CAFRA waiver of sovereign immunity case, review his motion, download order in his case from Pacer, research waiver of sovereign immunity on Lexis, other legal FTCA websites and offline, read government subpoenas duces tecum | 4.0 |
| 5/31 | call to client, research online, read downloaded cases - re: discretionary function exception | 5.25 |
| 6/1 | calls to client | .1 |
| 6/3 | research online for motion to reconsider decision on sovereign immunity; research government policy on interlocutory sales, draft outline for motion to reconsider, draft motion to compel discovery of Guide to Interlocutory Sales, consult with attorney Jody Neal-Post | 6.0 |
| 6/4 | calls to client, multiple calls and emails between parties and witnesses coordinating and rescheduling depos set for June 7 & documents for subpoenas duces tecum, serve depo notices, research online, review research and make notes for motion for reconsideration | 6.25 |
| 6/5 | research & draft letter to AUSA Rue and email demanding Guide to Interlocutory Sales & other documents showing compliance with | |

13

|  | DOJ policy (government has burden of proving compliance with internal policies and procedures); email to AUSA re: Ettinger depo and Harper depo schedule adjustments, sent depo notice to court reporter | 2.25 |
|---|---|---|
| 6/6 | research online, prepare for depositions of Harper & Ettinger | 5.5 |
| 6/7 | deposition of Arlan Ettinger, review documents produced by Robert Harper Esq. in response to subpoena duces tecum (emailed as attachments the morning of the deposition), deposition of Robert Harper, phone calls with client | 8.8 |
| 6/8 | calls to client, review Guide to Interlocutory Sales, make notes for motion for reconsideration | |
| 6/10 | read trial transcript & make notes, research online | 2.25 |
| 6/11 | call to client | .4 |
| 6/12 | review Guide to Interlocutory Sales, DOJ Asset Forfeiture Policy Manual, Guernsey's contract, other Ettinger documents, and make notes for motion for reconsideration of court's ruling on sovereign immunity, research for motion for reconsideration, draft outline for motion | 8 |
| 6/14 | drafting motion for reconsideration, calls to client | 3.25 |
| 6/16 | review Judy Osburn's (paralegal's) research on traceable proceeds, commingling, read her raw notes of research on other topics, discuss areas for follow-up research | 4.25 |
| 6/17 | research for post-trial memo - give to Judy | 3.8 |
| 6/19 | study Guide to Interlocutory Sales, DOJ Asset Forfeiture Policy Manual, Supplemental Rules, statutes on policies & procedures for selling property, draft arguments for reconsideration memo, review Ettinger depo documents and transcript, excerpt references for motion for reconsideration of sovereign immunity ruling memo | 5.5 |
| 6/20 | drafting memorandum in support of motion for reconsideration of sovereign immunity ruling, assemble supporting exhibits & transcript excerpts | 4.25 |
| 6/21 | call to US Attorney's Office, Boston | .1 |

14

| | | |
|---|---|---|
| 6/23 | review Judy Osburn's draft of traceable argument, edit, comment on changes to make, make notes for further research, multiple emails with Judy about other things we needed to add, reviewed and revised Judy's first draft of Trial Brief | 5.3 |
| 6/24 | research online, finish first draft of memorandum on reconsideration of sovereign immunity ruling and send to Judy for proofreading, read Judy's research memorandum and draft of post-trial memorandum and comment on changes, further research, conferences and swapped email on further edits to Trial Brief and Reconsideration Memo | 6.9 |
| 6/25 | calls to Guernsey's, attorney Harper, review Judy's emails, research and drafts of substitute asset argument, assigned her further research; reviewed Milo's substitute asset judgments & sent to Judy with comments; reviewed and revised/commented on succeeding drafts of Trial Brief and outlined additional research; new revisions to reconsideration memo; combed through documents for evidence of amount and date of Lane's payments, assigned to Judy task of combing them more thoroughly and preparing chart to use as exhibit | 5.45 |
| 6/26 | review Judy's editorial suggestions on first draft of reconsideration memorandum, make revisions and send back to Judy for further revisions; review Judy's email & research on substitute assets and direct further research; edit new draft of Trial Brief, edit, comment and direct further research | 6.5 |
| 6/27 | emails and conferences with Judy re: further research for Trial Brief & Reconsideration Memo, and new revisions to each memo; assemble documents in pdf format for exhibits; review excerpts from trial transcript about scope of the Post-Trial memo and conference with Judy about further items we needed to add | 4.25 |
| 6/28 | collateral estoppel research on Lexis, further revisions to trial memo and reconsideration memo, wrote new section for Post Trial Brief | 6.25 |
| 6/29 | final revisions to Reconsideration Memo, assemble exhibits in pdf, and efiled; suggested further revisions to Post-Trial Memo; read court notices of documents AUSA filed; review and finalize latest draft of Post-Trial Memo, put exhibits into pdf format and efiled, called Dr. Lane | 4.1 |
| 7/11 | call to client | .3 |

