UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) |
| | ) |
| v. | )Civil Action No.05-10192-WGY |
| | ) |
| ONE STAR CLASS SLOOP SAILBOAT | ) |
| BUILT IN 1930 WITH HULL NUMBER 721, | ) |
| NAMED "*FLASH II*," | ) |
| Defendant. | ) |

## OPPOSITION TO CLAIMANT'S MOTION FOR ATTORNEYS' FEES

A prevailing party is entitled to reasonable attorney's fees. The fees awarded should reflect the hours reasonably expended on claims for which the claimant was ultimately successful, paid at a reasonable rate per hour. In this case, Claimant Kerry Scott Lane ("Lane") has sought fees expended in litigating unnecessary issues, vexatious motion practice, and issues on which he did not prevail. The government therefore opposes Lane's petition for attorneys' fees as excessive, and requests that the Court impose a fee award that reflects only the fees reasonably incurred on the issue on which Lane ultimately prevailed – forfeitability. The government submits that this fee award would properly be $68,700.79. See Exhibit 1.

### I.    FACTS RELATED TO FEES

The government initiated this case with a Complaint incorporating the Affidavit of Special Agent Gregg Willoughby (the Affidavit). See Docket Entry 1 (D.1). In the Affidavit, the government set forth the essential facts it expected to prove at trial:

1. that Gregory Olaf Anderson (Anderson) owned a sailboat (the Flash II) together with one or more other investors  D.1 ¶ 16

2. One of those investors was a doctor or a dentist  Id.

3. One of the other investors (the CW) had provided Anderson with drug proceeds in exchange for a share of the Flash II  Id.

4. Anderson re-acquired the CW's interest in the Flash II during the course of a drug

transaction.  D.1 ¶ 18, ¶ 21.

The Court issued a warrant and monition directing the government to commence notice and publication of the Complaint.  D.2.  The government did so, received a claim from Harry E. Crosby (Crosby), D.4, entered into a settlement agreement with Crosby, D.14-1, and moved for final judgment and default as to all other persons.  D.14.  The Court granted the motion for judgment and default.  D.15.  Lane then filed a motion to set aside the judgment pursuant to Rule 60(b).  D.16.  This Court denied the motion, finding that Lane knew of the seizure of the Flash II and deliberately chose not to come forward.  D.8/16/05 (endorsed order).  Lane did not appeal this finding.[1]  Instead, Lane filed a motion under Rule 59(e) to amend the judgment denying the motion to set aside the judgment.  D.19.  This Court denied that as well.  D.10/28/05 (endorsed order).  Lane did appeal the denial of his Rule 59(e) motion. D.24.  Lane moved to stay the sale of the Flash II pending appeal, proposing a nominal bond.  D.25.  The district court denied the motion to stay, D.11/17/05 (endorsed order), and Lane neither appealed the denial nor moved for a stay of the sale in the First Circuit Court of Appeals, as was his right under Federal Rule of Appellate Procedure 8(a).  See Docket.  Meanwhile, the Flash II was sold at auction for $100,000 (the "Auction Proceeds").  After the sale, the First Circuit Court of Appeals reversed the district court decision and remanded for a determination of whether the government could have located Lane.  United States v. One Star Class Sloop, 458 F.3d 16, 25-26 (1st Cir. 2006)

On remand, Lane issued discovery both on the question of notice and on the merits of his claim.  The government responded to the discovery regarding notice, but declined to respond to the discovery on the merits prior to any judicial finding that he was entitled to file a claim.  The

---

[1]Pursuant to Federal Rule of Appellate Procedure 4(a)(1)(B), such appeal would have been due by 10/15/05.  The docket shows that no appeal was taken as of that date.

government sought to determine whether the question of notice could be decided on stipulated facts.[2]  Lane declined and filed a motion to compel discovery.[3]  D.36.  This Court then held a status conference on December 19, 2006, during which the Court stated that a trial could be held the following week.  The government agreed to go forward; however, counsel for Lane asserted that Lane was not prepared to go to trial during Christmas week.  The government suggested that the basic facts regarding notice were not in dispute and proposed that the question of notice be submitted on the papers.  The Court set a briefing schedule on the issue of notice.  The Court denied Lane's motion to compel.  D.9/5/07.

Two weeks later, in connection with its motion papers, the _government_ submitted the Affidavit of Harry E. Crosby (Crosby Affidavit).[4]  D.41 Ex.2.  In the Crosby Affidavit, Crosby stated that he knew the name of the doctor who had invested in the Flash II (Lane) and could

---

[2]The government sought to come to stipulations as to the facts.  However, Lane's counsel contended that unless the government could agree in advance of drafting such stipulations that it would not seek the deposition of Lane on the question of notice, "there is no way we would forego our depositions of the four government agents – Lisa Talbot [USAO paralegal], Shelbey Wright [AUSA], Gregg Willoughby [DEA] or Christina Barkley [AUSA Kristina Barclay].  That's the bottom line."  See Ex. 2, attached, 11/14/05 email from Grantland (bottom of page).  See also Ex. 2, 11/14/05 email from Rue (top of page).  Cf. Ex. 3 12/8/05 email from Rue ("we are in substantial agreement on the facts, . . . where we disagree is on the conclusions to be drawn from them. . . . I would like to try once more to see if we can come to stipulated facts in this case." with Ex 3. 12/8/05 email from Grantland ("there's no point trying to agree on stipulated facts until we've completed discovery.  It would be a waste of time." )

Ultimately, this case was decided on essentially the facts submitted by the government.  Simply put, the Court disagreed with the government's due process and forfeiture analysis, but decided the case based on the facts submitted by the government.

[3] Judge Zobel held a status conference at which she announced that the case would be transferred.  The case was then transferred to Judge Young.

[4]In its Memorandum of Decision, the Court attributes this submission to Lane.  However, the record is clear that the government, not Lane, sought out Crosby's testimony and  – upon determining that Crosby did in fact know the name of the doctor who had invested in the Flash II – reported that information to the Court, both by submitting Crosby's affidavit and by highlighting the fact in the government's brief.  D.41 Ex.2; D.42 at p.11.

have provided it to the government.[5]  Because of this, the Court concluded that Lane was entitled to file a claim.

Upon the Court's ruling that Lane could file a claim, the government suggested that the case could be determined upon written submissions.  There were three primary issues in dispute: forfeitability of the Flash II, the value of the Flash II, and whether Lane was an owner.  The *facts* related to forfeitability and ownership were not in dispute;  the parties drew different legal conclusions from the facts.  The Court ultimately found that the government had proven the facts that it had alleged in the Complaint (see, supra, at page 1; cf. D.81 10/1/07 Memorandum of Decision (Findings of Fact at pp. 10-11.).  However, this Court concluded as a matter of law that this was not sufficient to render the Flash II forfeitable.  Id., pp.14-18.  As a result, the Court did not reach the question of ownership.

As to the value of the Flash II, Lane asserted that the Flash II was worth one million dollars – ten times the amount of the Auction Proceeds.  See D.45-2(Memorandum), p.6 of 14; D.56-2(Memorandum), p.10 of 12; D.61, ¶ 3.  By contrast, the government asserted that the Auction Proceeds reflected the actual fair market value of the Flash II.  D.59;D.63.  The government also asserted that sovereign immunity barred any claim against the government for

---

[5]In the Government's Memorandum in Opposition to Motion for Relief from Default, D.42, the government stated:

> No one from the government, either the U.S. Attorney's Office or the DEA, spoke directly with Crosby during the pendency of the district court forfeiture proceedings, relying simply on his affidavit and accompanying documentation.  Facts, at ¶35.  *Had the government contacted Crosby and asked specifically about a doctor having an ownership interest, Crosby could have supplied the doctor's name as Kerry Lane.  Facts, at ¶43.  He could not, however, have supplied an address.  Id. at ¶44.*  He had met Lane on only one occasion, at an unsuccessful Guernsey's auction of the Flash II in 1998.  Id.

D.42 at page 5 of 15, italics added.

4

any amount in excess of the Auction Proceeds.  D.59.   After Lane moved to amend his answer to

file a tort claim for the claimed excess value, the government opposed on the ground that the

forfeiture-related provision of the Federal Tort Claims Act (FTCA) did not create an avenue for

a claim that the Auction Proceeds were too low, and additionally, that the government conduct

challenged by Lane's claim would fall within the Discretionary Function Exception to the

FTCA.  D.63.   The Court found in favor of the government on these legal grounds, finding both

that the FTCA did not provide an avenue for Lane's claim and that even if it did, the

discretionary function exception applied.  D.5/15/07 Hearing, Transcript at p.3.  Despite the

Court's ruling, Lane continued to pursue his arguments on value, pursued discovery and

depositions regarding the value, and moved for reconsideration of the Court's rulings on these

questions.  D.73.  The Court found in favor of the government on these issues, holding that the

Auction Proceeds represented the value of the Flash II, and denying Lane's motion for

reconsideration.  D.81.

Finally, after the Court found that the Flash II was not forfeitable, the Court indicated

that the government was required to prove that its settlement with Crosby was reasonable.  D.81,

at p.23.  The government submitted that Lane's own evidence showed that Crosby had not been

paid more than his pro-rata share.  D.83, 84.  Lane argued that Crosby was overpaid.  D.82,85.

The Court found in favor of the government.  D.86.

## II.    ARGUMENT

"[I]n any civil proceeding to forfeit property under any provision of Federal law in which

the claimant substantially prevails, the United States shall be liable for . . .  reasonable attorney

fees and other litigation costs reasonably incurred by the claimant . . . ."  28 U.S.C. §2465(b)(1).

This provision was enacted by the Civil Asset Forfeiture Reform Act ("CAFRA") as part of an

effort to "deter government overreaching." United States v. Khan, 497 F.3d 204, 208 (2d Cir. 2007).

The law surrounding calculation of attorneys's fee awards is well settled. See Hensley v. Eckerhart, 461 U.S. 424 (1983).[6]  The most useful starting point is the number of hours reasonably expended on the litigation times a reasonable rate.  461 U.S. at 433; Mogilevsky, 311 F. Supp. 2d at 216.  After the party claiming the award submits evidence of the hours worked and rates claimed, the court should then exclude the number of hours that were not reasonably expended.  461 U.S. at 434; see also Mogilevsky, 311 F. Supp. 2d at 219, 221.   This fee will then be adjusted further to reflect the results obtained.

1.    **The Fees Should Be Reduced to Reflect the Results Obtained**

Where the claimant failed to prevail on arguments that were easily severable from the areas on which he succeeded, or where the level of success simply does not justify the fees expended, an award should be adjusted downward.  "The most critical factor is the degree of success obtained." Hensley, 461 U.S. at 436.  The degree of success is so important that in some cases, even though a party prevailed, the "only reasonable fee is . . . no fee at all." Farra v. Hobby, 506 U.S. 103, 115 (1992); Boston's Children First v. City of Boston, 395 F.3d 10, 15 (1st Cir. 2005)(affirming Judge Stearns' denial of attorneys fees to plaintiffs who obtained nominal damages in school assignment case).