| | | |
|---|---|---|
| 7/12 | call to client | .1 |
| 7/13 | review government opposition to reconsideration, draft notes and outline research for reply | 4.5 |
| 7/14 | research on Lexis | .5 |
| 7/15 | research on Lexis | 1.6 |
| 7/16 | research on Lexis, draft reply memorandum | 5.0 |
| 7/17 | research & drafting of reply memorandum | 2.25 |
| 7/18 | research on Lexis, drafting | 5.5 |
| 7/19 | revise draft memorandum & motion to reply | 4.1 |
| 7/20 | call to AUSA Rue (.1), research on Lexis (.25), final revisions, efile reply to opposition to reconsideration | 3.0 |
| 7/21 | calls to client | .1 |
| 8/8 | call to client | .1 |
| 8/10 | call to Fitzgerald | .1 |
| 8/16 | call to clerk | .1 |
| 8/18 | calls to client | .2 |
| 8/21 | call to client | .1 |
| 8/27 | call to client | .1 |
| 9/5 | read and respond to email from Bonnie Smith re: hearing on Crosby interest on September 26; draft letter & fax to AUSA Rue re: updated discovery, calls to AUSA Rue, client | 1.2 |
| 9/7 | call to AUSA Rue re: supplemental discovery, read email from Rue | .1 |
| 9/12 | call to AUSA Rue | .1 |
| 9/17 | call to client | .1 |

| 9/18 | calls to client, AUSA Rue, attorney Kerner re: Crosby depo, prepare for Crosby depo, collect documents for depo and Fed Ex to Kerner | 3.7 |
|---|---|---|
| 9/19 | calls to US Attorney's Office, client | 2.55 |
| 10/2 | read Judge Young's memorandum of decision, called Dr. Lane | .5 |
| 10/3 | read Crosby transcript, make notes for memo on Crosby's interest, pro rata formula, research, review documents from Crosby depo draft memo | 4.8 |
| 10/7 | draft memo on Crosby interest | 5.9 |
| 10/8 | draft memo on Crosby interest | 4.5 |
| 10/13 | research on Lexis, draft memo on Crosby interest | 3.35 |
| 10/15 | finished & efiled memo on Crosby's interest | .5 |
| 10/20 | review government's memo on Crosby interest & draft response memo | 2.4 |
| 10/22 | research online, research on Lexis, final revisions to response memo on Crosby's interest, efile | 2.15 |
| 11/4 | research attorneys fees, prevailing rates | 1.5 |
| 11/12 | further research, draft fee petition memorandum of law and affidavit | 3.1 |
| 11/13 | double check arithmetic in time sheets, final revisions fee petition memorandum & affidavit | 3.5 |