Where recovery of damages is the purpose of litigation, "a district court, in fixing fees, is obligated to give primary consideration to the amount of damages awarded as opposed to the

_____

[6]The government notes that this Court has addressed the question of attorney's fees more than one hundred times.  See, e.g., Cerqueira v. American Airlines, 484 F.Supp.2d 241 (D. Mass. 2007) (Young, D.J.); Dixon v. Int'l Broth. Police Officers, 434 F. Supp. 2d 73 (D. Mass. 2006) (Young, D.J.); McDonough v. City of Quincy, 353 F. Supp. 2d 179 (D.Mass. 2005) (Young, C.J.) Mogilevsky v. Bally Total Fitness Corp., 311 F. Supp. 2d 212 (D.Mass. 2004)(Young, C.J.); Martino v. MBTA, 230 F. Supp. 2d 195 (D. Mass. 2002)(Young, C.J.).

amount sought." <u>Farrar</u>, 506 U.S. at 114 (emphasis added).  "Such a comparison promotes the

court's 'central' responsibility to 'make the assessment of what is a reasonable fee under the

circumstances of the case.'" <u>Id.</u> at 114-15, quoting <u>Blanchard v. Bergeron</u>, 489 U.S. 87, 96

(1989).  <u>See also</u> <u>Accusoft Corporation v. Palo</u>, 237 F.3d 31, 61 (1st Cir. 2001), citing with

approval <u>Rent It Co. V. Aetna Cas. & Sur. Co.</u>, 988 F.2d 88, 91 (10th Cir. 1993)(denying as

"'inequitable and unreasonable' ANY award of fees '[g]iven the more than eight-to-one-ratio of

damages sought to damages recovered'")(emphasis added).   Comparison between recovery

sought and recovery achieved also heeds the Supreme Court's admonition that fee awards were

"never intended to "'produce windfalls to attorneys.'"" <u>Farrar</u>, 506 U.S. at 115, quoting

<u>Riverside v. Rivera</u>, 477 U.S. 561, 580 (1986), quoting S. Rep. No. 94-1011, p. 6 (1976)

U.S.Code Cong. & Admin. News 1976 pp. 5908, 5913.  <u>See also</u> <u>Bowen Investment, Inc. v.</u>

<u>Carneiro Donuts, Inc.</u>, 490 F.3d 27, 30 (1st Cir. 2007) (affirming outright denial of attorney's

fees where jury awarded $11,944.26 where $120,000 was sought in closing argument).

> **2.**  **<u>The Supreme Court Has Accepted Two Different Methods for Reducing</u>**
> **<u>Awards to Reflect Results.</u>**

In <u>Hensley</u>, the Court noted that fees should be reduced to reflect the actual success, even

if the unsuccessful aspects of the litigation were "interrelated, nonfrivolous, and raised in good

faith."   461 U.S. at 436.  In so holding, the Court noted that "Congress has not authorized an

award of fees whenever it was reasonable for a plaintiff to bring a lawsuit or whenever

conscientious counsel tried the case with devotion and skill." <u>Id.</u>  Instead, "the most critical

factor is the degree of success obtained." <u>Id.</u>

The Court stated that there were two equally acceptable methods of reducing an award to

reflect actual success. <u>Id.</u>.  One method is that: "[t]he district court may attempt to identify the

specific hours that should be eliminated . . .." <u>Id.</u>  Alternatively, "it may simply reduce the

award to account for the limited success." Id. at 436-37.  Here, as demonstrated below, either

method results in roughly the same result.  Eliminating the hours and fees spent on unsuccessful

or unnecessary aspects of the litigation results in a reduction of about three quarters of the hours

requested.  Reducing the hours and fees claimed by a factor of four based on the ratio of the

relief sought compared to the relief achieved would result in about the same figure.

Accordingly, the government submits that this amount would be fair.

### 3. Lane's Fee Award Should Reflect the Limited Award He Received.

A.     The fee award should be reduced to eliminate fees related to the issues on which
       Lane did not prevail:  discovery issues, fair market value, sovereign immunity,
       and the propriety of the settlement with Crosby.

In the case at bar, Lane succeeded on a single, discrete issue: whether the Flash II was

forfeitable.  Given that Lane succeeded on this issue, the government does not suggest – despite

Farrar – that attorney's fees should be denied.  However, in Lane's motion for fees, he is seeking

fees for numerous other issues on which he was wholly unsuccessful.  Lane seeks to recover fees

for:

-      a motion to vacate pursuant to Rule 60(b) that he wholly abandoned

-      a motion to compel discovery regarding the merits of Lane's claim prior to the
       Court having permitted him to file a claim

-      research and litigation regarding depositions of government employees, when the
       government had already willingly provided all relevant information in response to
       discovery requests

-      litigation regarding the applicability of the CAFRA amendment to the Federal
       Tort Claims Act and the discretionary function exception, in order to justify a
       claim for ten times the Auction Proceeds

-      litigation regarding the amount paid to Crosby under his settlement with the
       government exceeded Crosby's prorata share.

Lane did not prevail on any of these issues, and Lane's pursuit of these issues significant

increased the fees incurred.  Eliminating the hours specifically identifiable as attributable to

these items, as demonstrated on the attached fee statements, Exhibits 5-12, results in total number of hours of 385.45 hours. Additionally, Lane's motion regarding the Court's default judgment and related appeal which would have been wholly unnecessary had he simply filed a timely claim. While this Court has concluded that the government could have located Lane in order to serve him with notice of the forfeiture litigation, this Court has also recognized that Lane was aware that the Flash II had been seized by the DEA and "hid his head in the sand." Hearing 1/31/07. The First Circuit affirmatively stated that this Court could factor Lane's decision to avoid the DEA into its ultimate relief. United States v. One Star Class Sloop, 458 F.3d 16, 25 n.10 (1st Cir. 2006) ("[T]he fact that Lane had notice of the seizure and the further fact that Lane asked Anderson not to disclose his name are not necessarily irrelevant to the final outcome of the Rule 60(b) motion. The government remains free to argue, for example, that equitable considerations-especially any prejudice that it may have suffered through delay or concealment by Lane-should be taken into consideration.") The government respectfully submits that hold Lane responsible for two thirds of the fees incurred in moving to set aside and then appealing the default, rather than to the government, would be in accordance with that opinion.[7] Limiting the 223.25 hours related to this motion and appeal in this manner leaves 236.62 hours. See Ex. 1. Adjusting the expenses in the same manner results in a total award of $68,700.79.

B.    Alternatively, the fees and expenses requested should be reduced by 75% to reflect the value of the award, as compared to the relief sought.

Lane's ultimate award – $73,898.76 – was a small fraction of the award that he sought.

---

[7]The government notes that when Crosby submitted a claim, with written documentation, the government immediately settled Crosby's claim. Cf. D.4;D.14. The Court can infer that had Lane timely submitted his claim, rather than hiding from the DEA, the government would have likewise agreed to accord him a share of the Flash II based simply on his documentation.

Lane claimed that the Flash II was worth $1,000,000 and was not forfeitable.  Given that the only other claimant in this case had settled for $26,101.24, Lane effectively sought an award of $973,898.76.  This amount is more than 13 times the Court's ultimate award.  Lane's backup position was that even if the Flash II was forfeitable, Lane was entitled to $10,000 plus 30% of its million dollar value, or $310,000.  The Court's award was less than a quarter of this alternative amount.  Reducing the requested number of hours, 870.5 (see ex. 1), to one quarter yields roughly the same result as the item-by-item analysis: 217.63 hours.[8]  Multiplying these hours by $250 per hour, and adding in the same percentage of the claimed expenses[9] would result in a fee award of $58,056.85.

### 4.    Counsel's Rate Should Not Exceed the Rate Actually Charged

Lane seeks compensation for counsel at the rates which he asserts exist in Boston – notwithstanding the fact that he never chose to have a Boston attorney on this case.  Lane was initially represented by Eric Goldberg, an attorney from Wellesley, who billed his time between $225 per hour and $240 per hour.[10]  Goldberg Fee Statement, Docket Entry 87-3.  That counsel filed an unsuccessful motion under Rule 60(b), which was denied.  The district court's ruling on

---

[8]Reducing the award for the result by comparison to the actual amount claimed, $973,898.76, obviously has some appeal to the government, simply because it results in a lower number.  However, the government recognizes that the $973,898.76 was not Lane's fundamental litigation position.  In this case, Lane's filings all focused on obtaining "his share" of the Flash II, which he repeatedly asserted was equal to $10,000 plus 30% of one million dollars.  See, e.g., D.64; F. 61 ¶ 5 (referring to letter demanding $310,000 plus attorney's fees); see letter, attached as Exhibit 4.  From this, the government concludes that a comparison of the actual award as a percentage of $310,000 is appropriate in measuring the results obtained.

[9]Total claimed expenses were $14,597.42.  See Ex. 1.  Applying the 25% factor, the allowable expenses would be $3,649.35.

[10]An additional attorney in Goldberg's firm occasionally charged time to the client, according to the billing sheets submitted by Goldberg.  However, that attorney never entered an appearance in this matter, and there is no indication that he/she added any value to Lane's representation.

the Goldberg motion was not appealed.    Lane subsequently hired counsel from California,

Brenda Grantland.  Attorney Grantland asserts that she is an expert in forfeiture, engaging in a

national practice in complex constitutional issues of first impression since 1983, and publishing

numerous books on the issue.  See Grantland Affidavit, Docket Entry 87-5, at ¶¶ 3,4, 5).

Grantland's national expertise in this area commands a rate of $250 per hour.  See Fee

Agreement, attached as Exhibit 13.

      The First Circuit has addressed the question of what rate should govern when a client

seeks an attorney from out of town, and that attorney ultimately prevails in the litigation.  In

Maceira v. Pagan, 698 F.2d 38, 40 (1st Cir. 1983) (Breyer, J.), an out of town attorney was

retained, presumably at a higher rate than a local counsel would have commanded.  Then-Judge

Breyer concluded that out of town counsel should be paid at his normal hourly rate.  Judge

Breyer's analysis is telling:

> [A]n out-of-town specialist may be able to command a higher price
> for his talents, both because of his specialty and because he is
> likely to be from a larger city, where rates are higher.  If a local
> attorney could perform the service, a well-informed private client,
> paying his own fees, would probably hire local counsel at the local
> average rate.  Where it is unreasonable to select a higher priced
> outside attorney-as, for example, in an ordinary case requiring no
> specialized abilities not amply reflected amongst local lawyers, the
> local rate is the appropriate yardstick.  But, if the client needs to go
> to a different city to find that specialist, he will expect to pay the
> rate prevailing in that city. In such a case, there is no basis for
> concluding that the specialist's ordinary rate is unreasonably high.
> If one wishes to be literal, the "prevailing rate in the community"
> for work performed by an outside specialist (where that outside
> specialist is reasonable) is most likely to be that outside specialist's
> ordinary rate.  If the courts (without cause) award fees at less than
> that rate, they will tend to prevent those in smaller communities
> from obtaining the experienced legal counsel they may need,
> contrary to the policy behind awards of attorney's fees to
> prevailing parties.

Maceira v. Pagan, 698 F.2d at 40 (internal citations omitted).

Under Judge Breyer's analysis, the Court should presume that a client who has sought out of town counsel with specialized expertise has obtained that counsel at an appropriate rate.  <u>See also</u> <u>Blanchard v. Bergeron</u>, 489 U.S. at 95 (noting that the purpose of a statutory fee provision is to ensure the availability of effective access to the judicial process).  Attorney Grantland asserts a nationwide practice with more than twenty years' experience.  Lane was able to obtain her expertise for $250 per hour.  Accordingly, compensation at that rate would appear to ensure that claimants like Lane are able to obtain experienced forfeiture counsel.  <u>See</u> <u>Blum v. Stenson</u>, 465 U.S. 886, 896-899 (1984) (noting that the hourly rate charged by an attorney generally reflects the quality of the service obtained).  Conversely, payment of more than that amount, for either a local attorney or a different national attorney, would be inherently unreasonable, when national expertise is available at that rate.  Accordingly, Lane's arguments that his fees should be calculated at some speculative "Boston" rate must be rejected.

## CONCLUSION

For the reasons set forth above, the government asserts that the amount requested by Lane for attorney's fees is excessive and the Court should limit his award to the amount $68,700.79.