TOTAL FOR 2007 - 476.68 hours

Out of pocket expenses paid by Brenda Grantland

| Date | Description | Amount |
|---|---|---|
| 5/5/06 | printing costs - appellate brief | 179.72 |
| 5/11/06 | Fed Ex charges | 94.94 |
| 6/25/06 | First Circuit fee | 200.00 |
| 6/27/06 | printing costs - reply brief | 82.68 |
| 6/27/06 | Fed Ex charges | 15.89 |
| 7/11/06 | plane fare | 561.60 |
| 7/31/06 | hotel | 347.09 |
| 7/31-8/2/06 | cabs | 36.00 |
| 7/31-8/2/06 | Marin Airporter bus | 28.00 |
| 8/2/96 | hotel restaurant meals | 23.45 |
| 9/29/06 | Newslibary.com (download NPR articles on Flash II auction) | 7.90 |
| 1/5/07 | Fed Ex (to Sheketoff, Milo's lawyer) | 17.41 |
| 1/24/07 | Fed Ex (to courthouse) | 47.52 |
| 5/15/07 | printing (discovery documents) | 24.89 |
| 5/30/07 | Donald Womack, court reporter (transcript) | 115.37 |
| 6/15/07 | Atkinson Baker court reporter (Ettinger depo) | 652.55 |
| 7/26/07 | Premiere Global Conference Call service (Ettinger depo) | 53.84 |
| 10/11/07 | Apex Reporting (Crosby depo) | 133.05 |

Total expenses paid by Brenda Grantland out of pocket        $2,621.90

*Access Unlimited*
**Judy Osburn**
**343 West Lockwood Valley Road**
**Maricopa, CA  93252**
**661-347-0670**

4beatgait@gmail.com                              fax: 805-435-1560

| BILL TO: | Billing Date: Oct. 29,2007 |
|---|---|
| **Brenda Grantland, Esq.** | |
| 20 Sunnyside Suite A-419 | Billing period 5/27/2007 - 7-20/2007 |
| Mill Valley, CA 94941 | |

| Date: | DESCRIPTION OF DUTIES | Units/Hours | Cost per unit | Total cost |
|---|---|---|---|---|
| 5/27/2007 | Guernsey contract, billing re review | 2.00 | $65.00 | $130.00 |
| 6/14/2007 | re Lane trial--tainted proceeds | 4.50 | $65.00 | $292.50 |
| 6/15/2007 | re Lane trial--attenuated connection with tainted proceeds | 5.50 | $65.00 | $357.50 |
| 6/16/2007 | re Lane trial--attenuated connection with tainted proceeds | 5.00 | $65.00 | $325.00 |
| 6/18/2007 | re Lane trial--attenuated connection with tainted proceeds | 6.50 | $65.00 | $422.50 |
| 6/19/2007 | re Lane trial--attenuated connection with tainted proceeds | 6.00 | $65.00 | $390.00 |
| 6/20/2007 | Lane trac traceabel proceeds argument | 6.00 | $65.00 | $390.00 |
| 6/21/2007 | Lane traceable proceeds argument | 7.50 | $65.00 | $487.50 |
| 6/22/2007 | Lane traceable proceeds argument | 7.00 | $65.00 | $455.00 |
| 6/23/2007 | Lane traceable proceeds argument | 6.00 | $65.00 | $390.00 |
| 6/24/2007 | Lane traceable proceeds argument | 7.00 | $65.00 | $455.00 |
| 6/25/2007 | Lane traceable proceeds argument | 7.50 | $65.00 | $487.50 |
| 6/26/2007 | Lane traceable proceeds argument | 7.50 | $65.00 | $487.50 |
| 6/27/2007 | Lane post-trial memo re forfeitability | 8.00 | $65.00 | $520.00 |
| 6/28/2007 | Lane post-trial memo re forfeitability | 10.50 | $65.00 | $682.50 |
| 6/29/2007 | Lane post-trial memo re forfeitability   & reconsider edit | 9.00 | $65.00 | $585.00 |
| 7/19/2007 | sailboat valuation research | 2.50 | $65.00 | $162.50 |
| 7/19/2007 | Lane reply_reconsideration edit | 1.50 | $65.00 | $97.50 |
| 7/20/2007 | Lane reply_reconsideration edit | 4.00 | $65.00 | $260.00 |

**Thank you!**

|  | **Total Hours:** | **113.50** | | |
|---|---|---|---|---|
| | | Total Amount Due | | $7,377.50 |

**Please Send Payment To:**
**Judy Osburn**
**343 W. Lockwood Vlly. Rd.**
**Maricopa, CA 93252**