Respectfully submitted,

MICHAEL J. SULLIVAN
United States Attorney

By:    <u>/s/ Nancy Rue</u>
Nancy Rue
Assistant U.S. Attorney

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that these documents filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

 /s/ Nancy Rue
Nancy Rue
Assistant U.S. Attorney

**Government's Table of Hours and Expenses Claimed Versus Undisputed
Showing Proposed Reduction for Appeal**

**Exhibit 1**

| Govt Ex. | Category | Claimed | After disputes | Related to appeal/ motion for default | Discounting 2/3 for appeal | Net Amounts |
|---|---|---|---|---|---|---|
| 5 | 2005 Grantland Hours | 87.65 | 69.65 | 69.65 | 46.43 | 23.22 |
| 6 | 2006 Grantland Hours | 259.20 | 198.25 | 153.6 | 102.40 | 95.85 |
| 7 | 2007 Grantland Hours | 477.55 | 117.55 | 0 | 0.00 | 117.55 |
| 12 | Goldberg Hours | 46.10 | 0 | 0 | 0.00 | 0.00 |
| | Total Hours | 870.5 | 385.45 | 223.25 | 148.83 | 236.62 |
| | | | | | At 250 per hour | **$59,154.17** |
| | | | | | | |
| 8 | Lane Expenses | $4,446.94 | $2,693.14 | $0.00 | $0.00 | $2,693.14 |
| 9 | Grantland Expenses | $2,621.90 | $1,741.60 | $1,545.92 | $1,030.61 | $710.99 |
| 10 | Osborn Fees | $7,377.50 | $6,142.50 | $0.00 | $0.00 | $6,142.50 |
| 11 | Goldberg Expenses | $151.08 | $0.00 | $0.00 | $0.00 | $0.00 |
| | **Claimed Expenses** | **$14,597.42** | **Adjusted Expenses** | | | **$9,546.63** |
| | | **Total Fees and Expenses** | | | | **$68,700.79** |

**Exhibit 1**

**Rue, Nancy (USAMA)**

| | |
|---|---|
| **From:** | Rue, Nancy (USAMA) |
| **Sent:** | Tuesday, November 14, 2006 6:00 PM |
| **To:** | bgrantland1@comcast.net |
| **Subject:** | RE: Kennedy sailboat case |

For this stage of things, if we could come to agreed stipulations, it was my understanding that we would be trying to agree to everything -- both as to your client and as to the govt actors.  If we were able to come to an agreement, that would obviate the need for your client's depo and would obviate the need for the ones that you had identified.

If we come to an agreement on some things and not others, it would narrow the scope of discovery that is in dispute.  For example, I can foresee a situation in which we come to an agreement as to what certain govt actors would say, but dispute others.  At that point, I think that your Touhy demand would indicate the area of testimony that was in dispute and we would evaluate under the Touhy regs whether there was no alternative to oral examination of a particular individual.  If we agreed to what the govt actors would say, but disagree as to what Dr. Lane would say, we would still want to proceed with his depo.  But if we are in agreement, we would forego that at this time.

Knowing that you and I have a different interpretation as to the scope of the current discovery, I should amplify slightly.  At this point, the govt believes that the purpose of these proceedings is to determine whether Dr. Lane should be permitted to file a claim.  If Judge Zobel finds in your client's favor, then at that point it is our understanding (which I confirmed with AUSA Wright, since she attended the status conference), that discovery would begin in the normal manner.  Dr. Lane would need to prove his claim, and that  would usually include a deposition of your client.  However, if Judge Zobel were to reiterate her previous ruling, at that point, the case would be terminated, and no further discovery of any kind would be appropriate.

It sounds like we shouldn't try to exchange drafts tonight, but instead talk tomorrow and see where we are?  I'll plan to call you at 4pm my time, 1pm your time, unless I hear differently.

Thanks.  Nancy


-----Original Message-----
From: Brenda Grantland [mailto:bgrantland1@comcast.net]
Sent: Tuesday, November 14, 2006 4:56 PM
To: Rue, Nancy (USAMA); Brenda Grantland
Subject: Kennedy sailboat case


Hi Nancy -

I am still working on my letters responding to your Touhy_letter.pdf and Cor_9_Nov.pdf, as well as my questions for possible stipulation in lieu
of the depositions.   I hope to have it finished tomorrow, provided Dr.
Lane does not have any further issues after I make further revisions tonight.


In talking to my client today, we determined that if the government is intending to depose Dr. Lane, there is no way we would forego our depositions of the four  government agents -
Lisa Talbot, Shelbey
Wright, Gregg Willoughby or Christina Barkley.   That's the bottom

line.  So if you are planning on deposing my client, we will not settle for stipulating the
facts in lieu of those four depositions.

Let me know your response to that as soon as possible -- before I waste any more time trying
to draft a proposed stipulation.

Brenda

**Rue, Nancy (USAMA)**

| | |
|---|---|
| **From:** | Brenda Grantland [bgrantland1@comcast.net] |
| **Sent:** | Friday, December 08, 2006 5:58 PM |
| **To:** | Rue, Nancy (USAMA); Brenda Grantland |
| **Subject:** | Re: Discovery answers in Kennedy sailboat case |

Nancy -

There's no point trying to agree on stipulated facts until we've completed discovery.  It would be a waste of time.

We have a telephonic conference with Judge Zobel on the 13th at 2 p.m. Eastern time.

Brenda

Rue, Nancy (USAMA) wrote:

```
Brenda, thank you for faxing as well as emailing.  I have looked over
the responses very briefly, and I believe I have all the pages that were
faxed.

I will be out of the office next week.  Obviously I will review the
responses more thoroughly when I return, but based on my preliminary
review, I think what I thought before - -that we are in substantial
agreement on the facts, and that where we disagree is on the conclusions
to be drawn from them.  You believe we violated your client's right to
notice; we believe our actions were sufficient.  I recognize that this
is a vast disagreement, but again, I believe it is a disagreement as to
the conclusions, and not as to the facts.

Accordingly, while I will be filing my response to your motion to compel
in a few moments, I would like to try once more to see if we can agree
to stipulated facts in this case.  I will contact you on 12/18 or 12/19.

Thanks.  Nancy

-----Original Message-----
From: Brenda Grantland [mailto:bgrantland1@comcast.net]
Sent: Friday, December 08, 2006 3:56 PM
To: bgrantland1@comcast.net; Rue, Nancy (USAMA)
Subject: Re: Discovery answers in Kennedy sailboat case

Oops - I forgot to attach the files.  Here they are

Brenda Grantland wrote:


    Nancy -

    Attached are the pdf versions of our discovery responses.  I didn't
    scan the documents, but I faxed everything to you already (documents
    included).
    Dr. Lane will be sending me his original signature pages, and I'll
    have to wait until I get it to send the hard copies to you.  I should
    have his signature pages early next week.
```

Brenda

# Brenda Grantland

Attorney at Law
20 Sunnyside Suite A-204
Mill Valley, CA 94941
(415) 380-9108
fax (415) 381-6105

October 20, 2006

AUSA Nancy Rue
1 Courthouse Way
Suite 9200
Boston, MA 02210

Re: U.S. v. Star Class Sloop "Flash II"
Settlement offer

Dear Ms. Rue:

I haven't received your entry of appearance yet, but thought it would be a good idea to go ahead and give you our settlement offer.

My client is willing to settle for $310,000 plus his attorneys fees under CAFRA. I will get you the current attorneys fees figure next week.

This figure is based on the formula from the handwritten document between the investors, signed by Ole Anderson on December 4, 1997. See Appellant's Appendix pp. 59-60. Under that formula, Dr. Lane was to get $60,000 plus $10,000, and 30% of the profit from the sale. If his share of the profit was greater than $60,000, then the $60,000 (but not the $10,000) was to be deducted from the 30% of the profits.

I based the value figure on what we estimate to be the fair market value of the sailboat – $1,000,000. At the 1998 auction, the investors set a reserve of $1 million. Although they did not meet the reserve, someone made an offer of $800,000 which they turned down. This is all documented in the Complaint, page 10 paragraph 16. See Appellant's Appendix p. 17. With inflation, the $800,000 offer which was turned down in 1998 would be closer to $1,000,000 today. Also, the Ebay live auction listing for the Guernsey's auction last December listed a value of $200,000 to $1,000,000 – showing a million is in the ballpark range of value. I assume they got these figures from the government.

The amount that the sailboat actually sold for at the auction last December is not the measure of fair market value. This was a distressed sale. My client had been denied due process during the forfeiture litigation, and was not permitted to defend his interest in the sailboat at all. He had appealed from the denial of his motion to vacate default before the auction, and his case had

1

generated some publicity. With Dr. Lane's claim of denial of due process pending in court, anyone who purchased the sailboat was taking the chance that they wouldn't get good title – which turned out to be the case. This naturally discouraged most people from bidding on the sailboat. I tried to get the government to set a minimum reserve, but the judge told me to negotiate with Shelbey about it and Shelbey refused to set any minimum reserve.

Call me if you have any questions.

Sincerely,

Brenda Grantland

Brenda Grantland

2

| 2005 | Brenda Grantland's Itemization of Fees | Total | Exclude | Balance | Related to Default/Appeal | Basis for Dispute |
|------|----------------------------------------|-------|---------|---------|---------------------------|-------------------|
| 8/23 | review documents & pleadings, conferences with client | 4.8 | | 4.8 | 4.8 | |
| 8/24 | conference with client & research | 1.75 | | 1.75 | 1.75 | |
| 8/25 | research vacating defaults, phone calls with client & cocounsel, download motions from Pacer & review | 4.25 | | 4.25 | 4.25 | |
| 8/26 | research vacating defaults, due process/notice, phone conferences with client, notes re: issues and strategy for reconsideration motion, draft 59(e) motion | 3.25 | | 3.25 | 3.25 | |
| 8/27 | research notice, vacating defaults, drafting 59(e) motion, pro hac vice documents | 8 | | 8 | 8 | |
| 8/28 | phone conferences with client, drafting 59(e) motion, claim & answer | 5.25 | | 5.25 | 5.25 | |
| 8/29 | finish drafting 59(e), phone conferences with client & cocounsel | 3.5 | | 3.5 | 3.5 | |
| 8/30 | read emails, phone conferences with client & cocounsel | .7 | | 0.7 | .7 | |
| 9/6 | phone calls to client, draft new declaration, read emails, phone interviewof Chuck Fitzgerald, notes to file | 2.0 | | 2 | 2.0 | |
| 9/7 | phone call to client, local counsel, letter to Kerner | 1.1 | | 1.1 | 1.1 | |
| 9/8 | research Rule 11, review documents, phone conferences w/ Marblehead, Dr. Lane, consultation with Jody Neal-Post | 4.0 | | 4 | 4.0 | |
| 9/9 | research & drafting, draft timeline, phone calls with client | 4.25 | | 4.25 | 4.25 | |
| 9/12 | research local rules | .5 | | 0.5 | .5 | |
| 9/13 | read opposition to 59(e) motion, phone conferences w/ co-counsel, client & Robert Harper, draft reply & motion for leave to reply | 8.9 | | 8.9 | 8.9 | |
| 9/14 | draft reply motion, exhibits, phone conferences w/ Fitzgerald, Harper &  client,  consultation with Jody Neal-Post, draft letter and fax to AUSA  Wright and Kerner | 9.5 | | 9.5 | 9.5 | |
| 9/15 | phone calls with client | .5 | | 0.5 | .5 | |
| 9/22 | phone calls with client & cocounsel | .1 | | 0.1 | .1 | |
| 9/24 | draft letter to Kerner, phone calls to client & cocounsel | 1.5 | | 1.5 | 1.5 | |
| 9/27 | phone call with local counsel | .1 | | 0.1 | .1 | |

| 2005 | Brenda Grantland's Itemization of Fees | Total | Exclude | Balance | Related to Default/Appeal | Basis for Dispute |
|---|---|---|---|---|---|---|
| 9/29 | phone calls w/ client | .75 | | 0.75 | .75 | |
| 10/18 | read order denying 59(e) motion, phone calls to cocounsel | .25 | | 0.25 | .25 | |
| 10/20 | phone call to client | .5 | | 0.5 | .5 | |
| 11/1 | emails to Dr. Lane & local counsel re: strategy on appeal, stay, research on deadlines | 2.5 | 2.5 | 0 | 0 | Relates to Stay, which was unsuccessful and not pursued |
| 11/2 | email to Dr. Lane re: filing fee for appeal, supersedeas research, drafting motion to stay and to set nominal supersedeas bond | 2.25 | 2.25 | 0 | 0 | Same |
| 11/3 | research & drafting stay pending appeal, draft motion, calls to AUSA | 4.85 | 4.85 | 0 | 0 | Same |
| 11/4 | research stay pending appeal & supersedeas, draft motion, phone calls | 1.5 | 1.5 | 0 | 0 | Same |
| 11/7 | phone calls to client, Sailorman, Marblehead's lawyer, client, review file, notes re: facts and strategy | 2.7 | | 2.7 | 2.7 | |
| 11/8 | notice of appeal, draft motion & order re stay, re-check research re: deadline for appeal after 59(e) motion | 3.0 | 3.0 | 0 | 0 | Relates to Stay, which was unsuccessful and not pursued |
| 11/9 | refile notice of appeal, phone call to Shelby, read article re: auction, notice of correction re: notice of appeal | .75 | | 0.75 | .75 | |
| 11/16 | read Crosby opp to stay, phone call from client re: Kerner's request to release his settlement money now, letter to Kerner, phone call & email to cocounsel, email from client re: minimum reserve | 3.25 | 3.25 | 0 | 0 | Relates to Stay, which was unsuccessful and not pursued |
| 11/17 | read notice from court re: Kerner filing, get docket, calls to clerk's office | .25 | .25 | 0 | .0 | |
| 11/29 | phone call with Shelbey Wright | .1 | .1 | 0 | 0 | Relates to Stay, which was unsuccessful and not pursued |
| 12/1 | phone call with Shelbey Wright | .1 | .1 | 0 | 0 | Relates to Stay, which was unsuccessful and not pursued |
| 12/2 | phone call to client | .2 | .2 | 0 | 0 | Relates to Stay, which was unsuccessful and not pursued |
| 12/27 | research local rules re: appeal docs, phone calls to clerk's office | .75 | | 0.75 | .75 | |
| TOTAL HOURS FOR 2005 - 87.65 | | 87.65 | 18.00 | 69.65 | 69.65 | |

| 2006 | Brenda Grantland's Itemization of Fees | Total | Exclude | Bal | APPEAL | Basis for Dispute |
|------|----------------------------------------|-------|---------|-----|--------|-------------------|
| 1/10 | review case opening notice from court | 0.10 | | 0.10 | 0.10 | |
| 1/11 | conference w/ Dr. Lane | 0.20 | | 0.20 | 0.20 | |
| 1/13 | read clerk's certificate, phone calls with Dr. Lane | 0.20 | | 0.20 | 0.20 | |
| 1/17 | phone conference with Eric Goldberg | 0.60 | | 0.60 | 0.60 | |
| 1/18 | research deadlines for appeal, prepare docketing statement, transcript order form & appearance form; phone calls to client, clerk's office, settlement counsel's office | 4.25 | | 4.25 | 4.25 | |
| 1/23 | read notice re: mandatory settlement conference, phone call to settlement counsel's office, letter to Dr. Lane re: settlement conference | 0.30 | | 0.30 | 0.30 | |
| 2/1 | phone call to Shelbey Wright | 0.10 | | 0.10 | 0.10 | |
| 2/2 | letter to Justice Lynch re: holding conference telephonically, phonecalls to Shelbey Wright & settlement counsel | 0.50 | | 0.50 | 0.50 | |
| 2/8 | phone calls with settlement counsel, emails to Dr. Lane re: settlement conference statement | 0.75 | | 0.75 | 0.75 | |
| 2/13 | calls to Shelbey Wright & Dr. Lane, download appellate docket, prepare& file motion for extension of time because of settlement procedures | 1.25 | | 1.25 | 1.25 | |
| 2/14 | draft settlement conference statement, phone calls to client, Googleresearch on Flash II, Pacer research on Gary Milo, research statutory notice requirements | 4.50 | | 4.50 | 4.50 | |
| 2/15 | research statutory notice requirements, finish settlement conference statement, call & fax to settlement counsel's office & Dr. Lane | 1.90 | | 1.90 | 1.90 | |
| 2/21 | research due process notice, prepare for settlement conference, phone calls with client | 5.00 | | 5.00 | 5.00 | |

| 2006 | Brenda Grantland's Itemization of Fees | Total | Exclude | Bal | APPEAL | Basis for Dispute |
|------|----------------------------------------|-------|---------|-----|--------|-------------------|
| 2/22 | phone calls to client, prepare for settlement conference, telephonic settlement conference, phone calls to client & cocounsel | 6.00 | | 6.00 | 6.00 | |
| 2/23 | phone call with client | 0.10 | | 0.10 | 0.10 | |
| 2/26 | Flash II research on Google | 0.20 | | 0.20 | 0.20 | |
| 4/20 | research for appeal | 3.25 | | 3.25 | 3.25 | |
| 4/21 | research for appeal | 2.75 | | 2.75 | 2.75 | |
| 4/24 | review docket & documents in record, begin outlining appeal brief, research, drafting opening brief | 6.00 | | 6.00 | 6.00 | |
| 4/25 | read cases, draft brief | 5.75 | | 5.75 | 5.75 | |
| 4/26 | research, draft brief | 7.00 | | 7.00 | 7.00 | |
| 4/27 | draft brief, conf. w/ client, Shelbey, local counsel | 4.50 | | 4.50 | 4.50 | |
| 4/28 | draft brief | 4.75 | | 4.75 | 4.75 | |
| 5/1 | research due process notice, draft brief | 7.75 | | 7.75 | 7.75 | |
| 5/2 | draft brief, phone call to Shelbey Wright | 8.50 | | 8.50 | 8.50 | |
| 5/3 | final revisions on brief, phone conf. w/ client, assemble appendix | 2.50 | | 2.50 | 2.50 | |
| 5/5 | packaged brief and sent to parties & court | 0.25 | | 0.25 | 0.25 | |
| 6/12 | read government's brief, conf. w/ Dr. Lane | 1.75 | | 1.75 | 1.75 | |
| 6/13 | research for reply brief - vacating defaults, late filing of claim | 3.00 | | 3.00 | 3.00 | |
| 6/20 | review docket, research for reply brief | 2.00 | | 2.00 | 2.00 | |
| 6/22 | research for reply brief, called Marblehead, client, Eric, notes for reply | 4.00 | | 4.00 | 4.00 | |
| 6/23 | read cases, draft reply brief | 4.25 | | 4.25 | 4.25 | |
| 6/25 | research, draft reply brief | 5.10 | | 5.10 | 5.10 | |

| 2006 | Brenda Grantland's Itemization of Fees | Total | Exclude | Bal | APPEAL | Basis for Dispute |
|------|------|------|------|------|------|------|
| 6/26 | proofread reply brief and make final corrections, take to printer | 1.50 | | 1.50 | 1.50 | |
| 7/7 | phone call with client | 0.10 | | 0.10 | 0.10 | |
| 7/10 | phone calls to client, local counsel | 0.25 | | 0.25 | 0.25 | |
| 7/21 | phone calls to client, local counsel, hotel, prepare for argument | 1.50 | | 1.50 | 1.50 | |
| 7/25 | research, prepare for oral argument, phone calls to local counsel, client, 1st Cir. clerk's office | 2.90 | | 2.90 | 2.90 | |
| 7/26 | read Shelbey's Rule 28(j) letter, research & prepare response, phone calls to local counsel, client | 4.45 | | 4.45 | 4.45 | |
| 7/27 | letter to clerk re: jurisdiction, draft response to 28(j) letter & fax to court, prepare for oral argument, phone calls to local counsel, clerk | 6.75 | | 6.75 | 6.75 | |
| 7/28 | prepare for oral argument | 5.25 | | 5.25 | 5.25 | |
| 7/29 | Shepardize cases, reread key cases, prepare for oral argument | 4.00 | | 4.00 | 4.00 | |
| 7/30 | review research, outline arguments, organize notebook for argument | 6.75 | | 6.75 | 6.75 | |
| 7/31 | travel to Boston, read cases & outline of argument on plane | 7.00 | | 7.00 | 7.00 | Travel should be charged at a reduced rate.  Horney v. Westfield Gage Co., 227 F. Supp.2d 209, 216 (D.Mass. 2002) |
| 8/1 | final review of briefs and preparation for oral argument | 3.00 | | 3.00 | 3.00 | |
| 8/2 | oral argument, conference with client and co-counsel, travel home | 8.00 | | 8.00 | 8.00 | Travel should be charged at a reduced rate.  Horney v. Westfield Gage Co., 227 F. Supp.2d 209, 216 (D.Mass. 2002) |
| 8/3 | phone call with client | 0.10 | | 0.10 | 0.10 | |
| 8/5 | Pacer research on investors, Milo, download Milo documents | 1.00 | 1.00 | 0.00 | 1.00 | Duplicates work done on 2/14 ("Pacer Research on Gary Milo") |
| 8/16 | read First Circuit opinion, phone calls to client, local counsel, etc. | 2.00 | | 2.00 | 2.00 | |
| 8/17 | phone calls to client, Chuck Fitzgerald, reread opinion, plan strategy on remand, emails to Marblehead's lawyer, Marblehead | 3.50 | | 3.50 | | |

| 2006 | Brenda Grantland's Itemization of Fees | Total | Exclude | Bal | APPEAL | Basis for Dispute |
|---|---|---|---|---|---|---|
| 8/18 | phone call to Chuck Fitzgerald | 0.10 | | 0.10 | | |
| 8/22 | read notice of status conference, phone calls to client & local counsel | 0.25 | | 0.25 | | |
| 9/5 | phone calls w/ client, Judge Zobel's clerk, local counsel, U.S. Attorney's Office | 0.50 | | 0.50 | | |
| 9/6 | phone calls to local counsel, Shelbey Wright, clerk's office | 0.25 | | 0.25 | | |
| 9/7 | letter, phone call and fax to Kerner, draft motion and order for telephonic hearing, get Milo's dockets from Pacer | 2.00 | 2.00 | 0.00 | | Duplicates work done on 2/14 ("Pacer Research on Gary Milo") |
| 9/14 | phone calls to Marblehead's lawyer & cocounsel, telephonic status hearing, memo to client re: what happened at status hearing | 1.00 | | 1.00 | | |
| 9/19 | phone call to client; begin drafting interrogatories, notes re: settlement figures | 4.00 | 4.00 | 0.00 | | Settlement figure discussions related to claim that value of the Flash II was one million dollars. See Ex. 4. This was an issue on which Lane was wholly unsuccessful. Moreover, interrogatories related to items outside the scope of the remand. |
| 9/21 | drafting interrogatories | 2.50 | 1.25 | 1.25 | | Interrogatories related to items outside the scope of the remand; reduce by half. |
| 9/25 | review file, draft interrogatories & document requests | 5.25 | 2.60 | 2.65 | | Interrogatories related to items outside the scope of the remand; reduce by half. |
| 9/26 | finish drafting interrogatories & doc requests, phone calls to client, fax to AUSA | 3.00 | 1.50 | 1.50 | | Interrogatories related to items outside the scope of the remand; reduce by half. |
| 9/27 | Internet search for news articles re: Flash II | 0.50 | | 0.50 | | |
| 9/28 | phone calls to court | 0.10 | | 0.10 | | |
| 10/17 | phone calls to AUSA Kristina Barclay, US Attorney's Office re: who is asssigned as AUSA, email from Nancy Rue, calls to Nancy Rue & client | 0.30 | | 0.30 | | |
| 10/20 | phone calls to client, draft settlement offer and send to AUSA Rue | 2.75 | 2.75 | 0.00 | | Settlement figure discussions related to claim that value of the Flash II was one million dollars. See Ex. 4. This was an issue on which Lane was wholly unsuccessful. |
| 10/25 | email to Dr. Lane re: Google alert for Flash II article from Boston Globe | 0.10 | | 0.10 | | |

| 2006 | Brenda Grantland's Itemization of Fees | Total | Exclude | Bal | APPEAL | Basis for Dispute |
|---|---|---|---|---|---|---|
| 10/26 | review email from Nancy Rue, with attached discovery responses, email to Dr. Lane, email to & from AUSA Rue about documents not being attached | 0.25 | | 0.25 | | |
| 10/27 | review government's interrogatory answers, and documents production, make notes, review objections, research for response, phone call to client, cocounsel, read email from client | 3.00 | | 3.00 | | |
| 10/28 | email to local counsel re: discovery responses & new facts we learned | 0.25 | | 0.25 | | |
| 10/30 | phone calls to client, co counsel, research discovery objections | 1.75 | 1.75 | 0.00 | | Relates to Lane's unsuccessful motion to compel. |
| 10/31 | phone calls to Fitzgerald & Marblehead' finish drafting interrogatories & doc requests, phone calls to client, fax to AUSA | 3.50 | | 3.50 | | |
| 11/1 | read & respond to emails from AUSA Rue re: incomplete discovery responses | 1.50 | 1.50 | 0.00 | | Relates to Lane's unsuccessful motion to compel. |
| 11/7 | email to AUSA Rue re: her delay responding to meet & confer question re: motion to compel discovery | 0.10 | 0.10 | 0.00 | | Relates to Lane's unsuccessful motion to compel. |
| 11/08 | review government's discovery requests served on Dr. Lane, phone call to client, email to client | 1.75 | | 1.75 | | |
| 11/09 | read AUSA Rue's response to request to depose DOJ employees, phone calls to local counsel, research Touhy regulations, review discovery requests | 5.50 | 5.50 | 0.00 | | Relates to Lane's demand to depose government employees. This was an issue on which Lane was wholly unsuccessful. |
| 11/13 | calls to client and local counsel | 0.60 | | 0.60 | | |
| 11/14 | call to client | 0.10 | | 0.10 | | |
| 11/15 | calls to client and local counsel, letter to AUSA re: discovery, deposition plan, research for motion to compel | 5.25 | 5.25 | 0.00 | | Relates to Lane's unsuccessful motion to compel. |
| 11/16 | research & drafting motion to compel | 2.75 | 2.75 | 0.00 | | Relates to Lane's unsuccessful motion to compel. |
| 11/20 | research and notes for memorandum supporting motion to compel | 2.50 | 2.50 | 0.00 | | Relates to Lane's unsuccessful motion to compel. |

| 2006 | Brenda Grantland's Itemization of Fees | Total | Exclude | Bal | APPEAL | Basis for Dispute |
|---|---|---|---|---|---|---|
| 11/26 | finish drafting and file motion to compel | 6.50 | 6.50 | 0.00 | | Relates to Lane's unsuccessful motion to compel. |
| 12/5 | work on answers to discovery, review government subpoenas, calls to client,  read & response to email from Nancy Rue re: objection to Dr. Lane's deposition on 3 days' notice | 4.25 | | 4.25 | | |
| 12/6 | calls to/from client, draft interrogatory responses, review & revise | 1.75 | | 1.75 | | |
| 12/7 | edit interrogatory responses, calls to client, | 6.00 | | 6.00 | | |
| 12/8 | final edits of interrogatory responses, calls to client, AUSA Rue, fax documents produced to AUSA Rue, emails to and from AUSA Rue re: stipulated facts, review government opposition to motion to compel discovery | 6.25 | 6.25 | 0.00 | | Relates to Lane's unsuccessful motion to compel. |
| 12/11 | research re: compelling discovery, objections to discovery, drafting motion | 2.50 | 2.50 | 0.00 | | Relates to Lane's unsuccessful motion to compel. |
| 12/12 | notes and strategizing re: further discovery & subpoenas, calls to client, local  counsel, Marblehead's lawyer, research on compelling discovery | 3.00 | 3.00 | 0.00 | | Relates to Lane's unsuccessful motion to compel. |
| 12/13 | prepare for hearing, telephonic pretrial conference, calls to client, local  counsel, Marblehead's attorney, notes re: government's contentions, read  notice of reassignment to Judge Young | 2.75 | | 2.75 | | |
| 12/15 | calls to local counsel, Judge Young's docket clerk, Nancy Rue, AUSA Jennifer Zachs (standing in for Rue) | 3.00 | 3.00 | 0.00 | | Excessive. |
| 12/18 | calls to Bonnie Smith, attorney for Marblehead, process server, email to cocounsel, email to AUSA re: Marblehead subpoena | 2.75 | | 2.75 | | |
| 12/19 | prepare for telephonic hearing, calls to local counsel, client,  attorney Sheketoff (Milo's lawyer) and attorney Kerner, plan  discovery, prepare subpoenas duces tecum, Pacer research on Milo,  download Milo pleadings, draft questions for Milo deposition | 5.25 | 5.25 | 0.00 | | Duplicates work done on 2/14 ("Pacer Research on Gary Milo"). Also, Subpoena Duces Tecum to Milo was never served on government as required by F.R.Civ.P. 5. |

| 2006 | Brenda Grantland's Itemization of Fees | Total | Exclude | Bal | APPEAL | Basis for Dispute |
|------|----------------------------------------|-------|---------|-----|--------|-------------------|
| 12/20 | prepare subpoenas duces tecum to witnesses, discovery plan notes, possible deposition questions | 3.75 | | 3.75 | | |
| 12-22 | call to local counsel | 0.10 | | 0.10 | | |
| 12-26 | call to local counsel | 0.10 | | 0.10 | | |
| 12/27 | calls to local counsel, client, attorney Kerner, atty. Sheketoff, fax to Kerner, read Kerner letter and Crosby declaration, finalize and send out our subpoenas, review government subpoenas | 2.75 | | 2.75 | | |
| **Total** | | **259.20** | **60.95** | **198.25** | **153.60** | |

| 2007 | Brenda Grantland's Itemization of Fees | Total | Exclude | Bal | Basis for Dispute |
|---|---|---|---|---|---|
| 1/02 | read letter from Kerner and proposed motion to quash subpoena, call to client, call to Kerner | 2.00 | 2.00 | 0.00 | Relates to quashed subpoena. |
| 1/3 | calls to client and Kerner re: motion to quash, review motion & plan subpoena/discovery strategy, | 1.50 | 1.50 | 0.00 | Relates to quashed subpoena. |
| 1/04 | finish Milo subpoena duces tecum and fax to Sheketoff, calls to Sheketoff's office, Rue, client, download government's motion for summary judgment and forward to client, review briefly | 4.00 | 4.00 | 0.00 | Relates to Subpoena Duces Tecum never served on government as required by F.R.Civ.P. 5. |
| 1/05 | calls to client, local counsel, Sheketoff, draft letters and fax to Sheketoff and Kerner, review Milo dockets on Pacer, review government motion for summary judgment, research, begin drafting response | 8.25 | 8.25 | 0.00 | Relates to Subpoena Duces Tecum never served on government as required by F.R.Civ.P. 5;  Additionally relates to Milo documents from Pacer that were the subject of billing on 2/14/06 |
| 1/06 | calls to client, response memorandum - research & drafting | 6.50 | | 6.50 | |
| 1/07 | call to client, draft response memorandum, gather exhibits and excerpts from discovery | 5.00 | | 5.00 | |
| 1/08 | research & drafting response memorandum, calls to attorney Harper, client, Fitzgerald, draft new Fitzgerald declaration, read order quashing our subpoena | 5.75 | 1.00 | 4.75 | Relates to quashed subpoena. |
| 1/09 | call to attorney Harper, research and drafting of response memorandum | 6.00 | | 6.00 | |
| 1/10 | calls to Harper, client, research and drafting response memorandum, download Crosby's Joint Motion for Judgment, assemble exhibits from discovery materials | 4.75 | | 4.75 | |
| 1/11 | drafting response memorandum | 0.75 | | 0.75 | |
| 1/19 | drafting response memorandum, calls to client | 3.25 | | 3.25 | |
| 1/20 | call to client, draft new affidavit for Dr. Lane | 3.75 | | 3.75 | |
| 1/21 | revise memorandum & response to US statement of facts, calls to client, revise Lane declaration | 5.25 | 5.25 | 0.00 | Response to Govt Statement of Facts was not done in accordance with Local Rules.  Counsel conceded facts that she later disputed at trial.   See Docket 70. |
| 1/22 | final revisions of memorandum, response to US statement of facts, calls to client, local counsel, assemble exhibits and efile | 9.00 | 9.00 | 0.00 | Same. |
| 1/24 | draft and file notice errata to statement of facts and memorandum | 0.50 | | 0.50 | |

| 2007 | Brenda Grantland's Itemization of Fees | Total | Exclude | Bal | Basis for Dispute |
|---|---|---|---|---|---|
| 1/29 | call to hotel for reservations | 0.10 | | 0.10 | |
| 1/30 | travel to Boston, prepare for hearing | 8.00 | 4.00 | 4.00 | Travel should be charged at a reduced rate.  Horney v. Westfield Gage Co., 227 F. Supp.2d 209, 216 (D.Mass. 2002).  Reducing hours by half creates same effect as cutting rate in half. |
| 1/31 | final preparation, hearing, conference with local counsel, phone call to client, travel home | 8.00 | 4.00 | 4.00 | Same |
| 2/13 | call to client | 0.20 | | 0.20 | |
| 2/15 | draft our portion of case management conference statement, call to AUSA Rue | 1.50 | | 1.50 | |
| 2/21 | calls to AUSA Rue, prepare and file verified statement and answer | 1.25 | | 1.25 | |
| 2/22 | read Case Management Conference order | 0.10 | | 0.10 | |
| 3/15 | read & respond to email from AUSA re: extending her deadline | 0.10 | | 0.10 | |
| 3/19 | read supplementary responses to discovery | 0.10 | | 0.10 | |
| 3/20 | read order granting motion for extension of time, read & respond to email from AUSA Rue asking to extend discovery deadline, call to client, research who is the party when interrogatories are served on government | 1.00 | | 1.00 | |
| 3/22 | call to client | 0.20 | | 0.20 | |
| 3/27 | read order re: hearing on government motion for summary judgment | 0.10 | | 0.10 | |
| 3/31 | review, research & draft opposition to Government motion for summary judgment, response to U.S. statement of facts, Lane statement of facts, exhibits | 8.00 | 8.00 | 0.00 | Response to Govt Statement of Facts was not done in accordance with Local Rules.  Counsel conceded facts that she later disputed at trial.  See Docket 70. |
| 4/1 | cross-motion for summary judgment (same as above) | 7.05 | | 7.05 | |
| 4/2 | cross-motion for summary judgment (same as above) | 8.00 | | 8.00 | |
| 4/3 | email to Nancy Rue re: extending discovery deadline, cross-motion for summary judgment (same as above) | 8.75 | | 8.75 | |
| 4/4 | cross motion for summary judgment | 9.00 | | 9.00 | |
| 4/5 | call to client, research on Lexis, finish & efile cross-motion for summary judgment and attachments | 6.75 | | 6.75 | |
| 4/10 | call to AUSA Rue | 0.10 | | 0.10 | |

| 2007 | Brenda Grantland's Itemization of Fees | Total | Exclude | Bal | Basis for Dispute |
|---|---|---|---|---|---|
| 4/19 | review & study U.S. reply to Lane Opposition to Partial Summary Judgment, with attachments, and US Response to Lane Cross-Motion for Summary Judgment, with attachments; makes notes and outline research needed for our reply | 4.25 | 4.25 | 0.00 | Relates to issues on which Lane did not prevail (value & sovereign immunity) |
| 4/20 | research, begin drafting reply | 3.50 | 3.50 | 0.00 | Same |
| 4/21 | research on Lexis, Federal Tort Claims legal websites, download cases, notes and outline for reply | 4.00 | 4.00 | 0.00 | Relates to issues on which Lane did not prevail (value & sovereign immunity, FTCA) |
| 4/24 | research on Lexis, call to client, read downloaded cases, make notes for reply | 8.40 | 8.40 | 0.00 | Same |
| 4/25 | draft reply, research on Lexis, review US reply, exhibits, read cases, research legislative history of CAFRA, research sovereign immunity | 8.00 | 8.00 | 0.00 | Same |
| 4/26 | calls to local counsel, attorney Harper, Fitzgerald, review file exhibits, research online, draft reply | 4.75 | 4.75 | 0.00 | Same |
| 4/27 | draft amended answer and motion to amend answer, calls to local counsel, AUSA Rue, finalize draft and file reply | 4.50 | 4.50 | 0.00 | Same |
| 4/29 | outline points for summary judgment argument | 1.50 | 1.50 | 0.00 | Same |
| 4/30 | calls to AUSA Rue, client, research on Lexis | 4.25 | 4.25 | 0.00 | Same |
| 5/1 | finish drafting motion to amend answer to add FTCA claim, amended answer; FTCA research; review DOJ manual and FTCA cases, prepare for oral argument | 7.00 | 7.00 | 0.00 | Same |
| 5/2 | travel to Boston, review notes, motions, cases, prepare for hearing | 8.00 | 8.00 | 0.00 | Same |
| 5/3 | hearing on summary judgment motion, travel home | 8.00 | 6.00 | 2.00 | Same |
| 5/7 | looking online for appraiser, calls to client, AUSA Rue, JFK Library, appraisal society | 2.25 | 2.25 | 0.00 | Same; Lane never introduced any evidence regarding claimed value of Flash II. |
| 5/8 | calls to client, JFK Library, potential appraisers, AUSA Rue | 3.50 | 3.50 | 0.00 | Same |
| 5/9 | calls to Guernsey's, client, AUSA Rue, local counsel, review Ettinger appraisal, Ettinger declaration and auction documents from file, draft questions for Ettinger depo and subpoena duces tecum | 5.25 | 5.25 | 0.00 | Same |

| 2007 | Brenda Grantland's Itemization of Fees | Total | Exclude | Bal | Basis for Dispute |
|---|---|---|---|---|---|
| 5/10 | read and respond to email from Bonnie Smith re: requested memorandum, calls to Guernsey's, client, AUSA Rue; review prior US filing and make notes for memorandum, read email from Bonnie Smith saying memo not required, prepare and send Ettinger subpoena duces tecum, list of documents, email depo notice to parties, witnesses & court reporter, prepare questions for Ettinger depo; read US supplemental memorandum, review, make notes for response, research for response | 7.15 | 7.15 | 0.00 | Relates to issues on which Lane did not prevail (value & sovereign immunity, FTCA) |
| 5/11 | research, draft and efile response to U.S. supplemental memorandum, call to Guernsey's, prepare for Ettinger deposition | 5.00 | 5.00 | 0.00 | Same |
| 5/14 | prepare for Ettinger depos, call to Guernsey's auction house re: documents and depos | 2.00 | 2.00 | 0.00 | Same |
| 5/15 | telephonic hearing, calls to client, AUSA Rue, local counsel, attorney Harper; email to client; draft Ettinger depo questions, assemble exhibits; email to AUSA Rue re: supplementing discovery before trial, email to Harper re: need for depo; emails to and from paralegal, prepare for trial | 6.60 | 6.60 | 0.00 | Same |
| 5/16 | calls to Guernsey's, client, AUSA Rue, prepare for Ettinger depo; call from Ettinger's office re: need to postpone depo; email to Bonnie Smith & AUSA Rue re: Ettinger scheduling conflict & need to postpone depo; prepare for trial; read respond to email from Bonnie Smith re: discovery cutoff | 5.65 | 5.65 | 0.00 | Same |
| 5/17 | calls to Guernsey's, client, draft and fax letters to AUSA Rue about need to extend discovery cutoff; read email from AUSA re: DOJ manual, get & review Milo documents, DEA reports, prepare questions for Milo; prepare and email depo notices, draft and file motion to extend discovery deadline | 4.75 | 4.75 | 0.00 | Same; Again billing for Milo documents obtained on 2/14/06; also relates to motion to extend discovery, which was denied. |
| 5/18 | calls to client, trial preparation, read email from AUSA Rue re: settlement proposal, read & respond to email from client, read government opposition to extension of discovery & for protective order, research re: protective order, draft reply re: extension of discovery, read order denying extension of discovery, research takings law | 5.50 | 5.50 | 0.00 | Same |
| 5/19 | prepare for trial, assemble exhibits, calls to client, attorney Harper;research on Lexis, email to Harper; review Milo documents from Pacer, US interrogatory responses, DEA reports Willoughby affidavit and prepare questions for Milo; draft memo on hearsay inadmissibility after CAFRA; takings research | 8.10 | 8.10 | 0.00 | Same |

| 2007 | Brenda Grantland's Itemization of Fees | Total | Exclude | Bal | Basis for Dispute |
|---|---|---|---|---|---|
| 5/20 | calls to client, prepare questions for Dr. Lane, Lexis research ontakings, draft and file motion for clarification of discovery order and response to government's motion for protective order | 4.60 | 3.60 | 1.00 | Relates to issues on which Lane lost (except questioning of Lane) |
| 5/21 | calls to client, attorney Harper; Lexis research & phone consultations with attorneys David Smith & Jody Neal-Post re: inapplicability of takings theory and sovereign immunity;  prepare for trial, assemble exhibits,  review USAO manual section on disposition of assets; draft questions for  witnesses Milo, Willoughby, Dr. Lane | 7.00 | 6.00 | 1.00 | Same |
| 5/22 | trial preparation - finish writing out witness questions and exhibits, further research, review statutes & guidelines to compute Milo's potential exposure, draft and efile motion on inadmissibility of hearsay, draft memo on preliminary matters | 8.00 | 4.00 | 4.00 | Relates to D.69, Lane's motion claiming government had waived right to present evidence, when Lane had conceded issues in Statement of Material Facts.  See D.69/70. |
| 5/23 | travel to Boston, review documents and final revisions to witness questions, read email & letter from AUSA Rue re: FRE 807, Lexis research on FRE 807, | 8.00 | 4.00 | 4.00 | Travel should be charged at a reduced rate.  Horney v. Westfield Gage Co., 227 F. Supp.2d 209, 216 (D.Mass. 2002).  Reducing hours by half creates same effect as cutting rate in half. |
| 5/24 | trial on the issue of forfeitability, conference with client, phone call to local counsel | 5.50 | | 5.50 | |
| 5/25 | travel home | 6.00 | 3.00 | 3.00 | Travel should be charged at a reduced rate.  Horney v. Westfield Gage Co., 227 F. Supp.2d 209, 216 (D.Mass. 2002).  Reducing hours by half creates same effect as cutting rate in half. |
| 5/26 | research online | 0.25 | | 0.25 | |
| 5/27 | research online re: sovereign immunity, damages/loss of property while detained, Federal Tort Claims Act, download cases & read & make notes | 3.30 | 3.30 | 0.00 | Relates to issues on which Lane did not prevail (value & sovereign immunity, FTCA) |
| 5/28 | research online (same as above) | 1.25 | 1.25 | 0.00 | Same |
| 5/30 | calls to client, consult with Attorney Eric Honic re: his CAFRA waiver of sovereign immunity case, review his motion, download order in his case from Pacer, research waiver of sovereign immunity on Lexis, other legal FTCA websites and offline, read government subpoenas duces tecum | 4.00 | 4.00 | 0.00 | Same |
| 5/31 | call to client, research online, read downloaded cases - re: discretionary function exception | 5.25 | 5.25 | 0.00 | Relates to issues on which Lane did not prevail (discretionary function exception/value) |
| 6/1 | calls to client | 0.10 | 0.10 | 0.00 | Same |
| 6/3 | research online for motion to reconsider decision on sovereign immunity; research government policy on interlocutory sales, draft outline for motion  to reconsider, draft motion to compel discovery of Guide to Interlocutory Sales, consult with attorney Jody Neal-Post | 6.00 | 6.00 | 0.00 | Relates to issues on which Lane did not prevail (sovereign immunity, motion to reconsider FTCA ruling, motion to compel) |

| 2007 | Brenda Grantland's Itemization of Fees | Total | Exclude | Bal | Basis for Dispute |
|---|---|---|---|---|---|
| 6/4 | calls to client, multiple calls and emails between parties and witnesses coordinating and rescheduling depos set for June 7 & documents for subpoenas duces tecum, serve depo notices, research online, review research and make notes for motion for reconsideration | 6.25 | 6.25 | 0.00 | Same |
| 6/5 | research & draft letter to AUSA Rue and email demanding Guide to Interlocutory Sales & other documents showing compliance with DOJ policy (government has burden of proving compliance with internal policies and procedures); email to AUSA re: Ettinger depo and Harper depo schedule adjustments, sent depo notice to court reporter | 2.25 | 2.25 | 0.00 | Same |
| 6/6 | research online, prepare for depositions of Harper & Ettinger | 5.50 | 5.50 | 0.00 | Same (Depos of Harper & Ettinger related to issue of value, on which Lane lost) |
| 6/7 | deposition of Arlan Ettinger, review documents produced by Robert Harper Esq. in response to subpoena duces tecum (emailed as attachments the morning of the deposition), deposition of Robert Harper, phone calls with client | 8.80 | 8.80 | 0.00 | Same (Depos of Harper & Ettinger related to issue of value, on which Lane lost) |
| 6/8 | calls to client, review Guide to Interlocutory Sales, make notes for motion for reconsideration | | | 0.00 | |
| 6/10 | read trial transcript & make notes, research online | 2.25 | 2.25 | 0.00 | Same |
| 6/11 | call to client | 0.40 | 0.40 | 0.00 | Same |
| 6/12 | review Guide to Interlocutory Sales, DOJ Asset Forfeiture Policy Manual, Guernsey's contract, other Ettinger documents, and make notes for motion for reconsideration of court's ruling on sovereign immunity, research for motion for reconsideration, draft outline for motion | 8.00 | 8.00 | 0.00 | Relates to issues on which Lane did not prevail (sovereign immunity, motion to reconsider FTCA ruling) |
| 6/14 | drafting motion for reconsideration, calls to client | 3.25 | 3.25 | 0.00 | Same |
| 6/16 | review Judy Osburn's (paralegal's) research on traceable proceeds, commingling, read her raw notes of research on other topics, discuss areas for follow-up research | 4.25 | 2.00 | 2.25 | Relates in part to issues on which Lane did not prevail (sovereign immunity, motion to reconsider FTCA ruling) |
| 6/17 | research for post-trial memo - give to Judy | 3.80 | 3.80 | 0.00 | |
| 6/19 | study Guide to Interlocutory Sales, DOJ Asset Forfeiture Policy Manual, Supplemental Rules, statutes on policies & procedures for selling property, draft arguments for reconsideration memo, review Ettinger depo documents and transcript, excerpt references for motion for reconsideration of sovereign immunity ruling memo | 5.50 | 5.50 | 0.00 | Relates to issues on which Lane did not prevail (sovereign immunity, motion to reconsider FTCA ruling) |
| 6/20 | drafting memorandum in support of motion for reconsideration of sovereign immunity ruling, assemble supporting exhibits & transcript excerpts | 4.25 | 4.25 | 0.00 | Same |

| 2007 | Brenda Grantland's Itemization of Fees | Total | Exclude | Bal | Basis for Dispute |
|------|----------------------------------------|-------|---------|-----|-------------------|
| 6/21 | call to US Attorney's Office, Boston. | 1.00 | 1.00 | 0.00 | Same |
| 6/23 | review Judy Osburn's draft of traceable argument, edit, comment on changes to make, make notes for further research, multiple emails with Judy about other things we needed to add, reviewed and revised Judy's first draft of Trial Brief | 5.30 | 2.30 | 3.00 | Relates in part to issues on which Lane did not prevail (sovereign immunity, motion to reconsider FTCA ruling) |
| 6/24 | research online, finish first draft of memorandum on reconsideration of sovereign immunity ruling and send to Judy for proofreading, read Judy's research memorandum and draft of post-trial memorandum and comment on changes, further research, conferences and swapped email on further edits to Trial Brief and Reconsideration Memo | 6.90 | 6.90 | 0.00 | Relates to issues on which Lane did not prevail (sovereign immunity, motion to reconsider FTCA ruling) |
| 6/25 | calls to Guernsey's, attorney Harper, review Judy's emails, research and drafts of substitute asset argument, assigned her further research; reviewed Milo's substitute asset judgments & sent to Judy with comments; reviewed and revised/commented on succeeding drafts of Trial Brief and outlined additional research; new revisions to reconsideration memo; combed through documents for evidence of amount and date of Lane's payments, assigned to Judy task of combing them more thoroughly and preparing chart to use as exhibit | 5.45 | 5.45 | 0.00 | Same |
| 6/26 | review Judy's editorial suggestions on first draft of reconsideration memorandum, make revisions and send back to Judy for further revisions; review Judy's email & research on substitute assets and direct further research; edit new draft of Trial Brief, edit, comment and direct further research | 6.50 | 6.50 | 0.00 | Same |
| 6/27 | emails and conferences with Judy re: further research for Trial Brief & Reconsideration Memo, and new revisions to each memo; assemble documents in pdf format for exhibits; review excerpts from trial transcript about scope of the Post-Trial memo and conference with Judy about further items we needed to add | 4.25 | 4.25 | 0.00 | Same |
| 6/28 | collateral estoppel research on Lexis, further revisions to trial memo and reconsideration memo, wrote new section for Post Trial Brief | 6.25 | 6.25 | 0.00 | Same |
| 6/29 | final revisions to Reconsideration Memo, assemble exhibits in pdf, and efiled; suggested further revisions to Post-Trial Memo; read court notices of documents AUSA filed; review and finalize latest draft of Post-Trial Memo, put exhibits into pdf format and efiled, called Dr. Lane | 4.10 | 4.10 | 0.00 | Same |
| 7/11 | call to client | 0.30 | 0.30 | 0.00 | Same |
| 7/12 | call to client | 0.10 | 0.10 | 0.00 | Same |

| 2007 | Brenda Grantland's Itemization of Fees | Total | Exclude | Bal | Basis for Dispute |
|------|----------------------------------------|-------|---------|-----|-------------------|
| 7/13 | review government opposition to reconsideration, draft notes and outline research for reply | 4.50 | 4.50 | 0.00 | Same |
| 7/14 | research on Lexis | 0.50 | 0.50 | 0.00 | Same |
| 7/15 | research on Lexis | 1.60 | 1.60 | 0.00 | Same |
| 7/16 | research on Lexis, draft reply memorandum | 5.00 | 5.00 | 0.00 | |
| 7/17 | research & drafting of reply memorandum | 2.25 | 2.25 | 0.00 | Same |
| 7/18 | research on Lexis, drafting | 5.50 | 5.50 | 0.00 | Same |
| 7/19 | revise draft memorandum & motion to reply | 4.10 | 4.10 | 0.00 | Same |
| 7/20 | call to AUSA Rue (.1), research on Lexis (.25), final revisions, efile reply to opposition to reconsideration | 3.00 | 3.00 | 0.00 | Same |
| 7/21 | calls to client | 0.10 | 0.10 | 0.00 | Same |
| 8/8 | call to client | 0.10 | 0.10 | 0.00 | Same |
| 8/10 | call to Fitzgerald | 0.10 | 0.10 | 0.00 | Excessive.  No reason that post-trial calls to Fitzgerald should be billed to client or government. |
| 8/16 | call to clerk | 0.10 | 0.10 | 0.00 | No explanation why call required.  No activity on docket. Simply awaiting opinion from Court. |
| 8/18 | calls to client | 0.20 | 0.20 | 0.00 | Same |
| 8/21 | call to client | 0.10 | 0.10 | 0.00 | Same |
| 8/27 | call to client | 0.10 | 0.10 | 0.00 | Same |
| 9/5 | read and respond to email from Bonnie Smith re: hearing on Crosby interest on September 26; draft letter & fax to AUSA Rue re: updated discovery, calls to AUSA Rue, client | 1.20 | 1.20 | 0.00 | Relates to Crosby settlement amount, an issue on which Lane did not prevail. |
| 9/7 | call to AUSA Rue re: supplemental discovery, read email from Rue | 0.10 | 0.10 | 0.00 | Same |
| 9/12 | call to AUSA Rue | 0.10 | 0.10 | 0.00 | Same |
| 9/17 | call to client | 0.10 | 0.10 | 0.00 | Same |
| 9/18 | calls to client, AUSA Rue, attorney Kerner re: Crosby depo, prepare for Crosby depo, collect documents for depo and Fed Ex to Kerner | 3.70 | 3.70 | 0.00 | Same |
| 9/19 | calls to US Attorney's Office, client | 2.55 | 2.55 | 0.00 | Same |

| 2007 | Brenda Grantland's Itemization of Fees | Total | Exclude | Bal | Basis for Dispute |
|---|---|---|---|---|---|
| 10/2 | read Judge Young's memorandum of decision, called Dr. Lane | 0.50 | 0.00 | 0.50 | |
| 10/3 | read Crosby transcript, make notes for memo on Crosby's interest, pro rata formula, research, review documents from Crosby depo draft memo | 4.80 | 4.80 | 0.00 | Relates to Crosby settlement amount, an issue on which Lane did not prevail. |
| 10/7 | draft memo on Crosby interest | 5.90 | 5.90 | 0.00 | Same |
| 10/8 | draft memo on Crosby interest | 4.50 | 4.50 | 0.00 | Same |
| 10/13 | research on Lexis, draft memo on Crosby interest | 3.35 | 3.35 | 0.00 | Same |
| 10/15 | finished & efiled memo on Crosby's interest | 0.50 | 0.50 | 0.00 | Same |
| 10/20 | review government's memo on Crosby interest & draft response memo | 2.40 | 2.40 | 0.00 | Same |
| 10/22 | research online, research on Lexis, final revisions to response memo on Crosby's interest, efile | 2.15 | 2.15 | 0.00 | Same |
| 11/4 | research attorneys fees, prevailing rates | 1.50 | 1.50 | 0.00 | Includes disingenuous claims regarding entitlement to rates attributable to "Boston"lwyers |
| 11/12 | further research, draft fee petition memorandum of law and affidavit | 3.10 | 3.10 | 0.00 | Same |
| 11/13 | double check arithmetic in time sheets, final revisions fee petition memorandum & affidavit | 3.50 | 0.00 | 3.50 | |
| | **Total 2007** | **477.55** | **360.00** | **117.55** | |

| Expenses Claimed by Lane | Amount | dispute | Balance | |
|---|---|---|---|---|
| Lane's airfare to oral argument | 369.18 | 369.18 | 0.00 | Lane's choice to move from Massachusetts after initiating litigation should not be charged to government; moreover, Lane's presence was not required at argument. |
| Grantland hotel Boston Park Plaza | 412.00 | 206.00 | 206.00 | Stay after argument was unnecessary |
| Lane's hotel | 167.93 | 167.93 | 0.00 | Lane's presence was not required at argument |
| Legal Seafood | 123.32 | 123.32 | 0.00 | Food is not a litigation cost. |
| Barking Crab | 78.14 | 78.14 | 0.00 | Food is not a litigation cost. |
| Cab Fares | 45.00 | 0 | 45.00 | |
| Grantland's trip to Boston 1/30/07 airfare | 574.70 | 0 | 574.70 | |
| Grantland's hotel | 148.14 | 0 | 148.14 | |
| Grantland's trip to Boston 5/2/07 airfare | 574.70 | 0 | 574.70 | |
| Grantland hotel | 169.38 | 0 | 169.38 | |
| Grantland trip to Boston for 5/23/07 | 738.72 | 0 | 738.72 | |
| Grantland/Lane hotel, 2 nights | 403.00 | 201.50 | 201.50 | 2nd night was not required |
| Lane airfare | 524.90 | 524.90 | 0.00 | Lane's choice to move from Massachusetts after initiating litigation should not be charged to government. |
| Lane/Grantland meals | 42.75 | 42.75 | 0.00 | Food is not a litigation cost. |
| Lane/Grantland meals | 40.08 | 40.08 | 0.00 | Food is not a litigation cost. |
| Cab Fare | 35.00 | 0 | 35.00 | |
| **Total expenses claimed by Lane** | **4446.94** | **1753.8** | **2,693.14** | |

| Expenses Claimed By Grantland | Amount | dispute | Balance | Appeal | |
|---|---|---|---|---|---|
| 5/5/06    printing costs appellate brief | 179.72 | 0.00 | 179.72 | 179.72 | Relates to appeal; also, excessive |
| 5/11/06  Fed Ex charges | 94.94 | 0.00 | 94.94 | 94.94 | Same |
| 6/25/06  First Circuit fee | 200.00 | 0.00 | 200.00 | 200.00 | Relates to appeal |
| 6/27/06  printing costs, reply brief | 82.68 | 0.00 | 82.68 | 82.68 | Relates to appeal; also, excessive |
| 6/27/06  Fed Ex charges | 15.89 | 0.00 | 15.89 | 15.89 | Relates to appeal |
| 7/11/06  plane fare | 561.60 | 0.00 | 561.60 | 561.60 | Relates to appeal; also, excessive |
| 7/31/06  hotel | 347.09 | 0.00 | 347.09 | 347.09 | Relates to appeal; also, excessive |
| 7/31/06  cabs | 36.00 | 0.00 | 36.00 | 36.00 | Relates to appeal |
| 7/31/06  Marin Airporter bus | 28.00 | 0.00 | 28.00 | 28.00 | Relates to appeal |
| 8/2/06    hotel restaurant meals | 23.45 | 23.45 | 0.00 | | Relates to appeal; food is not a litigation expense. |
| 9/29/06  Newslibrary.com (download NPR articles on Flash II auction) | 7.90 | 0.00 | 7.90 | | |
| 1/5/07    Fed Ex to Shecketoff, Milo's lawyer | 17.41 | 17.41 | 0.00 | | Govt was never served with copy of subpoena duces tecum; therefore, service on witness should not be reimbursed. |
| 1/24/07  Fed Ex to courthouse | 47.52 | 0.00 | 47.52 | | |
| 5/15/07  printing (discovery documents) | 24.89 | 0.00 | 24.89 | | |
| 5/30/07  Don Womack, court reporter | 115.37 | 0.00 | 115.37 | | |
| 6/15/07  Court reporter (Ettinger depo) | 652.55 | 652.55 | 0.00 | | Relates to value, an issue which Lane lost. |
| 7/26/07  Conf call service (Ettinger depo) | 53.84 | 53.84 | 0.00 | | Relates to value, an issue which Lane lost. |
| 10/11/07      Apex Reporting (Crosby depo) | 133.05 | 133.05 | 0.00 | | Relates to Crosby's interest, an issue which Lane lost. |
| **Total expenses claimed by Grantland** | **2,621.90** | **880.30** | **1,741.60** | **1545.92** | |

| Date | Description | Hours | Claimed | Disputed | Balance | |
|---|---|---|---|---|---|---|
| 5/27/2007 | Guernsey contract, billing review/payments breakdown | 2.00 | $130.00 | $130.00 | $0.00 | Issue on which Lane did not prevail |
| 6/14 | re Lane trial--tainted proceeds | 4.50 | $292.50 | | $292.50 | |
| 6/15 | re Lane trial--attenuated connection with tainted proceeds | 5.50 | $357.50 | | $357.50 | |
| 6/16 | re Lane trial--attenuated connection with tainted proceeds | 5.00 | $325.00 | | $325.00 | |
| 6/18 | re Lane trial--attenuated connection with tainted proceeds | 6.50 | $422.50 | | $422.50 | |
| 6/19 | re Lane trial--attenuated connection with tainted proceeds | 6.00 | $390.00 | | $390.00 | |
| 6/20 | Lane traceable proceeds argument | 6.00 | $390.00 | | $390.00 | |
| 6/21 | Lane traceable proceeds argument | 7.50 | $487.50 | | $487.50 | |
| 6/22 | Lane traceable proceeds argument | 7.00 | $455.00 | | $455.00 | |
| 6/23 | Lane traceable proceeds argument | 6.00 | $390.00 | | $390.00 | |
| 6/24 | Lane traceable proceeds argument | 7.00 | $455.00 | | $455.00 | |
| 6/25 | Lane traceable proceeds argument | 7.50 | $487.50 | | $487.50 | |
| 6/26 | Lane traceable proceeds argument | 7.50 | $487.50 | | $487.50 | |
| 6/27 | Lane post-trial memo re forfeitability | 8.00 | $520.00 | | $520.00 | |

| Date | Description | Hours | Claimed | Disputed | Balance | |
|------|-------------|-------|---------|----------|---------|---|
| 6/28 | Lane post-trial memo re forfeitability | 10.50 | $682.50 | | $682.50 | |
| 6/29 | Lane post-trial memo re forfeitability & reconsider edit | 9.00 | $585.00 | $585.00 | $0.00 | Relates to motion for reconsideration; issue on which Lane did not prevail |
| 7/19 | sailboat valuation research | 2.50 | $162.50 | $162.50 | $0.00 | Issue on which Lane did not prevail |
| 7/19 | Lane reply_reconsideration edit | 1.50 | $97.50 | $97.50 | $0.00 | Issue on which Lane did not prevail |
| 7/20 | Lane reply_reconsideration edit | 4.00 | $260.00 | $260.00 | $0.00 | Issue on which Lane did not prevail |
| | TOTAL | | $7,377.50 | $1,105.00 | $6,142.50 | |

Goldberg Billed Expenses

| Date | Narrative | Amount | Disputed | Balance | Basis for Dispute |
|------|-----------|--------|----------|---------|-------------------|
| 7/31/2005 | Copies | 1.25 | 1.25 | 0 | Petty.  Copies should be included in billing rate. |
| 7/31/2005 | Online research | 86.55 | 86.55 | 0 | Relates to unsuccessful motion. |
| 9/20/2005 | Copies | 5.25 | 5.25 | 0 | Petty.  Copies should be included in billing rate. |
| 10/31/2005 | Telephone charges | 3.54 | 3.54 | 0 | Petty.  Should be included in billing rate. |
| 11/8/2005 | Federal Express | 42.49 | 42.49 | 0 | No explanation of why Fed Ex required. |
| 1/31/2006 | Telephone charges | 2.50 | 2.50 | 0 | Petty.  Should be included in billing rate. |
| 1/31/2007 | Parking | 9.00 | 9.00 | 0 | Duplicative.  Second attorney's presence not required |
| 4/27/2007 | Telephone Charges | 0.50 | 0.50 | 0 | Petty.  Should be included in billing rate. |
| | | 151.08 | 151.08 | | |

| Date | Atty | Narrative | Hours | Rate | Amount | Exclude | Bal | Basis for Dispute |
|------|------|-----------|-------|------|--------|---------|-----|-------------------|
| 7/19/2005 | EBG | Confer with Sandy Starr regarding removal of default in boat forfeiture case; Legal research regarding same | 2.00 | 225 | 450.00 | 450.00 | 0 | Goldberg's efforts were wholly unsuccessful, and ultimately effectively abandoned. This motion was not appealed, and new counsel Grantland filed wholly revised motion, which was then appealed. |
| 7/20/2005 | EBG | Continued legal research regarding removal of default judgment in civil forfeiture cases; Draft Memorandum in Support of Motion for Relief from Judgment; Review e-mail received from client regarding same | 6.70 | 225 | 1507.50 | 1507.50 | 0 | Given lack of success & duplication of effort, these hours should not be awarded. |
| 7/21/2005 | EBG | Draft Affidavit of Kerry Lane; Continue drafting Memorandum in Support of Motion for Relief from Judgment; Confer with Sandy Starr and Jeffrey Allen regarding same; Review documents received from client; Teleconference with client. | 6.5 | 225 | 1462.50 | 1462.50 | 0 | Moreover, conferences with attorneys Starr and Allen appear to have no value. Hours charged by Sandy Starr show no value. |
| 7/21/2005 | SHS | Conference with Eric Goldberg; Telephone conference with client. | 0.30 | 275 | 82.50 | 82.50 | 0 | |
| 7/22/2005 | SHS | Conference with Eric Goldberg; Telephone conference with Attorney Eubanks | 0.30 | 275 | 82.50 | 82.50 | 0 | |
| 7/22/2005 | EBG | Revise/edit Affidavit of Kerry Lane; Revise/edit Memorandum in Support of Motion for Relief from Judgment; Draft Motion for Relief from Judgment; Teleconference with DOJ attorney regarding client's involvement; Teleconference with client regarding same | 5.50 | 225 | 1237.50 | 1237.50 | 0 | |
| 7/25/2005 | EBG | Review documents received from client; Confer with Sandy Starr regarding review of draft Motion and Affidavit; Revise/edit Affidavit and Memorandum in Support of Motion; Legal research regarding review of civil forfeiture statute | 4.50 | 225 | 1012.50 | 1012.50 | 0 | |
| 7/25/2005 | SHS | Review and amend pleadings; Conference with Eric Goldberg; Fax to client. | 0.70 | 275 | 192.50 | 192.50 | 0 | |
| 7/26/2005 | EBG | Review e-mail received from client regarding draft Motion and Affidavit; Teleconference with Thomas Kerner regarding Motion to Set Aside Default Judgment; Draft e-mail to Shelbey Wright regarding same; Confer with Jeffrey Allen regarding same; Revise/edit Affidavit of Kerry Lane; Teleconference with client regarding same | 1.20 | 225 | 270.00 | 270.00 | 0 | |

| Date | Atty | Narrative | Hours | Rate | Amount | Exclude | Bal | Basis for Dispute |
|---|---|---|---|---|---|---|---|---|
| 7/27/2005 | EBG | Revise/edit Affidavit; Telephone conference with client regarding same; Finalize Motion for filing; Revise/edit Memorandum in Support of Motion to Conform to Affidavit; Assemble exhibits to Affidavit; Prepare electronic filing | 2.50 | 225 | 562.50 | 562.50 | 0 | |
| 8/19/2005 | EBG | Teleconference with client and conference with Sandy Starr regarding ruling on Motion | 0.50 | 225 | 112.50 | 112.50 | 0 | Same |
| 8/22/2005 | EBG | Teleconference with client regarding case status and review of civil forfeiture statutes and rules | 1.00 | 225 | 225.00 | 225.00 | 0 | Duplication of billings by Brenda Grantland – no basis for paying two attorneys for identical work. |
| 8/24/2005 | EBG | Teleconference with client and California counsel regarding Motion for Reconsideration | 0.50 | 225 | 112.50 | 112.50 | 0 | |
| 8/26/2005 | SHS | Conferences with Eric Goldberg concerning appeal and motion of reconsideration | 0.50 | 275 | 137.50 | 137.50 | 0 | |
| 8/29/2005 | EBG | Review Motion to Alter/Amend Order; Teleconference with Brenda Grantland regarding same; Confer with Jeffrey Allen regarding same; Confer with Sandy Starr regarding same | 2.00 | 225 | 450.00 | 450.00 | 0 | |
| 9/8/2005 | EBG | Review Rule 11 Motion; Confer with Jeffrey Allen regarding same; Teleconference with Brenda Grantland regarding same. | 1.20 | 225 | 270.00 | 270.00 | 0 | |
| 11/14/2005 | EBG | Teleconference with Thomas Kerner regarding Motion to Stay Pending Appeal; Teleconference with Brenda Grantland regarding same. | 0.50 | 225 | 112.50 | 112.50 | 0 | |
| 8/2/2006 | EBG | Attend hearing on appeal before First Circuit Court of Appeals; Travel to/from Boston | 4.00 | 240 | 960.00 | 960.00 | 0 | |
| 9/14/2006 | EBG | Status conference; Conference with Brenda Grantland regarding same | 0.50 | 240 | 120.00 | 120.00 | 0 | |
| 12/19/2006 | EBG | Attend telephonic status conference with Court | 0.50 | 240 | 120.00 | 120.00 | 0 | |
| 1/31/2007 | EBG | Attend hearing on remand; Travel to Boston Federal Court; Meeting with Brenda Grantland | 4.50 | 240 | 1080.00 | 1080.00 | 00 | |
| 4/27/2007 | EBG | Teleconference with Brenda Grantland regarding hearing on motion for summary judgment. | 0.20 | 240 | 48.00 | 48.00 | 0 | |
| Total | | | 46.10 | | 10608.00 | 10608.00 | 0 | |

# ATTORNEY EMPLOYMENT AGREEMENT

THE AGREEMENT MADE THIS 24th day of August, 2005, by and between Dr. Kerry Lane, hereinafter referred to as "client" and attorney Brenda Grantland is as follows:

1. The client hereby retains and employs said attorney to represent him, as co-counsel with local attorney Eric Goldberg, in the civil forfeiture case USA v. One Star Class Sloop Sailboat Built in 1930 ("Flash II"), U.S. Dist. Ct., D. Mass. Case number 05-10192 RWZ.

2. The attorney accepts this retainer and agrees to take whatever action is reasonably necessary and advisable to enforce the clients' rights in the matter described in paragraph 1. This retainer does not obligate attorney to pursue any appeals – except by subsequent oral agreement.

3. It is agreed that the attorney will receive compensation for her services at the rate of $250 per hour. Client will pay a minimum retainer of $5000, by wire transfer on August 25. Once hours expended exceed the minimum retainer, attorney will bill client for any excess fees. Interest at the rate of 12% per annum will be charged on all balances billed and unpaid for more than 30 days.

4. Client further agrees that in addition to the above attorney's fees, all court costs, investigator fees, court reporters fees, expert fees, witness fees, travel costs, photocopying, toll calls, and all other out-of-pocket expenses incurred in investigating or litigating this claim shall be paid by the client.

5. Client agrees that attorney may deduct all attorney's fees and expenses due under this agreement from any money or property received by client in settlement or payment of the client's claim; and attorney shall be paid out of, and have a lien upon, any and all such money or property to the extent of such fees or expenses as may become due hereunder. In the event the attorney has to pursue legal action to collect the fee, client hereby agree to pay reasonable attorneys fees and costs for the collections action.

AGREED:

_Brenda Grantland_
Attorney

AGREED:

_KS Lane MD_
Client
8/26/2005

**Lipomics**

Sailormal
954
Chuck Fitzgerald

www.lipomics.com